EDMUND G. BROWN JR.
Attorney General of the State of California
SUSAN M. CARSON
Supervising Deputy Attorney General
GEORGE PRINCE, State Bar No. 133877
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5749
 Fax:  (415) 703-5480

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CALIFORNIA STATE FOSTER PARENT ASSOCIATION, CALIFORNIA STATE CARE PROVIDERS ASSOCIATION, and LEGAL ADVOCATES FOR PERMANENT PARENTING,,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN A. WAGNER, Director of the California Department of Social Services, in his official capacity; MARY AULT, Deputy Director of the Children and Family services Division of the California Department of Social Services, in her official capacity,,<br><br>Defendants. | C 07-5086 JL<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing:    December 19, 2007<br>Time:       9:30 a.m.<br>Courtroom: F, 15th floor<br>Judge:      The Honorable<br>            James Larson |

TO PLAINTIFFS CALIFORNIA STATE FOSTER PARENT ASSOCIATION,

CALIFORNIA STATE CARE PROVIDERS ASSOCIATION, LEGAL and ADVOCATES FOR

PERMANENT PARENTING, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT defendants John Wagner and Mary Ault will move

this Court, on December 19, 2007, at 9:30 a.m., or as soon thereafter as the matter may be heard,

in Courtroom F, the Honorable James Larson, presiding, in the United States District Courthouse

at 450 Golden Gate Avenue, San Francisco, California, for an order dismissing this action for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants' motion to dismiss is made on the ground that plaintiff's complaint cannot be sustained against defendants because plaintiff does not have a private right of action under 42 U.S.C. section 1983 to enforce the provisions of the Child Welfare Act cited in this case (Title IV-E of the Social Security Act, 42 U.S.C. §§ 670-679b).

This motion is based on this notice of motion and motion, the supporting memorandum of points and authorities, the proposed order, a copy of which is included with this notice of motion and motion, and on the pleadings and records on file with the Court in this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**STATEMENT OF THE CASE**

This is a civil-rights lawsuit filed October 3, 2007, purportedly on the basis of 42 U.S.C. § 1983, by plaintiffs California State Foster Parent Association (CSFPA), California State Care Providers Association (CSCPA), and Legal Advocates for Permanent Parenting (LAPP).[1] Plaintiffs state that they bring this action "on behalf of licensed foster parents who elect to care for abused and neglected children who have been removed from the custody of their parents by operation of state law." (Complaint for Declaratory Judgment and Permanent Injunctive Relief (Complaint), p. 1:2-4.) Plaintiffs allege that the foster care maintenance payments made by California do not cover the costs incurred by foster parents, and that defendants thus violate the federal Child Welfare Act.[2] (Complaint, generally.)

---

1. By stipulation of the parties, defendants have been granted an extension of time, to and through November 6, 2007, in which to respond to the complaint.

2. Title IV-E of the Social Security Act, 42 U.S.C. sections 670-679b ("Part E. Federal Payments for Foster Care and Adoption Assistance"). Plaintiff does not clearly specify any substantive provision of the Child Welfare Act in its allegations against defendants, but refers to 42 U.S.C. section 675, the "Definitions" portion, to contend that defendants violate the Child Welfare Act by not paying "the actual cost" of the items set forth in section 675(4)(A). (Complaint, p. 8:23-26.) However, the term "actual" does not appear in section 675(4)(A).

Not. of Mtn. & Mtn. to Dismiss; Supporting Memo.      California State Foster Parent Association, et al. v. Wagner
C 07-5086 JL
2

1  Plaintiffs describe themselves as California corporations representing the interests of foster parents with respect to matters relating to the State of California and the Department of Social Services's administration of the Aid to Families with Dependent Children - Foster Care program (Complaint, p. 3:11-12; 4:9-11; and 4:24-25), but specifically note that they are bringing this action "without the participation of an individual member of CSFPA" (*id.*, p. 3:18), "without the participation of an individual member of LAPP" (*id.*, p. 4:6),  and "without the participation of an individual member of CSCPA" (*id.*, p. 4:21).

## ARGUMENT

**THIS ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AS THERE IS NO PRIVATE RIGHT OF ACTION UNDER SECTION 1983 AVAILABLE TO THESE PLAINTIFFS TO ENFORCE THOSE PORTIONS OF THE CHILD WELFARE ACT AT ISSUE IN THIS ACTION.**

The gravamen of plaintiffs' case is that defendants have failed "to comply with the Child Welfare Act's mandated factors in setting rates for foster care maintenance payments [and thus deprive] the Plaintiffs and the foster parents they represent of their federal rights, privileges and immunities under color of state law in violation of 42 U.S.C. § 1983." (Complaint, p. 13:17-20.)  This  conclusory contention fails to state a claim upon which relief can be granted because there is no private right of action available to these plaintiffs under 42 U.S.C. section 1983 (Section 1983) to enforce those provisions of the Child Welfare Act at issue.

A.  Plaintiffs' Burden Under the Applicable Legal Standards.

To sustain their claims for relief here, plaintiffs must demonstrate that they seek redress for violation of a federal *right*, not just a federal *law*.  *Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002).  Specifically, plaintiffs must thus show that they have rights under the Child Welfare Act.

In *Gonzaga,* the Supreme Court clarified the principles to be applied in determining whether a federal statute enacted pursuant to Congress's spending power confers individual rights enforceable under 42 U.S.C. § 1983.  The Court began by confirming that private enforcement of Spending Clause statutes is the rare exception.  "'In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed

Not. of Mtn. & Mtn. to Dismiss; Supporting Memo.  California State Foster Parent Association, et al. v. Wagner
C 07-5086 JL

3

conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State.'" *Gonzaga*, 536 U.S. at 280, quoting *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 28 (1981). Therefore, "unless Congress 'speaks with a clear voice' and manifests an 'unambiguous' intent to confer individual rights, federal funding provisions provide no basis for private enforcement by § 1983. (Citation omitted.)." *Id.*

B. Clarification of the *Blessing v. Freestone* Factors: Creation of an Unambiguous Right.

The Court in *Gonzaga* also addressed the "confusion" that had led some courts to misinterpret its prior decisions, including *Blessing v. Freestone*, 520 U.S. 329 (1997), as endorsing a less stringent standard. In *Blessing*, the Court had formulated a three-factor test to evaluate whether Congress had conferred an enforceable right: (1) Congress must have intended that the statutory provision in question to benefit the plaintiff; (2) the right must not be so "vague and amorphous" as to be "beyond the competence of the judiciary to enforce;" and (3) the statute "must be couched in mandatory, rather than precatory, terms." 520 U.S. at 340-41.[3] While not abandoning the test, the *Gonzaga* Court dispelled any suggestion that the first *Blessing* factor stood for the proposition that Congressional intent to permit enforcement under § 1983 will be found "so long as the plaintiff falls within the general zone of interest that the statute is intended to protect."[4] *Id.* at 283. That the statute "benefits" the plaintiff is insufficient – the provision must unambiguously create a right:

> We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983. Section 1983 provides a remedy only for the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. Accordingly, it is *rights*, not the broader or vaguer "benefits" or "interests" that

---

3. The Supreme Court granted certiorari in *Blessing* to resolve disagreement among the Courts of Appeals as to whether individuals could sue state officials under Section 1983 for violations of Title IV-D of the Social Security Act. 520 U.S. at 339-340. Justice O'Connor's opinion, for a unanimous court, held that Title IV-D did *not* give individuals a federal right to force a state agency to substantially comply with Title IV-D. *Id*. at 333. Part D of Title IV immediately precedes Part E, at issue here, in the Social Security Act.

4. See *31 Foster Children v. Bush*, 329 F. 3d 1255, 1269-1270 (11th Cir. 2003) ("The Supreme Court in *Gonzaga* clarified the first of the *Blessing* requirements.").

may be enforced under the authority of that section. (Emphasis original.) *Id.* And, because only *rights* may be enforced, the Court's implied right of action cases "should guide the determination of whether a statute confers rights enforceable under § 1983." *Id.*

C. Statutory Analysis Under *Gonzaga.*

As *Gonzaga* explains, under the private right of action cases, the "text and structure" of the statute must demonstrate that Congress unambiguously intended to grant individual rights. 536 U.S. at 286. Critical to this inquiry is whether the statutory provision uses "rights-creating" language. 536 U.S. at 287; *Alexander v. Sandoval*, 532 U.S. 275, 288-289 (2001). Such language must clearly impart an "individual entitlement," and have an "unmistakable focus on the benefitted class." *Id.*; *Cannon v. University of Chicago*, 441 U.S. 677, 692, n. 13 (1979) (text of statute must be "phrased in terms of the person benefitted.") "Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of person." (Internal quotes and citation omitted). *Gonzaga*, 536 U.S. at 287, quoting *Alexander*, 532 U.S. at 289. "If [the statute] provide[s] some indication that Congress may have intended to create individual rights, and some indication it may not have, that means Congress has not spoken with the requisite 'clear voice.' Ambiguity precludes enforceable rights." *31 Foster Children*, 329 F. 3d at 1270. The *Gonzaga* Court invoked as exemplars of "rights-creating" language Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d) and Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681(a). Each of those statutes provides: "No person in the United States shall . . . be subject to discrimination." According to *Gonzaga*, this language creates individual rights because it is phrased "with an *unmistakable focus* on the benefitted class." 536 U.S. at 284 (quoting *Cannon*, 441 U.S. at 691) (emphasis original).

Additional closely related principles relevant to determining whether the text and structure of a statutory provision manifest a congressional intent to confer an enforceable right include: (1) statutes that have an "aggregate" focus rather than a focus upon whether the needs of any particular person has been satisfied do not give rise to individual rights; (2) statutes that speak only in terms of institutional policy and practice do not evince an intent to create private

Not. of Mtn. & Mtn. to Dismiss; Supporting Memo.    California State Foster Parent Association, et al. v. Wagner
C 07-5086 JL

5

rights of enforcement; (3) a statutory provision that references the individual only in the context of describing the type of policy or practice that will trigger a funding prohibition, does not reflect a congressional intent to create a private right of action; and (4) a provision that allows a state entity to avoid a loss of federal funds through substantial compliance reflects a congressional intent to confer group rather than individual rights.  *Gonzaga*, 536 U.S. at 288.

In explaining just what is required to demonstrate Congress's intent to create an individual right enforceable under Section 1983, the Ninth Circuit, in *Sanchez v. Johnson*, 416 F.3d 1051 (2005), recited examples given by the *Gonzaga* Court "of paradigmatic rights-creating language" used by the Congress in Title VI of the Civil Rights Act of 1964 ("No person in the United States shall ... be subjected to discrimination") and in Title IX of the Education Amendments of 1972 ("No person in the United States shall, on the basis of sex ... be subjected to discrimination").  *Sanchez*, 415 F.3d at 1058.  The Ninth Circuit then added:

> Although our inquiry should not be limited to looking for these precise phrases, statutory language less direct must be supported by other indicia so unambiguous that we are left without any doubt that Congress intended to create an individual, enforceable right remediable under § 1983.

*Id.*

D.  Plaintiffs Lack Any Basis for Their Claims.

Applying the principles discussed above to the instant action demonstrates that nothing in Title IV-E grants any unambiguous right enforceable by Section 1983 to the instant plaintiffs.

1.  The "Text and Structure" of Part IV-E Benefits Children, Not Foster Parents

Plaintiffs' contention that its members are entitled to relief under Section 1983 is belied by the clear language of Part IV-E.  That Part contains no language susceptible of interpretation as benefitting or creating rights for foster parents, who make up plaintiffs' constituent members.  To the extent there is any "rights-creating" language,[5] the intended holders of the right are the individual beneficiaries of the services -- that is, the children[6] -- not

---

5.  *Gonzaga*, 536 U.S. at 287; *Alexander*, 532 U.S. at 288-289.

6.  *Alexander*, 532 U.S. at 288-289; *Cannon*, 441 U.S. at 692, n. 13.

Not. of Mtn. & Mtn. to Dismiss; Supporting Memo.                California State Foster Parent Association, et al. v. Wagner
                                                                                                C 07-5086 JL

6

the providers of those services, here, foster parents.[7] To the extent the providers are mentioned, the references are analogous to the references to Medicaid providers that were discussed by the Ninth Circuit in *Sanchez:* "The text does at least refer explicitly to Medicaid providers, but as a means to an administrative end rather than as individual beneficiaries of the statute." *Id.*, 416 F.3d at 1059. The *Sanchez* court added that the Medicaid providers "may certainly benefit from their relationship with the State, but they are, at best, indirect beneficiaries and it would strain common sense to read [42 U.S.C. § 1396a(a)(30)(a), a provision at issue in *Sanchez*] as creating a 'right' enforceable by them." *Id.*

Moreover, just as the true beneficiaries of Part IV-E are children, the focus of the statutes is clearly on the State and its responsibilities to those children. (See, for example, 42 U.S.C. section 671 -- entitled "State plan for foster care and adoption assistance" -- which sets forth the burdens on a State for the receipt of federal funding.) Nothing within this detailed section suggests any intent by Congress to confer rights on anyone save for those children.[8]

//

---

7. In *ASW v. Oregon*, 424 F.3d 970 (2005), the Ninth Circuit found that Part IV-E did create federally enforceable rights to (1) payment determinations (per 42 U.S.C. § 673(a)(3)) and (2) fair hearings before state agencies to challenge individual benefit reductions (per 42 U.S.C. § 671(a)(12)). However, those rights were specific to the *parents* of adopted children. This is distinguishable from the instant action, where plaintiffs are not parents, nor even providers of benefits to children, but merely organizations claiming an enforceable right through their averments that they represent foster parents they claim are adversely affected by defendants' allegedly wrongful actions. (Complaint, paragraphs 4, 6, and 9, generally.) Moreover, the payment determinations and fair hearings that were the subject of the *ASW v. Oregon* decision were based on a provision of the Child Welfare Act involving a written agreement between parties -- i.e., state or other agencies and prospective adoptive parents -- which involved specificity as to those parties on matters of payments, services, and assistance under the written agreements. (See 42 U.S.C. section 675(3).) That differs from the general "foster care maintenance payments" provisions at issue here, which involve neither individualized agreements between "parties" nor specific determinations of how to determine costs. (See 42 U.S.C. section 675(4)(A).)

8. *Gonzaga*, 536 U.S. at 287, quoting *Alexander v. Sandoval*, 532 U.S. at 289. And, to the extent the Ninth Circuit's decision in *ASW v. Oregon* (footnote 7, ante) found otherwise, the right found extended, again, only to the adoptive parents of those children.

Not. of Mtn. & Mtn. to Dismiss; Supporting Memo.        California State Foster Parent Association, et al. v. Wagner
                                                                                       C 07-5086 JL

7

1          <u>2.  The Other *Gonzaga* Principles Also Militate Against Plaintiff Here.</u>

2          Analyzing the instant case under the other principles discussed in *Gonzaga*[9] as relevant to determining whether the text and structure of a statutory provision manifest a congressional intent to confer an enforceable right yield no better result for plaintiffs.

        First, the statutes comprising Part IV-E have an "aggregate" focus on a state's obligations to provide support to foster children, rather than a focus upon whether the needs of any particular person.  To the extent they can be construed to focus on anyone in particular, that focus is on individual children, not a care provider.[10]

        Second, Part IV-E speaks almost entirely in terms of institutional policy and practice and -- again -- to the extent it suggests any intention to create private rights of enforcement, those rights redound to the children, not their foster parents.

        Third, the provisions of Part IV-E reference the individual beneficiaries (children) largely in the context of describing the type of policies or practices that will trigger funding prohibitions.  For example, again, 42 U.S.C. section 671 -- "State plan for foster care and adoption assistance" -- sets forth the burdens on a state for the receipt of federal funding and hence details what policies and practices, if *not* followed, will result in a loss of funding to the state.  And, again, to the extent that the creation by Congress of any private right of action could be inferred from this language, that right would be for children, not their foster parents.

        Finally, although it is not entirely clear from Part IV-E whether substantial compliance with its provisions will allow a state entity to avoid a loss of federal funds, the focus of those provisions remains on benefitting the children, not the foster parents of those children.

---

9.  536 U.S. at 288

10.  After plaintiffs filed this action they also filed an "Administrative Motion to Consider Whether Cases Should be Related" *in California Alliance of Child and Family Services v. Allenby, et al.*, C 06-4095 MHP, an action involving not dissimilar allegations to those in this case, but involving foster care group home providers.  Both plaintiff and defendants in that action have opposed the administrative motion to relate on several bases, including the differing factual and legal issues of the two cases.

Not. of Mtn. & Mtn. to Dismiss; Supporting Memo.      California State Foster Parent Association, et al. v. Wagner
C 07-5086 JL

In sum, after *Gonzaga,* it matters not that plaintiffs -- even if they were foster parents, and not merely organizations that claim to represent aggrieved foster parents -- may fall within the "general zone of interest" Part IV-E is intended to protect. *Id.,* 536 U.S. at 283. As the Ninth Circuit pointed out in *Sanchez*, even being the intended beneficiary of a statute is not enough: "*Gonzaga* made it clear that simply being the intended beneficiary of a statute is not enough to demonstrate the intentional creation of an enforceable right." *Sanchez*, 416 F.3d at 1062. "After *Gonzaga*," the Ninth Circuit added, "there can be no doubt that, to satisfy the *Blessing* test, a plaintiff seeking redress under § 1983 must assert the violation of an individually enforceable *right* conferred specifically upon him, not merely a violation of federal law or the denial of a *benefit* or *interest*, no matter how unambiguously conferred." *Id.* (emphasis original). And where, as in the instant case, a plaintiff fails the first prong of the *Blessing* test, there is no need to consider the second and third prongs. *See id.*

That the Child Welfare Act may benefit plaintiffs directly or indirectly is insufficient; to be actionable under Section 1983, the provisions of those statutes must unambiguously create an enforceable right, which, for plaintiffs, they do not.

//
//

Not. of Mtn. & Mtn. to Dismiss; Supporting Memo.    California State Foster Parent Association, et al. v. Wagner
C 07-5086 JL

9

**CONCLUSION**

Plaintiffs' conclusory assertion that its members have been deprived of their federal rights, privileges, and immunities under color of state law in violation of 42 U.S.C. section 1983 does not withstand scrutiny. Accordingly, for the reasons stated above, defendants Wagner and Ault respectfully request that this Court dismiss plaintiffs' complaint pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure.

Dated: November 6, 2007

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

SUSAN M. CARSON
Supervising Deputy Attorney General


/s/ George Prince

GEORGE PRINCE
Deputy Attorney General

Attorneys for Defendants

40184436.wpd
SF2007402761