1   CHILDREN'S ADVOCACY INSTITUTE
    University of San Diego School of Law
2   Robert C. Fellmeth (CA SBN 49897)
    Edward Howard (CA SBN 151936)
3   Christina McClurg Riehl (CA SBN 216565)
    Elisa D'Angelo Weichel (CA SBN 149320)
4   5998 Alcala Park
    San Diego, CA  92110
5   Telephone: 619.260.4806
    Facsimile: 619.260.4753
6   cpil@sandiego.edu

7   MORRISON & FOERSTER LLP
    Kimberly N. Van Voorhis (CA SBN 197486)
8   Marc David Peters (CA SBN 211725)
    755 Page Mill Road
9   Palo Alto, California  94304-1018
    Telephone: 650.813.5600
10  Facsimile: 650.494.0792
    KVanVoorhis@mofo.com

11  MORRISON & FOERSTER LLP
    Steve Keane (CA SBN 247588)
12  12531 High Bluff Drive, Suite 100
    San Diego, California  92130-2040
13  Telephone: 858.720.5100
    Facsimile: 858.720.5125

14
    Attorneys for Plaintiffs
15
                        UNITED STATES DISTRICT COURT
16
                       NORTHERN DISTRICT OF CALIFORNIA
17
                          SAN FRANCISCO DIVISION
18

19  California State Foster Parent Association,        Case No.    C 07-5086 JL
20  California State Care Providers Association, and
    Legal Advocates for Permanent Parenting,
21
                   Plaintiffs,                         **FOSTER PARENTS'**
22                                                     **OPPOSITION TO DEFENDANTS'**
           v.                                          **MOTION TO DISMISS**
23
    JOHN A. WAGNER, Director of the California         Date:   December 19, 2007
24  Department of Social Services, in his official     Time:   9:30 a.m.
    capacity; MARY AULT, Deputy Director of the        Judge:  Hon. James Larson,
25  Children and Family Services Division of the               Courtroom F, 15th Floor
    California Department of Social Services, in her
26  official capacity,

27                 Defendants.

28

1

# TABLE OF CONTENTS

2

Page

3

I.     INTRODUCTION ................................................................................................. 1

4

II.    STATEMENT OF ISSUES TO BE DECIDED ................................................... 2

5

III.   STATEMENT OF RELEVANT FACTS ............................................................. 2

IV.    LEGAL STANDARD ........................................................................................... 4

6

V.     ARGUMENT ........................................................................................................ 4

7

      A.    The Court Has Already Denied The State's Motion In The *Alliance* Case ........... 5

8

      B.    The Child Welfare Act Creates A Federal Right Under Which The Foster
            Parents May Seek Section 1983 Redress ............................................................ 6

9

            1.    Congress Unambiguously Conferred A Right On Foster Parents To
                  Enforce Their Right To Adequate Foster Care Maintenance

10

                  Payments Under § 1983 ............................................................................ 7

11

                  a.    The Child Welfare Act Requires The State To Pay Specific
                        And Objective Monetary Payments To Foster Care

12

                        Providers ...................................................................................... 7

13

                  b.    Congress Did Not Provide Sufficient Alternative Means
                        Through Which Plaintiffs Can Enforce The State's
                        Compliance With The Child Welfare Act's Requirements ............ 9

14

            2.    The Rights Plaintiffs Seek To Enforce Under The Child Welfare

15

                  Act Are Not Vague Or Amorphous .......................................................... 11

16

            3.    The Statutory Language Plaintiffs Seek To Enforce Under the Child
                  Welfare Act Is Mandatory ....................................................................... 11

17

            4.    The State's Arguments Regarding Lack of Standing Are Just As
                  Ineffective In This Motion As They Were In The *Alliance* Motion ......... 12

18

      C.    The Plaintiffs Have Standing To Sue On Behalf Of Their Members ................... 13

19

VI.    CONCLUSION ..................................................................................................... 14

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

*31 Foster Children v. Bush,*
  329 F.3d 1255 (11th Cir. 2003) .................................................................................... 6

*ASW v. Oregon,*
  424 F.3d 970 (9th Cir. 2005) ............................................................................... 1, 6, 8, 9

*Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle,*
  829 F.2d 933 (9th Cir. 1987) ....................................................................................... 14

*Blessing v. Freestone,*
  520 U.S. 329 (1997) ..................................................................................... 1, 6, 7, 11, 14

*California Alliance of Child and Family Services v. Allenby,*
  459 F. Supp. 2d 919 (N.D. Cal. 2006) .................................................................. passim

*Carson P. ex rel Foreman v. Heineman,*
  240 F.R.D. 456 (D. Neb. 2006) ............................................................................ 9, 11, 13

*Gonzaga University v. Doe,*
  536 U.S. 273 (2002) ......................................................................................... 1, 6, 7, 8, 10

*Hunt v. Wash. State Apple Adver. Comm'n,*
  432 U.S. 333 (1977) ..................................................................................................... 13

*Kenny A. ex rel. Winn v. Perdue,*
  218 F.R.D. 277 (N.D. Ga. 2003) .......................................................................... passim

*Missouri Child Care Ass'n v. Martin,*
  241 F. Supp. 2d 1032 (W.D. Mo. 2003) ........................................................... 9, 10, 12

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC,*
  355 F. Supp. 2d 1061 (N.D. Cal. 2005) ........................................................................ 4

*Nguyen v. FundAmerica, Inc.,*
  1990 U.S. Dist. LEXIS 15031 (N.D. Cal. 1990) ........................................................... 5

*North Star Int'l v. Arizona Corp. Comm'n,*
  720 F.2d 578 (9th Cir. 1993) ........................................................................................ 4

*Price v. City of Stockton,*
  390 F.3d 1105 (9th Cir. 2004) ..................................................................................... 8

*Sanchez v. Johnson,*
  416 F.3d 1051 (9th Cir. 2005) .................................................................................... 13

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,*
  806 F.2d 1393 (9th Cir. 1986) ..................................................................................... 4

*Thompson v. Davis,*
  295 F.3d 890 (9th Cir. 2002) ....................................................................................... 4

*Warth v. Seldin*,
    422 U.S. 490 (1975) .......................................................................................... 13, 14

*Wilder v. Virginia Hosp. Ass'n*,
    496 U.S. 498 (1990) ................................................................................. 7, 10, 13

*Wright v. City of Roanoke Redev. & Housing Auth.*,
    479 U.S. 418 (1987) ................................................................................. 7, 10, 13

**STATUTES**

42 U.S.C. § 1396a(a)(30) ....................................................................................... 13

42 U.S.C. § 1983 ............................................................................................. passim

42 U.S.C. §§ 671(a)(12) ................................................................................ 6, 7, 12

42 U.S.C. §§ 671(a)-(b), 675(4) ..................................................................... 3, 11

42 U.S.C. §§ 672(a)(3) ...................................................................................... 9, 12

42 U.S.C. § 672(b) ................................................................................................ 8, 9

42 U.S.C. §675(4) ........................................................................................... passim

42 USCS §§ 670 et. seq. ....................................................................................... 11

42 U.S.C. § 1983 ..................................................................................................... 4

45 C.F.R. § 1355.20 ............................................................................................... 11

45 C.F.R. § 1356.21(a) (2002) ............................................................................... 7

42 U.S.C. § 2000d) ............................................................................................... 12

20 U.S.C. § 1681(a)), ........................................................................................... 12

42 U.S.C. §§ 670-679b .......................................................................................... 5

**MISCELLANEOUS**

Federal Rule of Civil Procedure 12(b)(6) ........................................................ 1, 4

1    **I.    INTRODUCTION**

2    The State of California must reimburse foster parents for certain enumerated costs

3    incurred when they raise foster children.  In exchange for receiving federal funding under the

4    Child Welfare Act, also known as Title IV-E of the Social Security Act, California promised to

5    reimburse foster parents for "the cost of (and the cost of providing) food, clothing, shelter, daily

6    supervision, school supplies, a child's personal incidentals, liability insurance with respect to a

7    child, and reasonable travel to the child's home for visitation." 42 U.S.C. §675(4)(A).  Foster

8    parents, who serve the public by volunteering[1] their time to care for some of the most vulnerable

9    members of our society, are the persons to whom reimbursement is owed.

10    Yet the State has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure

11    12(b)(6) arguing that three non-profit foster parent organizations do not have a right to seek to

12    enforce a federal statute that mandates reimbursements to foster parents.  This is not the first time

13    the State has attempted to block a suit of this kind.  In *California Alliance of Child and Family*

14    *Services v. Allenby,* 459 F. Supp. 2d 919 (N.D. Cal. 2006) ("*Alliance*"), a suit aimed at increasing

15    reimbursement rates for group homes taking care of foster children, the State filed this ***exact***

16    ***same*** motion.  The motion was denied once by Judge Patel, and it should be denied again.

17    Although the State elected not to call the *Alliance* case to the attention of this Court, the

18    motion to dismiss filed in this case is literally a carbon copy of the motion denied in the *Alliance*

19    case—only the names of the parties have been changed.  Indeed, the State's motion in *Alliance*

20    involved precisely the same issue raised here: namely, does the Child Welfare Act provide a right

21    of enforcement for foster care maintenance payments under the reasoning of *Blessing v.*

22    *Freestone*, 520 U.S. 329 (1997) as explained in *Gonzaga University v. Doe*, 536 U.S. 273 (2002)

23    and *ASW v. Oregon*, 424 F.3d 970 (9th Cir. 2005)?  This Court in *Alliance* resolved that question

24    in the ***affirmative***: "the court concludes that CWA confers an individual right on plaintiff's

25    members for enforcement of the foster care maintenance payments pursuant to section

26    675(4)(A)." *Alliance*, 459 F. Supp. 2d at 925.

27    ─────────────
[1] California foster parents are not paid for their time, effort, or labor.  No one profits from being a
28    foster parent.  Foster parents are only reimbursed for some of the cost of raising a foster child.

1    As a separate matter, the State's repetition of its *Alliance* arguments is also strong support

2    for relating the two cases.  The State's motion repeatedly refers to Title IV-E funding and the law

3    and rules pertaining thereto.  The Title IV-E funding is the core of the controversy in both this

4    action and the *Alliance* action, and the adjudication of the same legal issues that could have an

5    impact on the same pool of federal dollars should be before one tribunal, in the interest of judicial

6    economy and consistency.

7    **II.    STATEMENT OF ISSUES TO BE DECIDED**

8         1.   Whether there is a private right of action for violations of the Child Welfare Act under

9              42 U.S.C. § 1983.

10        2.   Whether Plaintiffs may seek section 1983 relief for violations of the Child Welfare

11             Act.

12   **III.   STATEMENT OF RELEVANT FACTS**

13        This case was filed by the California State Foster Parent Association ("CSFPA"), the

14   California State Care Providers Association ("CSCPA"), and Legal Advocates for Permanent

15   Parenting ("LAPP") (collectively "Plaintiffs" or "the Foster Parents") on behalf of licensed foster

16   parents who elect to care for abused and neglected children removed from the custody of their

17   parents by operation of state law.  Plaintiffs are seeking declaratory and injunctive relief that

18   would require the California Department of Social Services and its Division of Children and

19   Family Services (collectively "Defendants" or "the State") to comply with the Child Welfare

20   Act's mandated factors in setting rates for foster care maintenance payments.

21        Congress enacted the Child Welfare Act ("CWA") in 1980 to address the need for

22   providing an appropriate setting for children who are dependents or wards of the state: "foster

23   children."  Compl. ¶ 19.  The CWA establishes a cooperative federal-state program that assists

24   states in meeting the costs of providing foster care to foster children.  *Id.* ¶ 20.  Pursuant to this

25   cooperative program, the federal government and state and county governments share the cost of

26   providing funds for licensed third parties who care for these children (such as the foster parents

27   the Plaintiffs represent).  *Id.*  To become eligible for federal funding, the state must agree to

28   administer its foster care program pursuant to the CWA and provide foster care maintenance

1    payments to licensed foster parents such as those represented by the Plaintiffs. *Id.* ¶¶ 22-25; 42

2    U.S.C. §§ 671(a)-(b), 675(4). California has agreed to administer its foster care program pursuant

3    to the CWA, and the State has received federal funding intended to cover a portion of the foster

4    care maintenance payments. Compl. ¶ 29.

5         The State established payment levels for foster care providers, and payments are made

6    through the relevant county placement agency. *Id.* ¶ 30. The current monthly rates paid to foster

7    care families per child are $425 for children ages 0-4, $462 for children ages 5-8, $494 for

8    children ages 9-11, $546 for children ages 12-14, and $597 for children ages 15-20. *Id.* ¶ 32; Cal.

9    Wel. & Inst. Code § 11461.

10        Welfare and Institutions Code section 11461 requires that "[b]eginning with the 1991-92

11   fiscal year, the schedule of basic rates . . . shall be adjusted by the percentage changes in the

12   California Necessities Index . . . subject to the availability of funds." Between July 2001 and

13   2007, California did not adjust the schedule of basic rates, even though the California Necessities

14   Index (CNI) had increased by 24.9 percent in that time. Compl. ¶ 34. The Legislature passed a

15   five percent rate increase that is to take effect January 1, 2008, but that is too little to cover the

16   rising cost of living according to the CNI. *Id.* ¶¶ 32, 34. Thus, California has failed to cover the

17   rising cost of, and cost of providing, the foster child's food, clothing, shelter, daily supervision,

18   school supplies, incidentals, liability insurance with respect to the foster child, and reasonable

19   travel to the child's home for visitation as required by 42 U.S.C. § 675(4)(A). *Id.* ¶ 35.

20        On October 12, 2007, Plaintiffs filed an Administrative Motion to consider whether the

21   present case should be related to *California Alliance of Child and Family Services v. Allenby*,

22   Case No. C 06-4095 MHP, pending before Judge Patel. In the motion, Plaintiffs noted that the

23   present action and the *Alliance* action are related because (1) both cases assert claims against the

24   same defendants: the Director (or interim Director) of the California Department of Social

25   Services, in his official capacity, and the Deputy Director of the Children and Family Services

26   Division of the California Department of Social Services, in her official capacity; and (2) both

27   cases require determination of the same or substantially the same questions of fact and law.

28   Specifically, the actions both seek (i) a judicial declaration that the Defendants failure to provide

1   adequate foster care maintenance payments in compliance with the CWA deprives Plaintiffs of

2   their federal rights, privileges and immunities under color of state law in violation of 42 U.S.C. §

3   1983; (ii) injunctive relief requiring that Defendants be temporarily and permanently enjoined

4   from currently and continually using the Rate Classification Level system (*Alliance*) or basic

5   foster care rates (this action) to establish foster care maintenance payments; and (iii) permanent

6   injunctive relief requiring that Defendants prepare and implement a payment system that

7   complies with the CWA.

8   **IV.    LEGAL STANDARD**

9         A complaint should not be dismissed under Federal Rule of Civil Procedure 12(b)(6)

10  "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim

11  that would entitle the plaintiff to relief." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

12  In reviewing a motion to dismiss, "a court must assume all factual allegations to be true and

13  construe them in the light most favorable to the nonmoving party." *NGV Gaming, Ltd. v.*

14  *Upstream Point Molate*, *LLC*, 355 F. Supp. 2d 1061, 1063 (N.D. Cal. 2005) (citing *North Star*

15  *Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1993)).  In the rare event that a

16  complaint is dismissed, "leave to amend should be granted unless the court determines that the

17  allegation of other facts consistent with the challenged pleading could not possibly cure the

18  deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.

19  1986) (citation omitted).  For the reasons set forth below, the Foster Parents' complaint meets the

20  12(b)(6) requirements.

21  **V.    ARGUMENT**

22        The State does not challenge the allegation that its foster care maintenance payments are

23  inadequate under the federal statute (nor could it).  The State's ***only*** ground for its motion to

24  dismiss is a challenge to whether the Plaintiffs "have a private right of action under 42 U.S.C.

25  § 1983 to enforce the provisions of the Child Welfare Act cited in this case (Title IV-E of the

26  Social Security Act, 42 U.S.C. §§ 670-679b)."  Defendants' Motion to Dismiss filed on Nov. 6,

27  2007 (Docket no. 7) at 2 (hereinafter "Mot.").  But this question has already been decided:  the

28  intended beneficiaries of foster care maintenance payments—foster children and foster care

providers alike—*do* have a private right of action to enforce their entitlement to those payments. *Alliance*, 459 F. Supp. 2d at 925; *Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277, 303-04 (N.D. Ga. 2003). Accordingly, the State's motion should be denied.

### A.    The Court Has Already Denied The State's Motion In The *Alliance* Case.

It is unfortunate that the State has not called the Court's attention to the fact that a near-verbatim copy of the present motion was already recently denied in the *Alliance* case. A copy of the State's motion in the *Alliance* case is attached hereto as Exhibit A. Indeed, the only noteworthy difference between the State's motion to dismiss in *Alliance* and the present motion is the substitution of plaintiffs. Whatever the State's reason for re-filing the same motion in this case, it should have mentioned that Judge Patel, in denying the earlier version of the State's motion, has already held that the CWA confers an individual right to enforce the payment of foster care maintenance payments pursuant to 42 U.S.C. § 675(4)(A)—the very same right that Plaintiffs seek to enforce here. *Alliance,* 459 F. Supp. 2d at 925.

It is also curious that the State opposed the Foster Parents' motion to consider whether this case should be related to the *Alliance* case given that it has moved to dismiss on *identical* issues of law in the two cases. Mot. at 8 n.10. There are overlapping issues of fact, as well. The same CWA funding stream that the State discusses on pages 7-8 of its motion are at the core of the controversy in both this action and in the *Alliance* action, with the same basic standards applying and an identical legal theory of non-liability on the part of the State. In the interest of judicial economy and consistency, the adjudication of the sufficiency and management of the same funds should be before one tribunal for resolution. *See Nguyen v. FundAmerica, Inc*., 1990 U.S. Dist. LEXIS 15031, at *4 (N.D. Cal. 1990) (requiring a single adjudication of the distribution of contested investment funds in the name of "judicial economy and equity").

### B.    The Child Welfare Act Creates A Federal Right Under Which The Foster Parents May Seek Section 1983 Redress.

Notwithstanding the fate of the State's motion to dismiss in the *Alliance* case, which alone supports denial of the same motion in this case, the Foster Parents have a right under the CWA to seek section 1983 redress.

1    It is settled that private relief is available under 42 U.S.C. § 1983 for violations of the

2  CWA in the Ninth Circuit.[2]  *ASW*, 424 F.3d at 978 (holding that 42 U.S.C. §§ 671(a)(12) and

3  673(a)(3) of the CWA create federal rights enforceable through a section 1983 action); *see also*

4  *Blessing,* 520 U.S. at 345-46 (explaining that if plaintiff had alleged that the State failed to give

5  her money to which she was entitled under Title IV-D, the statute could give her a federal right to

6  receive it).  District courts agree.  In *Alliance*, this Court held that the CWA confers an individual

7  right to enforce the foster care maintenance payments pursuant to 42 U.S.C. § 675(4)(A).

8  *Alliance*, 459 F. Supp. 2d at 925.  In 2003, the Northern District of Georgia held that the

9  Adoption Act created privately enforceable rights to foster care maintenance payments under the

10  CWA.  *Kenny A.*, 218 F.R.D. at 302-03.

11    To establish that the Foster Parents have a section 1983 right to force the State to comply

12  with the CWA's requirements for setting foster care maintenance payments rates, the three-part

13  test set out in *Blessing*, as refined in *Gonzaga*, must be satisfied.  The *Blessing* test requires a

14  showing that: (1) "Congress unambiguously conferred [a] right to support a cause of action

15  brought under § 1983," (2) "the right is not so vague and amorphous that its enforcement would

16  strain judicial competence," and (3) "the asserted right [is] framed in mandatory rather than

17  precatory terms."  *Alliance*, 459 F. Supp. 2d at 922 (internal citations and quotation marks

18  omitted); *see also Gonzaga,* 536 U.S. at 282; *Blessing,* 520 U.S. at 338.  All three elements are

19  satisfied here, just as they were in *Alliance* and *Kenny A*.  Accordingly, the State's motion should

20  be denied.

21

22

23

24  ───────────────

25  [2] In *ASW*, the Ninth Circuit explained that when determining whether a statute confers an individual right of enforcement, a court should "review only the particular statutory provision at issue."  *ASW,* 424 F.3d at 976-977 (9th Cir. 2005) (finding that the Eleventh Circuit's conclusion

26  that a *different* provision of the CWA did not create an individual right of enforcement in *31 Foster Children v. Bush,* 329 F.3d 1255 (11th Cir. 2003) was neither determinative nor

27  persuasive).  For this reason, the State's reliance on *31 Foster Children* for the proposition that the CWA does not create an individually enforceable right is misplaced.  Mot. at 5.

28

1

2

> *1.*     ***Congress Unambiguously Conferred A Right On Foster Parents To Enforce Their Right To Adequate Foster Care Maintenance Payments Under § 1983.***

3

4

5

6

7

8

9

The first element of the *Blessing* test is satisfied:  Congress conferred a right of enforcement for foster care maintenance payments under the CWA.  Courts find Congressional intent to confer a right of enforcement for guaranteed entitlements when Congress requires the disbursement of "specific" and "objective" monetary payments but did not establish a "sufficient administrative means of enforcing" states' compliance.  *Gonzaga,* 536 U.S. at 280-81 (discussing *Wright v. Roanoke Redev. & Housing Auth.,* 479 U.S. 418 (1987), and *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498 (1990)).[3]  That is exactly the case here.

10

> a.     The Child Welfare Act Requires The State To Pay Specific And Objective Monetary Payments To Foster Care Providers.

11

12

13

14

15

16

17

The Child Welfare Act requires that states provide "foster care maintenance payments" on behalf of eligible children to individuals who care for the children—namely foster parents.  42 U.S.C. §§ 671(a)(2), 672(a)(3), 672(b)(1), 675(4); 45 C.F.R. § 1356.21(a) (2002).  The term "foster care maintenance payments" is defined as payments that "cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to a child's home for visitation."  42 U.S.C. § 675(4)(A).

18

19

20

21

22

23

24

25

There can be no question that these are specific and objective monetary payments.  The *Alliance* court held that the CWA "provides objective criteria for foster care maintenance payments. Section 675(4)(A) enumerates the costs to be included in the foster care maintenance payments." *Alliance,* 459 F. Supp. 2d at 923.  Section 675(4)(A) provides "specific costs to be reimbursed," and is "a far cry from language, such as that requiring 'substantial compliance,' that would suggest that Congress intended only to provide a 'yardstick' for measuring systemwide performance." *Id.* at 923 (distinguishing *Blessing*).  The Ninth Circuit has held that an analogous

26

27

28

---

[3] In *Gonzaga*, the Court relied on *Wright* and *Wilder* to distinguish cases which satisfy the *Blessing* factors from those which do not.  *Gonzaga*, 536 U.S. at 280-81.  These two cases, where the Court found an individual right to enforce entitlement to monetary payments, remain controlling law.  *Alliance*, 459 F. Supp. 2d at 923 n.2.

1  provision of the Housing and Community Development Act enumerating the monetary benefits to

2  which persons were entitled under the Act showed a clear Congressional intent to confer

3  individual rights. *Price v. City of Stockton,* 390 F.3d 1105, 1112-1114 (9th Cir. 2004)

4  (concluding that section 104(k) "unambiguously establishes an individual right" to the "precisely"

5  enumerated monetary benefits stated in sections 104(d)(2)(A)(iii) and (iv) which included

6  "reimbursement for actual and reasonable moving expenses, security deposits, credit checks, and

7  other moving-related expenses, including any interim living costs" and "comparable replacement

8  housing"). The *Alliance* Court observed that "[t]he list of costs presented in section 675(4)(A) is

9  of the same type of specific, objective monetary entitlement as that in *Price*." *Alliance,* 459 F.

10  Supp. 2d at 923.

11       Like the sections of the statute at issue in *Price,* sections 672(a)(3) and 672(b)(1) of the

12  CWA are "phrased with an unmistakable focus on the benefited class." *Gonzaga,* 536 U.S. at 284

13  (quoting *Cannon v. Univ. of Chicago,* 441 U.S. 677, 691 (1979)). These sections do not speak

14  solely "in terms of institutional policy and practice," *Price,* 390 F.3d at 1111, but rather require

15  states to make ***specified*** foster care maintenance payments to ***specified*** people on behalf of each

16  foster child. This is further evidence of a Congressional intent to create an individual right, under

17  section 1983, to enforce the foster care maintenance payment provisions of the CWA.

18       Moreover, foster parents—such as those represented by Plaintiffs—are intended

19  beneficiaries of the CWA, as are foster children. Congress specified that foster parents are to

20  receive the maintenance payments: "Foster care maintenance payments may be made under this

21  part only on behalf of a child . . . who is—(1) in the foster family home of an individual, whether

22  the payments therefor are made ***to such individual*** or to a public or private child-placement or

23  child-care agency . . . ." 42 U.S.C. § 672(b) (emphasis added). The Ninth Circuit recognizes that

24  children are ***not*** the only intended beneficiaries of the CWA. *See ASW,* 424 F.3d at 976 (holding

25  that the CWA conferred individual rights upon adoptive parents to enforce adoption assistance

26  payments required under the Act, even though the stated Congressional purpose of the Act was to

27  benefit children). District courts agree.

28

1    For example, in *Alliance,* the Court found that the right to payments under the CWA

2    belongs to foster care providers, not just foster children. *Alliance,* 459 F. Supp. 2d at 924. While

3    children are certainly beneficiaries of the CWA, the CWA also entitles foster care providers to

4    foster care maintenance payments. 42 U.S.C. § 672(b). As the *Alliance* Court explained: "The

5    foster care payments required by section 672(a) serve a similar function to the adoption assistance

6    payments mandated by CWA section 671 in dispute in *ASW*: they provide for reimbursement of

7    the costs incurred in providing foster care and adoption services to children." *Alliance,* 459 F.

8    Supp. 2d at 924. Likewise, the Western District of Missouri held that the right of enforcement to

9    CWA foster care maintenance payments was not limited to foster children: "[W]hile the ultimate

10   beneficiaries of the CWA are the foster children, Congress mandated that foster care providers

11   should recover their costs, thereby [grant]ing a . . . right of enforcement . . . . [In the CWA], the

12   reference to costs focuses on the institutions and not the children." *Missouri Child Care Ass'n v.*

13   *Martin*, 241 F. Supp. 2d 1032, 1041 (W.D. Mo. 2003); *see also Carson P. ex rel. Foreman v.*

14   *Heineman*, 240 F.R.D. 456, 540 (D. Neb. 2006) (holding that foster care providers, and not foster

15   children, were the intended beneficiaries of foster care maintenance payments). This observation

16   applies with equal force to foster parents, because the same sections of the CWA establish the

17   monetary entitlement of both foster care institutions and individuals who provide foster homes.

18   *See* 42 U.S.C. §§ 672(a)(3), 672(b). Accordingly, Plaintiffs have a section 1983 right to enforce

19   the foster care maintenance provisions of the CWA.

20           b.      Congress Did Not Provide Sufficient Alternative Means Through
                     Which Plaintiffs Can Enforce The State's Compliance With The
21                   Child Welfare Act's Requirements.

22   Foster parents must have standing under Section 1983 to enforce their right to foster care

23   maintenance payments, because there is no other way for them to challenge the State's failure to

24   meet its obligations to them. *Missouri Child Care*, 241 F. Supp. 2d at 1042 (holding that

25   "Congress intended there to be a private right of action under §§ 672 and 675 of the CWA"

26   because "there is not a process under the CWA where an aggrieved individual has access to any

27   federal review mechanism."). Where a statute fails to create a "sufficiently comprehensive"

28   remedial scheme establishing a process that allows individualized review of complaints alleging a

1   deprivation of a statutory right, courts find that Congress intended to allow a private remedy

2   under section 1983. *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 520-21 (1990) ("We do not

3   lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for the

4   deprivation of a federally secured right."). Federal authority to audit and cut off federal funds for

5   noncompliance "are insufficient to indicate a congressional intention to foreclose § 1983

6   remedies." *Wright v. City of Roanoke Redev. & Housing Auth.,* 479 U.S. 418, 428 (1987).

7       The Northern District of Georgia held that the CWA does not have a "comprehensive

8   enforcement scheme" with respect to foster care maintenance payments in an analogous analysis

9   of children's rights under the Adoption Act to foster care maintenance payments under the CWA.

10  *Kenny A.*, 218 F.R.D. at 303 ("The Adoption Act merely sets forth an administrative scheme for

11  providing federal funds to child welfare programs, for overseeing these programs, and for

12  withholding funding for noncompliance with federal mandates. There is no mechanism for foster

13  children to seek redress for violations of their rights under the statute. Therefore, the remedies

14  available under the Adoption Act do not preclude a private enforcement action under 42 U.S.C.

15  § 1983.").

16      The lack of a "sufficiently comprehensive" remedial scheme in the CWA enabling an

17  aggrieved individual to have his complaint about noncompliance with the funding provisions of

18  Title IV-E evidences Congress' intent to confer an individual right to enforcement upon foster

19  care providers. *Missouri Child Care*, 241 F. Supp. 2d at 1042. That there is a specific

20  enforcement provision in the Act for the Act's anti-discrimination provision, sections 674(d) and

21  671(a)(18), respectively, "does not exclude evaluating other statutory provisions" to determine

22  whether they establish individual section 1983 rights. *Alliance,* 459 F. Supp. 2d at 924. So long

23  as an individual possesses a federal right, she can enforce that right pursuant to section 1983.

24  *Gonzaga,* 536 U.S. at 283. Because "Congress unambiguously conferred a right to

25  reimbursement of the specific costs outlined in section 675(4)(A)," but did not provide another

26  remedial mechanism for individual review of a claim that such right has been deprived, a foster

27  parent has the individual ability to enforce that right through section 1983. *See Alliance,* 459 F.

28  Supp. 2d at 924.

1     The right to specific monetary payments conferred by the CWA, coupled with a lack of

2  administrative enforcement mechanism, establishes that Congress unambiguously intended to

3  confer upon foster parents a private right of action for violations of the CWA.

4           2.      **The Rights Plaintiffs Seek To Enforce Under The Child Welfare Act Are
                   Not Vague Or Amorphous.**

5     The second element of the *Blessing* test is also satisfied:  the right to foster care

6  maintenance payments is "not so vague and amorphous that its enforcement would strain judicial

7  competence." *Blessing,* 520 U.S. at 341 (quotation marks omitted).  Section 675(4)(A) of the

8  Child Welfare Act identifies the specific costs that the State must reimburse.  The *Alliance* Court

9  held that this section was an "explicit and detailed provision for determining payments to foster

10 care providers." *Alliance,* 459 F. Supp. 2d at 925.  The Court also recognized that issues such as

11 payments based on itemized costs like the ones in the CWA are "routinely entrusted to the

12 judiciary." *Id.* (quoting *Missouri Child Care*, 241 F. Supp. 2d at 1041); *but see Carson P.*, 240

13 F.R.D. at 541 (disagreeing with *Missouri Child Care* and holding that right to foster care

14 maintenance payments is too "vague and amorphous").  The Northern District of Georgia

15 likewise held that the CWA meets the second *Blessing* factor:

16
17         The categories of costs to be covered by the payments are defined with sufficient
           particularity to enable a court to assess the sufficiency of the rates paid by the
18         state. *See* 42 U.S.C. § 675(4)(A) and 45 C.F.R. § 1355.20. Although the actual
           costs of certain basic child care necessities such as food, clothing, and shelter may
19         vary, the Court is equipped to determine whether the current foster care
           maintenance rates fall outside the range of reasonable payments necessary to
20         provide adequate care for children in Fulton and DeKalb Counties.

21 *Kenny A.*, 218 F.R.D. at 303.  Enforcing the clear and detailed provisions of the CWA would not

22 "strain judicial competence." *Blessing*, 520 U.S. at 341; *Alliance,* 459 F. Supp. 2d at 922.

23           3.      **The Statutory Language Plaintiffs Seek To Enforce Under the Child
                   Welfare Act Is Mandatory.**

24     The third *Blessing* element is also satisfied:  foster parents' right to foster care

25 maintenance payments is stated in mandatory terms.  Section 671(a)(1) plainly states that "[i]n

26 order for a State to be eligible for payments under this part [42 USCS §§ 670 et. seq.], it ***shall***

27 have a plan approved by the Secretary which—(1) ***provides*** for foster care maintenance

28 payments." 42 U.S.C. § 671(a)(1) (emphasis added).  Section 672(a)(3) requires that "[e]ach

1    State with a plan approved under this part *shall* make foster care maintenance payments on behalf

2    of each child…if…(II) [such child] had been living in the home." 42 U.S.C. § 672(a)(3)

3    (emphasis added). The mandatory language of these provisions is similar to the unequivocal

4    language of Title IV of the Civil Rights Act of 1964 (42 U.S.C. § 2000d) and Title IX of the

5    Educations Amendments of 1972 (20 U.S.C. § 1681(a)), both of which mandate that "[n]o person

6    [in the United States] shall…be subjected to discrimination." *See Alliance,* 459 F. Supp. 2d at

7    925.

8         District courts have recognized the mandatory language of the statute as well. The

9    *Alliance* Court held: "In clear language, the CWA requires states make foster care maintenance

10   payments." *Id.* (holding that the third *Blessing* factor is satisfied). The Northern District of

11   Georgia held that "the statutory provisions indisputably 'impose a binding obligation' on the State

12   to provide sufficient foster care maintenance payments for each plaintiff foster child." *Kenny A.*,

13   218 F.R.D. at 303 (quoting *Blessing*, 520 U.S. at 341).

14               4.    ***The State's Arguments Regarding Lack of Standing Are Just As***
15                     ***Ineffective In This Motion As They Were In The* Alliance *Motion.***

16        The State offers the same arguments regarding lack of standing that it did in its motion to

     dismiss in the *Alliance* case. The arguments fare no better in this case and are, if anything,
17
     weaker when applied to foster parents. For example, the State's position that only foster children
18
     could have standing is without merit. Mot. at 7. Plaintiffs not only have standing to bring the
19
     current suit on behalf of its foster parent members, but also are in a better position than the foster
20
     children to do so. *See Missouri Child Care*, 241 F. Supp. 2d at 1041 ("Congress must have
21
     recognized that if costs were not covered, reputable foster care service would eventually not be
22
     available. Congress would also have been aware that as a general proposition foster care
23
     institutions, not foster children, would be in a better position to enforce those rights, thereby
24
     ensuring the continued implementation of congressional intent.").
25
          The State's proposed analogy to *Sanchez v. Johnson,* 416 F.3d 1051 (9th Cir. 2005) is
26
     similarly without merit. Mot. at 7. The section of the Medicaid Act at issue in *Sanchez* requires
27
     states to provide "methods and procedures relating to the utilization of, and the payment for, care
28

1    and services available under the plan." 42 U.S.C. § 1396a(a)(30)(A); *Sanchez*, 416 F.3d at 1059.

2    This provision is "of a strikingly different level of generality" from section 675(4)(A) of the

3    CWA, which requires states to reimburse foster care providers for "specific, enumerated costs."

4    *Alliance*, 459 F. Supp. 2d at 923-24. As the *Alliance* Court noted, section 675(4)(A) is more

5    analogous to the spending provisions analyzed in *Wright* and *Wilder*, which were held to confer

6    individual section 1983 enforcement rights. *Id.* at 924.

7    **C.    The Plaintiffs Have Standing To Sue On Behalf Of Their Members.**

8    It does not appear that the State is challenging the right of the Plaintiffs to sue on behalf of

9    their members, but instead argues that only foster children, not foster parents, could have the right

10   to sue.[4] Mot. at 7-8. But if the State were challenging organizational standing, it would fail.

11   That Plaintiffs are organizations representing the interests of foster parents does not affect

12   their standing to bring the claims in the Complaint. *Warth v. Seldin*, 422 U.S. 490, 511 (1975).

13   An organization has standing to sue for its members if it can meet the three-prong test set forth in

14   *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977), which requires that "(a) its

15   members would otherwise have standing to sue in their own right; (b) the interests it seeks to

16   protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief

17   requested requires the participation of individual members in the lawsuit."

18   Plaintiffs meet all three prongs of this test. First, CSFPA, LAPP and CSPCA each have

19   members who are foster parents. Compl. ¶¶ 2, 6, 8. As a result of the State's illegal actions,

20   Plaintiffs' members have suffered actual harm, including deprivation of their federal right to

21   foster care maintenance payments compliant with section 675(4)(A) of the CWA. *Id.* ¶¶ 55, 58.

22   Thus, the Plaintiffs' members have standing in their own right. Second, the mission of all three

23   Plaintiff organizations is to represent the interests of foster parents in order to ensure positive

24   outcomes for the children in their care. *Id.* ¶¶ 1, 3, 5-8, 10. The claims raised in the Complaint

25   are germane to the organizations' purposes. *Id.* ¶¶ 4, 6, 9. Third, individual participation is not

26   required in order to obtain the requested relief. Where a complaint raises systemic legal

27

28   [4] Interestingly, the *Foreman* court reached the exact opposite result. *Foreman*, 240 F.R.D. at 540.

1  violations rather than individual grievances, and seeks declaratory and injunctive relief rather than

2  damages, as it does here, the individual participation of each injured party is not required. *See*

3  *Warth*, 422 U.S. at 515; *see also Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v.*

4  *Dunkle*, 829 F.2d 933, 938 (9th Cir. 1987) ("[B]ecause the Fund seeks declaratory and

5  prospective relief rather than money damages, its members need not participate directly in the

6  litigation.") (citation omitted).

7  **VI.     CONCLUSION**

8          There is no question but that foster parents have a private right of action to sue for

9  inadequate foster care maintenance payments.  All three *Blessing* tests are satisfied.  This Court

10 and others have decided the issue already.  The Foster Parents respectfully request that the Court

11 deny the State's motion to dismiss.  If for any reason the Court does not, the Foster Parents

12 request that the Court grant them leave to amend their Complaint.

13

14 Dated: November 28, 2007                   /s/ Marc David Peters

15                                            Kimberly N. Van Voorhis
                                              Marc David Peters, Ph.D.
16                                            Steve Keane
                                              MORRISON & FOERSTER LLP
17
                                              Robert C. Fellmeth
18                                            Edward Howard
                                              Christina McClurg Riehl
19                                            Elisa D'Angelo Weichel
                                              CHILDREN'S ADVOCACY INSTITUTE
20                                            UNIVERSITY OF SAN DIEGO SCHOOL OF
                                              LAW
21
                                              ATTORNEYS FOR PLAINTIFFS
22                                            California State Foster Parent Association,
                                              California State Care Providers Association, and
23                                            Legal Advocates for Permanent Parenting

24

25

26

27

28