# Exhibit A

BILL LOCKYER
Attorney General of the State of California
DOUGLAS M. PRESS
Supervising Deputy Attorney General
GEORGE PRINCE, State Bar No. 133877
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5749
 Fax:  (415) 703-5480

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **CALIFORNIA ALLIANCE OF CHILD AND FAMILY SERVICES,**<br><br>Plaintiff,<br><br>v.<br><br>**CLIFF ALLENBY, Interim Director of the California Department of Social Services, in his official capacity; MARY AULT, Deputy Director of the Children and Family Services Division of the California Department of Social Services, in her official capacity,**<br><br>Defendants. | C 06-4095 MHP<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing:    October 2, 2006<br>Time:    2:00 p.m.<br>Courtroom: 15, 18th floor<br>Judge:    The Honorable<br>    Marilyn H. Patel |

TO PLAINTIFF CALIFORNIA ALLIANCE OF CHILD AND FAMILY SERVICES

AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT defendants Cliff Allenby and Mary Ault will move

this Court, on October 2, 2006, at 2:00 p.m., or as soon thereafter as the matter may be heard, in

Courtroom 15, the Honorable Marilyn Hall Patel,[1/] presiding, in the United States District

---

1.  Defendants are filing concurrently with this Notice of Motion and Motion a request for leave of the court to file this motion to dismiss in advance of the initial case management conference, as required by Judge Patel's Standing Order number 4.

1    Courthouse at 450 Golden Gate Avenue, San Francisco, California, for an order dismissing this

2    action for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of

3    the Federal Rules of Civil Procedure.

4        Defendants' motion to dismiss is made on the ground that plaintiff's complaint cannot

5    be sustained against defendants because plaintiff does not have a private right of action under 42

6    U.S.C. section 1983 to enforce the provisions of the Child Welfare Act cited in this case (Title

7    IV-E of the Social Security Act, 42 U.S.C. §§ 670-679b).

8        This motion is based on this notice of motion and motion, the supporting memorandum

9    of points and authorities in support thereof, the request for leave to file the motion to dismiss,

10   and on the pleadings and records on file with the Court in this matter.

11                    **MEMORANDUM OF POINTS AND AUTHORITIES**

12                            **STATEMENT OF THE CASE**

13       This is a civil-rights lawsuit filed June 30, 2006, purportedly on the basis of 42 U.S.C.

14   § 1983, by plaintiff California Alliance of Child and Family Services.[2]  Plaintiff states that it

15   brings this action "on behalf of non-profit charitable organizations that care for children who

16   have been removed from their homes and for whom the State of California has failed to provide

17   adequate funding required by the federal Child Welfare Act." (Complaint for Declaratory and

18   Injunctive Relief (Complaint), p. 1:25-27.)

19       Plaintiff  summarily describes itself as a California non-profit corporation "that, among

20   other pursuits, represents the interests of group homes that provide care and supervision for

21   foster children[.]" (Complaint, p. 2:9-11.)    In paragraphs subsequent to that summary

22   description, plaintiff provides additional, but general, descriptions of its constituent non-profit

23   agencies and the services they perform.   (*Id.*, lines 12-28.)  Although plaintiff avers that each of

24   its group-home members has independent standing to bring an action against defendants,

25   plaintiff asserts its claims "without the participation of an individual member of the Alliance."

26   (*Id.*, p. 3:4-7.)

27   _____

28       2. By stipulation of the parties, and as subsequently ordered by this Court, defendants have
     been granted an extension of time through August 25, 2006, to respond to the complaint.

Not. of Mtn. and Mtn. to Dismiss; Supporting Memo of Ps & As       California Alliance of Child, etc. v. Allenby, et al.
                                                                    C 06-4095 MHP

1

**ARGUMENT**

2

**THIS ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A
CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE THERE IS
NO PRIVATE RIGHT OF ACTION UNDER SECTION 1983 AVAILABLE TO
THIS PLAINTIFF TO ENFORCE THOSE PORTIONS OF THE CHILD
WELFARE ACT AT ISSUE HERE.**

3

4

5

  The gravamen of plaintiff's case is that defendants' alleged "failure ... to comply with

6

the Child Welfare Act's mandated factors in setting rates for foster care maintenance payments

7

deprives the Alliance's member group homes of their federal rights, privileges and immunities

8

under color of state law in violation of 42 U.S.C. § 1983." (Complaint, p. 7:14-17.)  This

9

conclusory contention fails to state a claim upon which relief can be granted because there is no

10

private right of action available to this plaintiff under 42 U.S.C. section 1983 (Section 1983) to

11

enforce those provisions of the Child Welfare Act at issue here.

12

  A.  Plaintiff's Burden Under the Applicable Legal Standards.

13

  To sustain its claims for relief here, plaintiff must demonstrate that it seeks redress for

14

violation of a federal *right*, not just a federal *law*.  *Gonzaga University v. Doe*, 536 U.S. 273, 283

15

(2002).  Specifically, plaintiff must thus show that it has a right to the establishment of rates of

16

payment under Title IV-E of the Social Security Act, 42 U.S.C. sections 670-679(b).  Plaintiff's

17

blithe claim that defendants' alleged failure to comply with Title IV-E's rate factors "deprives

18

the Alliance's member group homes of their federal rights, privileges and immunities under

19

color of state law in violation of 42 U.S.C. § 1983" (Complaint, p. 7:15-17) lacks merit.

20

  In *Gonzaga,* the Supreme Court clarified the principles to be applied in determining

21

whether a federal statute enacted pursuant to Congress's spending power confers individual

22

rights enforceable under 42 U.S.C. § 1983.  The Court began by confirming that private

23

enforcement of Spending Clause statutes is the rare exception.  "'In legislation enacted pursuant

24

to the spending power, the typical remedy for state noncompliance with federally imposed

25

conditions is not a private cause of action for noncompliance but rather action by the Federal

26

Government to terminate funds to the State.'"  *Gonzaga*, 536 U.S. at 280, quoting *Pennhurst*

27

*State School and Hospital v. Halderman*, 451 U.S. 1, 28 (1981).  Therefore, "unless Congress

28

'speaks with a clear voice' and manifests an 'unambiguous' intent to confer individual rights,

Not. of Mtn. and Mtn. to Dismiss; Supporting Memo of Ps & As  California Alliance of Child, etc. v. Allenby, et al.
C 06-4095 MHP

1    federal funding provisions provide no basis for private enforcement by § 1983.  (Citation

2    omitted.)."  *Id.*

3        B. Clarification of the *Blessing v. Freestone* Factors: Creation of an Unambiguous Right.

4        The Court in *Gonzaga* also addressed the "confusion" that had led some courts to

5    misinterpret its prior decisions, including *Blessing v. Freestone*, 520 U.S. 329 (1997), as

6    endorsing a less stringent standard.  In *Blessing*, the Court had formulated a three-factor test to

7    evaluate whether Congress had conferred an enforceable right: (1) Congress must have intended

8    that the statutory provision in question to benefit the plaintiff; (2) the right must not be so "vague

9    and amorphous" as to be "beyond the competence of the judiciary to enforce;" and (3) the statute

10   "must be couched in mandatory, rather than precatory, terms."  520 U.S. at 340-41.[3/]  While not

11   abandoning the test, the *Gonzaga* Court dispelled any suggestion that the first *Blessing* factor

12   stood for the proposition that Congressional intent to permit enforcement under § 1983 will be

13   found "so long as the plaintiff falls within the general zone of interest that the statute is intended

14   to protect."[4/]  *Id.* at 283.  That the statute "benefits" the plaintiff is insufficient  the provision

15   must unambiguously create a right:

> We now reject the notion that our cases permit anything short of an
> unambiguously conferred right to support a cause of action brought under § 1983.
> Section 1983 provides a remedy only for the deprivation of "rights, privileges, or
> immunities secured by the Constitution and laws" of the United States.
> Accordingly, it is *rights*, not the broader or vaguer "benefits" or "interests" that
> may be enforced under the authority of that section.  (Emphasis original.)

20   *Id.*  And, because only *rights* may be enforced, the Court's implied right of action cases "should

21   guide the determination of whether a statute confers rights enforceable under § 1983."  *Id.*

---

24      3.   The Supreme Court granted certiorari in *Blessing* to resolve disagreement among the
Courts of Appeals as to whether individuals could sue state officials under Section 1983 for
25   violations of Title IV-D of the Social Security Act.  520 U.S. at 339-340.  Justice O'Connor's
opinion, for a unanimous court, held that Title IV-D did *not* give individuals a federal right to force
26   a state agency to substantially comply with Title IV-D.  *Id.* at 333.  Part D of Title IV immediately
precedes Part E, at issue here, in the Social Security Act.

27      4.   See *31 Foster Children v. Bush*, 329 F. 3d 1255, 1269-1270 (11th Cir. 2003) ("The
28   Supreme Court in *Gonzaga* clarified the first of the *Blessing* requirements.").

Not. of Mtn. and Mtn. to Dismiss; Supporting Memo of Ps & As     California Alliance of Child, etc. v. Allenby, et al.
C 06-4095 MHP

4

1       C.  Statutory Analysis Under *Gonzaga.*

2              As *Gonzaga* explains, under the private right of action cases, the "text and structure"

3   of the statute must demonstrate that Congress unambiguously intended to grant individual rights.

4   536 U.S. at 286.  Critical to this inquiry is whether the statutory provision uses "rights-creating"

5   language.  536 U.S. at 287; *Alexander v. Sandoval*, 532 U.S. 275, 288-289 (2001).  Such

6   language must clearly impart an "individual entitlement," and have an "unmistakable focus on

7   the benefitted class."  *Id.*; *Cannon v. University of Chicago*, 441 U.S. 677, 692, n. 13 (1979) (text

8   of statute must be "phrased in terms of the person benefitted.")  "Statutes that focus on the

9   person regulated rather than the individuals protected create no implication of an intent to confer

10  rights on a particular class of person."  (Internal quotes and citation omitted).  *Gonzaga*, 536

11  U.S. at 287, quoting *Alexander*, 532 U.S. at 289.  "If [the statute] provide[s] some indication that

12  Congress may have intended to create individual rights, and some indication it may not have,

13  that means Congress has not spoken with the requisite 'clear voice.'  Ambiguity precludes

14  enforceable rights."  *31 Foster Children*, 329 F. 3d at 1270.  The *Gonzaga* Court invoked as

15  exemplars of "rights-creating" language Title VI of the Civil Rights Act of 1964 (42 U.S.C. §

16  2000d) and Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681(a).  Each of those

17  statutes provides: "No person in the United States shall . . . be subject to discrimination."

18  According to *Gonzaga*, this language creates individual rights because it is phrased "with an

19  *unmistakable focus* on the benefitted class."  536 U.S. at 284 (quoting *Cannon*, 441 U.S. at 691)

20  (emphasis original).

21             Additional closely related principles relevant to determining whether the text and

22  structure of a statutory provision manifest a congressional intent to confer an enforceable right

23  include: (1) statutes that have an "aggregate" focus rather than a focus upon whether the needs of

24  any particular person has been satisfied do not give rise to individual rights; (2) statutes that

25  speak only in terms of institutional policy and practice do not evince an intent to create private

26  rights of enforcement; (3) a statutory provision that references the individual only in the context

27  of describing the type of policy or practice that will trigger a funding prohibition, does not reflect

28  a congressional intent to create a private right of action; and (4) a provision that allows a state

Not. of Mtn. and Mtn. to Dismiss; Supporting Memo of Ps & As          California Alliance of Child, etc. v. Allenby, et al.
                                                                                                                                                     C 06-4095 MHP

5

1  entity to avoid a loss of federal funds through substantial compliance reflects a congressional

2  intent to confer group rather than individual rights. *Gonzaga*, 536 U.S. at 288.

3        In explaining just what is required to demonstrate Congress' intent to create an

4  individual right enforceable under Section 1983, the Ninth Circuit just last year, in *Sanchez v.*

5  *Johnson*, 416 F.3d 1051 (2005), recited examples given by the *Gonzaga* Court "of paradigmatic

6  rights-creating language" used by the Congress in Title VI of the Civil Rights Act of 1964 ("No

7  person in the United States shall ... be subjected to discrimination") and in Title IX of the

8  Education Amendments of 1972 ("No person in the United States shall, on the basis of sex ... be

9  subjected to discrimination"). *Sanchez*, 415 F.3d at 1058. The Ninth Circuit then added:

10          Although our inquiry should not be limited to looking for these precise
11          phrases, statutory language less direct must be supported by other indicia so
           unambiguous that we are left without any doubt that Congress intended to
12          create an individual, enforceable right remediable under § 1983.

13  *Id.*

14        D.  Plaintiff Lacks Any Basis for Its Claims.

15        Applying the principles discussed above to the instant action demonstrates that nothing

16  in Title IV-E § grants any unambiguous right enforceable by Section 1983 to the plaintiff here.

17        1.  The "Text and Structure" of Part IV-E Benefits Children, Not Providers

18        Plaintiff's contention that its members are entitled to relief under Section 1983 is

19  belied by the clear language of Part IV-E. That Part contains no language susceptible of

20  interpretation as benefitting or creating rights for institutional providers of care such as

21  plaintiff's constituent members. To the extent there is any "rights-creating" language,[5] the

22  intended holders of the right are the individual beneficiaries of the services -- that is, the

23  children[6] -- not the providers.[7] To the extent the providers are mentioned, the references are

24

25      5.  *Gonzaga*, 536 U.S. at 287; *Alexander*, 532 U.S. at 288-289.

26      6.  *Alexander*, 532 U.S. at 288-289; *Cannon*, 441 U.S. at 692, n. 13.

27      7.  In *ASW v. Oregon*, 424 F.3d 970 (2005), the Ninth Circuit found that Part IV-E did create
28  federally enforceable rights to (1) payment determinations (per 42 U.S.C. § 673(a)(3)) and (2) fair
    hearings before state agencies to challenge individual benefit reductions (per 42 U.S.C. §

Not. of Mtn. and Mtn. to Dismiss; Supporting Memo of Ps & As          California Alliance of Child, etc. v. Allenby, et al.
                                                                                                C 06-4095 MHP

6

1   analogous to the references to Medicaid providers that were discussed by the Ninth Circuit in

2   *Sanchez:* "The text does at least refer explicitly to Medicaid providers, but as a means to an

3   administrative end rather than as individual beneficiaries of the statute." *Id.*, 416 F.3d at 1059.

4   The *Sanchez* court added that the Medicaid providers "may certainly benefit from their

5   relationship with the State, but they are, at best, indirect beneficiaries and it would strain

6   common sense to read [42 U.S.C. § 1396a(a)(30)(a), a provision at issue in *Sanchez*] as creating

7   a 'right' enforceable by them." *Id.*

8          Moreover, just as the true beneficiaries of Part IV-E are children, the focus of the

9   statutes is clearly on the State and its responsibilities to those children.  (See, for example, 42

10  U.S.C. section 671 -- entitled "State plan for foster care and adoption assistance" -- which sets

11  forth the burdens on a State for the receipt of federal funding.)  Nothing within this detailed

12  section suggests any intent by Congress to confer rights on anyone save for those children.[8]

13          2.  The Other Gonzaga Principles Also Militate Against Plaintiff Here.

14          Analyzing the instant care under the other principles discussed in *Gonzaga*[9] as

15  relevant to determining whether the text and structure of a statutory provision manifest a

16  congressional intent to confer an enforceable right yield no better result for plaintiff.

17          First, the statutes comprising Part IV-E have an "aggregate" focus on the provision of

18  care to children, rather than a focus upon whether the needs of any particular person.  To the

19  extent they can be construed to focus on anyone in particular, it is an individual child, not an

20  institutional care provider.

21          Second, Part IV-E speaks almost entirely in terms of institutional policy and practice

22

23  671(a)(12)).  However, those rights were specific to the *parents* of adopted children.  This is clearly
    distinguishable from the instant action, where plaintiff is not a parent, nor even a provider of benefits
24  to children, but merely an organization claiming standing  through its averment that it represents
    group homes that it says are adversely affected by defendants' actions.  (Complaint, p. 3:1-3.)
25

26  8. *Gonzaga*, 536 U.S. at 287, quoting *Alexander v. Sandoval*, 532 U.S. at 289.  And, to the
    extent the Ninth Circuit's decision in *ASW v. Oregon* (footnote 7, post) found otherwise, the right
27  found extended, again, only to the adoptive parents of those children.

28  9. 536 U.S. at 288

Not. of Mtn. and Mtn. to Dismiss; Supporting Memo of Ps & As        California Alliance of Child, etc. v. Allenby, et al.
                                                                                    C 06-4095 MHP

                                         7

1    and, again, to the extent it suggests any intention to create private rights of enforcement those

2    rights redound to the children, not their service providers.

3        Third, the provisions of Part IV-E reference the individual largely in the context of

4    describing the type of policies or practices that will trigger funding prohibitions.  (See for

5    example, again, 42 U.S.C. section 671 -- entitled "State plan for foster care and adoption

6    assistance" -- which sets forth the burdens on a State for the receipt of federal funding and hence

7    details what policies and practices, if *not* followed, will result in a loss of that funding.)  And,

8    again, to the extent that the creation by Congress of any private right of action could be inferred

9    from this language, that right would be for children, not institutional service providers.

10        Finally, although it is not entirely clear from Part IV-E whether substantial compliance

11    with its provisions will allow a state entity to avoid a loss of federal funds, the focus of those

12    provisions remains on benefitting the children, not institutions providing their care.

13        In sum, after *Gonzaga,* it matters not that plaintiff -- even if it were a service provider,

14    not merely an organization that claims to represent aggrieved service providers -- may fall within

15    the "general zone of interest" Part IV-E is intended to protect.  *Id.,* 536 U.S. at 283.  As the

16    Ninth Circuit pointed out in *Sanchez,* even being the intended beneficiary of a statute is not

17    enough: "*Gonzaga* made it clear that simply being the intended beneficiary of a statute is not

18    enough to demonstrate the intentional creation of an enforceable right."  *Sanchez,* 416 F.3d at

19    1062.  "After *Gonzaga,*" the Ninth Circuit added, "there can be no doubt that, to satisfy the

20    *Blessing* test, a plaintiff seeking redress under § 1983 must assert the violation of an individually

21    enforceable *right* conferred specifically upon him, not merely a violation of federal law or the

22    denial of a *benefit* or *interest,* no matter how unambiguously conferred."  *Id.* (emphasis original).

23    And where, as in the instant case, a plaintiff fails the first prong of the *Blessing* test, there is no

24    need to consider the second and third prongs.  *See id.*

25        That the statutes here may benefit plaintiff directly or indirectly is insufficient; to be

26    actionable under Section 1983, the provisions of those statutes must unambiguously create an

27    enforceable right, which, for plaintiff, they do not.

28

Not. of Mtn. and Mtn. to Dismiss; Supporting Memo of Ps & As    California Alliance of Child, etc. v. Allenby, et al.
C 06-4095 MHP

8

**CONCLUSION**

1

2          Plaintiff's conclusory assertion that its members have been deprived of their federal

3    rights, privileges, and immunities under color of state law in violation of 42 U.S.C. section 1983

4    does not withstand scrutiny.  Accordingly, for the reasons stated above, defendants Allenby and

5    Ault respectfully request that this Court dismiss plaintiff's complaint pursuant to Rule 12 (b)(6)

6    of the Federal Rules of Civil Procedure.

7          Dated:  August 25, 2006

8                                               Respectfully submitted,

9                                               BILL LOCKYER
                                                Attorney General of the State of California
10

11                                              DOUGLAS M. PRESS
                                                Supervising Deputy Attorney General
12

13                                              /s/ George Prince

14

15                                              GEORGE PRINCE
                                                Deputy Attorney General
16
                                                Attorneys for Defendants
17

18    40104742.wpd
      SF2006401941
19

20

21

22

23

24

25

26

27

28

Not. of Mtn. and Mtn. to Dismiss; Supporting Memo of Ps & As          California Alliance of Child, etc. v. Allenby, et al.
                                                                       C 06-4095 MHP