CHILDREN'S ADVOCACY INSTITUTE
University of San Diego School of Law
Robert C. Fellmeth (CA SBN 49897)
Edward Howard (CA SBN 151936)
Christina McClurg Riehl (CA SBN 216565)
Elisa D'Angelo Weichel (CA SBN 149320)
5998 Alcala Park
San Diego, CA  92110
Telephone: 619.260.4806
Facsimile: 619.260.4753
cpil@sandiego.edu

MORRISON & FOERSTER LLP
Kimberly N. Van Voorhis (CA SBN 197486)
Marc David Peters (CA SBN 211725)
755 Page Mill Road
Palo Alto, California  94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792
KVanVoorhis@mofo.com

MORRISON & FOERSTER LLP
Steve Keane (CA SBN 247588)
12531 High Bluff Drive, Suite 100
San Diego, California  92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| California State Foster Parent Association, California State Care Providers Association, and Legal Advocates for Permanent Parenting,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN A. WAGNER, Director of the California Department of Social Services, in his official capacity; MARY AULT, Deputy Director of the Children and Family Services Division of the California Department of Social Services, in her official capacity,<br><br>Defendants. | Case No.   C 07-5086 WHA<br><br>**FOSTER PARENTS' SUPPLEMENTAL BRIEFING REGARDING DEFENDANTS' MOTION TO DISMISS**<br><br>Date: January 10, 2007<br>Time: 8:00 a.m.<br>Judge: Hon. William H. Alsup |

Pursuant to the Court's January 11, 2008 order, Plaintiffs submit this supplemental brief addressing the three questions presented by the Court in connection with the Defendants' Motion to Dismiss. As demonstrated below, the answers to these questions reinforce that Plaintiffs meet each and every factor set forth in *Blessing v. Freestone*, 520 U.S. 329, 346 (1997), confirming that Plaintiffs do have a private right of enforcement under Section 1983. The State has not and cannot meet its burden to show otherwise, and its motion should be denied.

**A.   Are there federal regulations that address how costs are computed with respect to the term "foster care maintenance payments?" If so, identify them and explain their significance to this case.**

There are federal regulations that address how "foster care maintenance payments" are to be computed. Part 1355 of Title 45 of the Code of Federal Regulations contains requirements for federal financial participation under titles IV-B and IV-E of the Social Security Act. (Title IV-E is also known as the Child Welfare Act.) Part 1356 of the CFR contains specific and mandatory requirements applicable to title IV-E. Section 1356.21, entitled "Foster care maintenance payments program implementation requirements," states that, in order to "be eligible to receive Federal financial participation (FFP) for foster care maintenance payments under this part, a State must meet the requirements of this section, 45 CFR 1356.22, 45 CFR 1356.30, and sections 472, 475(1), 475(4), 475(5) and 475(6) of the Act."[1] 45 C.F.R. § 1356.21(a). The current full text of Parts 1355 and 1356 were obtained from the U.S. Government Printing Office (GPOAccess.gov) and are attached as Exhibits A and B, respectively.

The regulations further explain the categories of costs that are to be reimbursed as foster care maintenance payments. For example, CFR Section 1355.20 is a definitional section that explains the types of costs that must be reimbursed through foster care maintenance payments:

> Foster care maintenance payments are payments made on behalf of a child eligible for title IV-E foster care to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel for a child's

---

[1] Section 472, codified at 42 U.S.C. § 672, requires the State to make foster care maintenance payments on behalf of eligible children. It is to be distinguished from Section 471, codified at 42 U.S.C. § 671, which requires the State to have an approved plan for making foster care maintenance payments. The obligations are separate and not coextensive.

>visitation with family, or other caretakers. Local travel associated with providing the items listed above is also an allowable expense. . . . "Daily supervision" for which foster care maintenance payments may be made includes: (1) *Foster family care*—licensed child care, when work responsibilities preclude foster parents from being at home when the child for whom they have care and responsibility in foster care is not in school, licensed child care when the foster parent is required to participate, without the child, in activities associated with parenting a child in foster care that are beyond the scope of ordinary parental duties, such as attendance at administrative or judicial reviews, case conferences, or foster parent training.

45 C.F.R. § 1355.20.[2]

Plaintiffs allege that the State has failed to follow these specific, mandatory requirements (Complaint at ¶ 36), and at this preliminary stage these allegations are assumed to be true. The regulations also require the State to "review at reasonable, specific, time-limited periods . . . [t]he amount of the payments made for foster care maintenance and adoption assistance to assure their continued appropriateness . . . ." 45 C.F.R. § 1356.21(m). Plaintiffs similarly allege that the State has not assured the appropriateness of reimbursements to foster parents over time. (Complaint at ¶¶ 33-35.)

The Department of Health and Human Services also publishes specific guidance to the States, including guidance with respect to what costs are included within foster care maintenance payments. The Children's Bureau, Administration for Children and Families publishes the "Child Welfare Policy Manual." Attached hereto as Exhibit C is Section 8 of the Manual (the 271-page portion directed to Title IV-E). Section 8.3B.1 of the Manual begins with a statement that the enumerated costs in the statute are specific enough in and of themselves: "What are the elements of costs for foster care maintenance payments under section 475(4) of the Social Security Act (the Act)? . . . Clearly, all items of cost specifically enumerated in the Act are allowable." Manual, Section 8.3B.1(1) (page 166). However, should the States have any additional questions as to the interpretation of any of the statutory items or the "cost of providing," the Manual provides more

---

[2] *See also* 45 C.F.R. § 1356.21(j) (where a minor is parent who has a child placed in a foster family home or child care institution, the payments "must include amounts which are necessary to cover costs incurred on behalf of the child's son or daughter. Said costs must be limited to funds expended on items listed in the definition of foster care maintenance payments in § 1355.20 of this part.").

specific guidance.[3]

The regulations, the Manual, and the CWA itself provide specific and objective criteria for determining foster care maintenance payments, which further demonstrates that Congress unambiguously conferred a right to enforce these "precisely" enumerated monetary benefits.[4] *Price v. City of Stockton*, 390 F.3d 1105, 1111-1114 (9th Cir. 2004); *Gonzaga Univ. v. Doe,* 536 U.S. 273, 280-81 (2002).

**B.  Explain the relationship between the federal definition of "foster care maintenance payments," the California Welfare and Institutions Code and California Necessities Index.**

The California Welfare and Institutions Code ("WIC") is the enabling legislation by which the State provides foster care services and becomes eligible for federal funding for the same. In defining the "care and supervision" that California's foster parents are to provide in return for reimbursement, the WIC repeats the language of the federal definition of "foster care maintenance payments" ***verbatim***: "food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to a child's home for visitation." *Compare* WIC § 11460(b) *with* 42 U.S.C. § 675(4)(A).

The foster care rates that the State pays are defined in Section 11461. In 1989, the basic rate for a one-year-old in a family home was $294. WIC § 11461(a). Beginning in the 1991-92 fiscal year, the basic rates were to be "adjusted by the percentage change in the California Necessities Index . . . subject to the availability of funds." WIC § 11461(d)(1)(A).

The California Necessities Index (CNI) is the State's own selected and mandated method for estimating the "cost of living" in California. The changes in the CNI are the calculated

---

[3] For example, it answers the questions: "Are all costs for day care/baby-sitting services provided to title IV-E eligible children reimbursable as a title IV-E foster care maintenance cost?" (Section 8.3B.1(3)); "is there any provision within title IV-E which would permit reimbursement of the costs of prescription drugs for children in foster care for which no other funding source is available?" (Section 8.3B.1(6)); and "what types of insurance costs are allowable?" (Section 8.3B.1(7)). *See* Exhibit C, Child Welfare Policy Manual, at 170, 176, 177.

[4] Equally important is what is ***not*** in the statute, regulations, or Manual: any kind of statutory or regulatory mechanism for relief that evidences an express or implied legislative intent to ***prevent*** foster parents such as plaintiffs here from relying upon the remedies previously enacted by Congress in Section 1983. *Compare Blessing*, 520 U.S. at 346-348 (no remedial scheme) *with Gonzaga,* 536 U.S. at 289-290 (remedial scheme deemed sufficient).

1  "weighted average changes for food, clothing, fuel, utilities, rent, and transportation for low-
2  income consumers."  WIC § 11453.

3  The relationship between foster care maintenance payments and the CNI is as follows.
4  Suppose it were the case that in the 1991-92 fiscal year, the State reimbursed foster parents the
5  full costs of those goods and services included in the federal definition of "foster care
6  maintenance payments."  How much should the State pay the following year?  Assuming that the
7  costs of goods and services included in "foster care maintenance payments" changed at
8  approximately the same rate as the costs of those included in the CNI, the CNI would be a good
9  proxy for an adjustment to the amount paid to foster care providers, as the State's own code
10 concedes.  Under these assumptions, a CNI-adjusted foster care provider payment would continue
11 to reimburse foster parents their full costs over time, and no further legislative changes to the
12 Code would be required.  Of course, any *failure* to adjust foster care rates by the CNI likewise
13 means that the State would no longer be reimbursing foster parents the costs of providing foster
14 care, with the State slipping more out of compliance with federal law each year.  This is exactly
15 what the Plaintiffs have pled, and the Court must assume it to be true at this stage of the case.[5]

16 Thus, on the merits, whether the State has complied with Title IV-E may be judged in two
17 ways.  First, the sufficiency of the WIC may be adjudicated facially, by weighing whether a state
18 statute that makes foster care payments "subject to the availability of funds"— language by which
19 the State gives itself the discretion to reduce payments to any level it wishes—complies with the
20 mandatory conditions of Title IV-E.  Second, the sufficiency of the amount of the State's foster
21 care payments under the specific requirements of federal law may be adjudicated by factually
22 testing evidence of those amounts adduced during discovery.  Both questions are central to this
23 case, but it is premature to address them now.

---

[5] The California Legislature contemplated that the State could be sued for inadequate foster care payments, and that the State could lose such a suit.  WIC § 11460(d) ("A foster care provider that accepts payments, following the effective date of this section, based on a rate established under this section, shall not receive rate increases or retroactive payments as the result of litigation challenging rates established prior to the effective date of this section.").

### C. Explain the significance of the phrase, "subject to the availability of funds," as stated in the California Welfare and Institutions Code § 11461(d)(1)(A).

The phrase "subject to the availability of funds" raises a key question to be decided upon the merits. It transforms the State's law from the *mandatory* ("Foster care providers shall be paid" and the "schedule of basic rates shall be adjusted") to the *aspirational*: rates are adjusted, but only "subject to the availability of funds." WIC §§ 11460(a), 11461(d)(1)(A). In practice, this means rates are not adjusted enough, or at all, because the State does not make the required funds available. This is exactly what happened between July 2001 and 2007; the State did not adjust the schedule of basic rates, even though the CNI had increased substantially. (Complaint ¶ 34.) In this sense, the State has empowered itself to obtain federal funds without actually doing what federal law plainly requires (and what the State *agreed* to do to receive these federal funds):[6] "make foster care maintenance payments (as defined in section 675(4) of this title)." 42 U.S.C. § 672(a).

Whether California or any other state can unilaterally amend its side of the Title IV-E bargain is an ultimate issue that this Court will need to decide, after full analysis of the statute and the factual question (informed by discovery) of how this self-limiting language has affected the State's performance (or lack thereof) of its obligations under Title IV-E.

But as to the motion to dismiss presently before the Court, the phrase "subject to the availability of funds" has little significance. The present inquiry focuses exclusively on the federal statute, and whether it confers a specific, individual right that foster parents can enforce under Section 1983. The *Blessing* factors, which control this determination, are focused on *Congressional* intent, 520 U.S. at 340-41, whereas WIC § 11461(d)(1)(A) expresses the *State's* intent, and so is not relevant. As the Plaintiffs' opposition and supplemental brief make clear, all three of *Blessing* factors are met here. Defendant's motion should be denied.

---

[6] In the plan the State submitted to HHS, the State agreed to administer its foster care program in accordance with Title IV-E, all applicable Federal regulations, and other official issuances of HHS, and acknowledged that the "official text of said laws, regulations and official issuances governs." (*See* California's Title IV-E plan, attached as Exhibit D and available at http://www.childsworld.ca.gov/res/pdf/2002TitleIV-EStatePlan4_03.pdf).

| | |
|---|---|
| Dated: January 14, 2008 | /s/ Marc David Peters |

Kimberly N. Van Voorhis
Marc David Peters, Ph.D.
Steve Keane
MORRISON & FOERSTER LLP

Robert C. Fellmeth
Edward Howard
Christina McClurg Riehl
Elisa D'Angelo Weichel
CHILDREN'S ADVOCACY INSTITUTE
UNIVERSITY OF SAN DIEGO SCHOOL OF LAW

ATTORNEYS FOR PLAINTIFFS
California State Foster Parent Association,
California State Care Providers Association, and
Legal Advocates for Permanent Parenting