ALLOTMENT OF FUNDS WITH 427 INCENTIVE FUNDS TITLE IV-B CHILD WELFARE SERVICES FISCAL YEAR 1993—Continued

| Name of State | Allotment at $294,624,000 [1] | Allotment at $141,000,000 | 427 incentive funds |
|---|---|---|---|
| Wisconsin | 6,033,052 | 2,881,847 | 3,151,205 |
| Wyoming | 751,264 | 391,247 | 360,017 |

[1] These totals include allotments to the United States Territories. Therefore, the summation of the States' allotments will not be equivalent.

[58 FR 67937, Dec. 22, 1993, as amended at 65 FR 4087, Jan. 25, 2000]

# PART 1356—REQUIREMENTS APPLICABLE TO TITLE IV-E

Sec.
1356.10  Scope.
1356.20  State plan document and submission requirements.
1356.21  Foster care maintenance payments program implementation requirements.
1356.22  Implementation requirements for children voluntarily placed in foster care.
1356.30  Safety requirements for foster care and adoptive home providers.
1356.40  Adoption assistance program: Administrative requirements to implement section 473 of the Act.
1356.41  Nonrecurring expenses of adoption.
1356.50  Withholding of funds for non-compliance with the approved title IV-E State plan.
1356.60  Fiscal requirements (title IV-E).
1356.65–1356.70  [Reserved]
1356.71  Federal review of the eligibility of children in foster care and the eligibility of foster care providers in title IV-E programs.

AUTHORITY: 42 U.S.C. 620 et seq., 42 U.S.C. 670 et seq.; 42 U.S.C. 1302.

## § 1356.10  Scope.

This part applies to State programs for foster care maintenance payments, adoption assistance payments, related foster care and adoption administrative and training expenditures, and the independent living services program under title IV-E of the Act.

[61 FR 58655, Nov. 18, 1996]

## § 1356.20  State plan document and submission requirements.

(a) To be in compliance with the State plan requirements and to be eligible to receive Federal financial participation (FFP) in the costs of foster care maintenance payments and adoption assistance under this part, a State must have a State plan approved by the Secretary that meets the requirements of this part, part 1355 and section 471(a) of the Act. The title IV-E State plan must be submitted to the appropriate Regional Office, ACYF, in a form determined by the State.

(b) Failure by a State to comply with the requirements and standards for the data reporting system for foster care and adoption (§ 1355.40 of this chapter) shall be considered a substantial failure by the State in complying with the State plan for title IV-E. Penalties as described in § 1355.40(e) of this chapter shall apply.

(c) If a State chooses to claim FFP for voluntary foster care placements, the State must meet the requirements of paragraph (a) of this section and section 102 of Pub. L. 96–272, the Adoption Assistance and Child Welfare Act of 1980, as it amends section 472 of the Act.

(d) The following procedures for approval of State plans and amendments apply to the title IV-E program:

(1) The State plan consists of written documents furnished by the State to cover its program under part E of title IV. After approval of the original plan by the Commissioner, ACYF, all relevant changes, required by new statutes, rules, regulations, interpretations, and court decisions, are required to be submitted currently so that ACYF may determine whether the plan continues to meet Federal requirements and policies.

(2) *Submittal.* State plans and revisions of the plans are submitted first to the State governor or his designee for review and then to the regional office, ACYF. The States are encouraged to obtain consultation of the regional staff when a plan is in process of preparation or revision.

(3) *Review.* Staff in the regional offices are responsible for review of State

**EXHIBIT B**

**Office of Human Development Services, HHS**                    **§ 1356.21**

plans and amendments. They also initiate discussion with the State agency on clarification of significant aspects of the plan which come to their attention in the course of this review. State plan material on which the regional staff has questions concerning the application of Federal policy is referred with recommendations as required to the central office for technical assistance. Comments and suggestions, including those of consultants in specified areas, may be prepared by the central office for use by the regional staff in negotiations with the State agency.

(4) *Action.* Each Regional Administrator, ACF, has the authority to approve State plans and amendments thereto which provide for the administration of foster care maintenance payments and adoption assistance programs under section 471 of the Act. The Commissioner, ACYF, retains the authority to determine that proposed plan material is not approvable, or that a previously approved plan no longer meets the requirements for approval. The Regional Office, ACYF, formally notifies the State agency of the actions taken on State plans or revisions.

(5) *Basis for approval.* Determinations as to whether State plans (including plan amendments and administrative practice under the plans) originally meet or continue to meet, the requirements for approval are based on relevant Federal statutes and regulations.

(6) *Prompt approval of State plans.* The determination as to whether a State plan submitted for approval conforms to the requirements for approval under the Act and regulations issued pursuant thereto shall be made promptly and not later than the 45th day following the date on which the plan submittal is received in the regional office, unless the Regional Office, ACYF, has secured from the State agency a written agreement to extend that period.

(7) *Prompt approval of plan amendments.* Any amendment of an approved State plan may, at the option of the State, be considered as a submission of a new State plan. If the State requests that such amendment be so considered the determination as to its conformity with the requirements for approval

shall be made promptly and not later than the 45th day following the date on which such a request is received in the regional office with respect to an amendment that has been received in such office, unless the Regional Office, ACYF, has secured from the State agency a written agreement to extend that period. In absence of request by a State that an amendment of an approved State plan shall be considered as a submission of a new State plan, the procedures under §201.6 (a) and (b) shall be applicable.

(8) *Effective date.* The effective date of a new plan may not be earlier than the first day of the calendar quarter in which an approvable plan is submitted, and with respect to expenditures for assistance under such plan, may not be earlier than the first day on which the plan is in operation on a statewide basis. The same applies with respect to plan amendments.

(e) Once the title IV-E State plan has been submitted and approved, it shall remain in effect until amendments are required. An amendment is required if there is any significant and relevant change in the information or assurances in the plan, or the organization, policies or operations described in the plan.

(This requirement has been approved by the Office of Management and Budget under OMB Control Number 0980–0141. In accordance with the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.)

[48 FR 23115, May 23, 1983, as amended at 58 FR 67938, Dec. 22, 1993; 65 FR 4088, Jan. 25, 2000; 66 FR 58676, Nov. 23, 2001]

**§ 1356.21  Foster care maintenance payments program implementation requirements.**

(a) *Statutory and regulatory requirements of the Federal foster care program.* To implement the foster care maintenance payments program provisions of the title IV-E State plan and to be eligible to receive Federal financial participation (FFP) for foster care maintenance payments under this part, a State must meet the requirements of this section, 45 CFR 1356.22, 45 CFR 1356.30, and sections 472, 475(1), 475(4), 475(5) and 475(6) of the Act.

**EXHIBIT B**

(b) *Reasonable efforts.* The State must make reasonable efforts to maintain the family unit and prevent the unnecessary removal of a child from his/her home, as long as the child's safety is assured; to effect the safe reunification of the child and family (if temporary out-of-home placement is necessary to ensure the immediate safety of the child); and to make and finalize alternate permanency plans in a timely manner when reunification is not appropriate or possible. In order to satisfy the ''reasonable efforts'' requirements of section 471(a)(15) (as implemented through section 472(a)(1) of the Act), the State must meet the requirements of paragraphs (b) and (d) of this section. In determining reasonable efforts to be made with respect to a child and in making such reasonable efforts, the child's health and safety must be the State's paramount concern.

(1) *Judicial determination of reasonable efforts to prevent a child's removal from the home.* (i) When a child is removed from his/her home, the judicial determination as to whether reasonable efforts were made, or were not required to prevent the removal, in accordance with paragraph (b)(3) of this section, must be made no later than 60 days from the date the child is removed from the home pursuant to paragraph (k)(1)(ii) of this section.

(ii) If the determination concerning reasonable efforts to prevent the removal is not made as specified in paragraph (b)(1)(i) of this section, the child is not eligible under the title IV-E foster care maintenance payments program for the duration of that stay in foster care.

(2) *Judicial determination of reasonable efforts to finalize a permanency plan.* (i) The State agency must obtain a judicial determination that it has made reasonable efforts to finalize the permanency plan that is in effect (whether the plan is reunification, adoption, legal guardianship, placement with a fit and willing relative, or placement in another planned permanent living arrangement) within twelve months of the date the child is considered to have entered foster care in accordance with the definition at § 1355.20 of this part, and at least once every twelve months

thereafter while the child is in foster care.

(ii) If such a judicial determination regarding reasonable efforts to finalize a permanency plan is not made in accordance with the schedule prescribed in paragraph (b)(2)(i) of this section, the child becomes ineligible under title IV-E at the end of the month in which the judicial determination was required to have been made, and remains ineligible until such a determination is made.

(3) *Circumstances in which reasonable efforts are not required to prevent a child's removal from home or to reunify the child and family.* Reasonable efforts to prevent a child's removal from home or to reunify the child and family are not required if the State agency obtains a judicial determination that such efforts are not required because:

(i) A court of competent jurisdiction has determined that the parent has subjected the child to aggravated circumstances (as defined in State law, which definition may include but need not be limited to abandonment, torture, chronic abuse, and sexual abuse);

(ii) A court of competent jurisdiction has determined that the parent has been convicted of:

(A) Murder (which would have been an offense under section 1111(a) of title 18, United States Code, if the offense had occurred in the special maritime or territorial jurisdiction of the United States) of another child of the parent;

(B) Voluntary manslaughter (which would have been an offense under section 1112(a) of title 18, United States Code, if the offense had occurred in the special maritime or territorial jurisdiction of the United States) of another child of the parent;

(C) Aiding or abetting, attempting, conspiring, or soliciting to commit such a murder or such a voluntary manslaughter; or

(D) A felony assault that results in serious bodily injury to the child or another child of the parent; or,

(iii) The parental rights of the parent with respect to a sibling have been terminated involuntarily.

(4) *Concurrent planning.* Reasonable efforts to finalize an alternate permanency plan may be made concurrently

**EXHIBIT B**

**Office of Human Development Services, HHS**    **§ 1356.21**

with reasonable efforts to reunify the child and family.

(5) *Use of the Federal Parent Locator Service.* The State agency may seek the services of the Federal Parent Locator Service to search for absent parents at any point in order to facilitate a permanency plan.

(c) *Contrary to the welfare determination.* Under section 472(a)(1) of the Act, a child's removal from the home must have been the result of a judicial determination (unless the child was removed pursuant to a voluntary placement agreement) to the effect that continuation of residence in the home would be contrary to the welfare, or that placement would be in the best interest, of the child. The contrary to the welfare determination must be made in the first court ruling that sanctions (even temporarily) the removal of a child from home. If the determination regarding contrary to the welfare is not made in the first court ruling pertaining to removal from the home, the child is not eligible for title IV-E foster care maintenance payments for the duration of that stay in foster care.

(d) *Documentation of judicial determinations.* The judicial determinations regarding contrary to the welfare, reasonable efforts to prevent removal, and reasonable efforts to finalize the permanency plan in effect, including judicial determinations that reasonable efforts are not required, must be explicitly documented and must be made on a case-by-case basis and so stated in the court order.

(1) If the reasonable efforts and contrary to the welfare judicial determinations are not included as required in the court orders identified in paragraphs (b) and (c) of this section, a transcript of the court proceedings is the only other documentation that will be accepted to verify that these required determinations have been made.

(2) Neither affidavits nor nunc pro tunc orders will be accepted as verification documentation in support of reasonable efforts and contrary to the welfare judicial determinations.

(3) Court orders that reference State law to substantiate judicial determinations are not acceptable, even if State law provides that a removal must be based on a judicial determination that

remaining in the home would be contrary to the child's welfare or that removal can only be ordered after reasonable efforts have been made.

(e) *Trial home visits.* A trial home visit may not exceed six months in duration, unless a court orders a longer trial home visit. If a trial home visit extends beyond six months and has not been authorized by the court, or exceeds the time period the court has deemed appropriate, and the child is subsequently returned to foster care, that placement must then be considered a new placement and title IV-E eligibility must be newly established. Under these circumstances the judicial determinations regarding contrary to the welfare and reasonable efforts to prevent removal are required.

(f) *Case review system.* In order to satisfy the provisions of section 471(a)(16) of the Act regarding a case review system, each State's case review system must meet the requirements of sections 475(5) and 475(6) of the Act.

(g) *Case plan requirements.* In order to satisfy the case plan requirements of sections 471(a)(16), 475(1) and 475(5) (A) and (D) of the Act, the State agency must promulgate policy materials and instructions for use by State and local staff to determine the appropriateness of and necessity for the foster care placement of the child. The case plan for each child must:

(1) Be a written document, which is a discrete part of the case record, in a format determined by the State, which is developed jointly with the parent(s) or guardian of the child in foster care; and

(2) Be developed within a reasonable period, to be established by the State, but in no event later than 60 days from the child's removal from the home pursuant to paragraph (k) of this section;

(3) Include a discussion of how the case plan is designed to achieve a safe placement for the child in the least restrictive (most family-like) setting available and in close proximity to the home of the parent(s) when the case plan goal is reunification and a discussion of how the placement is consistent with the best interests and special needs of the child. (FFP is not available when a court orders a placement with a specific foster care provider);

**EXHIBIT B**

(4) Include a description of the services offered and provided to prevent removal of the child from the home and to reunify the family; and

(5) Document the steps to finalize a placement when the case plan goal is or becomes adoption or placement in another permanent home in accordance with sections 475(1)(E) and (5)(E) of the Act. When the case plan goal is adoption, at a minimum, such documentation shall include child-specific recruitment efforts such as the use of State, regional, and national adoption exchanges including electronic exchange systems.

(This requirement has been approved by the Office of Management and Budget under OMB Control Number 0980–0140. In accordance with the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.)

(h) *Application of the permanency hearing requirements.* (1) To meet the requirements of the permanency hearing, the State must, among other requirements, comply with section 475(5)(C) of the Act.

(2) In accordance with paragraph (b)(3) of this section, when a court determines that reasonable efforts to return the child home are not required, a permanency hearing must be held within 30 days of that determination, unless the requirements of the permanency hearing are fulfilled at the hearing in which the court determines that reasonable efforts to reunify the child and family are not required.

(3) If the State concludes, after considering reunification, adoption, legal guardianship, or permanent placement with a fit and willing relative, that the most appropriate permanency plan for a child is placement in another planned permanent living arrangement, the State must document to the court the compelling reason for the alternate plan. Examples of a compelling reason for establishing such a permanency plan may include:

(i) The case of an older teen who specifically requests that emancipation be established as his/her permanency plan;

(ii) The case of a parent and child who have a significant bond but the parent is unable to care for the child because of an emotional or physical disability and the child's foster parents have committed to raising him/her to the age of majority and to facilitate visitation with the disabled parent; or,

(iii) the Tribe has identified another planned permanent living arrangement for the child.

(4) When an administrative body, appointed or approved by the court, conducts the permanency hearing, the procedural safeguards set forth in the definition of *permanency hearing* must be so extended by the administrative body.

(i) *Application of the requirements for filing a petition to terminate parental rights at section 475(5)(E) of the Social Security Act.* (1) Subject to the exceptions in paragraph (i)(2) of this section, the State must file a petition (or, if such a petition has been filed by another party, seek to be joined as a party to the petition) to terminate the parental rights of a parent(s):

(i) Whose child has been in foster care under the responsibility of the State for 15 of the most recent 22 months. The petition must be filed by the end of the child's fifteenth month in foster care. In calculating when to file a petition for termination of parental rights, the State:

(A) Must calculate the 15 out of the most recent 22 month period from the date the child is considered to have entered foster care as defined at section 475(5)(F) of the Act and §1355.20 of this part;

(B) Must use a cumulative method of calculation when a child experiences multiple exits from and entries into foster care during the 22 month period;

(C) Must not include trial home visits or runaway episodes in calculating 15 months in foster care; and,

(D) Need only apply section 475(5)(E) of the Act to a child once if the State does not file a petition because one of the exceptions at paragraph (i)(2) of this section applies;

(ii) Whose child has been determined by a court of competent jurisdiction to be an abandoned infant (as defined under State law). The petition to terminate parental rights must be filed within 60 days of the judicial determination that the child is an abandoned infant; or,

**Office of Human Development Services, HHS** §1356.21

(iii) Who has been convicted of one of the felonies listed at paragraph (b)(3)(ii) of this section. Under such circumstances, the petition to terminate parental rights must be filed within 60 days of a judicial determination that reasonable efforts to reunify the child and parent are not required.

(2) The State may elect not to file or join a petition to terminate the parental rights of a parent per paragraph (i)(1) of this section if:

(i) At the option of the State, the child is being cared for by a relative;

(ii) The State agency has documented in the case plan (which must be available for court review) a compelling reason for determining that filing such a petition would not be in the best interests of the individual child. Compelling reasons for not filing a petition to terminate parental rights include, but are not limited to:

(A) Adoption is not the appropriate permanency goal for the child; or,

(B) No grounds to file a petition to terminate parental rights exist; or,

(C) The child is an unaccompanied refugee minor as defined in 45 CFR 400.111; or

(D) There are international legal obligations or compelling foreign policy reasons that would preclude terminating parental rights; or

(iii) The State agency has not provided to the family, consistent with the time period in the case plan, services that the State deems necessary for the safe return of the child to the home, when reasonable efforts to reunify the family are required.

(3) When the State files or joins a petition to terminate parental rights in accordance with paragraph (i)(1) of this section, it must concurrently begin to identify, recruit, process, and approve a qualified adoptive family for the child.

(j) *Child of a minor parent in foster care.* Foster care maintenance payments made on behalf of a child placed in a foster family home or child care institution, who is the parent of a son or daughter in the same home or institution, must include amounts which are necessary to cover costs incurred on behalf of the child's son or daughter. Said costs must be limited to funds expended on items listed in the definition of *foster care maintenance payments* in §1355.20 of this part.

(k) *Removal from the home of a specified relative.* (1) For the purposes of meeting the requirements of section 472(a)(1) of the Act, a removal from the home must occur pursuant to:

(i) A voluntary placement agreement entered into by a parent or guardian which leads to a physical or constructive removal (i.e., a non-physical or paper removal of custody) of the child from the home; or

(ii) A judicial order for a physical or constructive removal of the child from a parent or specified relative.

(2) A removal has not occurred in situations where legal custody is removed from the parent or relative and the child remains with the same relative in that home under supervision by the State agency.

(3) A child is considered constructively removed on the date of the first judicial order removing custody, even temporarily, from the appropriate specified relative or the date that the voluntary placement agreement is signed by all relevant parties.

(l) *Living with a specified relative.* For purposes of meeting the requirements for living with a specified relative prior to removal from the home under section 472(a)(1) of the Act and all of the conditions under section 472(a)(4), one of the two following situations must apply:

(1) The child was living with the parent or specified relative, and was AFDC eligible in that home in the month of the voluntary placement agreement or initiation of court proceedings; or

(2) The child had been living with the parent or specified relative within six months of the month of the voluntary placement agreement or the initiation of court proceedings, and the child would have been AFDC eligible in that month if s/he had still been living in that home.

(m) *Review of payments and licensing standards.* In meeting the requirements of section 471(a)(11) of the Act, the State must review at reasonable, specific, time-limited periods to be established by the State:

(1) The amount of the payments made for foster care maintenance and

311

**EXHIBIT B**

adoption assistance to assure their continued appropriateness; and

(2) The licensing or approval standards for child care institutions and foster family homes.

(n) *Foster care goals.* The specific foster care goals required under section 471(a)(14) of the Act must be incorporated into State law by statute or administrative regulation with the force of law.

(o) *Notice and opportunity to be heard.* The State must provide the foster parent(s) of a child and any preadoptive parent or relative providing care for the child with timely notice of and an opportunity to be heard in permanency hearings and six-month periodic reviews held with respect to the child during the time the child is in the care of such foster parent, preadoptive parent, or relative caregiver. Notice of and an opportunity to be heard does not include the right to standing as a party to the case.

[65 FR 4088, Jan. 25, 2000, as amended at 66 FR 58677, Nov. 23, 2001]

**§ 1356.22   Implementation requirements for children voluntarily placed in foster care.**

(a) As a condition of receipt of Federal financial participation (FFP) in foster care maintenance payments for a dependent child removed from his home under a voluntary placement agreement, the State must meet the requirements of:

(1) Section 472 of the Act, as amended;

(2) Sections 422(b)(10) and 475(5) of the Act;

(3) 45 CFR 1356.21(e), (f), (g), (h), and (i); and

(4) The requirements of this section.

(b) Federal financial participation is available only for voluntary foster care maintenance expenditures made within the first 180 days of the child's placement in foster care unless there has been a judicial determination by a court of competent jurisdiction, within the first 180 days of such placement, to the effect that the continued voluntary placement is in the best interests of the child.

(c) The State agency must establish and maintain a uniform procedure or system, consistent with State law, for revocation by the parent(s) of a voluntary placement agreement and return of the child.

[65 FR 4090, Jan. 25, 2000, as amended at 66 FR 58677, Nov. 23, 2001]

**§ 1356.30   Safety requirements for foster care and adoptive home providers.**

(a) Unless an election provided for in paragraph (d) of this section is made, the State must provide documentation that criminal records checks have been conducted with respect to prospective foster and adoptive parents.

(b) The State may not approve or license any prospective foster or adoptive parent, nor may the State claim FFP for any foster care maintenance or adoption assistance payment made on behalf of a child placed in a foster home operated under the auspices of a child placing agency or on behalf of a child placed in an adoptive home through a private adoption agency, if the State finds that, based on a criminal records check conducted in accordance with paragraph (a) of this section, a court of competent jurisdiction has determined that the prospective foster or adoptive parent has been convicted of a felony involving:

(1) Child abuse or neglect;

(2) Spousal abuse;

(3) A crime against a child or children (including child pornography); or,

(4) A crime involving violence, including rape, sexual assault, or homicide, but not including other physical assault or battery.

(c) The State may not approve or license any prospective foster or adoptive parent, nor may the State claim FFP for any foster care maintenance or adoption assistance payment made on behalf of a child placed in a foster home operated under the auspices of a child placing agency or on behalf of a child placed in an adoptive home through a private adoption agency, if the State finds, based on a criminal records check conducted in accordance with paragraph (a) of this section, that a court of competent jurisdiction has determined that the prospective foster or adoptive parent has, within the last five years, been convicted of a felony involving:

(1) Physical assault;

**EXHIBIT B**

(2) Battery; or,

(3) A drug-related offense.

(d)(1) The State may elect not to conduct or require criminal records checks on prospective foster or adoptive parents by:

(i) Notifying the Secretary in a letter from the Governor; or

(ii) Enacting State legislation.

(2) Such an election also removes the State's obligation to comport with paragraphs (b) and (c) of this section.

(e) In all cases where the State opts out of the criminal records check requirement, the licensing file for that foster or adoptive family must contain documentation which verifies that safety considerations with respect to the caretaker(s) have been addressed.

(f) In order for a child care institution to be eligible for title IV-E funding, the licensing file for the institution must contain documentation which verifies that safety considerations with respect to the staff of the institution have been addressed.

[65 FR 4090, Jan. 25, 2000]

**§ 1356.40  Adoption assistance program: Administrative requirements to implement section 473 of the Act.**

(a) To implement the adoption assistance program provisions of the title IV-E State plan and to be eligible for Federal financial participation in adoption assistance payments under this part, the State must meet the requirements of this section and sections 471(a), 473 and 475(3) of the Act.

(b) The adoption assistance agreement for payments pursuant to section 473(a)(2) must meet the requirements of section 475(3) of the Act and must:

(1) Be signed and in effect at the time of or prior to the final decree of adoption. A copy of the signed agreement must be given to each party; and

(2) Specify its duration; and

(3) Specify the nature and amount of any payment, services and assistance to be provided under such agreement and, for purposes of eligibility under title XIX of the Act, specify that the child is eligible for Medicaid services; and

(4) Specify, with respect to agreements entered into on or after October 1, 1983, that the agreement shall remain in effect regardless of the State of which the adoptive parents are residents at any given time.

(c) There must be no income eligibility requirement (means test) for the prospective adoptive parent(s) in determining eligibility for adoption assistance payments.

(d) In the event an adoptive family moves from one State to another State, the family may apply for social services on behalf of the adoptive child in the new State of residence. However, for agreements entered into on or after October 1, 1983, if a needed service(s) specified in the adoption assistance agreement is not available in the new State of residence, the State making the original adoption assistance payment remains financially responsible for providing the specified service(s).

(e) A State may make an adoption assistance agreement with adopting parent(s) who reside in another State. If so, all provisions of this section apply.

(f) The State agency must actively seek ways to promote the adoption assistance program.

[48 FR 23116, May 23, 1983, as amended at 53 FR 50220, Dec. 14, 1988]

**§ 1356.41  Nonrecurring expenses of adoption.**

(a) The amount of the payment made for nonrecurring expenses of adoption shall be determined through agreement between the adopting parent(s) and the State agency administering the program. The agreement must indicate the nature and amount of the nonrecurring expenses to be paid.

(b) The agreement for nonrecurring expenses may be a separate document or a part of an agreement for either State or Federal adoption assistance payments or services. The agreement for nonrecurring expenses must be signed prior to the final decree of adoption, with two exceptions:

(1) Cases in which the final decree of adoption was entered into on or after January 1, 1987 and within six months after the effective date of the final rule; or

(2) Cases in which a final decree was entered into before January 1, 1987 but nonrecurring adoption expenses were paid after January 1, 1987.

**EXHIBIT B**

(c) There must be no income eligibility requirement (means test) for adopting parents in determining whether payments for nonrecurring expenses of adoption shall be made. However, parents cannot be reimbursed for out-of-pocket expenses for which they have otherwise been reimbursed.

(d) For purposes of payment of nonrecurring expenses of adoption, the State must determine that the child is a ''child with special needs'' as defined in section 473(c) of the Act, and that the child has been placed for adoption in accordance with applicable State and local laws; the child need not meet the categorical eligibility requirements at section 473(a)(2).

(e)(1) The State agency must notify all appropriate courts and all public and licensed private nonprofit adoption agencies of the availability of funds for the nonrecurring expenses of adoption of children with special needs as well as where and how interested persons may apply for these funds. This information should routinely be made available to all persons who inquire about adoption services after the publication date of this final rule.

(2) The State agency must send a notice to all public and private nonprofit adoption agencies directing them to notify all their clients who adopted a special needs child between January 1, 1986 and six months following the effective date of this rule of the availability of reimbursement for nonrecurring expenses paid after January 1, 1987.

(3) For adoptions in which a final decree is entered between January 1, 1987 and six months after the effective date of this rule, or where a final decree was entered before January 1, 1987 but nonrecurring adoption expenses were paid after January 1, 1987, individuals who seek reimbursement must enter into an agreement with the State agency and file a claim with the State agency within two years of the effective date of this rule. For adoptions in which a final decree is entered more than six months after the effective date of this rule, the agreement must be signed at the time of or prior to the final decree of adoption. In such cases, claims must be filed with the State agency within two years of the date of the final decree of adoption.

(f)(1) Funds expended by the State under an adoption assistance agreement, with respect to nonrecurring adoption expenses incurred by or on behalf of parents who adopt a child with special needs, shall be considered an administrative expenditure of the title IV-E Adoption Assistance Program. Federal reimbursement is available at a 50 percent matching rate, for State expenditures up to $2,000, for any adoptive placement.

(2) States may set a reasonable lower maximum which must be based on reasonable charges, consistent with State and local practices, for special needs adoptions within the State. The basis for setting a lower maximum must be documented and available for public inspection.

(3) In cases where siblings are placed and adopted, either separately or as a unit, each child is treated as an individual with separate reimbursement for nonrecurring expenses up to the maximum amount allowable for each child.

(g) Federal financial participation for nonrecurring expenses of adoption is limited to costs incurred by or on behalf of adoptive parents that are not otherwise reimbursed from other sources. Payments for nonrecurring expenses shall be made either directly by the State agency or through another public or licensed nonprofit private agency.

(h) When the adoption of the child involves interstate placement, the State that enters into an adoption assistance agreement under section 473(a)(1)(B)(ii) of the Act or under a State subsidy program will be responsible for paying the nonrecurring adoption expenses of the child. In cases where there is interstate placement but no agreement for other Federal or State adoption assistance, the State in which the final adoption decree is issued will be responsible for reimbursement of nonrecurring expenses if the child meets the requirements of section 473(c).

(i) The term ''nonrecurring adoption expenses'' means reasonable and necessary adoption fees, court costs, attorney fees and other expenses which are directly related to the legal adoption of a child with special needs, which are not incurred in violation of State or

**EXHIBIT B**

Federal law, and which have not been reimbursed from other sources or other funds. "Other expenses which are directly related to the legal adoption of a child with special needs" means the costs of the adoption incurred by or on behalf of the parents and for which parents carry the ultimate liability for payment. Such costs may include the adoption study, including health and psychological examination, supervision of the placement prior to adoption, transportation and the reasonable costs of lodging and food for the child and/or the adoptive parents when necessary to complete the placement or adoption process.

(j) When State statutes must be amended in order to reimburse parents for nonrecurring expenses in the adoption of eligible children, legislation must be enacted before the close of the second general session following publication of the final rule and must apply retroactively to January 1, 1987. Failure to honor all eligible claims will be considered non-compliance by the State with Title IV-E of the Act.

(k) A State expenditure is considered made in the quarter during which the payment was made by a State agency to a private nonprofit agency, individual or vendor payee.

[53 FR 50220, Dec. 14, 1988]

### §1356.50 Withholding of funds for non-compliance with the approved title IV-E State plan.

(a) To be in compliance with the title IV-E State plan requirements, a State must meet the requirements of the Act and 45 CFR 1356.20, 1356.21, 1356.30, and 1356.40 of this part.

(b) To be in compliance with the title IV-E State plan requirements, a State that chooses to claim FFP for voluntary placements must meet the requirements of the Act, 45 CFR 1356.22 and paragraph (a) of this section; and

(c) For purposes of this section, the procedures in §1355.39 of this chapter apply.

[48 FR 23117, May 23, 1983, as amended at 65 FR 4091, Jan. 25, 2000; 66 FR 58677, Nov. 23, 2001]

### §1356.60 Fiscal requirements (title IV-E).

(a) *Federal matching funds for foster care maintenance and adoption assistance payments.* (1) Effective October 1, 1980, Federal financial participation (FFP) is available to States under an approved title IV-E State plan for allowable costs in expenditures for:

(i) Foster care maintenance payments as defined in section 475(4) of the Act, made in accordance with 45 CFR 1356.20 through 1356.30 of this part, section 472 of the Act and section 102(d) of Pub. L. 96–272, the Adoption Assistance and Child Welfare Act of 1980;

(ii) Adoption assistance payments made in accordance with 45 CFR 1356.20 and 1356.40 and sections 473 and 475(3) of the Act.

(2) Federal financial participation is available at the rate of the Federal medical assistance percentage as defined in section 1905(b) of the Act, Definitions, and pertinent regulations as promulgated by the Secretary, or his designee.

(b) *Federal matching funds for State and local training for foster care and adoption assistance under title IV-E.* (1) Federal financial participation is available at the rate of seventy-five percent (75%) in the costs of:

(i) Training personnel employed or preparing for employment by the State or local agency administering the plan, and;

(ii) Providing short-term training (including travel and per diem expenses) to current or prospective foster or adoptive parents and the members of the state licensed or approved child care institutions providing care to foster and adopted children receiving title IV-E assistance.

(2) All training activities and costs funded under title IV-E shall be included in the State agency's training plan for title IV-B.

(3) Short and long term training at educational institutions and in-service training may be provided in accordance with the provisions of §§235.63 through 235.66(a) of this title.

(c) *Federal matching funds for other State and local administrative expenditures for foster care and adoption assistance under title IV-E.* Federal financial participation is available at the rate of

**EXHIBIT B**

fifty percent (50%) for administrative expenditures necessary for the proper and efficient administration of the title IV-E State plan. The State's cost allocation plan shall identify which costs are allocated and claimed under this program.

(1) The determination and redetermination of eligibility, fair hearings and appeals, rate setting and other costs directly related only to the administration of the foster care program under this part are deemed allowable administrative costs under this paragraph. They may not be claimed under any other section or Federal program.

(2) The following are examples of allowable administrative costs necessary for the administration of the foster care program:

(i) Referral to services;

(ii) Preparation for and participation in judicial determinations;

(iii) Placement of the child;

(iv) Development of the case plan;

(v) Case reviews;

(vi) Case management and supervision;

(vii) Recruitment and licensing of foster homes and institutions;

(viii) Rate setting; and

(ix) A proportionate share of related agency overhead.

(x) Costs related to data collection and reporting.

(3) Allowable administrative costs do not include the costs of social services provided to the child, the child's family or foster family which provide counseling or treatment to ameliorate or remedy personal problems, behaviors or home conditions.

(d) *Cost of the data collection system.* (1) Costs related to data collection system initiation, implementation and operation may be charged as an administrative cost of title IV-E at the 50 percent matching rate subject to the restrictions in paragraph (d) (2) of this section

(2) For information systems used for purposes other than those specified by section 479 of the Act, costs must be allocated and must bear the same ratio as the foster care and adoption population bears to the total population contained in the information system as verified by reports from all other programs included in the system.

(e) *Federal matching funds for SACWIS.* All expenditures of a State to plan, design, develop, install and operate the Statewide automated child welfare information system approved under § 1355.52 of this chapter, shall be treated as necessary for the proper and efficient administration of the State plan without regard to whether the system may be used with respect to foster or adoptive children other than those on behalf of whom foster care maintenance or adoption assistance payments may be made under this part.

[47 FR 30925, July 15, 1982, as amended at 48 FR 23117, May 23, 1983; 53 FR 50221, Dec. 14, 1988; 58 FR 67938, 67947, Dec. 22, 1993; 65 FR 4091, Jan. 25, 2000; 66 FR 58677, Nov. 23, 2001]

**§§ 1356.65–1356.70    [Reserved]**

**§ 1356.71   Federal review of the eligibility of children in foster care and the eligibility of foster care providers in title IV-E programs.**

(a) *Purpose, scope and overview of the process.* (1) This section sets forth requirements governing Federal reviews of State compliance with the title IV-E eligibility provisions as they apply to children and foster care providers under paragraphs (a) and (b) of section 472 of the Act.

(2) The requirements of this section apply to State agencies that receive Federal payments for foster care under title IV-E of the Act.

(3) The review process begins with a primary review of foster care cases for the title IV-E eligibility requirements.

(i) *States in substantial compliance.* States determined to be in substantial compliance based on the primary review will be subject to another review in three years.

(ii) *States not in substantial compliance.* States that are determined not to be in substantial compliance based on the primary review will develop and implement a program improvement plan designed to correct the areas of noncompliance. A secondary review will be conducted after the completion of the program improvement plan. A subsequent primary review will be held three years from the date of the secondary review.

**Office of Human Development Services, HHS**    **§ 1356.71**

(b) *Composition of review team and preliminary activities preceding an on-site review.* (1) The review team must be composed of representatives of the State agency, and ACF's Regional and Central Offices.

(2) The State must provide ACF with the complete payment history for each of the sample and oversample cases prior to the on-site review.

(c) *Sampling guidance and conduct of review.* (1) The list of sampling units in the target population (*i.e.*, the sampling frame) will be drawn by ACF statistical staff from the Adoption and Foster Care Analysis and Reporting System (AFCARS) data which are transmitted by the State agency to ACF. The sampling frame will consist of cases of children who were eligible for foster care maintenance payments during the reporting period reflected in a State's most recent AFCARS data submission. For the initial primary review, if these data are not available or are deficient, an alternative sampling frame, consistent with one AFCARS six-month reporting period, will be selected by ACF in conjunction with the State agency.

(2) A sample of 80 cases (plus a 10 percent oversample of eight cases) from the title IV-E foster care program will be selected for the primary review utilizing probability sampling methodologies. Usually, the chosen methodology will be simple random sampling, but other probability samples may be utilized, when necessary and appropriate.

(3) Cases from the oversample will be substituted and reviewed for each of the original sample of 80 cases which is found to be in error.

(4) At the completion of the primary review, the review team will determine the number of ineligible cases. When the total number of ineligible cases does not exceed eight, ACF can conclude with a probability of 88 percent that in a population of 1000 or more cases the population ineligibility case error rate is less than 15 percent and the State will be considered in substantial compliance. For primary reviews held subsequent to the initial primary reviews, the acceptable population ineligibility case error rate threshold will be reduced from less than 15 percent (eight or fewer ineligible cases) to

less than 10 percent (four or fewer ineligible cases)). A State agency which meets this standard is considered to be in "substantial compliance" (see paragraph (h) of this section). A disallowance will be assessed for the ineligible cases for the period of time the cases are ineligible.

(5) A State which has been determined to be in "noncompliance" (*i.e.*, not in substantial compliance) will be required to develop a program improvement plan according to the specifications discussed in paragraph (i) of this section, as well as undergo a secondary review. For the secondary review, a sample of 150 cases (plus a 10 percent oversample of 15 cases) will be drawn from the most recent AFCARS submission. Usually, the chosen methodology will be simple random sampling, but other probability samples may be utilized, when necessary and appropriate. Cases from the oversample will be substituted and reviewed for each of the original sample of 150 cases which is found to be in error.

(6) At the completion of the secondary review, the review team will calculate both the sample case ineligibility and dollar error rates for the cases determined ineligible during the review. An extrapolated disallowance equal to the lower limit of a 90 percent confidence interval for the population total dollars in error for the amount of time corresponding to the AFCARS reporting period will be assessed if both the child/provider (case) ineligibility and dollar error rates exceed 10 percent. If neither, or only one, of the error rates exceeds 10 percent, a disallowance will be assessed for the ineligible cases for the period of time the cases are ineligible.

(d) *Requirements subject to review.* States will be reviewed against the requirements of title IV-E of the Act regarding:

(1) The eligibility of the children on whose behalf the foster care maintenance payments are made (section 472(a)(1)–(4) of the Act) to include:

(i) Judicial determinations regarding "reasonable efforts" and "contrary to the welfare" in accordance with § 1356.21(b) and (c), respectively;

(ii) Voluntary placement agreements in accordance with § 1356.22;

317

**EXHIBIT B**

(iii) Responsibility for placement and care vested with the State agency;

(iv) Placement in a licensed foster family home or child care institution; and,

(v) eligibility for AFDC under such State plan as it was in effect on July 16, 1996.

(2) Allowable payments made to foster care providers who comport with sections 471(a)(10), 471(a)(20), 472(b) and (c) of the Act and § 1356.30.

(e) *Review instrument.* A title IV-E foster care eligibility review checklist will be used when conducting the eligibility review.

(f) *Eligibility determination—child.* The case record of the child must contain sufficient documentation to verify a child's eligibility in accordance with paragraph (d)(1) of this section, in order to substantiate payments made on the child's behalf.

(g) *Eligibility determination—provider.* (1) For each case being reviewed, the State agency must make available a licensing file which contains the licensing history, including a copy of the certificate of licensure/approval or letter of approval, for each of the providers in the following categories:

(i) Public child care institutions with 25 children or less in residence;

(ii) Private child care institutions;

(iii) Group homes; and

(iv) Foster family homes, including relative homes.

(2) The licensing file must contain documentation that the State has complied with the safety requirements for foster and adoptive placements in accordance with § 1356.30.

(3) If the licensing file does not contain sufficient information to support a child's placement in a licensed facility, the State agency may provide supplemental information from other sources (*e.g.,* a computerized database).

(h) *Standards of compliance.* (1) Disallowances will be taken, and plans for program improvement required, based on the extent to which a State is not in substantial compliance with recipient or provider eligibility provisions of title IV-E, or applicable regulations in 45 CFR parts 1355 and 1356.

(2) Substantial compliance and noncompliance are defined as follows:

(i) *Substantial compliance*—For the primary review (of the sample of 80 cases), no more than eight of the title IV-E cases reviewed may be determined to be ineligible. (This critical number of allowable "errors," *i.e.,* ineligible cases, is reduced to four errors or less in primary reviews held subsequent to the initial primary review). For the secondary review (if required), *substantial compliance* means either the case ineligibility or dollar error rate does not exceed 10 percent.

(ii) *Noncompliance*—means not in substantial compliance. For the primary review (of the sample of 80 cases), nine or more of the title IV-E cases reviewed must be determined to be ineligible. (This critical number of allowable "errors," *i.e.,* ineligible cases, is reduced to five or more in primary reviews subsequent to the initial primary review). For the secondary review (if required), *noncompliance* means both the case ineligibility and dollar error rates exceed 10 percent.

(3) ACF will notify the State in writing within 30 calendar days after the completion of the review of whether the State is, or is not, operating in substantial compliance.

(4) States which are determined to be in substantial compliance must undergo a subsequent review after a minimum of three years.

(i) *Program improvement plans.* (1) States which are determined to be in noncompliance with recipient or provider eligibility provisions of title IV-E, or applicable regulations in 45 CFR Parts 1355 and 1356, will develop a program improvement plan designed to correct the areas determined not to be in substantial compliance. The program improvement plan will:

(i) Be developed jointly by State and Federal staff;

(ii) Identify the areas in which the State's program is not in substantial compliance;

(iii) Not extend beyond one year. A State will have a maximum of one year in which to implement and complete the provisions of the program improvement plan unless State legislative action is required. In such instances, an extension may be granted with the State and ACF negotiating the terms and length of such extension that shall

**EXHIBIT B**

not exceed the last day of the first legislative session after the date of the program improvement plan; and

(iv) Include:

(A) Specific goals;

(B) The action steps required to correct each identified weakness or deficiency; and,

(C) A date by which each of the action steps is to be completed.

(2) States determined not to be in substantial compliance as a result of a primary review must submit the program improvement plan to ACF for approval within 90 calendar days from the date the State receives written notification that it is not in substantial compliance. This deadline may be extended an additional 30 calendar days when a State agency submits additional documentation to ACF in support of cases determined to be ineligible as a result of the on-site eligibility review.

(3) The ACF Regional Office will intermittently review, in conjunction with the State agency, the State's progress in completing the prescribed action steps in the program improvement plan.

(4) If a State agency does not submit an approvable program improvement plan in accordance with the provisions of paragraphs (i)(1) and (2) of this section, ACF will move to a secondary review in accordance with paragraph (c) of this section.

(j) *Disallowance of funds.* The amount of funds to be disallowed will be determined by the extent to which a State is not in substantial compliance with recipient or provider eligibility provisions of title IV-E, or applicable regulations in 45 CFR parts 1355 and 1356.

(1) States which are in found to be in substantial compliance during the primary or secondary review will have disallowances (if any) determined on the basis of individual cases reviewed and found to be in error. The amount of disallowance will be computed on the basis of payments associated with ineligible cases for the entire period of time that each case has been ineligible.

(2) States which are found to be in noncompliance during the primary review will have disallowances determined on the basis of individual cases reviewed and found to be in error, and must implement a program improvement plan in accordance with the provisions contained within it. A secondary review will be conducted no later than during the AFCARS reporting period which immediately follows the program improvement plan completion date on a sample of 150 cases drawn from the State's most recent AFCARS data. If both the case ineligibility and dollar error rates exceed 10 percent, the State is not in compliance and an additional disallowance will be determined based on extrapolation from the sample to the universe of claims paid for the duration of the AFCARS reporting period (*i.e.,* all title IV-E funds expended for a case during the quarter(s) that case is ineligible, including administrative costs). If either the case ineligibility or dollar rate does not exceed 10 percent, the amount of disallowance will be computed on the basis of payments associated with ineligible cases for the entire period of time the case has been determined to be ineligible.

(3) The State agency will be liable for interest on the amount of funds disallowed by the Department, in accordance with the provisions of 45 CFR 30.13.

(4) States may appeal any disallowance actions taken by ACF to the HHS Departmental Appeals Board in accordance with regulations at 45 CFR Part 16.

[65 FR 4091, Jan. 25, 2000, as amended at 66 FR 58677, Nov. 23, 2001]

## PART 1357—REQUIREMENTS APPLICABLE TO TITLE IV-B

Sec.
1357.10  Scope and definitions.
1357.15  Comprehensive child and family services plan requirements.
1357.16  Annual progress and services reports.
1357.20  Child abuse and neglect programs.
1357.25  Requirements for eligibility for additional payments under section 427.
1357.30  State fiscal requirements (title IV-B, subpart 1, child welfare services).
1357.32  State fiscal requirements (title IV-B, subpart 2, family preservation and family support services).
1357.40  Direct payments to Indian Tribal Organizations (title IV-B, subpart 1, child welfare services).

319

**EXHIBIT B**