# EXHIBIT B

EDMUND G. BROWN JR.
Attorney General of the State of California
KARIN SCHWARTZ
Supervising Deputy Attorney General
GEORGE PRINCE, State Bar No. 133877
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone: (415) 703-5749
 Fax: (415) 703-5480
 Email: George.Prince@doj.ca.gov

Attorneys for Department of Social Services

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CALIFORNIA ALLIANCE OF CHILD AND FAMILY SERVICES,<br><br>                              Plaintiff,<br><br>v.<br><br>JOHN WAGNER, Director of the California Department of Social Services, in his official capacity; MARY AULT, Deputy Director of the Children and Family Services Division of the California Department of Social Services, in her official capacity,<br><br>                              Defendants. | C 06-4095 MHP<br><br>DECLARATION OF SHEILAH DUPUY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT |

I, Sheilah Dupuy, declare as follows:

1. I am currently the Chief of the Foster Care Rates Bureau (FCRB), which is within the Children and Family Services Division of the California Department of Social Services (CDSS).

2. My duties as Chief of the FCRB include supervising the implementation of federal and state laws relating to the setting of AFDC-FC rates paid to eligible group home and foster family home programs; formulating state regulations and setting administrative policies for the payment of AFDC-FC rates on behalf of those individuals meeting the eligibility requirements

1  set forth in Title IV-E of the Social Security Act (codified at 42 U.S.C. section 670 et. seq.). My
2  Bureau is responsible for overseeing statewide policies related to applicable Adoption Assistance
3  and Child Welfare Act of 1980 (P.L. 96-272) and Title IV-E eligibility provisions, revisions, and
4  maintenance of California's State Plan under Title IV-E, and providing technical assistance and
5  oversight of eligibility and funding aspects of the foster care program administration in all 58
6  California counties.
7         3. I first became employed by the CDSS in 1990 as an analyst in the Foster Care Rates
8  Policy Unit. Our responsibilities were performing analytical assignments necessary to implement
9  the group home rate-setting system. Additionally, I provided regulation development, issue
10 papers, and technical assistance to county staff and group home and foster family agency
11 providers. Specifically, my duties included the implementation of the rates provisions Senate Bill
12 370. SB 370 was responsible for ensuring that children placed into foster care in group homes
13 receive the services for which providers are being paid; that provider payment levels were
14 established appropriately; that overpayments were minimized; and that federal, State, and county
15 payment and funding systems were appropriately administered.
16        4. In 1993, I was a general policy analyst at the Department of Social Services for the
17 Foster Care Eligibility Unit. There I was a general policy analyst with an emphasis on foster care
18 eligibility issues. Issues included eligibility for either Title IV-E, or federal foster care funding, or
19 state-only foster care funding.
20        5. In 1996, I became a Staff Services Manager I with CDSS's foster care branch.
21 There I supervised a group of individuals who were responsible for implementing and providing
22 technical assistance to counties on our emergency assistance program, a program that was
23 available under Title IV-A to fund emergency foster care placements.
24        6. In 1997 I became a Staff Services Manager I in the rates policy unit of the foster
25 care branch. In that position I supervised a group of individuals who were responsible for
26 performing analytical assignments associated with rate setting policy issues under the foster care
27
28 Decl. of Sheilah Dupry in Support of Mtn for Summary Judgment        California Alliance, etc., v. Allenby, et al.
                                                                                          C 06-4095 MHP

2

1  program. In 2001 I began my current position as a staff services manager II in the Department of
2  Social Services. I serve as the Foster Care Rates Bureau Chief. In that capacity I supervise a
3  group on individuals responsible for setting rates for group homes and foster family agencies in
4  California under the foster care program. Over the last two or three years my duties have
5  expanded to include supervision of analytical staff in the areas of foster care eligibility and foster
6  care rate setting policies.

7.  Prior to my employment with the CDSS in 1990, there had been negotiations and advisory discussions and meetings with stakeholder groups made up of CDSS employees, counties, and provider groups, which studied options for a new rate setting system. Legislation was proposed in the form of Senate Bill (SB) 747, which did not pass. A later bill, SB 370 (Chapter 1294, Statutes of 1989) established the Foster Care Group Home Rate structure and was the authority for that initial promulgation of regulations for rate setting for group home programs. I am informed of and believe this history through what I was told by others and from reading documents that we submitted as part of the final regulation package, in which I participated.

8.  In 1990 I was part of a group of CDSS employees with the Foster Care Branch that worked on the drafting of regulations pursuant to Senate Bill 370 that were implemented July 1, 1990. Subsequent to the implementation I worked on various policy interpretations, and policy letters in support of the implementation of the program. Our Bureau provided training to CDSS staff as well as to group home and foster family agency providers. SB 370 established both a standard rate for each of the 14 Residential Care Levels (RCLs) and a rate floor. In fiscal year 1990-1991, each provider submitted data on rate, costs, and staffing levels from the prior fiscal year that substantiated the RCL at which its program would enter the flat rate system. The standard rates were to be phased in over a three-year period beginning July 1, 1990, with a rate floor for each of the three years. The implementing legislation required CDSS to raise the standard rate for each RCL based on information from the California Necessities Index (CNI) for fiscal years 1991-1992 and 1992-1993. Thereafter, annual CNI-based rate increases for group

Decl. of Sheilah Dupry in Support of Mtn for Summary Judgment     California Alliance, etc., v. Allenby, et al.
                                                                 C 06-4095 MHP

3

1 homes would become a discretionary item in the State budget process.

2     9. The RCL point system measures the number of "paid/awake" hours worked per month by a program's child care and social work staff and their first-line supervisors. The point system also counts the number of hours of mental health treatment services received by the children in the program, although these services do not have to be paid for by the provider. These hours are then weighted to reflect the experience, formal education, and ongoing training of the child care staff and the qualifications of the social work and mental health professionals. These "weighted hours" are then divided by 90% of the program's licensed capacity to compute the program's RCL points, which is used in the determination of the amount of payments that program receives.

    10. For foster children who meet federal eligibility requirements, the State receives approximately 50% reimbursement for federally allowable foster care activities under Title IV-E. The state's counties pay 60 percent, and the state pays 40 percent, of the non-federal share of cost.

    11. Federal reimbursement funding to states is conditional upon states meeting the requirements of Title IV-E. The federal government does not prescribe a particular system for payment for children placed in group homes, nor does in set any particular method for determining how costs are to be measured, set, or calculated. However, the state is required to submit a plan that identifies the state law that meets the federal requirements. The plan is submitted with a certificate of compliance, which ensures compliance with federal requirements, to the appropriate federal regional office.

    12. California's Title IV-E State Plan consists of a compilation of California statutes, regulations, All County Letters (ACLs), All County Information Notices (ACINs), County Fiscal Letters (CFLs), and other documents that implement federal requirements and instructions for the federal foster care program, which must be followed in order for the State to claim Federal Financial Participation (FFP) in payments made under the program. CDSS amends California's

Decl. of Sheilah Dupry in Support of Mtn for Summary Judgment      California Alliance, etc., v. Allenby, et al.
C 06-4095 MHP

4