**MORRISON | FOERSTER**

12531 HIGH BLUFF DRIVE
SUITE 100
SAN DIEGO, CALIFORNIA
92130-2040

TELEPHONE: 858.720.5100
FACSIMILE: 858.720.5125

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

NORTHERN VIRGINIA,
ORANGE COUNTY, DENVER,
SACRAMENTO, WALNUT CREEK

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

July 8, 2008

Writer's Direct Contact
858.314.5474
SKeane@mofo.com

*Electronically Filed with Hard Copy Lodged in Clerk's Office*

The Honorable William H. Alsup
U.S. District Court for the Northern District of California
450 Golden Gate Avenue, Courtroom 9, 19th Floor
San Francisco, CA 94102

Re:   *California State Foster Parent Ass'n v. Wagner*, Case No. 3:07-cv-05086-WHA

Dear Judge Alsup:

Pursuant to the June 24, 2008 Order, the Foster Parents submit this response to the State's letter dated July 1, 2008. The State has failed to meet its burden of showing that the deliberative process privilege applies to the legislative analyses it is withholding, and the July 1 letter simply confirms that the documents are not privileged and must be produced.

Although the Foster Parents discussed the legal requirements for the deliberative process privilege and their application to the withheld documents in detail in the opening brief and at the June 24 hearing, we reiterate them here briefly in the context of the arguments and evidence presented in the State's July 1 letter.

To qualify for the deliberative process privilege, "a document must be both (1) 'predecisional' or 'antecedent to the adoption of agency policy' and (2) 'deliberative,' meaning 'it must actually be related to the process by which policies are formulated.'" *Nat'l Wildlife Fed'n v. U. S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988) (quoting *Jordan v. U. S. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978)); *Assembly of State of Cal. v. U. S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992). The DSS legislative analyses are neither predecisional nor deliberative and must therefore be produced.[1] Should the Court hold that the privilege does apply, the documents must still be produced, because the Foster Parents' need for them significantly outweighs the State's desire to keep them secret.

---

[1] The Huston Declaration describes both "bill analyses" and "enrolled bill analyses." (Declaration of Patricia Huston in Support of Defendants' Claim of Deliberative Process Privilege ("Huston Decl.") ¶¶ 4, 14.) It is the Foster Parents' understanding that the six documents listed on the State's privilege log and submitted *in camera* to the Court are "bill analyses" as described by Ms. Huston. The State has not identified any "enrolled bill analyses" on its privilege log nor has it produced any such documents. Yet the "enrolled bill analyses," as described by Ms. Huston, are directly responsive to the Foster Parents' document requests to the extent those analyses involve bills relating to foster care payment rates. (*See, e.g.*, Request for Production No. 13 (requesting all analyses of proposed adjustments to foster care payment rates).) Therefore, the Foster Parents request that the State be ordered to produce any such "enrolled bill analyses" in addition to the six "bill analyses" that the State is withholding.

sd-432449

MORRISON | FOERSTER

The Honorable William H. Alsup
July 8, 2008
Page Two


**The Withheld Documents Are Not Antecedent To The Formulation Of Agency Policy**

The DSS analyses of proposed legislation are not predecisional, because there is no agency decision or policy to which the analyses are antecedent.  *See Maricopa Audubon Soc'y v. U. S. Forest Serv.*, 108 F.3d 1089, 1094 (9th Cir. 1997) ("[T]he agency must identify a *specific decision* to which the document is predecisional.") (emphasis added).  The Ninth Circuit has made clear that "[a] predecisional document is one prepared in order to assist an *agency* decisionmaker in arriving at his decision…."  *Id.* at 1093 (quoting *Assembly*, 968 F.2d at 920) (internal quotation marks omitted) (emphasis added).  Here, the State identifies no specific DSS or California Health and Human Services Agency ("HHS") decision or policy to which these analyses are antecedent.   Instead, it *admits* that any decision to which the DSS analyses contribute is a decision in the Governor's office, not the agency, (Huston Decl. ¶ 10), and then cites no authority to support expanding the limited privilege to this situation.  *See United States v. Rozet*, 183 F.R.D. 662, 665 (N.D. Cal. 1998) (deliberative process privilege is a "narrow privilege" that should not be "indiscriminately invoked").  Indeed, the privilege does not apply to legislative analyses, such as those at issue here, that do not contribute to agency policy.  *See Soto v. Concord*, 162 F.R.D. 603, 612 (N.D. Cal. 1995) ("The deliberative process privilege should be invoked only in the context of communications designed to directly contribute to the formulation of important public policy.").

**The Withheld Documents Are Not Deliberative**

The documents also do not qualify as deliberative.  A document is deliberative if its release "would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position. To test whether disclosure of a document is likely to adversely affect the purposes of the privilege, courts ask themselves whether the document is *so candid or personal in nature* that public disclosure is likely in the future to stifle honest and frank communication within the agency." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (emphasis added).  The Ninth Circuit has recognized the deliberative process privilege in cases where the documents represented "the tentative opinions and recommendations of [agency] employees."  *Nat'l Wildlife*, 861 F.2d at 1121.

Based on the information provided in the State's July 1 letter, the DSS analyses were compiled by the Office of Legislation from DSS staff input, signed by the DSS Director's Office and submitted as official DSS recommendations to HHS.  (Huston Decl. ¶¶ 6, 8.)  Accordingly, the documents do not "inaccurately reflect or prematurely disclose the views of the agency," because they are the *final* recommendations of DSS that have been through multiple layers of review.  *Coastal States*, 617 F.2d at 866.  These documents are not tentative opinions or recommendations of individual DSS staff members, as in *National Wildlife*.  Rather, these are the final, polished DSS analyses of proposed legislation, representing the work of multiple staff members and signed by the Director of DSS himself.  Thus, "the give-and-take that occurs among agency members in the formulation of policy" is simply not present for these particular documents.  *Nat'l Wildlife*, 861 F.2d at 1117.  In addition, Ms. Huston confirms that the DSS analyses are "read by people within CDSS and within the Administration."  (Huston Decl. ¶ 4.)  This is hardly the internal dialogue between agency staff and director that the deliberative process privilege is intended to protect.  *Id.*

sd-432449

MORRISON | FOERSTER

The Honorable William H. Alsup
July 8, 2008
Page Three

None of the three cases cited in the State's July 1 letter alters this conclusion. *Allen v. Woodford*, 543 F. Supp. 2d 1138 (E.D. Cal. 2008), did not involve the deliberative process privilege, and in the earlier decision of *Allen v. Woodford*, No. CV-F-05-1104 OWW LJO, 2007 WL 309945 (E.D. Cal. Jan. 30, 2007), the court found that the privilege did not apply. The third case cited by the State, *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 239 F.R.D. 508 (N.D. Ill. 2006), which involved a motion to compel documents from *non-party* government agencies, is not only inapplicable to circumstances where the government is a party, it also underscores why the DSS analyses are not privileged. The *Household* court held that "[t]he purpose of the privilege is to enhance the quality of *agency decisions* by protecting open and frank discussion *among those who make them* within the Government." *Id.* at 514-15 (internal quotation marks omitted) (emphasis added). Here, the State has conceded that "CDSS does not have decisional authority" regarding the subject matter of the DSS analyses at issue. (Declaration of John A. Wagner in Support of Defendants' Claim of Deliberative Process Privilege ("Wagner Decl.") ¶ 4.) Thus, DSS cannot properly assert the deliberative process privilege over the withheld documents.

**The Foster Parents' Need For The Documents Outweighs The State's Need For Secrecy**

Even if the Court determines that the deliberative process privilege applies to the DSS analyses, the documents must still be produced as the need for this discovery clearly outweighs the State's desire to keep it a secret. *Sanchez v. Johnson*, No. C-00-1593 CW (JCS), 2001 U.S. Dist. LEXIS 25233, at *22 (N.D. Cal. Nov. 19, 2001). As previously explained, courts in the Ninth Circuit have adopted an eight-factor test to balance the need for disclosure with the need for secrecy, *N. Pacifica, LLC v. Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003), and each of the these factors weighs strongly in favor of disclosure here. We highlight the two most relevant below. .

First, there is no question that the DSS analyses of proposed rate increases are central to the Foster Parents' claims, which are based on the State's failure to pay the basic rates in accordance with the Child Welfare Act. On this point, the State attempts to distinguish *Sanchez* on the ground that that case involved Budget Change Proposals (BCPs). (Doc. 45 at 2-3.) The State suggests that a BCP is "a fact-based document" that does not rise to the level of an analysis such as that contained in the withheld DSS documents. (*Id.*) But *Sanchez* itself rejects this distinction and does so in a context strikingly similar to the present case: "The BCPs…are highly relevant to Plaintiffs' claims. They contain detailed facts *and analysis* concerning the adequacy of funding for various programs for the disabled, which, in turn, bear directly on whether the State's expenditures on community care are reasonable and sufficient…." *Sanchez*, 2001 U.S. Dist. LEXIS 25233, at **25-26 (emphasis added); *see also L.H. v. Schwarzenegger*, No. Civ. S-06-2042 LKK/GGH, 2007 U.S. Dist. LEXIS 52060, at *4 n.2 (E.D. Cal. July 6, 2007) ("The BCPs include *detailed analysis* of current financial burdens associated with providing parole services….") (emphasis added). Thus, *Sanchez*, where this Court found that plaintiffs' need for relevant State agency documents outweighed the State's need for secrecy, is directly on point.

Second, disclosure of the type of legislative analysis embodied in the withheld documents would not impact the candid give and take that the privilege is designed to protect. Ms. Huston asserts that disclosure of the DSS analyses would "severely chill[]" the "candid exchanges regarding the pros and cons of any proposed legislation." (Huston Decl. ¶ 17.) By the State's own admission, however, the DSS analyses are merely "read by people within CDSS and within the Administration." (*Id.* ¶ 4.) Thus, disclosure would not compromise any internal dialogue between agency staff and director that may have

MORRISON | FOERSTER

The Honorable William H. Alsup
July 8, 2008
Page Four

occurred as a precursor to the final documents that the Foster Parents seek, because those discussions are not an issue here. Nevertheless, to the extent the State still has concerns about discouraging frank discussions, they can be easily mitigated by a protective order or by disclosure under seal. *See, e.g.*, *L.H.*, 2007 U.S. Dist. LEXIS 52060, at *26.

In addition to the above arguments, it also bears mentioning that the State's position on these documents directly contradicts its position regarding rate setting in general. On the one hand, the State claims that DSS is powerless to affect rate-setting for foster care payments. On the other hand, it argues that DSS analysis of rate-setting legislation is so candid that disclosure would hinder the formulation of important public policy. The State cannot have it both ways. Indeed, the very fact that it argues so strenuously for a confidential designation is a tacit admission that DSS does have the power to affect the rate-setting process. Thus, the documents are unquestionably relevant to the Foster Parents' claims and must be produced.

**Conclusion**

For the foregoing reasons, the Foster Parents request that the Court order the State to produce the six documents identified on the privilege log as well as any "enrolled bill analyses" relating to foster care payment rates.

Respectfully Submitted,

/s/ Steve Keane

Steve Keane
Counsel for Foster Parents

cc: George Prince, Counsel for Defendants

sd-432449