1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  SUSAN M. CARSON
   Supervising Deputy Attorney General
3  GEORGE PRINCE, State Bar No. 133877
   Deputy Attorney General
4   455 Golden Gate Avenue, Suite 11000
   San Francisco, CA  94102-7004
5   Telephone:  (415) 703-5749
   Fax:  (415) 703-5480
6

7  Attorneys for Defendants

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11

12  CALIFORNIA STATE FOSTER PARENT              C 07-5086 WHA
    ASSOCIATION, CALIFORNIA STATE CARE
13  PROVIDERS ASSOCIATION,                       DEFENDANTS' NOTICE OF
    and LEGAL ADVOCATES FOR PERMANENT           MOTION AND MOTION FOR
14  PARENTING,                                   SUMMARY JUDGMENT;
                                                 MEMORANDUM OF POINTS
15                              Plaintiffs,      AND AUTHORITIES

16              v.                               Hearing: October 9, 2008
                                                 Time:  8:00 a.m.
17  JOHN A. WAGNER, Director of the California   Courtroom: 9, 19th floor
    Department of Social Services, in his official capacity;   Judge: Hon.William H. Alsup
18  GREG ROSE, Deputy Director of the Children and
    Family services Division of the California Department
19  of Social Services, in his official capacity,
                                Defendants.

20

21

22

23

24

25

26

27

28

1  TO PLAINTIFFS CALIFORNIA STATE FOSTER PARENT ASSOCIATION, CALIFORNIA

2  STATE CARE PROVIDERS ASSOCIATION, and LEGAL ADVOCATES FOR PERMANENT

3  PARENTING AND THEIR ATTORNEYS OF RECORD:

4       PLEASE TAKE NOTICE THAT  John Wagner and Greg Rose, defendants in their

5  official capacities in this action, will move the Court, on October 9, 2008, at 8:00 a.m. or as soon

6  thereafter as the matter may be heard, in Courtroom 9, the Honorable William H. Alsup,

7  presiding, in the United States District Courthouse at 450 Golden Gate Avenue, San Francisco,

8  California, for an order granting summary judgment in their behalf under Rule 56 of the Federal

9  Rules of Civil Procedure.

10       By this motion defendants seek to have the Court grant judgment in their favor and

11  against plaintiffs on all grounds of the complaint, and thereafter dismiss plaintiffs' complaint,

12  because defendants are entitled to judgment as a matter of law in this action.

13       This motion to dismiss is made on the basis that the plaintiffs' complaint cannot be

14  sustained because defendants are not violating the Child Welfare Act (Title IV-E of the Social

15  Security Act, 42 U.S.C. §§ 670-679b), as contended by plaintiffs or otherwise.

16       This motion is based on this notice of motion and motion, the supporting memorandum

17  of points and authorities in support thereof, the declarations in support of the motion, the

18  attached exhibits, the Court's file in this action, any other matters properly before this Court, on

19  argument to be presented at the hearing on the motion, and on the proposed order, a copy of

20  which is submitted with this notice of motion and motion.

21       Dated:  September 11, 2008          Respectfully submitted,

22                                       EDMUND G. BROWN JR.

                                     Attorney General of the State of California

23

24                                       SUSAN M. CARSON

                                     Supervising Deputy Attorney General

25

                                     /s/ George Prince

26

27                                       GEORGE PRINCE

                                     Deputy Attorney General

28                                       Attorneys for Defendants

# TABLE OF CONTENTS

Page

STATEMENT OF THE CASE .................................................. 3

STATEMENT OF ISSUES ..................................................... 3

STATEMENT OF FACTS NOT REASONABLY IN DISPUTE ........................ 3

ARGUMENT ................................................................ 6

I.    CALIFORNIA'S FOSTER CARE MAINTENANCE PAYMENT RATES
      TO FOSTER PARENTS DO NOT VIOLATE THE CHILD WELFARE ACT ........ 6

II.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
      BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL
      FACT THAT CALIFORNIA'S FOSTER CARE MAINTENANCE PAYMENTS
      RATES DO NOT VIOLATE THE CHILD WELFARE ACT .................... 8

CONCLUSION .............................................................. 9

i

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................ 8

**Federal Statutes**

Adoption Assistance and Child Welfare Act of 1980 (P.L. 96-272) ..................... 3,4

Child Welfare Act (Title IV-E of the Social Security Act) ............................ 3,5
      42 U.S.C. §§ 670-679b ................................................ 3,6
      42 U.S.C. § 671(a) ...................................................... 6
      42 U.S.C. § 671(a)(2) ................................................... 6
      42 U.S.C. § 671(b) ...................................................... 6
      42 U.S.C. § 672(b)(2) ................................................... 6
      42 U.S.C. § 675(4) ...................................................... 6
      42 U.S.C. § 674(A) ...................................................... 6

42 U.S.C. 1983. ..................................................................... 3

**Federal Rules**

Federal Rules of Civil Procedure
      Rule 56 ................................................................. 8
      Rule 56(c) .............................................................. 8

**California Statutes**

Senate bill 14, Chapter 978 ........................................................ 4

**California Codes**

Welfare and Institutions Code

      § 11453 ................................................................ 7
      § 11461 ............................................................... 4,7
      § 11641(d)(1)(A) ....................................................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF THE CASE

This civil-rights action was filed October 3, 2007, based on 42 U.S.C. section 1983. Plaintiffs seek a declaratory finding that defendants fail to comply with the requirements of the Child Welfare Act (Title IV-E of the Social Security Act, 42 U.S.C. sections 670-679b) and injunctive relief requiring defendants to "establish lawful foster care maintenance payments in a manner that complies with the Child Welfare Act." (Complaint for Declaratory Judgment and Permanent Injunctive Relief (Complaint), pp. 13:28-14:1.)

Plaintiffs' claims lack merit. Defendants comply with the Child Welfare Act, and thus judgment should be entered for defendants, and against plaintiffs, and this matter dismissed.

## STATEMENT OF ISSUES

There is but one issue in this action: Do the foster care payment rates paid to foster parents by California violate the requirements of the federal Child Welfare Act and/or its implementing regulations?

## STATEMENT OF FACTS NOT REASONABLY IN DISPUTE

The Foster Care Rates Bureau of the California Department of Social Services (CDSS) is responsible for overseeing statewide policies related to applicable Adoption Assistance and Child Welfare Act of 1980 (P.L. 96-272) and Title IV-E eligibility provisions, revisions, and maintenance of California's State Plan under Title IV-E, and providing technical assistance and oversight of eligibility and funding aspects of the foster care program administration in all 58 counties of California. (Declaration of Debra Williams in Support of Defendants' Motion for Summary Judgement (Williams Decl.), ¶ 2.)[1/]

---

1. Debra Williams is employed by the California Department of Social Services, and her current position is Bureau Chief, Foster Care Rates Bureau, in the Foster Care Audits and Rates Branch, a position she has held since January 2008. (Williams Decl., ¶ 1.) Prior to becoming Bureau Chief, Ms. Williams held a variety of positions within that Branch, including, between April 2006 and January 2008, that of manager of the Policy and Support Unit. There, her duties included supervising and providing policy development and support for program, financial and fiscal audits; audit activities; quality control and the hearing process for group home and foster family agency audits; regulation development; corresponding legislative and budget activities; Title IV-E overpayment and collection activities; and staff and provider technical assistance and training

1       The United States Department of Health and Human Services' (HHS) Administration

2   for Children and Families provides oversight of state child welfare services and foster care

3   programs. The Department issues regulations and policy, conducts compliance reviews and child

4   welfare services and foster care funds to the state. The federal government develops and

5   implements national policy by issuing regulations, overseeing states' performance, and

6   conducting compliance audits. It also allocates federal funds for child welfare and related

7   programs to state, county, city, and tribal governments, and to public and private local agencies.

8   (Williams Decl., ¶ 8.)

9       CDSS is California's state agency responsible for child welfare services. CDSS

10  supervises California's 58 counties' administration of child welfare services and foster care

11  programs through statute, regulations, policy, and compliance reviews. CDSS also allocates

12  federal and state funds to the State's counties. (Williams Decl., ¶ 9.)

13      The Adoption Assistance & Child Welfare Act was enacted in 1980. This act created a

14  categorical funding stream for out-of-home board and care. It maintained the basic goal of

15  protecting children, but established a preference for family maintenance or reunification and an

16  expectation that services would be provided to prevent unnecessary out-of-home placement.

17  Senate Bill (SB) 14 (Chapter 978) in 1982 revised California's system to conform to the federal

18  Adoption Assistance and Child Welfare Act. (Williams Decl., ¶ 10.)

19      California's foster family home rates are set by the State's Legislature, as set forth in

20  Welfare and Institutions Code section 11461, and changes to those rates are made by the

21  Legislature by amendments to that statute. (Williams Decl., ¶ 11.)

22      Foster care is an entitlement program funded by federal, state, and local governments.

23  For foster children who meet federal eligibility requirements, the State receives approximately

24  50% reimbursement for federally allowable foster care activities under Title IV-E. California's

25  

26  implementation of federal and state laws relating to group home and foster family agency audits.
    This included formulating state regulations and setting administrative policies and procedures for

27  the audit of programs receiving Aid to Families with Dependent Children — Foster Care (AFDC-
    FC) funds. (Williams Decl., ¶ 3.) Aside from spending three years in the private sector, Ms.

28  Williams has been with the Department of Social Services in various capacities since 1991, primarily
    in the foster care area. (Williams Decl., ¶¶ 4-7.)

1  58 counties pay 60 percent, and the State pays 40 percent, of the non-federal share of cost.

2  (Williams Decl., ¶ 12.)

3        Federal reimbursement funding to states is conditional upon States meeting the

4  requirements of Title IV-E of the Child Welfare Act.  The federal government does not prescribe

5  a particular system for payment of costs for children placed in foster family homes, nor does it

6  set any particular method for determining how costs are to be measured, set or calculated.

7  However, the State is required to submit a plan that identifies the state law that meets the federal

8  requirements. The plan is submitted with a certificate of compliance, which ensures compliance

9  with federal requirements, to the appropriate federal regional office.  (Williams Decl., ¶ 13.)

10        California's Title IV-E State Plan consists of a compilation of California statutes,

11  regulations, All County Letters (ACLs), All County Information Notices (ACINs), County Fiscal

12  Letters (CFLs) and other documents that implement federal requirements and instructions for the

13  federal foster care program, which must be followed in order for the State to claim Federal

14  Financial Participation (FFP) in payments made under the program. CDSS amends California's

15  IV-E State Plan when HHS issues new federal requirements, changes existing federal regulations,

16  or when a new State requirement as the result of law or court order substantially affects the

17  State's foster care program.  Updates to the IV-E State Plan that are submitted to HHS in

18  response to such requirements or instructions include any new statutes, regulations and ACLs

19  that came into effect since the previous update.  Any changes to the State Plan must be approved

20  by Region IX of HHS, the regional division of HHS that oversees the agencies activities in

21  California and several other states.  (Williams Decl., ¶ 14.)

22        The customary practice at CDSS in preparing ACLs that substantially change the way

23  California claims FFP in the foster care program is for CDSS to provide drafts to, and consult

24  informally with, Region IX HHS staff about the contents of a proposed ACL. The purpose of the

25  consultation is to ensure that the ACL will ultimately be approved by HHS as an amendment to

26  our IV-E State Plan.  If Region IX indicates disagreement with the contents of the ACL, attempts

27  are made to address the concerns raised by changing the contents of the ACL. (Williams Decl., ¶

28  15.)

1    California's most recent substantial IV-E State Plan amendment was submitted to HHS

2    in 2007. The portion of the State Plan dealing with foster family home rates has been approved

3    by the HHS. There have been no denials of any IV-E State Plan relating to the setting of rates for

4    foster family homes by HHS at any time.  (Williams Decl., ¶ 16.)

5                                     **ARGUMENT**

6    **I.    CALIFORNIA'S FOSTER CARE MAINTENANCE PAYMENT RATES TO**
     **FOSTER PARENTS DO NOT VIOLATE THE CHILD WELFARE ACT.**
7

8           Plaintiffs' primary claim in this action is that the foster care maintenance payment rates

9    California provides to foster parents do not cover the actual costs incurred by foster parents in

10   caring for foster children, and for this reason California is in violation of the Child Welfare Act.

11   Plaintiffs offer a variety of bases for their contention that the "actual" costs of providing care for

12   foster children exceeds the costs actually provided to foster parents.  However, regardless of the

13   means by which "actual" costs are measured, and regardless of whether the "actual" cost of

14   providing care to foster children has outpaced government's funding for such care, it does not

15   follow that California's payments rates violates the Child Welfare Act.  In short, plaintiffs' claim

16   that the Child Welfare Act requires the payment of "actual" costs is without foundation.

17          The Child Welfare Act dictates that states participating in the program to receive

18   federal assistance provide "foster care maintenance payments" for eligible children who may

19   reside, among other places, in foster family homes.  42 U.S.C. sections 671(a)(2), 672(b)(2);

20   675(4).  The term "foster care maintenance payments" as detailed in the Child Welfare Act

21   "means payments to cover the of (and the cost of providing) food, clothing, shelter, daily

22   supervision, school supplies, a child's personal incidentals, liability insurance with respect to a

23   child, and reasonable travel to the child's home for visitation.  42 U.S.C. section 675(4)(A).

24          The federal government does not prescribe a particular system for payment of costs for

25   children placed in foster family homes, nor does it set any particular method for determining how

26   costs are to be measured, set or calculated; the Child Welfare Act merely requires a participating

27   state to submit a plan for financial assistance to the Secretary of the Department of Health and

28   Human Services for approval.  42 U.S.C. section 671(a), (b).  California submits, as required, a

1  plan that identifies the state law that meets the federal requirements. The plan is submitted with a

2  certificate of compliance, which ensures compliance with federal requirements, to the appropriate

3  federal regional office. (Williams Decl., paragraph 13.)

4        California's most recent substantial IV-E State Plan amendment was submitted to HHS

5  in 2007. The portion of the State Plan dealing with foster family home rates has been approved

6  by the HHS. There have been no denials of any IV-E State Plan relating to the setting of rates for

7  foster family homes by HHS at any time. (Williams Decl., paragraph 16.)

8        California's rate schedule for foster children placed in approved or licensed homes is

9  set forth in Welfare & Institutions Code section 11461.[2/] Welfare & Institutions Code section

10  11461(d)(1)(A) states: "Beginning with the 1991-92 fiscal year, the schedule of basic rates in

11  subdivision (a) shall be adjusted by the percentage changes in the California Necessities Index,

12  computed pursuant to the methodology described in Section 11453, subject to the availability of

13  funds."[3/]

14        Thus, while California attempts to provide increases in payments to foster care parents

15  in step with the California Necessities Index, the implementing statute recognizes the realities of

16  our state budget: at times there are simply insufficient funds to provide the funding increases that

17  might otherwise be granted, and thus includes the language making clear that rate increases are

18  "subject to the availability of funds."   Welfare & Institutions Code section 11641(d)(1)(A).

19

20

21  //

22  //

23

24  _____

25        2. A true and correct copy of Welfare & Institutions Code section 11461 is attached to this
   memorandum as Exhibit A

26        3.  The California Necessities Index is a cost-of-living measurement tool; as used for

27  purposes of Welfare & Institutions Code section 11461 (and other code sections having to do with
   other forms of foster care), it "means the weighted average changes for food, clothing, fuel, utilities,

28  rent, and transportation for low-income consumers." Welfare & Institutions Code section 11453,
   a true and correct copy of which is attached to this memorandum as Exhibit B

1    **II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE**
**IS NO GENUINE ISSUE OF MATERIAL FACT THAT CALIFORNIA'S FOSTER**
2    **CARE MAINTENANCE PAYMENTS RATES DO NOT VIOLATE THE CHILD**
**WELFARE ACT.**

3

4              Plaintiffs case rests in its entirety on its contention that California's foster care

5    maintenance payments rates to foster parents violate the Child Welfare Act because they do not

6    cover the "actual" costs of providing that care.  There is no legal support for plaintiffs'

7    contention; accordingly, judgment must be entered on behalf of defendants.

8              Rule 56 of the Federal Rules of Civil Procedure provides that a summary judgment

9    motion shall be granted when there is no genuine issue as to any material fact, and if the moving

10   party is entitled to judgment as a matter of law.  In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986),

11   the Supreme Court stated that:

12              In our view, the plain language of Rule 56(c) mandates the entry of summary
             judgment, after adequate time for discovery and upon motion, against a party
13              who fails to make a showing sufficient to establish the existence of an
             element essential to that party's case, and on which that party will bear the
14              burden of proof at trial.

15   *Id.* at 322.  The non-moving party's failure of proof on an essential element of its claim renders

16   all other facts immaterial.  *Id.*

17              Neither the Child Welfare Act nor its implementing regulations dictate that the States

18   are to pay "actual" costs of providing foster care to foster parents, as plaintiffs contend.

19   California's rate system has  not been found by the federal agency and officials under whose

20   authority the system operates to be out of compliance with the Child Welfare Act.  Accordingly,

21   there is no showing plaintiffs can make to prevail in this matter.

22

23

24

25

26   //

27   //

28

Defendants' Notice of Mtn. & Mtn. for  Summary Judgment                                    C 07-5086 WHA

**CONCLUSION**

In sum, there is no valid basis to plaintiffs' contention that the foster care maintenance payment rates used by California for foster parents violates the Child Welfare Act. For the reasons set forth above, California's system does not violate the Child Welfare Act or any of its regulations or other provisions. Thus, defendants' motion for summary judgment in their favor and against plaintiffs should be granted, and this action should be dismissed.

Dated: September 11, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

SUSAN M. CARSON
Supervising Deputy Attorney General

/s/ George Prince

GEORGE PRINCE
Deputy Attorney General

Attorneys for Defendants

# EXHIBIT A

**§ 11461. Rates for children placed in a licensed or approved family home**

| • Historical Notes • Research References |
| --- |

(a) For children placed in a licensed or approved family home with a capacity of six or less, or in an approved home of a relative or nonrelated legal guardian, or the approved home of a nonrelative extended family member as described in Section 362.7, the per child per month rates in the following schedule shall be in effect for the period July 1, 1989, through December 31, 1989:

| Age | Basic rate |
| --- | --- |
| 0-4 | $ 294 |
| 5-8 | 319 |
| 9-11 | 340 |
| 12-14 | 378 |
| 15-20 | 412 |

(b)(1) Any county that, as of October 1, 1989, has in effect a basic rate that is at the levels set forth in the schedule in subdivision (a), shall continue to receive state participation, as specified in subdivision (c) of Section 15200, at these levels.

(2) Any county that, as of October 1, 1989, has in effect a basic rate that exceeds a level set forth in the schedule in subdivision (a), shall continue to receive the same level of state participation as it received on October 1, 1989.

(c) The amounts in the schedule of basic rates in subdivision (a) shall be adjusted as follows:

(1) Effective January 1, 1990, the amounts in the schedule of basic rates in subdivision (a) shall be increased by 12 percent.

(2) Effective May 1, 1990, any county that did not increase the basic rate by 12 percent on January 1, 1990, shall do both of the following:

(A) Increase the basic rate in effect December 31, 1989, for which state participation is received by 12 percent.

(B) Increase the basic rate, as adjusted pursuant to subparagraph (A) by an additional 5 percent.

(3)(A) Except as provided in subparagraph (B), effective July 1, 1990, for the 1990-91 fiscal year, the amounts in the schedule of basic rates in subdivision (a) shall be increased by an additional 5 percent.

(B) The rate increase required by subparagraph (A) shall not be applied to rates increased May 1, 1990, pursuant to paragraph (2).

(4) Effective July 1, 1998, the amounts in the schedule of basic rates in subdivision (a) shall be increased by 6 percent. Notwithstanding any other provision of law, the 6-percent increase provided for in this

paragraph shall, retroactive to July 1, 1998, apply to every county, including any county to which paragraph (2) of subdivision (b) applies, and shall apply to foster care for every age group.

(5) Notwithstanding any other provision of law, any increase that takes effect after July 1, 1998, shall apply to every county, including any county to which paragraph (2) of subdivision (b) applies, and shall apply to foster care for every age group.

(6) The increase in the basic foster family home rate shall apply only to children placed in a licensed foster family home receiving the basic rate or in an approved home of a relative or nonrelative extended family member, as described in Section 362.7 or nonrelated legal guardian receiving the basic rate. The increased rate shall not be used to compute the monthly amount that may be paid to licensed foster family agencies for the placement of children in certified foster homes.

(d)(1)(A) Beginning with the 1991-92 fiscal year, the schedule of basic rates in subdivision (a) shall be adjusted by the percentage changes in the California Necessities Index, computed pursuant to the methodology described in Section 11453, subject to the availability of funds.

(B) In addition to the adjustment in subparagraph (A) effective January 1, 2000, the schedule of basic rates in subdivision (a) shall be increased by 2.36 percent rounded to the nearest dollar.

(C) Effective January 1, 2008, the schedule of basic rates in subdivision (a), as adjusted pursuant to subparagraph (B), shall be increased by 5 percent, rounded to the nearest dollar. The increased rate shall not be used to compute the monthly amount that may be paid to licensed foster family agencies for the placement of children in certified foster family homes, and shall not be used to recompute the foster care maintenance payment that would have been paid based on the age-related, state-approved foster family home care rate and any applicable specialized care increment, for any adoption assistance agreement entered into prior to October 1, 1992, or in any subsequent reassessment for adoption assistance agreements executed before January 1, 2008.

(2)(A) Any county that, as of the 1991-92 fiscal year, receives state participation for a basic rate that exceeds the amount set forth in the schedule of basic rates in subdivision (a) shall receive an increase each year in state participation for that basic rate of one-half of the percentage adjustments specified in paragraph (1) until the difference between the county's adjusted state participation level for its basic rate and the adjusted schedule of basic rates is eliminated.

(B) Notwithstanding subparagraph (A), all counties for the 1999 -2000 fiscal year and the 2007-08 fiscal year shall receive an increase in state participation for the basic rate of the entire percentage adjustment described in paragraph (1).

(3) If a county has, after receiving the adjustments specified in paragraph (2), a state participation level for a basic rate that is below the amount set forth in the adjusted schedule of basic rates for that fiscal year, the state participation level for that rate shall be further increased to the amount specified in the adjusted schedule of basic rates.

(e)(1) As used in this section, "specialized care increment" means an approved amount paid with state participation on behalf of an AFDC-FC child requiring specialized care to a home listed in subdivision (a) in addition to the basic rate. On the effective date of this section, the department shall continue and maintain the current ratesetting system for specialized care.

(2) Any county that, as of the effective date of this section, has in effect specialized care increments that have been approved by the department, shall continue to receive state participation for those payments.

(3) Any county that, as of the effective date of this section, has in effect specialized care increments that exceed the amounts that have been approved by the department, shall continue to receive the same level of state participation as it received on the effective date of this section.

(4)(A) Except for subparagraph (B), beginning January 1, 1990, specialized care increments shall be adjusted in accordance with the methodology for the schedule of basic rates described in subdivision (c) and (d). No county shall receive state participation for any increases in a specialized care increment which exceeds the adjustments made in accordance with this methodology.

(B) Notwithstanding subdivision (e) of Section 11460, for the 1993 -94 fiscal year, an amount equal to 5 percent of the State Treasury appropriation for family homes shall be added to the total augmentation for the AFDC-FC program in order to provide incentives and assistance to counties in the area of specialized care. This appropriation shall be used, but not limited to, encouraging counties to implement or expand specialized care payment systems, to recruit and train foster parents for the placement of children with specialized care needs, and to develop county systems to encourage the placement of children in family homes. It is the intent of the Legislature that in the use of these funds, federal financial participation shall be claimed whenever possible.

(f)(1) As used in this section, "clothing allowance" means the amount paid with state participation in addition to the basic rate for the provision of additional clothing for an AFDC-FC child, including, but not limited to, an initial supply of clothing and school or other uniforms.

(2) Any county that, as of the effective date of this section, has in effect clothing allowances, shall continue to receive the same level as it received on the effective date of this section.

(3)(A) Commencing in the 2007-08 fiscal year, for children whose foster care payment is the responsibility of Colusa, Plumas, and Tehama Counties, the amount of the clothing allowance may be up to two hundred seventy-four dollars ($274) per child per year.

(B) Each county listed in subparagraph (A) that elects to receive the clothing allowance shall submit a Clothing Allowance Program Notification to the department within 60 days after the effective date of the act that adds this paragraph.

(C) The Clothing Allowance Program Notification shall identify the specific amounts to be paid and the disbursement schedule for these clothing allowance payments.

(4) Beginning January 1, 1990, except as provided in paragraph (5), clothing allowances shall be adjusted annually in accordance with the methodology for the schedule of basic rates described in subdivision (c) and (d). No county shall be reimbursed for any increases in clothing allowances which exceed the adjustments made in accordance with this methodology.

(5) For the 2000-01 fiscal year and each fiscal year thereafter, without a county share of cost, notwithstanding subdivision (c) of Section 15200, each child shall be entitled to receive a supplemental clothing allowance of one hundred dollars ($100) per year subject to the availability of funds. The clothing allowance shall be used to supplement, and not supplant, the clothing allowance specified in paragraph (1).

CREDIT(S)
(Added by Stats.1989, c. 1294, § 6. Amended by Stats.1990, c. 76 (S.B.746), § 1, eff. May 2, 1990; Stats.1991, c. 1091 (A.B.1487), § 163; Stats.1991, c. 97 (S.B.724), § 10.5, eff. June 30, 1991; Stats.1992, c. 722 (S.B.485), § 39, eff. Sept. 15, 1992; Stats.1993, c. 69 (S.B.35), § 39, eff. June 30, 1993; Stats.1997, c. 944 (A.B.1391), § 1; Stats.1998, c. 311 (S.B.933), § 60, eff. Aug. 19, 1998; Stats.1999, c. 147 (A.B.1111), § 20, eff. July 22, 1999; Stats.2000, c. 108 (A.B.2876), § 40, eff. July 10, 2000; Stats.2001, c. 653 (A.B.1695), § 17, eff. October 10, 2001; Stats.2007, c. 177 (S.B.84), § 28, eff. Aug. 24, 2007.)

Historical Notes

**Historical And Statutory Notes**

2001 Legislation

Stats.2001, c. 653 (A.B.1695), § 1, provides:

"It is the intent of the Legislature to continue to promote the successful implementation of the statutory preference for foster care placement with relative caregivers as set forth in Section 7950 of the Family Code. Placement of a child with a relative caregiver most closely meets the statutory requirement of Section 16000 of the Welfare and Institutions Code that a child live in the least restrictive and most familylike setting possible. California's clear mandate for an exhaustive search for available relatives and primary consideration of these relatives for placement is in accord with federal Title IV-E requirements that the "State shall consider giving preference to an adult relative over a nonrelated caregiver when determining placement for a child.'

"The intent of the Legislature is to clarify that California's relative caregiver approval process employs the same standards used to license foster care homes in accordance with the federal Adoption and Safe Families Act of 1997, (P.L. 105-89), and, therefore, California's compliance entitles it to continuous Title IV-E foster care maintenance and administration payments."

Stats.2001, c. 653 (A.B.1695), § 21, provides:

"Notwithstanding the provisions of the Administrative Procedure Act, Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code, on and before June 30, 2002, the State Department of Social Services may implement the applicable provisions of this act through all county letters or similar instructions from the director.

"The director shall adopt regulations, as otherwise necessary, to implement the applicable provisions of this act no later than July 1, 2002. Emergency regulations to implement the applicable provisions of this act may be adopted by the director in accordance with the Administrative Procedures Act."

For letter of intent relating to Stats.2001, c. 653 (A.B. 1695), see Historical and Statutory Notes under Welfare and Institutions Code § 309.

2007 Legislation

For urgency effective and other uncodified provisions relating to Stats.2007, c. 177 (S.B.84), see Historical and Statutory Notes under Family Code § 17601.

2001 Main Volume

Severability provisions of Stats.1989, c. 1294, see Historical and Statutory Notes under Welfare and Institutions Code § 5407.

Subordination of legislation by Stats.1991, c. 1091 (A.B.1487) see Historical and Statutory notes under Bus. & Prof. C. § 800.

Section 70 of Stats.1993, c. 69 (S.B.35), describing operation of provisions of that chapter requiring federal waiver or federal approval, is set out in the Historical and Statutory Notes under Welfare and Institutions Code § 10101.

Provisions of Stats.1998, c. 311 (S.B.933), relating to development of protocols for placement of foster children in group homes, emergency regulations, creation of a community care facility law enforcement task force, and providing for a reexamination of the role of out-of-home placements, see Historical and Statutory Notes under Welfare and Institutions Code § 18987.6.

Former § 11461, added by Stats.1982, c. 977, § 13, amended by Stats.1983, c. 323, § 115.3, relating to rates for children placed in licensed or approved homes, was repealed by Stats.1983, c. 323, § 115.3, operative Dec. 31, 1985.

**Derivation:** Former § 11461, added by Stats.1982, c. 977, § 13, amended by Stats.1983, c. 323, § 115.3.

Research References

## Cross References

Foster care pilot program to establish a family approval process, see <u>Welfare and Institutions Code § 16519.5</u>.

Supportive Transitional Emancipation Program, funding, see <u>Welfare and Institutions Code § 11403.1</u>.

2001 Main Volume

## Collateral References:

<u>Cal Jur 3d Pub Aid §14</u>

**EXHIBIT B**

**§ 11453. Annual adjustments**

---

• Historical Notes • Notes of Decisions

---

(a) Except as provided in subdivision (c), the amounts set forth in Section 11452 and subdivision (a) of Section 11450 shall be adjusted annually by the department to reflect any increases or decreases in the cost of living. These adjustments shall become effective July 1 of each year, unless otherwise specified by the Legislature. For the 2000-01 fiscal year to the 2003-04 fiscal year, inclusive, these adjustments shall become effective October 1 of each year. The cost-of-living adjustment shall be calculated by the Department of Finance based on the changes in the **California Necessities Index**, which as used in this section means the weighted average changes for food, clothing, fuel, utilities, rent, and transportation for low-income consumers. The computation of annual adjustments in the **California Necessities Index** shall be made in accordance with the following steps:

(1) The base period expenditure amounts for each expenditure category within the **California Necessities Index** used to compute the annual grant adjustment are:

```
Food ............................................................ $ 3,027

Clothing (apparel and upkeep) ................................... 406

Fuel and other utilities ........................................ 529

Rent, residential ............................................... 4,883

Transportation .................................................. 1,757
                                                                -------
   Total ....................................................... $10,602
```

(2) Based on the appropriate components of the Consumer Price Index for All Urban Consumers, as published by the United States Department of Labor, Bureau of Labor Statistics, the percentage change shall be determined for the 12-month period ending with the December preceding the year for which the cost-of-living adjustment will take effect, for each expenditure category specified in subdivision (a) within the following geographical areas: Los Angeles-Long Beach-Anaheim, San Francisco-Oakland, San Diego, and, to the extent statistically valid information is available from the Bureau of Labor Statistics, additional geographical areas within the state which include not less than 80 percent of recipients of aid under this chapter.

(3) Calculate a weighted percentage change for each of the expenditure categories specified in subdivision (a) using the applicable weighting factors for each area used by the State Department of Industrial Relations to calculate the California Consumer Price Index (CCPI).

(4) Calculate a category adjustment factor for each expenditure category in subdivision (a) by (1) adding

100 to the applicable weighted percentage change as determined in paragraph (2) and (2) dividing the sum by 100.

(5) Determine the expenditure amounts for the current year by multiplying each expenditure amount determined for the prior year by the applicable category adjustment factor determined in paragraph (4).

(6) Determine the overall adjustment factor by dividing (1) the sum of the expenditure amounts as determined in paragraph (4) for the current year by (2) the sum of the expenditure amounts as determined in subdivision (d) for the prior year.

(b) The overall adjustment factor determined by the preceding computation steps shall be multiplied by the schedules established pursuant to Section 11452 and subdivision (a) of Section 11450 as are in effect during the month of June preceding the fiscal year in which the adjustments are to occur and the product rounded to the nearest dollar. The resultant amounts shall constitute the new schedules which shall be filed with the Secretary of State.

(c)(1) No adjustment to the maximum aid payment set forth in subdivision (a) of Section 11450 shall be made under this section for the purpose of increasing the benefits under this chapter for the 1990-91, 1991-92, 1992-93, 1993-94, 1994-95, 1995-96, 1996-97, and 1997-98 fiscal years, and through October 31, 1998, to reflect any change in the cost of living. For the 1998-99 fiscal year, the cost of living adjustment that would have been provided on July 1, 1998, pursuant to subdivision (a) shall be made on November 1, 1998. No adjustment to the maximum aid payment set forth in subdivision (a) of Section 11450 shall be made under this section for the purpose of increasing the benefits under this chapter for the 2005-06 and 2006-07 fiscal years to reflect any change in the cost-of-living. Elimination of the cost-of-living adjustment pursuant to this paragraph shall satisfy the requirements of Section 11453.05, and no further reduction shall be made pursuant to that section.

(2) No adjustment to the minimum basic standard of adequate care set forth in Section 11452 shall be made under this section for the purpose of increasing the benefits under this chapter for the 1990-91 and 1991-92 fiscal years to reflect any change in the cost of living.

(3) In any fiscal year commencing with the 2000-01 fiscal year to the 2003-04 fiscal year, inclusive, when there is any increase in tax relief pursuant to the applicable paragraph of subdivision (a) of <u>Section 10754 of the Revenue and Taxation Code</u>, then the increase pursuant to subdivision (a) of this section shall occur. In any fiscal year commencing with the 2000-01 fiscal year to the 2003-04 fiscal year, inclusive, when there is no increase in tax relief pursuant to the applicable paragraph of subdivision (a) of <u>Section 10754 of the Revenue and Taxation Code</u>, then any increase pursuant to subdivision (a) of this section shall be suspended.

(4) Notwithstanding paragraph (3), an adjustment to the maximum aid payments set forth in subdivision (a) of Section 11450 shall be made under this section for the 2002-03 fiscal year, but the adjustment shall become effective June 1, 2003.

(5) No adjustment to the maximum aid payment set forth in subdivision (a) of Section 11450 shall be made under this section for the purpose of increasing benefits under this chapter for the 2007-08 fiscal year.

(d) For the 2004-05 fiscal year, the adjustment to the maximum aid payment set forth in subdivision (a) shall be suspended for three months commencing on the first day of the first month following the effective date of the act adding this subdivision.

(e) For the 2008-09 fiscal year, the adjustment to the maximum aid payment set forth in subdivision (a) shall be effective October 1, 2008. For the 2009-10 fiscal year, the adjustment to the maximum aid payment set forth in subdivision (a) shall take effect on July 1, 2009.

(f) Adjustments for subsequent fiscal years pursuant to this section shall not include any adjustments for any fiscal year in which the cost of living was suspended pursuant to subdivision (c).

CREDIT(S)

(Added by Stats.1971, c. 578, p. 1161, § 29.1, eff. Aug. 13, 1971. Amended by Stats.1976, c. 348, p. 969, § 3, eff. July 8, 1976, operative Jan. 1, 1977; Stats.1980, c. 511, p. 1429, § 4; Stats.1981, c. 69, p. 167, § 13, eff. June 17, 1981, operative July 1, 1981; Stats.1982, c. 115, p. 362, § 43, eff. March 13, 1982; Stats.1982, c. 327, p. 1550, § 215, eff. June 30, 1982; Stats.1983, c. 323, § 114, eff. July 21, 1983; Stats.1990, c. 455 (S.B.1783), § 2; Stats.1990, c. 456 (A.B.3573), § 4, eff. July 31, 1990; Stats.1991, c. 97 (S.B.724), § 10, eff. June 30, 1991, operative July 1, 1991; Stats.1995-96, 4th Ex.Sess., c. 1 (A.B.1), § 8, eff. June 27, 1996; Stats.1996, c. 206 (S.B.1780), § 7, eff. July 22, 1996; Stats.1997, c. 270 (A.B.1542), § 141, eff. Aug. 11, 1997, operative Aug. 18, 1997; Stats.1998, c. 329 (A.B.2779), § 23, eff. Aug. 21, 1998; Stats.2002, c. 1022 (A.B.444), § 42, eff. Sept. 28, 2002; Stats.2004, c. 229 (S.B.1104), § 31, eff. Aug. 16, 2004; Stats.2005, c. 78 (S.B.68), § 26, eff. July 19, 2005; Stats.2007, c. 177 (S.B.84), § 27, eff. Aug. 24, 2007; Stats.2007-2008, 3rd Ex.Sess., c. 4 (A.B.6), § 1, eff. Feb. 16, 2008.)

## Historical Notes

### Historical And Statutory Notes

2002 Legislation

For legislative provisions relating to Stats.2002, c. 1022 (A.B.444), see Historical and Statutory Notes under Family Code § 17706.

For Governor's signing message regarding Stats.2002, c. 1022 (A.B.444), see Historical and Statutory Notes under Welfare and Institutions Code § 903.7.

2004 Legislation

For criminal background check requirements, coordination of state and federal services, legislative intent provisions, emergency regulations, reimbursement, and operative and urgency effective provisions relating to Stats.2004, c. 229 (S.B.1004), see Historical and Statutory Notes under Education Code § 8263.

2005 Legislation

For urgency effective and other uncodified provisions relating to Stats.2005, c. 78 (S.B.68), see Historical and Statutory Notes under Education Code § 8227.

2007 Legislation

For urgency effective and other uncodified provisions relating to Stats.2007, c. 177 (S.B.84), see Historical and Statutory Notes under Family Code § 17601.

2008 Legislation

Sections 4 and 5 of Stats.2007-2008, 3rd Ex.Sess., c. 4 (A.B.6), provide:

"SEC. 4. This act addresses the fiscal emergency declared by the Governor by proclamation on January 10, 2008, pursuant to subdivision (f) of Section 10 of Article IV of the California Constitution.

"SEC. 5. This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are:

"In order to ensure the fiscal integrity of essential social services programs, at the earliest possible time, it is necessary for this act to take effect immediately."

2001 Main Volume

Amendment of this section by Initiative Measure (Prop.165) was rejected at the Nov. 3, 1992, election.

Urgency effective provisions of Stats.1996, c. 206 (S.B.1780), see Historical and Statutory Notes under Welfare and Institutions Code § 10830.

Title of Act, operative effect, authority of county, implementation of provisions, and adoption of regulations relating to Stats.1997, c. 270 (A.B.1542), see Historical and Statutory Notes under Education Code § 8208.

Stats.1983, c. 323 operative on July 21, 1983 and deemed to have become effective on July 1, 1983, unless otherwise provided, see note under C.C.P.§ 1531.

Effect of amendment of section by two or more acts at the same session of the legislature, see Government Code § 9605.

Sections 1 and 2 of Stats.1990, c. 188, eff. June 29, 1990, provide:

"Section 1. The Legislature finds that due to the uncertainties in the ability of the state to fund all programs fully because of an expected budget shortfall, the Aid to Families With Dependent Children program, in-home supportive services program, and county health services cost-of-living adjustments which would otherwise go into effect on July 1, 1990, should be delayed until the Legislature has more time to consider the related problems.

"Sec. 2. Notwithstanding the provisions of any other law including Sections 11450, 11452, 11453, 12303.5, 12303.7, 12304, and 16702 of the Welfare and Institutions Code, the cost-of-living adjustments that would otherwise go into effect on July 1, 1990, for the amounts under Chapter 2 (commencing with Section 11200), and Article 7 (commencing with Section 12300) of Chapter 3 of Part 3 of Division 9 of, and Part 4.5 (commencing with Section 16700) of Division 9 of, the Welfare and Institutions Code, shall be delayed and shall take effect August 1, 1990, unless another act which becomes effective prior to August 1, 1990, shortens or extends the suspension period imposed by this act, except that any assistance unit which receives a grant for August 1990 pursuant to Chapter 2 (commencing with Section 11200) and received a grant for July 1990, shall receive, in addition to their grant for August, a supplement in an amount equal to the cost-of-living adjustment which would have otherwise been included had the cost-of-living adjustment provided in Section 11453 of the Welfare and Institutions Code not been delayed."

Former § 11453, added by Stats.1965, c. 1784, p. 4014, § 5, amended by Stats.1969, c. 998, p. 1970, § 2, derived from former § 1511.7, added by Stats.1951, c. 1533, p. 3514, § 6, which related to budget revision, was repealed by Stats.1971, c. 578, p. 1161, § 29.

2001 Main Volume

**Collateral References:**

Witkin, Summary (9th ed) P & C §270
Cal Jur 3d Pub Aid §16

## Notes Of Decisions

Construction with other laws ›#NT;B›# ½ ›oNT;F›o
Cost-of-living adjustment 2
Reevaluation 3
State reimbursement 1

**. Construction with other laws**

Governor's 2003 order directing reinstatement of 67.5 percent offset for vehicle license fees (VLF) that had been in effect by VLF statute for several years, but suspended earlier in 2003 by previous Governor, was not increase in tax relief triggering cost of living adjustment (COLA) to welfare recipients under welfare statute linking COLAs to increase in tax relief under VLF statute. Guillen v. Schwarzenegger (App. 1 Dist. 2007) 55 Cal.Rptr.3d 87, 147 Cal.App.4th 929, review denied. Social Security And Public Welfare ☞ 9.1

Under welfare statute linking payment of cost of living adjustment (COLA) to any increase in tax relief under vehicle license fees (VLF) statute, term "any increase in tax relief" meant increase over previous year's relief, rather than increase over default level of 25 percent offset in VLF statute. Guillen v. Schwarzenegger (App. 1 Dist. 2007) 55 Cal.Rptr.3d 87, <u>147 Cal.App.4th 929</u>, review denied. Social Security And Public Welfare ⟨∞⟩ 9.1

**1. State reimbursement**

Any resultant increased county cost occasioned by cost of living adjustments made by regulations required to be issued in 1973 under this section enacted in 1971 were not increased county costs mandated by the state within the meaning of <u>Rev. & Tax.C. § 2231 (repealed)</u>, and the state was therefore not required to reimburse the counties for any increased costs due to such adjustments. 57 Op.Atty.Gen. 451, 9-13-74.

**2. Cost-of-living adjustment**

Federal statute requiring periodic reevaluation of state's need standard for calculation of Aid to Families with Dependent Children (AFDC) benefits did not require state to modify its standard or its level of benefits and, thus, state's calculation of cost-of-living adjustment satisfied federal requirement even though state subsequently enacted statute suspending application of adjustment due to state budget constraints. California Homeless & Housing Coalition v. Anderson (App. 1 Dist. 1995) 37 Cal.Rptr.2d 639, <u>31 Cal.App.4th 450</u>. Social Security And Public Welfare ⟨∞⟩ 194.12(1)

**3. Reevaluation**

State satisfied its statutory duty to report to federal Department of Health and Human Services (HHS) results of reevaluation of state's need standard for calculation of Aid to Families with Dependent Children (AFDC) benefits, in light of submission of report indicating state's need standard, date on which standard had last been reevaluated, method by which state previously had adjusted standard, and including copies of state statutes declaring that cost-of-living adjustment would not be implemented for fiscal year in question. California Homeless & Housing Coalition v. Anderson (App. 1 Dist. 1995) 37 Cal.Rptr.2d 639, <u>31 Cal.App.4th 450</u>. Social Security And Public Welfare ⟨∞⟩ 194.1

State's submission of form to federal government indicating results of reevaluation of state's need standard for calculation of Aid to Families with Dependent Children (AFDC) benefits, and codification of reevaluation in state statute suspending cost-of-living adjustment computed by reevaluation, satisfied state's statutory duty to report results of reevaluation to public; materials explained method for calculating adjustment to need standard and indicated that resulting adjustment would not be implemented for year in question. California Homeless & Housing Coalition v. Anderson (App. 1 Dist. 1995) 37 Cal.Rptr.2d 639, <u>31 Cal.App.4th 450</u>. Social Security And Public Welfare ⟨∞⟩ 194.1