1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  SUSAN M. CARSON
   Supervising Deputy Attorney General
3  GEORGE PRINCE, State Bar No. 133877
   Deputy Attorney General
4   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
5   Telephone:  (415) 703-5749
    Fax:  (415) 703-5480
6

7  Attorneys for Department of Social Services

8

9              IN THE UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                 SAN FRANCISCO DIVISION

12

13  **CALIFORNIA ALLIANCE OF CHILD AND**           C 06-4095 MHP
    **FAMILY SERVICES,**
                                                   **DEFENDANTS' OPPOSITION**
14                                   Plaintiff,    **TO PLAINTIFF'S MOTION**
                                                   **FOR SUMMARY JUDGMENT**
15       v.

16  **JOHN WAGNER, Director of the California**     Hearing: September 24, 2007
    **Department of Social Services, in his official** Time: 2:00 p.m.
17  **capacity; MARY AULT, Deputy Director of the** Courtroom: 15, 18th floor
    **Children and Family Services Division of the** Judge: The Hon. Marilyn H. Patel
18  **California Department of Social Services, in her**
    **official capacity,**
19
                                     Defendants.
20

21                       **INTRODUCTION**

22          Plaintiff's motion for summary judgment altogether fails to present any basis upon

23  which this Court can enter judgment for it.  While plaintiff contends that the California

24  Department of Social Services (DSS) "has failed to make foster care maintenance payments that

25  meet the Child Welfare Act's specific requirements" (Plaintiff's Motion for Summary Judgment,

26  p. 1:17-18), the simple fact is that DSS's rate classification level system is fully compliant with

27  federal law.  Plaintiff's inability to show otherwise dooms its motion.  Accordingly, judgment

28  must be entered on behalf of defendants.

Opposition to Plaintiff's Motion for Summary Judgment          California Alliance, etc.,  v. Wagner, et al.
                                                                                    C 06-4095 MHP

1

Curiously, plaintiff uses nearly six pages of text in its motion for summary judgment to rehash arguments it presented in its opposition to defendants' motion to dismiss for failure to state a claim of nearly a year ago. As this Court concluded in its order of October 26, 2006, the Child Welfare Act "confers an individual right on plaintiff's members for enforcement of foster care maintenance payments pursuant to section 675(4)(A)." (Order, entered October 27, 2006, at p. 8:4-5.)

Revisiting that day in Court is all well and good. However, securing the opportunity to bring a lawsuit by surviving a motion to dismiss is one matter; prevailing on a motion for summary judgment is quite another.

## ARGUMENT

## I.

## CALIFORNIA'S RCL SYSTEM COMPLIES WITH THE CHILD WELFARE ACT

More than 17 years ago California's Legislature enacted Welfare and Institutions Code section 11462, a comprehensive and detailed statute that created the "rate classification level" (RCL) system for setting payment rates for foster care group homes. The statute charged DSS with the implementation and administration of the system, which established 14 different rate classification levels at which group home programs would be paid for the provision of care and services to foster children.[1]

Under federal law, a state may receive reimbursement from the federal government for allowable foster care payments pursuant to Title IV-E of the Social Security Act, 42 U.S.C. sections 670-679b, the Child Welfare Act (CWA), for foster children who meet federal eligibility requirements. In order to receive federal monies a state must submit a detailed plan to the Secretary of the Department of Health and Human Services (DHHS) setting forth its system for implementing and administering the program, which is subject to review and approval by the Secretary. (42 U.S.C. § 671.)

The point that plaintiff's motion for summary judgment tries unsuccessfully to make is

---

1. Details of the creation and history of the RCL system are set forth at pp. 3-6 of defendants' Cross Motion for Summary Judgment.

Opposition to Plaintiff's Motion for Summary Judgment        California Alliance, etc., v. Wagner, et al.
C 06-4095 MHP

2

1    that the RCL system used by California fails to pass muster under the CWA.  Not so.  All state

2    plans relating to the setting of rates for foster care group by DHHS at any time in which the RCL

3    system has been in place have been approved, and plaintiff has not refuted and can not refute this

4    fact.[2]   Accordingly, plaintiff's motion for summary judgment must be denied and that of the

5    State must be granted.

6                                                        **II.**

7    **PLAINTIFF'S EFFORT TO SHOW THAT THE RCL SYSTEM FAILS TO
     COMPLY WITH THE CHILD WELFARE ACT LACKS SUPPORT.**

8

9    **A.  California's Statute and Regulations are Consistent with Federal Law.**

10       At the bottom of page 11 of its motion, plaintiff finally begins discussing the RCL with

11   respect to federal law.[3]  Plaintiff cites one case, *Orthopaedic Hospital v. Belshe*, 103 F.3d 1491

12   (9th Cir.1997), for the proposition that a reviewing court should be concerned that state law and

13   regulations are consistent with federal law.  (Plaintiff's Motion, p. 12:2-3, citing *Id*. at 1496.)

14   Contrary to plaintiff's view, that case actually illustrates the fact that the state law and

15   regulations at issue here are consistent with federal law.

16       In *Orthopaedic*, the court found that  the California Department of Health Services

17   acted arbitrarily and capriciously, and contrary to law, in setting hospital outpatient

18   reimbursement rates under Medicaid based on factors that did not consider hospitals' costs.

19   However, that case was decided when the now-repealed Boren amendment was still in effect.[4]

20   Moreover, *Orthopaedic* held that a state agency's interpretation of federal statutes is not entitled

21   _____

22       2.  An electronic copy of California' currently operative, 50-page Title IV-E plan can be
     found at http://www.childsworld.ca.gov/res/pdf/2002TitleIV-EStatePlan4_03.pdf. Plaintiff inaptly

23   places an unsupported statement the "standardized schedule of rates used to make payments to group
     homes under California's RCL system is inadequate, fails to comply with the Child Welfare Act"

24   within its "Statement of Undisputed Facts" (Plaintiff's Motion, p. 3:25-27).  While the placement
     is amusing, the statement is not only unsupported, but, more importantly, simply wrong.

25

26       3.  As the issue of plaintiff's right to bring this action was decided last year and is not
     germane to the issue now before this Court, defendants will not address that matter here.

27

28       4.  The federal Balanced Budget Act of 1997 repealed the Boren Amendment, giving states
     far greater freedom in setting nursing home payment rates.

Opposition to Plaintiff's Motion for Summary Judgment            California Alliance, etc.,  v. Wagner, et al.
                                                                                    C 06-4095 MHP

3

1 to the deference afforded a federal agency's interpretation of its own statutes. (103 F.3d at

2 1495.) This is not the situation before this Court. Here, the Secretary of DHHS, empowered to

3 disapprove a state's IV-E plan, has never denied California's plan. Additionally, *Orthopaedic*

4 held that the violation of Medi-Cal rates there was due to the California Department of Health

5 Services' failure to set hospitals' costs based on reliable information when setting reimbursement

6 rates. (*Id*. at 1499.) In the instant case there is no dispute that the statute that created the RCL

7 system was itself based on thorough cost studies – in which group home program service

8 providers participated and were instrumental (see Welf. and Inst. Code section 11462 (a)(1), and

9 11462 (c)) – putting to rest any suggestion that DSS did not take into account reliable

10 information when creating the RCL system.

11     **B. The CWA Does Not Require the Payment of Actual Costs.**

12     Plaintiff also makes much ado about "actual" costs and the lack of reference in

13 Welfare and Institutions Code section 11460 (b) to the CWA's reference to payments to "cover

14 the cost of (and the cost of providing)" the required services to children when those children are

15 in group homes. (Plaintiff's Motion, at p. 12:14-22, citing 42 U.S.C. § 675(4)(A).) This is a

16 specious argument.

17     Despite plaintiff's statement to the contrary, there is no reference in federal or state

18 law to "actual" costs. The CWA requires that reimbursement rates cover the allowable and

19 reasonable costs, rather than the actual costs, of foster care maintenance. (*See* 42 U.S.C. §

20 675(4)(A).) (Only allowable costs can be reimbursed because foster care maintenance payments

21 cover the cost of -- and the cost of providing -- generally described services, including "food,

22 clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability

23 insurance with respect to a child, and reasonable travel to and from the child's home for

24 visitation." (42 U.S.C. § 675(4)(A).) In the case of institutional foster care providers, only

25 reasonable costs can be reimbursed because the CWA limits the coverage of institutional foster

26 care "to the reasonable costs of administration and operation of an institution to the extent that

27 //

28 //

Opposition to Plaintiff's Motion for Summary Judgment    California Alliance, etc.,  v. Wagner, et al.
C 06-4095 MHP

4

1    they are "necessarily required to provide" specific services.  (*Id.*)[5]

2    **C. California's RCL Covers the Costs It Is Required to Cover Under the CWA.**

3         To support its fundamental contention that the RCL is non-compliant with the CWA,

4    plaintiff relies largely on a case from the district court in the Western District of Missouri,

5    *Missouri Child Care Association v. Martin*, 241 F.Supp.1032 (WD Mo. 2003).  In that case, the

6    district court found that under the CWA the state was obligated to have a process for determining

7    rates for foster care maintenance payments that took into account statutory criteria specifically

8    mandated by the CWA, and that Missouri's failure to consider these statutory criteria, by instead

9    basing its reimbursement rates solely on budgetary concerns, violated the CWA.

10        As the Missouri court noted:  "At a minimum, the State is obligated to have a process

11   for determining rates that takes into account the statutory criteria mandated by the CWA."  (241

12   F.Supp. at 1045, citations omitted.)   That is not akin to the situation here, where California's

13   system did just what the CWA required by creating a complex rate classification level system

14   based on detailed costs analyses done in concert with group home providers.  (See Welf. & Inst.

15   Code § 11462 (a)(1), and 11462 (c).)   California's effort far exceeds this minimum.

16        Moreover, the Missouri court further noted that a state need only to be in "substantial

17   compliance" with the CWA to meet its obligation (*Id.* at 1046, note 7), and that budget

18   considerations may be taken into account in the creation of a reimbursement methodology (*Id.*).

19   This comment is germane here, in recognition of the California statute's proviso that the

20   statutory annual increases in funding for foster care maintenance payments is "subject to the

21   availability of funds."  (Welf. & Inst. Code § 11462 9g)(2).)

22        The final word of the Missouri court is noteworthy: "This Court is not holding that the

23   [Missouri state] Defendants need a certain or particular methodology, just that the Defendants

24

25        5.   Office and Management Budget Circular A-87, which is used to define the term
26   "reasonable" for purposes of "foster care maintenance payment" in the administration of the CWA,
     provides that costs are "reasonable" if they do not exceed those that would be incurred by a "prudent
27   person."   See http://www.whitehouse.gov/omb/circulars/a087/a87_2004.html at Attachment A,
     General Principles for Determining Allowable Costs, Section C ("Basic  Guidelines"), Item 2,
28   "Reasonable Costs."

Opposition to Plaintiff's Motion for Summary Judgment                    California Alliance, etc.,  v. Wagner, et al.
                                                                                                          C 06-4095 MHP

5

1  need a methodology that considers the required factors."   (241 F.Supp. at 1046.)  California has

2  such a methodology, and thus its RCL is more than in "substantial compliance" with the CWA.

3      **D.  Plaintiff's "Lack of Funds" Contention is Misplaced.**

4      Finally, plaintiff cites *Blanco v. Anderson*, 39 F.3d 969 (9th Cir. 1994) for the

5  proposition that "lack of funds" is no excuse for failing to provide required payments.

6  (Plaintiff's Motion, p. 14:15-25.)  Plaintiff's "*see*"citation to *Blanco* does not help its case.

7      In *Blanco*, plaintiffs sought injunctive relief from defendants -- state social welfare

8  officials sued in their official capacities – alleging that defendants violated the federal Food

9  Stamp Act, Aid to Families with Dependent Children, and federal Medicaid law because they

10  had approved weekday closings of county welfare offices that administered those programs in

11  several California counties.  (39 F.3d at 970.)  The real point of *Blanco* differs from "lack of

12  funds" argument that plaintiff tries to mount.  (Plaintiff's Motion, p. 14:24-25),

13      In *Blanco*, plaintiffs contended that the federal laws at issue required that the county

14  welfare offices be open on certain days or hours, a demand the Court addressed by commenting

15  that "plaintiffs ask for too much."  (*Id.*, 39 F.3d at 971.)   The Court noted  that "we can find

16  nothing in federal law imposing a federal obligation as to the hours the county welfare offices

17  must stay open to the public."  (*Id.*)  As the Ninth Circuit explained, the implementing

18  regulations at issue were clear: "'State agencies shall be responsible for determining the hours

19  that food stamp offices shall be open.' [citation]"  (*Id.*)  After further discussion of the analogous

20  AFDC and Medicaid regulations, the Court stated: "We find nothing in the statute or the

21  regulations requiring county welfare offices  be open on certain days or hours."  (*Id.*)  The

22  unstated but unmistakable message of the Court was, of course, that where the State is given

23  responsibility to implement a directive, the State is afforded the discretion to implement it

24   without the micro management of the federal government.[6/]

25  _____

26      6.  In *Blanco*, the Ninth Circuit also noted that the State's role in implementation these
    statutes and regulations required that it exercise its duty in supervising county welfare offices so that
27  the purposes of the statutes would not be frustrated (39 F.3d at 971-972), and remanded the matter
    to the district court and the parties "to fashion a decree consistent with its opinion" to that effect.
28  (*Id.* at 973.)  However, this did not change the character of the Court's ruling as to the (cont.)

Opposition to Plaintiff's Motion for Summary Judgment                    California Alliance, etc.,  v. Wagner, et al.
                                                                        C 06-4095 MHP

6

1    If the federal government wished to direct the state to provide foster care group home

2    providers with the actual costs for operating their programs, it could choose to do so by specific

3    directives in the CWA to that effort, or by disapproving the California RCL system that has been

4    in place, *without federal disapproval*, for more than 17 years.  The federal government has taken

5    neither step.  Plaintiff may be unhappy with the level of payments its members receive from the

6    State of California, but they are not entitled to a judgment from this Court by a change in the

7    statutory scheme now in place, or otherwise.  For this reason, too, plaintiff's motion should be

8    denied.

9                                    **III.**

10   **GIVEN PLAINTIFF'S INABILITY TO MAKE A FACTUAL SHOWING THAT
     THE RCL SYSTEM FAILS TO COMPLY WITH THE CHILD WELFARE ACT,
11   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT MUST BE GRANTED.**

12   A moving party is entitled to summary judgment "if the pleadings, depositions, answers

13   to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

14   genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

15   of law."  Fed.R.Civ.P. 56(c).  Once the moving party discharges this initial burden, the nonmoving

16   party may not rest upon the mere allegations or denials of the adverse party's pleading, but must set

17   forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*,

18   477 U.S. 242, 248 (1986).  To establish a genuine issue of fact sufficient to warrant trial, the

19   nonmoving party "must do more than simply show that there is some metaphysical doubt as to the

20   material facts."  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

21   Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a

22   genuine issue for trial.  *Anderson,* 477 U.S. at 248.

23   As demonstrated above, plaintiff has failed to make the showing required of it to win a

24   grant of summary judgment on its behalf.  Its motion must thus be denied.

25   //

26   //

27

28   State's discretion to implement the law, as opposed to being directed *how* to implement the law.

Opposition to Plaintiff's Motion for Summary Judgment          California Alliance, etc.,  v. Wagner, et al.
                                                               C 06-4095 MHP

7

**CONCLUSION**

1
2      In this case there is no valid basis to plaintiff's contention that the RCL violates the

3 Child Welfare Act.  For the reasons set forth above -- and contrary to plaintiff's contention -- the

4 RCL system does not violate the Child Welfare Act or any of its regulations or other provisions.

5 Thus, plaintiff's motion for summary judgment should be denied, defendants' cross motion for

6 summary judgment in their favor and against plaintiff should be granted, and this action should

7 be dismissed.

8      Dated:  September 4, 2007

9                  Respectfully submitted,

10              EDMUND G. BROWN JR.
Attorney General of the State of California

11
12              SUSAN M. CARSON
Supervising Deputy Attorney General

13              /s/ George Prince

14
15              GEORGE PRINCE
Deputy Attorney General

16
              Attorneys for Department of Social
17              Services

18
19 SF2006401941

Opposition to Plaintiff's Motion for Summary Judgment    California Alliance, etc.,  v. Wagner, et al.
C 06-4095 MHP

8