1  CHILDREN'S ADVOCACY INSTITUTE
   University of San Diego School of Law
2  Robert C. Fellmeth (CA SBN 49897)
   Edward Howard (CA SBN 151936)
3  Christina McClurg Riehl (CA SBN 216565)
   Elisa D'Angelo Weichel (CA SBN 149320)
4  5998 Alcala Park
   San Diego, CA  92110
5  Telephone: 619.260.4806
   Facsimile: 619.260.4753
6  cpil@sandiego.edu

7  MORRISON & FOERSTER LLP
   Kimberly N. Van Voorhis (CA SBN 197486)
8  Marc David Peters (CA SBN 211725)
   KVanVoorhis@mofo.com
9  755 Page Mill Road
   Palo Alto, California  94304-1018
10 Telephone: 650.813.5600
   Facsimile: 650.494.0792

11 Steve Keane (CA SBN 247588)
   SKeane@mofo.com
12 12531 High Bluff Drive, Suite 100
   San Diego, California  92130-2040
13 Telephone: 858.720.5100
   Facsimile: 858.720.5125

14 **Attorneys for Plaintiffs**

15                    UNITED STATES DISTRICT COURT

16                    NORTHERN DISTRICT OF CALIFORNIA

17                         SAN FRANCISCO DIVISION

18

| | |
|---|---|
| California State Foster Parent Association, California State Care Providers Association, and Legal Advocates for Permanent Parenting, | Case No.   C 07 5086 WHA |
| Plaintiffs, | **FOSTER PARENTS' FIRST SET OF REQUESTS FOR ADMISSIONS TO DEFENDANTS** |
| v. | |
| JOHN A. WAGNER, Director of the California Department of Social Services, in his official capacity; MARY AULT, Deputy Director of the Children and Family Services Division of the California Department of Social Services, in her official capacity, | |
| Defendants. | |

FOSTER PARENTS' FIRST SET OF REQUESTS FOR ADMISSIONS TO DEFENDANTS
Case No. C 07 5086 WHA
pa-1261887

| | | |
|---|---|---|
| PROPOUNDING PARTY: | | Plaintiffs, California State Foster Parent Association, California State Care Providers Association, and Legal Advocates for Permanent Parenting |
| RESPONDING PARTY: | | Defendants, John A. Wagner and Mary Ault |
| SET NO.: | | One (1) |

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiffs California State Foster Parent Association, California State Care Providers Association, and Legal Advocates for Permanent Parenting (collectively, "Foster Parents") hereby request that Defendants John A. Wagner and Mary Ault (collectively, "DSS"), in accordance with the instructions and definitions set forth herein, provide written responses to the following Requests for Admissions at the offices of Morrison & Foerster, 755 Page Mill Road, Palo Alto, California 94304-1018, within thirty (30) days of service thereof.

## I. INSTRUCTIONS

A. Pursuant to Rule 36(a) of the Federal Rules of Civil Procedure, DSS is instructed to serve a written response upon Foster Parents' counsel within thirty (30) days after service of these Requests for Admissions.

B. The following Requests for Admissions are deemed to be continuing, so if DSS, after responding to these Requests for Admissions, discovers additional information that would cause it to admit the matter further, in whole or in part, Foster Parents request that DSS provide Foster Parents with a supplemental response within thirty (30) days after acquiring knowledge of the additional information.

C. Should DSS contend that any of the following requests for admissions is objectionable in whole or in part, DSS should state with particularity each objection, the basis for it and the categories of information to which the objection applies. Respond to each request insofar as it is not deemed objectionable.

D. Should DSS deem any information requested by any of the following Requests for Admissions to be privileged and/or subject to the work product doctrine, DSS should list and identify each such piece of information, to the extent possible; and in addition, DSS should

specify what matter therein DSS claims to be privileged and/or subject to the work product doctrine, and state all of the grounds and facts upon which such a claim rests, and on which DSS will rely to assert such a claim in order to provide the factual basis to determine whether such information is, in fact, privileged and/or subject to the work-product doctrine.

E.  If any information requested by these Requests for Admissions is withheld by reason of attorney-client privilege, specifically identify the attorney, the client, the nature of the confidential communication and all entities or persons who know of the information, and the date the information was exchanged, in addition to the information requested above.

F.  If an attorney work product claim is asserted, in addition to the information requested above, identify the person or attorney who prepared the work product, each person to whom the information was disclosed, the date when the work product was prepared, and the litigation for which the work product was prepared.

G.  If DSS finds the meaning of any term in these requests to be unclear, DSS shall assume a reasonable meaning, state what the assumed meaning is, and respond to the request according to the assumed meaning.

H.  If any information requested in these Requests for Admissions is within the knowledge of a third party, state the identity and location of each such third party.

I.  If DSS cannot answer any Request for Admission in full after exercising due diligence to secure the information, so state in the answer to the extent possible.  Specify DSS' inability to answer a portion of the request and state whatever information or knowledge DSS has concerning the unanswered portion and the efforts DSS has undertaken to secure the information sought.

**II.   DEFINITIONS**

A.   "DSS" means the California Department of Social Services.

B.   "Basic rates paid to foster parents" means the rates authorized by state law for licensed family foster care providers and excluding any differentiated county addition or special allowance for special needs or other augmentation.

C.   "Family foster care provider" means a foster parent providing a home to a foster child and receiving reimbursement pursuant to California Welfare and Institutions Code § 11461.

D.  "Group Home" means a foster care provider licensed as a group home and receiving payment pursuant to California Welfare and Institutions Code § 11462.

E.  "Outcome measures" means indicators of rates of arrest, use of public welfare, homelessness, health, employment and income.

F.  "Child Welfare Act" means Title IV-E of the Social Security Act, 42 U.S.C. §§ 670-679b.

G.  "CNI" shall mean the California Necessities Index, as that phrase is used in the California Welfare and Institutions Code.

H.  "CWDA Report" means the policy report titled, *No Family, No Future,* authored by the County Welfare Directors Association of California (CWDA) and Legal Advocates for Permanent Parenting in May of 2007, attached as Exhibit A.

I.  "CAI Report" means the report titled, *They Deserve a Family,* published by the Children's Advocacy Institute in May of 2007, attached as Exhibit B.

J.  "California Budget Project's Self Sufficiency Report" means the report titled, *Making Ends Meet: How Much Does It Cost to Raise a Family in California,* published by the California Budget Project in October of 2007, attached as Exhibit C.

K.  "MARC Report" means the report by the University Of Maryland School Of Social Work, Children's Rights, and the National Foster Parent Association, titled *Hitting the MARC: Establishing Foster Care Minimum Adequate Rates for Children*, attached as Exhibit D.

L.  "California Child Care Portfolio" means the report produced by the California Child Care Resource & Referral Network titled, *2007 California Child Care Portfolio*, attached as Exhibit E.

## REQUEST FOR ADMISSIONS

**REQUEST FOR ADMISSION NO. 1:**

Admit the authenticity of All County Information Notice Number I-61-90 and All County Letters Numbered 98-27, 98-70, Errata # 2 for All County Letter No. 98-70, 99-66, 99-107, 00-64, 01-55 and 08-01, attached, collectively, as Exhibit F.

**REQUEST FOR ADMISSION NO. 2:**

Admit that since July 1, 1990 to June 1, 2008, the basic rates paid to foster parents are fully and accurately characterized in All County Information Notice I-16-90 and All County Letters Numbered 98-27, 98-70, Errata # 2 for All County Letter No. 98-70, 99-66, 99-107, 00-64, 01-55 and 08-01.

**REQUEST FOR ADMISSION NO. 3:**

Admit the authenticity of the excerpt from the State Plan for Title IV-E of the Social Security Act Foster Care, Independent Living and Adoption Assistance for the State of California, attached as Exhibit G.

**REQUEST FOR ADMISSION NO. 4:**

Admit that, since 1990, there has not been any data collected by or for DSS regarding the actual costs incurred by foster parents for providing food to foster children placed in their home.

**REQUEST FOR ADMISSION NO. 5:**

Admit that, since 1990, there has not been any data collected by or for DSS regarding the actual costs incurred by foster parents for providing clothing to foster children placed in their home.

**REQUEST FOR ADMISSION NO. 6:**

Admit that, since 1990, there has not been any data collected by or for DSS regarding the actual costs incurred by foster parents for providing shelter to foster children placed in their home.

**REQUEST FOR ADMISSION NO. 7:**

Admit that, since 1990, there has not been any data collected by or for DSS regarding the actual costs incurred by foster parents for providing daily supervision to foster children placed in their home.

**REQUEST FOR ADMISSION NO. 8:**

Admit that, since 1990, there has not been any data collected by or for DSS regarding the actual costs incurred by foster parents for providing school supplies to foster children placed in their home.

**REQUEST FOR ADMISSION NO. 9:**

Admit that, since 1990, there was never any data collected by or for DSS regarding the actual costs incurred by foster parents for providing personal incidentals to foster children placed in their home.

**REQUEST FOR ADMISSION NO. 10:**

Admit that, since 1990, there has not been any data collected by or for DSS regarding the actual costs incurred by foster parents for obtaining liability insurance with respect to foster children placed in their home.

**REQUEST FOR ADMISSION NO. 11:**

Admit that, since 1990, there has not been any data collected by or for DSS regarding the actual costs for providing reasonable travel to the child's home for visitation to foster children placed in their home.

**REQUEST FOR ADMISSION NO. 12:**

Admit that, since 1990, DSS has not been asked by any other part of the California government to prepare a study, analysis, or report regarding whether the basic rates paid to foster parents were sufficient to cover the actual costs of (and of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to the child's home for visitation for foster children placed with foster parents.

**REQUEST FOR ADMISSION NO. 13:**

Admit that, since 1990, DSS has not prepared a study, analysis, or report regarding whether the basic rates paid to foster parents were sufficient to cover the actual costs of (and of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to the child's home for visitation for foster children placed with foster parents.

**REQUEST FOR ADMISSION NO. 14:**

Admit that, since 2001, there has not been any data collected by or for DSS regarding the actual costs incurred by foster parents for providing food to foster children placed in their home.

**REQUEST FOR ADMISSION NO. 15:**

Admit that, since 2001, there has not been any data collected by or for DSS regarding the actual costs incurred by foster parents for providing clothing to foster children placed in their home.

**REQUEST FOR ADMISSION NO. 16:**

Admit that, since 2001, there has not been any data collected by or for DSS regarding the actual costs incurred by foster parents for providing shelter to foster children placed in their home.

**REQUEST FOR ADMISSION NO. 17:**

Admit that, since 2001, there has not been any data collected by or for DSS regarding the actual costs incurred by foster parents for providing daily supervision to foster children placed in their home.

**REQUEST FOR ADMISSION NO. 18:**

Admit that, since 2001, there has not been any data collected by or for DSS regarding the actual costs incurred by foster parents for providing school supplies to foster children placed in their home.

**REQUEST FOR ADMISSION NO. 19:**

Admit that, since 2001, there was never any data collected by or for DSS regarding the actual costs incurred by foster parents for providing personal incidentals to foster children placed in their home.

**REQUEST FOR ADMISSION NO. 20:**

Admit that, since 2001, there has not been any data collected by or for DSS regarding the actual costs incurred by foster parents for obtaining liability insurance with respect to foster children placed in their home.

**REQUEST FOR ADMISSION NO. 21:**

Admit that, since 2001, there has not been any data collected by or for DSS regarding the actual costs for providing reasonable travel to the child's home for visitation to foster children placed in their home.

**REQUEST FOR ADMISSION NO. 22:**

Admit that, since 2001, DSS has not been asked by any other part of the California government to prepare a study, analysis, or report regarding whether the basic rates paid to foster parents were sufficient to cover the actual costs of (and of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to the child's home for visitation for foster children placed with foster parents.

**REQUEST FOR ADMISSION NO. 23:**

Admit that, since 2001, DSS has not prepared a study, analysis, or report regarding whether the basic rates paid to foster parents were sufficient to cover the actual costs of (and of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to the child's home for visitation for foster children placed with foster parents.

**REQUEST FOR ADMISSION NO. 24:**

Admit that in 2001, the basic rates paid to foster parents were not greater than the average costs incurred by foster parents to provide food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to the child, and reasonable travel to the child's home for visitation for the foster children placed in their home.

**REQUEST FOR ADMISSION NO. 25:**

Admit that in 2001, the basic rates paid to foster parents were not sufficient to cover the average costs incurred by foster parents to provide food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to the child, and reasonable travel to the child's home for visitation for the foster children placed in their home.

**REQUEST FOR ADMISSION NO. 26:**

Admit that DSS does not know whether in 2001 the basic rates paid to foster parents were then sufficient to cover the average costs of (and of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a

child, and reasonable travel to the child's home for visitation for foster children placed with foster parents.

**REQUEST FOR ADMISSION NO. 27:**

Admit that in 2008, the basic rates paid to foster parents are not sufficient to cover the average costs incurred by foster parents to provide food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to the child, and reasonable travel to the child's home for visitation for the foster children placed in their home.

**REQUEST FOR ADMISSION NO. 28:**

Admit that DSS does not know whether in 2008 the basic rates paid to foster parents are currently sufficient to cover the average costs of (and of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to the child's home for visitation for foster children placed with foster parents.

**REQUEST FOR ADMISSION NO. 29:**

Admit that, since 1991, the changes in the CNI has been an understated measure of the change in average costs incurred by foster parents to provide food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to the child, and reasonable travel to the child's home for visitation for the foster children placed in their home.

**REQUEST FOR ADMISSION NO. 30:**

Admit that DSS has no information indicating that since 1991 the changes in the CNI has been an overstated measure of the change in average costs incurred by foster parents to provide food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to the child, and reasonable travel to the child's home for visitation for the foster children placed in their home.

**REQUEST FOR ADMISSION NO. 31:**

Admit that for fiscal year 1991-1992 the percentage increase in the CNI was approximately 5.49%.

1  **REQUEST FOR ADMISSION NO. 32:**

2  Admit that for fiscal year 1992-1993 the percentage increase in the CNI was

3  approximately 1.81%.

4  **REQUEST FOR ADMISSION NO. 33:**

5  Admit that for fiscal year 1993-1994 the percentage increase in the CNI was

6  approximately 2.37%.

7  **REQUEST FOR ADMISSION NO. 34:**

8  Admit that for fiscal year 1994-1995 the percentage increase in the CNI was

9  approximately 1.69%.

10  **REQUEST FOR ADMISSION NO. 35:**

11  Admit that for fiscal year 1995-1996 the percentage increase in the CNI was

12  approximately 1.48%.

13  **REQUEST FOR ADMISSION NO. 36:**

14  Admit that for fiscal year 1996-1997 the percentage increase in the CNI was

15  approximately 1.41%.

16  **REQUEST FOR ADMISSION NO. 37:**

17  Admit that for fiscal year 1997-1998 the percentage increase in the CNI was

18  approximately 1.93%.

19  **REQUEST FOR ADMISSION NO. 38:**

20  Admit that for fiscal year 1998-1999 the percentage increase in the CNI was

21  approximately 1.67%.

22  **REQUEST FOR ADMISSION NO. 39:**

23  Admit that for fiscal year 1999-2000 the percentage increase in the CNI was

24  approximately 2.08%.

25  **REQUEST FOR ADMISSION NO. 40:**

26  Admit that for fiscal year 2000-2001 the percentage increase in the CNI was

27  approximately 3.7%.

28

FOSTER PARENTS' FIRST SET OF REQUESTS FOR ADMISSIONS TO DEFENDANTS
Case No. C 07 5086 WHA
pa-1261887

9

**REQUEST FOR ADMISSION NO. 41:**

Admit that for fiscal year 2001-2002 the percentage increase in the CNI was approximately 5.31%.

**REQUEST FOR ADMISSION NO. 42:**

Admit that for fiscal year 2002-2003 the percentage increase in the CNI was approximately 3.74%.

**REQUEST FOR ADMISSION NO. 43:**

Admit that for fiscal year 2003-2004 the percentage increase in the CNI was approximately 3.46%.

**REQUEST FOR ADMISSION NO. 44:**

Admit that for fiscal year 2004-2005 the percentage increase in the CNI was approximately 2.75%.

**REQUEST FOR ADMISSION NO. 45:**

Admit that for fiscal year 2005-2006 the percentage increase in the CNI was approximately 4.07%.

**REQUEST FOR ADMISSION NO. 46:**

Admit that for fiscal year 2006-2007 the percentage increase in the CNI was approximately 3.75%.

**REQUEST FOR ADMISSION NO. 47:**

Admit that for fiscal year 2007-2008 the percentage increase in the CNI was approximately 3.7%.

**REQUEST FOR ADMISSION NO. 48:**

Admit that the legislative intent record of the Child Welfare Act recognizes the advantage of permanent placement and of family settings for foster children.

**REQUEST FOR ADMISSION NO. 49:**

Admit that the California Welfare Director's Association is an association of Department of Social Service counterpart agencies among the respective counties of the state that are

1 responsible for administering DSS policies locally, including the payment of family foster care
2 providers.
3 **REQUEST FOR ADMISSION NO. 50:**
4     Admit that the facts presented in the CWDA Report are accurate.
5 **REQUEST FOR ADMISSION NO. 51:**
6     Admit that the facts presented in the CAI Report are accurate.
7 **REQUEST FOR ADMISSION NO. 52:**
8     Admit that the facts presented in the California Budget Project's Self Sufficiency Report
9 are accurate.
10 **REQUEST FOR ADMISSION NO. 53:**
11     Admit that the facts pertaining to California in the MARC Report are accurate.
12 **REQUEST FOR ADMISSION NO. 54:**
13     Admit that the facts presented in the California Child Care Portfolio are accurate.
14 **REQUEST FOR ADMISSION NO. 55:**
15     Admit that the outcome measures for foster children placed in family foster home settings
16 are more positive (fewer incidences of arrests, use of public welfare programs, homelessness, ill
17 health, and unemployment) than the outcome measures for children placed in group homes.
18 **REQUEST FOR ADMISSION NO. 56:**
19     Admit that the outcome measures for adopted children are more positive (fewer
20 incidences of arrests, use of public welfare programs, homelessness, ill health, and
21 unemployment) than the outcome measures for foster children placed in group homes.
22 **REQUEST FOR ADMISSION NO. 57:**
23     Admit that a higher percentage of children are adopted from family foster home
24 placements than from group home placements.
25 **REQUEST FOR ADMISSION NO. 58:**
26     Admit that increases in compensation for family foster care providers increases the supply
27 of such providers.
28

**REQUEST FOR ADMISSION NO. 59:**

Admit that decreases in compensation for family foster care providers decreases the supply of such providers.

**REQUEST FOR ADMISSION NO. 60:**

Admit that the number of family foster care providers has decreased since 2001.

**REQUEST FOR ADMISSION NO. 61:**

Admit that, since 2001, the number of family foster care providers has decreased more on a percentage basis than the number of foster children.

**REQUEST FOR ADMISSION NO. 62:**

Admit that foster children would benefit from additional placement choices.

**REQUEST FOR ADMISSION NO. 63:**

Admit that an inability to make family foster home placements impedes adoptions.

**REQUEST FOR ADMISSION NO. 64:**

Admit that an inability to make family foster home placements impedes placement of siblings together.

**REQUEST FOR ADMISSION NO. 65:**

Admit that an inability to make family foster home placements impedes placements near parents seeking reunification.

**REQUEST FOR ADMISSION NO. 66:**

Admit that an inability to make family foster home placements impedes placements permitting foster children to continue in the same school.

**REQUEST FOR ADMISSION NO. 67:**

Admit that the foster care rates paid to Group Homes are based on Rate Classification Levels (RCLs) that were developed from cost data collected from a pilot study of 96 group home programs averaged with the costs of existing non-pilot group home programs.

**REQUEST FOR ADMISSION NO. 68:**

Admit that each Group Home is placed into one of 14 RCLs according to the intensity of care and services provided.

**REQUEST FOR ADMISSION NO. 69:**

Admit that the foster care rates paid to Group Homes is based on which one, of fourteen, RCLs the Group Home is placed into.

**REQUEST FOR ADMISSION NO. 70:**

Admit that in 1991, Group Homes were paid the following rates based on their RCL:

| RCL | Rate |
|---|---|
| RCL 1 | $1,094 |
| RCL 2 | $1,367 |
| RCL 3 | $1,640 |
| RCL 4 | $1,912 |
| RCL 5 | $2,183 |
| RCL 6 | $2,457 |
| RCL 7 | $2,729 |
| RCL 8 | $3,002 |
| RCL 9 | $3,274 |
| RCL 10 | $3,546 |
| RCL 11 | $3,817 |
| RCL 12 | $4,091 |
| RCL 13 | $4,366 |
| RCL 14 | $4,637 |

**REQUEST FOR ADMISSION NO. 71:**

Admit that the current rates paid to Group Homes are accurately characterized in All County Letter 08-01.

| | | |
|---|---|---|
| 1 | Dated: June 12, 2008 | MORRISON & FOERSTER LLP |
| 2 | | |
| 3 | | By: _____ |
| 4 | | Marc David Peters |
| 5 | | Attorneys for Plaintiffs |
| 6 | | CALIFORNIA STATE FOSTER PARENT ASSOCIATION, CALIFORNIA STATE CARE PROVIDERS ASSOCIATION, AND LEGAL ADVOCATES FOR PERMANENT PARENTING |

FOSTER PARENTS' FIRST SET OF REQUESTS FOR ADMISSIONS TO DEFENDANTS
Case No. C 07 5086 WHA
pa-1261887

14

**CERTIFICATE OF SERVICE**
*(Fed. R. Civ. Proc. Rule 5(b))*

I am employed by Western Messenger Service, whose address is 75 Columbia Square, San Francisco, CA 94103. I am not a party to the within cause; and I am over the age of eighteen years.

I further declare that on June 12, 2008, I served a copy of:

**FOSTER PARENTS' FIRST SET OF REQUESTS FOR ADMISSIONS TO DEFENDANTS**

☐ **BY FACSIMILE, [Fed. Rule Civ. Proc. Rule 5(b)]** by sending a true copy from Morrison & Foerster LLP's facsimile transmission telephone number 650.494.0792 to the fax number(s) set forth below, or as stated on the attached service list. The transmission was reported as complete and without error. The transmission report was properly issued by the transmitting facsimile machine.

I am readily familiar with Morrison & Foerster LLP's practice for sending facsimile transmissions, and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be transmitted by facsimile on the same date that it (they) is (are) placed at Morrison & Foerster LLP for transmission.

☐ **BY U.S. MAIL [Fed. Rule Civ. Proc. Rule 5(b)]** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, addressed as follows, for collection and mailing at Morrison & Foerster LLP, 755 Page Mill Road, Palo Alto, California 94304-1018 in accordance with Morrison & Foerster LLP's ordinary business practices.

I am readily familiar with Morrison & Foerster LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service, and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be deposited with the United States Postal Service on the same date that it (they) is (are) placed at Morrison & Foerster LLP with postage thereon fully prepaid for collection and mailing.

☐ **BY OVERNIGHT DELIVERY [Fed. Rule Civ. Proc. Rule 5(b)]** by placing a true copy thereof enclosed in a sealed envelope with delivery fees provided for, addressed as follows, for collection by UPS, at 755 Page Mill Road, Palo Alto, California 94304-1018 in accordance with Morrison & Foerster LLP's ordinary business practices.

I am readily familiar with Morrison & Foerster LLP's practice for collection and processing of correspondence for overnight delivery and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be deposited in a box or other facility regularly maintained by UPS or delivered to an authorized courier or driver authorized by UPS to receive documents on the same date that it (they) is are placed at Morrison & Foerster LLP for collection.

☐ **BY PERSONAL SERVICE [Fed. Rule Civ. Proc. Rule 5(b)]** by placing a true copy thereof enclosed in a sealed envelope addressed as follows for collection and delivery at the mailroom of Morrison & Foerster LLP, causing personal delivery of the document(s) listed above to the person(s) at the address(es) set forth below.

I am readily familiar with Morrison & Foerster LLP's practice for the collection and processing of documents for hand delivery and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be taken from Morrison & Foerster LLP's mailroom and hand delivered to the document's addressee (or left with an employee or person in charge of the addressee's office) on the same date that it is placed at Morrison & Foerster LLP's mailroom.

☒ **BY CAUSING PERSONAL DELIVERY BY WESTERN MESSENGER** of the document(s) listed above to the person(s) at the address(es) set forth below.

George Prince
Deputy Attorney General
State of California
Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004

I declare under penalty of perjury that the foregoing is true and correct.

Executed at San Francisco, California, this 12th day of June, 2008.

Western Messenger (print name)          (signature)

FOSTER PARENTS' FIRST SET OF REQUESTS FOR ADMISSIONS TO DEFENDANTS
Case No. C 07 5086 WHA
pa-1261887

16