United States Code Annotated Currentness
  Title 42. The Public Health and Welfare
    Chapter 7. Social Security (Refs & Annos)
      Subchapter IV. Grants to States for Aid and Services to Needy Families with Children and for Child-Welfare Services (Refs & Annos)
        Part E. Federal Payments for Foster Care and Adoption Assistance (Refs & Annos)
          ➡ **§ 670. Congressional declaration of purpose; authorization of appropriations**

For the purpose of enabling each State to provide, in appropriate cases, foster care and transitional independent living programs for children who otherwise would have been eligible for assistance under the State's plan approved under part A of this subchapter (as such plan was in effect on June 1, 1995) and adoption assistance for children with special needs, there are authorized to be appropriated for each fiscal year (commencing with the fiscal year which begins October 1, 1980) such sums as may be necessary to carry out the provisions of this part. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary, State plans under this part.

**§ 671. State plan for foster care and adoption assistance**

(a) Requisite features of State plan

In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which--

**(1)** provides for foster care maintenance payments in accordance with section 672 of this title and for adoption assistance in accordance with section 673 of this title;

**(2)** provides that the State agency responsible for administering the program authorized by subpart 1 of part B of this subchapter shall administer, or supervise the administration of, the program authorized by this part;

**(3)** provides that the plan shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them;

**(4)** provides that the State shall assure that the programs at the local level assisted under this part will be coordinated with the programs at the State or local level assisted under parts A and B of this subchapter, under subchapter XX of this chapter, and under any other appropriate provision of Federal law;

**(5)** provides that the State will, in the administration of its programs under this part, use such methods relating to the establishment and maintenance of personnel standards on a merit basis as are found by the Secretary to be necessary for the proper and efficient operation of the programs, except that the Secretary shall exercise no authority with respect to the selection, tenure of office, or compensation of any individual employed in accordance with such methods;

**(6)** provides that the State agency referred to in paragraph (2) (hereinafter in this part referred to as the "State

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

agency") will make such reports, in such form and containing such information as the Secretary may from time to time require, and comply with such provisions as the Secretary may from time to time find necessary to assure the correctness and verification of such reports;

**(7)** provides that the State agency will monitor and conduct periodic evaluations of activities carried out under this part;

**(8)** subject to subsection (c) of this section, provides safeguards which restrict the use of or disclosure of information concerning individuals assisted under the State plan to purposes directly connected with (A) the administration of the plan of the State approved under this part, the plan or program of the State under part A, B, or D of this subchapter or under subchapter I, V, X, XIV, XVI (as in effect in Puerto Rico, Guam, and the Virgin Islands), XIX, or XX of this chapter, or the supplemental security income program established by subchapter XVI of this chapter, (B) any investigation, prosecution, or criminal or civil proceeding, conducted in connection with the administration of any such plan or program, (C) the administration of any other Federal or federally assisted program which provides assistance, in cash or in kind, or services, directly to individuals on the basis of need, (D) any audit or similar activity conducted in connection with the administration of any such plan or program by any governmental agency which is authorized by law to conduct such audit or activity; and the safeguards so provided shall prohibit disclosure, to any committee or legislative body (other than an agency referred to in clause (D) with respect to an activity referred to in such clause), of any information which identifies by name or address any such applicant or recipient, and (E) reporting and providing information pursuant to paragraph (9) to appropriate authorities with respect to known or suspected child abuse or neglect; except that nothing contained herein shall preclude a State from providing standards which restrict disclosures to purposes more limited than those specified herein, or which, in the case of adoptions, prevent disclosure entirely;

**(9)** provides that the State agency will--

  **(A)** report to an appropriate agency or official, known or suspected instances of physical or mental injury, sexual abuse or exploitation, or negligent treatment or maltreatment of a child receiving aid under part B of this subchapter or this part under circumstances which indicate that the child's health or welfare is threatened thereby; and

  **(B)** provide such information with respect to a situation described in subparagraph (A) as the State agency may have;

**(10)** provides for the establishment or designation of a State authority or authorities which shall be responsible for establishing and maintaining standards for foster family homes and child care institutions which are reasonably in accord with recommended standards of national organizations concerned with standards for such institutions or homes, including standards related to admission policies, safety, sanitation, and protection of civil rights, and provides that the standards so established shall be applied by the State to any foster family home or child care institution receiving funds under this part or part B of this subchapter;

**(11)** provides for periodic review of the standards referred to in the preceding paragraph and amounts paid as foster care maintenance payments and adoption assistance to assure their continuing appropriateness;

**(12)** provides for granting an opportunity for a fair hearing before the State agency to any individual whose claim for benefits available pursuant to this part is denied or is not acted upon with reasonable promptness;

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**(13)** provides that the State shall arrange for a periodic and independently conducted audit of the programs assisted under this part and part B of this subchapter, which shall be conducted no less frequently than once every three years;

**(14)** provides (A) specific goals (which shall be established by State law on or before October 1, 1982) for each fiscal year (commencing with the fiscal year which begins on October 1, 1983) as to the maximum number of children (in absolute numbers or as a percentage of all children in foster care with respect to whom assistance under the plan is provided during such year) who, at any time during such year, will remain in foster care after having been in such care for a period in excess of twenty-four months, and (B) a description of the steps which will be taken by the State to achieve such goals;

**(15)** provides that--

**(A)** in determining reasonable efforts to be made with respect to a child, as described in this paragraph, and in making such reasonable efforts, the child's health and safety shall be the paramount concern;

**(B)** except as provided in subparagraph (D), reasonable efforts shall be made to preserve and reunify families--

**(i)** prior to the placement of a child in foster care, to prevent or eliminate the need for removing the child from the child's home; and

**(ii)** to make it possible for a child to safely return to the child's home;

**(C)** if continuation of reasonable efforts of the type described in subparagraph (B) is determined to be inconsistent with the permanency plan for the child, reasonable efforts shall be made to place the child in a timely manner in accordance with the permanency plan (including, if appropriate, through an interstate placement), and to complete whatever steps are necessary to finalize the permanent placement of the child;

**(D)** reasonable efforts of the type described in subparagraph (B) shall not be required to be made with respect to a parent of a child if a court of competent jurisdiction has determined that--

**(i)** the parent has subjected the child to aggravated circumstances (as defined in State law, which definition may include but need not be limited to abandonment, torture, chronic abuse, and sexual abuse);

**(ii)** the parent has--

**(I)** committed murder (which would have been an offense under section 1111(a) of Title 18, if the offense had occurred in the special maritime or territorial jurisdiction of the United States) of another child of the parent;

**(II)** committed voluntary manslaughter (which would have been an offense under section 1112(a) of Title 18, if the offense had occurred in the special maritime or territorial jurisdiction of the United States) of another child of the parent;

**(III)** aided or abetted, attempted, conspired, or solicited to commit such a murder or such a voluntary manslaughter; or

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**(IV)** committed a felony assault that results in serious bodily injury to the child or another child of the parent; or

**(iii)** the parental rights of the parent to a sibling have been terminated involuntarily;

**(E)** if reasonable efforts of the type described in subparagraph (B) are not made with respect to a child as a result of a determination made by a court of competent jurisdiction in accordance with subparagraph (D)--

**(i)** a permanency hearing (as described in section 675(5)(C)), which considers in-State and out-of-State permanent placement options for the child, shall be held for the child within 30 days after the determination; and

**(ii)** reasonable efforts shall be made to place the child in a timely manner in accordance with the permanency plan, and to complete whatever steps are necessary to finalize the permanent placement of the child; and

**(F)** reasonable efforts to place a child for adoption or with a legal guardian, including identifying appropriate in-State and out-of-State placements [FN1] may be made concurrently with reasonable efforts of the type described in subparagraph (B);

**(16)** provides for the development of a case plan (as defined in section 675(1) of this title) for each child receiving foster care maintenance payments under the State plan and provides for a case review system which meets the requirements described in section 675(5)(B) of this title with respect to each such child;

**(17)** provides that, where appropriate, all steps will be taken, including cooperative efforts with the State agencies administering the program funded under part A of this subchapter and plan approved under part D of this subchapter, to secure an assignment to the State of any rights to support on behalf of each child receiving foster care maintenance payments under this part;

**(18)** not later than January 1, 1997, provides that neither the State nor any other entity in the State that receives funds from the Federal Government and is involved in adoption or foster care placements may--

**(A)** deny to any person the opportunity to become an adoptive or a foster parent, on the basis of the race, color, or national origin of the person, or of the child, involved; or

**(B)** delay or deny the placement of a child for adoption or into foster care, on the basis of the race, color, or national origin of the adoptive or foster parent, or the child, involved,

**(19)** provides that the State shall consider giving preference to an adult relative over a non-related caregiver when determining a placement for a child, provided that the relative caregiver meets all relevant State child protection standards;

**(20)(A)** unless an election provided for in subparagraph (B) is made with respect to the State, provides procedures for criminal records checks, including fingerprint-based checks of national crime information databases (as defined in section 534(e)(3)(A) of Title 28), for any prospective foster or adoptive parent before the foster or adoptive parent may be finally approved for placement of a child regardless of whether foster care maintenance payments or adoption assistance payments are to be made on behalf of the child under the State plan under this part, including procedures requiring that--

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**(i)** in any case involving a child on whose behalf such payments are to be so made in which a record check reveals a felony conviction for child abuse or neglect, for spousal abuse, for a crime against children (including child pornography), or for a crime involving violence, including rape, sexual assault, or homicide, but not including other physical assault or battery, if a State finds that a court of competent jurisdiction has determined that the felony was committed at any time, such final approval shall not be granted; and

**(ii)** in any case involving a child on whose behalf such payments are to be so made in which a record check reveals a felony conviction for physical assault, battery, or a drug-related offense, if a State finds that a court of competent jurisdiction has determined that the felony was committed within the past 5 years, such final approval shall not be granted; and  [FN2]

**(B)** subparagraph (A) shall not apply to a State plan if, on or before September 30, 2005, the Governor of the State has notified the Secretary in writing that the State has elected to make subparagraph (A) inapplicable to the State, or if, on or before such date, the State legislature, by law, has elected to make subparagraph (A) inapplicable to the State;  [FN3]

**(C)** provides that the State shall--

**(i)** check any child abuse and neglect registry maintained by the State for information on any prospective foster or adoptive parent and on any other adult living in the home of such a prospective parent, and request any other State in which any such prospective parent or other adult has resided in the preceding 5 years, to enable the State to check any child abuse and neglect registry maintained by such other State for such information, before the prospective foster or adoptive parent may be finally approved for placement of a child, regardless of whether foster care maintenance payments or adoption assistance payments are to be made on behalf of the child under the State plan under this part;

**(ii)** comply with any request described in clause (i) that is received from another State; and

**(iii)** have in place safeguards to prevent the unauthorized disclosure of information in any child abuse and neglect registry maintained by the State, and to prevent any such information obtained pursuant to this subparagraph from being used for a purpose other than the conducting of background checks in foster or adoptive placement cases;

**(21)** provides for health insurance coverage (including, at State option, through the program under the State plan approved under subchapter XIX) for any child who has been determined to be a child with special needs, for whom there is in effect an adoption assistance agreement (other than an agreement under this part) between the State and an adoptive parent or parents, and who the State has determined cannot be placed with an adoptive parent or parents without medical assistance because such child has special needs for medical, mental health, or rehabilitative care, and that with respect to the provision of such health insurance coverage--

**(A)** such coverage may be provided through 1 or more State medical assistance programs;

**(B)** the State, in providing such coverage, shall ensure that the medical benefits, including mental health benefits, provided are of the same type and kind as those that would be provided for children by the State under subchapter XIX;

**(C)** in the event that the State provides such coverage through a State medical assistance program other than

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

the program under subchapter XIX, and the State exceeds its funding for services under such other program, any such child shall be deemed to be receiving aid or assistance under the State plan under this part for purposes of section 1396a(a)(10)(A)(i)(I) of this title; and

**(D)** in determining cost-sharing requirements, the State shall take into consideration the circumstances of the adopting parent or parents and the needs of the child being adopted consistent, to the extent coverage is provided through a State medical assistance program, with the rules under such program;

**(22)** provides that, not later than January 1, 1999, the State shall develop and implement standards to ensure that children in foster care placements in public or private agencies are provided quality services that protect the safety and health of the children;

**(23)** provides that the State shall not--

**(A)** deny or delay the placement of a child for adoption when an approved family is available outside of the jurisdiction with responsibility for handling the case of the child; or

**(B)** fail to grant an opportunity for a fair hearing, as described in paragraph (12), to an individual whose allegation of a violation of subparagraph (A) of this paragraph is denied by the State or not acted upon by the State with reasonable promptness;

**(24)** include  [FN4] a certification that, before a child in foster care under the responsibility of the State is placed with prospective foster parents, the prospective foster parents will be prepared adequately with the appropriate knowledge and skills to provide for the needs of the child, and that such preparation will be continued, as necessary, after the placement of the child;

**(25)** provide that the State shall have in effect procedures for the orderly and timely interstate placement of children; and procedures implemented in accordance with an interstate compact, if incorporating with the procedures prescribed by paragraph (26), shall be considered to satisfy the requirement of this paragraph;

**(26)** provides that--

**(A)(i)** within 60 days after the State receives from another State a request to conduct a study of a home environment for purposes of assessing the safety and suitability of placing a child in the home, the State shall, directly or by contract--

**(I)** conduct and complete the study; and

**(II)** return to the other State a report on the results of the study, which shall address the extent to which placement in the home would meet the needs of the child; and

**(ii)** in the case of a home study begun on or before September 30, 2008, if the State fails to comply with clause (i) within the 60-day period as a result of circumstances beyond the control of the State (such as a failure by a Federal agency to provide the results of a background check, or the failure by any entity to provide completed medical forms, requested by the State at least 45 days before the end of the 60-day period), the State shall have 75 days to comply with clause (i) if the State documents the circumstances involved and certifies that completing the home study is in the best interests of the child; except that

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**(iii)** this subparagraph shall not be construed to require the State to have completed, within the applicable period, the parts of the home study involving the education and training of the prospective foster or adoptive parents;

**(B)** the State shall treat any report described in subparagraph (A) that is received from another State or an Indian tribe (or from a private agency under contract with another State) as meeting any requirements imposed by the State for the completion of a home study before placing a child in the home, unless, within 14 days after receipt of the report, the State determines, based on grounds that are specific to the content of the report, that making a decision in reliance on the report would be contrary to the welfare of the child; and

**(C)** the State shall not impose any restriction on the ability of a State agency administering, or supervising the administration of, a State program operated under a State plan approved under this part to contract with a private agency for the conduct of a home study described in subparagraph (A); and

**(27)** provides that, with respect to any child in foster care under the responsibility of the State under this part or part B of this subchapter and without regard to whether foster care maintenance payments are made under section 672 of this title on behalf of the child, the State has in effect procedures for verifying the citizenship or immigration status of the child.

(b) Approval of plan by Secretary

The Secretary shall approve any plan which complies with the provisions of subsection (a) of this section.

(c) Use of child welfare records in State court proceedings

Subsection (a)(8) of this section shall not be construed to limit the flexibility of a State in determining State policies relating to public access to court proceedings to determine child abuse and neglect or other court hearings held pursuant to part B of this subchapter or this part, except that such policies shall, at a minimum, ensure the safety and well-being of the child, parents, and family.

[FN1] So in original. A comma probably should appear.

[FN2] So in original. The word "and" probably should not appear.

[FN3] So in original. The word "and" probably should appear after the semicolon.

[FN4] So in original. Probably should be "includes".


### § 672. Foster care maintenance payments program

(a) In general

   (1) Eligibility

Each State with a plan approved under this part shall make foster care maintenance payments on behalf of each child who has been removed from the home of a relative specified in section 606(a) of this title (as in effect on July 16, 1996) into foster care if--

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**(A)** the removal and foster care placement met, and the placement continues to meet, the requirements of paragraph (2); and

**(B)** the child, while in the home, would have met the AFDC eligibility requirement of paragraph (3).

(2) Removal and foster care placement requirements

The removal and foster care placement of a child meet the requirements of this paragraph if--

**(A)** the removal and foster care placement are in accordance with--

**(i)** a voluntary placement agreement entered into by a parent or legal guardian of the child who is the relative referred to in paragraph (1); or

**(ii)** a judicial determination to the effect that continuation in the home from which removed would be contrary to the welfare of the child and that reasonable efforts of the type described in section 671(a)(15) of this title for a child have been made;

**(B)** the child's placement and care are the responsibility of--

**(i)** the State agency administering the State plan approved under section 671 of this title; or

**(ii)** any other public agency with which the State agency administering or supervising the administration of the State plan has made an agreement which is in effect; and

**(C)** the child has been placed in a foster family home or child-care institution.

(3) AFDC eligibility requirement

(A) In general

A child in the home referred to in paragraph (1) would have met the AFDC eligibility requirement of this paragraph if the child--

**(i)** would have received aid under the State plan approved under section 602 of this title (as in effect on July 16, 1996) in the home, in or for the month in which the agreement was entered into or court proceedings leading to the determination referred to in paragraph (2)(A)(ii) of this subsection were initiated; or

**(ii)(I)** would have received the aid in the home, in or for the month referred to in clause (i), if application had been made therefor; or

**(II)** had been living in the home within 6 months before the month in which the agreement was entered into or the proceedings were initiated, and would have received the aid in or for such month, if, in such month, the child had been living in the home with the relative referred to in paragraph (1) and application for the aid had been made.

(B) Resources determination

For purposes of subparagraph (A), in determining whether a child would have received aid under a State

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

plan approved under section 602 of this title (as in effect on July 16, 1996), a child whose resources (determined pursuant to section 602(a)(7)(B) of this title, as so in effect) have a combined value of not more than $10,000 shall be considered a child whose resources have a combined value of not more than $1,000 (or such lower amount as the State may determine for purposes of section 602(a)(7)(B) of this title).

(4) Eligibility of certain alien children

Subject to title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, if the child is an alien disqualified under section 1255a(h) of Title 8 or 1160(f) of Title 8 from receiving aid under the State plan approved under section 602 of this title in or for the month in which the agreement described in paragraph (2)(A)(i) was entered into or court proceedings leading to the determination described in paragraph (2)(A)(ii) were initiated, the child shall be considered to satisfy the requirements of paragraph (3), with respect to the month, if the child would have satisfied the requirements but for the disqualification.

(b) Additional qualifications

Foster care maintenance payments may be made under this part only on behalf of a child described in subsection (a) of this section who is--

**(1)** in the foster family home of an individual, whether the payments therefor are made to such individual or to a public or private child-placement or child-care agency, or

**(2)** in a child-care institution, whether the payments therefor are made to such institution or to a public or private child-placement or child-care agency, which payments shall be limited so as to include in such payments only those items which are included in the term "foster care maintenance payments" (as defined in section 675(4) of this title).

(c) "Foster family home" and "child-care institution" defined

For the purposes of this part, (1) the term "foster family home" means a foster family home for children which is licensed by the State in which it is situated or has been approved, by the agency of such State having responsibility for licensing homes of this type, as meeting the standards established for such licensing; and (2) the term "child-care institution" means a private child-care institution, or a public child-care institution which accommodates no more than twenty-five children, which is licensed by the State in which it is situated or has been approved, by the agency of such State responsible for licensing or approval of institutions of this type, as meeting the standards established for such licensing, but the term shall not include detention facilities, forestry camps, training schools, or any other facility operated primarily for the detention of children who are determined to be delinquent.

(d) Children removed from their homes pursuant to voluntary placement agreements

Notwithstanding any other provision of this subchapter, Federal payments may be made under this part with respect to amounts expended by any State as foster care maintenance payments under this section, in the case of children removed from their homes pursuant to voluntary placement agreements as described in subsection (a) of this section, only if (at the time such amounts were expended) the State has fulfilled all of the requirements of section 622(b)(8) of this title.

(e) Placements in best interest of child

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

No Federal payment may be made under this part with respect to amounts expended by any State as foster care maintenance payments under this section, in the case of any child who was removed from his or her home pursuant to a voluntary placement agreement as described in subsection (a) of this section and has remained in voluntary placement for a period in excess of 180 days, unless there has been a judicial determination by a court of competent jurisdiction (within the first 180 days of such placement) to the effect that such placement is in the best interests of the child.

(f) "Voluntary placement" and "voluntary placement agreement" defined

For the purposes of this part and part B of this subchapter, (1) the term "voluntary placement" means an out-of-home placement of a minor, by or with participation of a State agency, after the parents or guardians of the minor have requested the assistance of the agency and signed a voluntary placement agreement; and (2) the term "voluntary placement agreement" means a written agreement, binding on the parties to the agreement, between the State agency, any other agency acting on its behalf, and the parents or guardians of a minor child which specifies, at a minimum, the legal status of the child and the rights and obligations of the parents or guardians, the child, and the agency while the child is in placement.

(g) Revocation of voluntary placement agreement

In any case where--

**(1)** the placement of a minor child in foster care occurred pursuant to a voluntary placement agreement entered into by the parents or guardians of such child as provided in subsection (a) of this section, and

**(2)** such parents or guardians request (in such manner and form as the Secretary may prescribe) that the child be returned to their home or to the home of a relative,

the voluntary placement agreement shall be deemed to be revoked unless the State agency opposes such request and obtains a judicial determination, by a court of competent jurisdiction, that the return of the child to such home would be contrary to the child's best interests.

(h) Aid for dependent children; assistance for minor children in needy families

**(1)** For purposes of subchapter XIX of this chapter, any child with respect to whom foster care maintenance payments are made under this section is deemed to be a dependent child as defined in section 606 of this title (as in effect as of July 16, 1996) and deemed to be a recipient of aid to families with dependent children under part A of this subchapter (as so in effect). For purposes of subchapter XX of this chapter, any child with respect to whom foster care maintenance payments are made under this section is deemed to be a minor child in a needy family under a State program funded under part A of this subchapter and is deemed to be a recipient of assistance under such part.

**(2)** For purposes of paragraph (1), a child whose costs in a foster family home or child care institution are covered by the foster care maintenance payments being made with respect to the child's minor parent, as provided in section 675(4)(B) of this title, shall be considered a child with respect to whom foster care maintenance payments are made under this section.

(i) Administrative costs associated with otherwise eligible children not in licensed foster care settings

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Expenditures by a State that would be considered administrative expenditures for purposes of section 674(a)(3) of this title if made with respect to a child who was residing in a foster family home or child-care institution shall be so considered with respect to a child not residing in such a home or institution--

**(1)** in the case of a child who has been removed in accordance with subsection (a) of this section from the home of a relative specified in section 606(a) of this title (as in effect on July 16, 1996), only for expenditures--

**(A)** with respect to a period of not more than the lesser of 12 months or the average length of time it takes for the State to license or approve a home as a foster home, in which the child is in the home of a relative and an application is pending for licensing or approval of the home as a foster family home; or

**(B)** with respect to a period of not more than 1 calendar month when a child moves from a facility not eligible for payments under this part into a foster family home or child care institution licensed or approved by the State; and

**(2)** in the case of any other child who is potentially eligible for benefits under a State plan approved under this part and at imminent risk of removal from the home, only if--

**(A)** reasonable efforts are being made in accordance with section 671(a)(15) of this title to prevent the need for, or if necessary to pursue, removal of the child from the home; and

**(B)** the State agency has made, not less often than every 6 months, a determination (or redetermination) as to whether the child remains at imminent risk of removal from the home.

## § 673. Adoption assistance program

(a) Agreements with adoptive parents of children with special needs; State payments; qualifying children; amount of payments; changes in circumstances; placement period prior to adoption; nonrecurring adoption expenses

**(1)(A)** Each State having a plan approved under this part shall enter into adoption assistance agreements (as defined in section 675(3) of this title with the adoptive parents of children with special needs.

**(B)** Under any adoption assistance agreement entered into by a State with parents who adopt a child with special needs, the State--

**(i)** shall make payments of nonrecurring adoption expenses incurred by or on behalf of such parents in connection with the adoption of such child, directly through the State agency or through another public or nonprofit private agency, in amounts determined under paragraph (3), and

**(ii)** in any case where the child meets the requirements of paragraph (2), may make adoption assistance payments to such parents, directly through the State agency or through another public or nonprofit private agency, in amounts so determined.

**(2)(A)** For purposes of paragraph (1)(B)(ii), a child meets the requirements of this paragraph if the child--

**(i)(I)(aa)** was removed from the home of a relative specified in section 606(a) of this title (as in effect on July

16, 1996) and placed in foster care in accordance with a voluntary placement agreement with respect to which Federal payments are provided under section 674 of this title (or section 603 of this title, as such section was in effect on July 16, 1996), or in accordance with a judicial determination to the effect that continuation in the home would be contrary to the welfare of the child; and

(**bb**) met the requirements of section 672(a)(3) of this title with respect to the home referred to in item (aa) of this subclause;

(**II**) meets all of the requirements of subchapter XVI of this chapter with respect to eligibility for supplemental security income benefits; or

(**III**) is a child whose costs in a foster family home or child-care institution are covered by the foster care maintenance payments being made with respect to the minor parent of the child as provided in section 675(4)(B) of this title; and

(**ii**) has been determined by the State, pursuant to subsection (c) of this section, to be a child with special needs.

(**B**) Section 672(a)(4) of this title shall apply for purposes of subparagraph (A) of this paragraph, in any case in which the child is an alien described in such section.

(**C**) A child shall be treated as meeting the requirements of this paragraph for the purpose of paragraph (1)(B)(ii) if the child--

(**i**) meets the requirements of subparagraph (A)(ii);

(**ii**) was determined eligible for adoption assistance payments under this part with respect to a prior adoption;

(**iii**) is available for adoption because--

(**I**) the prior adoption has been dissolved, and the parental rights of the adoptive parents have been terminated; or

(**II**) the child's adoptive parents have died; and

(**iv**) fails to meet the requirements of subparagraph (A) but would meet such requirements if--

(**I**) the child were treated as if the child were in the same financial and other circumstances the child was in the last time the child was determined eligible for adoption assistance payments under this part; and

(**II**) the prior adoption were treated as never having occurred.

(**3**) The amount of the payments to be made in any case under clauses (i) and (ii) of paragraph (1)(B) shall be determined through agreement between the adoptive parents and the State or local agency administering the program under this section, which shall take into consideration the circumstances of the adopting parents and the needs of the child being adopted, and may be readjusted periodically, with the concurrence of the adopting parents (which may be specified in the adoption assistance agreement), depending upon changes in such circumstances. However, in no case may the amount of the adoption assistance payment made under clause (ii) of paragraph (1)(B) exceed the foster care maintenance payment which would have been paid during the peri-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

od if the child with respect to whom the adoption assistance payment is made had been in a foster family home.

**(4)** Notwithstanding the preceding paragraph, (A) no payment may be made to parents with respect to any child who has attained the age of eighteen (or, where the State determines that the child has a mental or physical handicap which warrants the continuation of assistance, the age of twenty-one), and (B) no payment may be made to parents with respect to any child if the State determines that the parents are no longer legally responsible for the support of the child or if the State determines that the child is no longer receiving any support from such parents. Parents who have been receiving adoption assistance payments under this section shall keep the State or local agency administering the program under this section informed of circumstances which would, pursuant to this subsection, make them ineligible for such assistance payments, or eligible for assistance payments in a different amount.

**(5)** For purposes of this part, individuals with whom a child (who has been determined by the State, pursuant to subsection (c) of this section, to be a child with special needs) is placed for adoption in accordance with applicable State and local law shall be eligible for such payments, during the period of the placement, on the same terms and subject to the same conditions as if such individuals had adopted such child.

**(6)(A)** For purposes of paragraph (1)(B)(i), the term "nonrecurring adoption expenses" means reasonable and necessary adoption fees, court costs, attorney fees, and other expenses which are directly no related to the legal adoption of a child with special needs and which are not incurred in violation of State or Federal law.

**(B)** A State's payment of nonrecurring adoption expenses under an adoption assistance agreement shall be treated as an expenditure made for the proper and efficient administration of the State plan for purposes of section 674(a)(3)(E) of this title.

(b) Aid for dependent children; assistance for minor children in needy families

**(1)** For purposes of subchapter XIX of this chapter, any child who is described in paragraph (3) is deemed to be a dependent child as defined in section 606 of this title (as in effect as of July 16, 1996) and deemed to be a recipient of aid to families with dependent children under part A of this subchapter (as so in effect) in the State where such child resides.

**(2)** For purposes of subchapter XX of this chapter, any child who is described in paragraph (3) is deemed to be a minor child in a needy family under a State program funded under part A of this subchapter and deemed to be a recipient of assistance under such part.

**(3)** A child described in this paragraph is any child--

**(A)(i)** who is a child described in subsection (a)(2) of this section, and

**(ii)** with respect to whom an adoption assistance agreement is in effect under this section (whether or not adoption assistance payments are provided under the agreement or are being made under this section), including any such child who has been placed for adoption in accordance with applicable State and local law (whether or not an interlocutory or other judicial decree of adoption has been issued), or

**(B)** with respect to whom foster care maintenance payments are being made under section 672 of this title.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**(4)** For purposes of paragraphs (1) and (2), a child whose costs in a foster family home or child-care institution are covered by the foster care maintenance payments being made with respect to the child's minor parent, as provided in section 675(4)(B) of this title, shall be considered a child with respect to whom foster care maintenance payments are being made under section 672 of this title.

(c) Children with special needs

For purposes of this section, a child shall not be considered a child with special needs unless--

**(1)** the State has determined that the child cannot or should not be returned to the home of his parents; and

**(2)** the State had first determined (A) that there exists with respect to the child a specific factor or condition (such as his ethnic background, age, or membership in a minority or sibling group, or the presence of factors such as medical conditions or physical, mental, or emotional handicaps) because of which it is reasonable to conclude that such child cannot be placed with adoptive parents without providing adoption assistance under this section or medical assistance under subchapter XIX of this chapter, and (B) that, except where it would be against the best interests of the child because of such factors as the existence of significant emotional ties with prospective adoptive parents while in the care of such parents as a foster child, a reasonable, but unsuccessful, effort has been made to place the child with appropriate adoptive parents without providing adoption assistance under this section or medical assistance under subchapter XIX of this chapter.

## § 673a. Interstate compacts

The Secretary of Health and Human Services shall take all possible steps to encourage and assist the various States to enter into interstate compacts (which are hereby approved by the Congress) under which the interests of any adopted child with respect to whom an adoption assistance agreement has been entered into by a State under section 673 of this title will be adequately protected, on a reasonable and equitable basis which is approved by the Secretary, if and when the child and his or her adoptive parent (or parents) move to another State.

## § 673b. Adoption incentive payments

(a) Grant authority

Subject to the availability of such amounts as may be provided in advance in appropriations Acts for this purpose, the Secretary shall make a grant to each State that is an incentive-eligible State for a fiscal year in an amount equal to the adoption incentive payment payable to the State under this section for the fiscal year, which shall be payable in the immediately succeeding fiscal year.

(b) Incentive-eligible state

A State is an incentive-eligible State for a fiscal year if--

**(1)** the State has a plan approved under this part for the fiscal year;

**(2)(A)** the number of foster child adoptions in the State during the fiscal year exceeds the base number of foster child adoptions for the State for the fiscal year; or

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**(B)** the number of older child adoptions in the State during the fiscal year exceeds the base number of older child adoptions for the State for the fiscal year;

**(3)** the State is in compliance with subsection (c) of this section for the fiscal year;

**(4)** in the case of fiscal years 2001 through 2007, the State provides health insurance coverage to any child with special needs (as determined under section 673(c) of this title) for whom there is in effect an adoption assistance agreement between a State and an adoptive parent or parents; and

**(5)** the fiscal year is any of fiscal years 1998 through 2007.

(c) Data requirements

(1) In general

A State is in compliance with this subsection for a fiscal year if the State has provided to the Secretary the data described in paragraph (2)--

**(A)** for fiscal years 1995 through 1997 (or, if the first fiscal year for which the State seeks a grant under this section is after fiscal year 1998, the fiscal year that precedes such first fiscal year); and

**(B)** for each succeeding fiscal year that precedes the fiscal year.

(2) Determination of numbers of adoptions based on AFCARS data

The Secretary shall determine the numbers of foster child adoptions, of special needs adoptions that are not older child adoptions, and of older child adoptions in a State during each of fiscal years 2002 through 2007, for purposes of this section, on the basis of data meeting the requirements of the system established pursuant to section 679 of this title, as reported by the State and approved by the Secretary by August 1 of the succeeding fiscal year.

(3) No waiver of AFCARS requirements

This section shall not be construed to alter or affect any requirement of section 679 of this title or of any regulation prescribed under such section with respect to reporting of data by States, or to waive any penalty for failure to comply with such a requirement.

(d) Adoption incentive payment

(1) In general

Except as provided in paragraph (2), the adoption incentive payment payable to a State for a fiscal year under this section shall be equal to the sum of--

**(A)** $4,000, multiplied by the amount (if any) by which the number of foster child adoptions in the State during the fiscal year exceeds the base number of foster child adoptions for the State for the fiscal year;

**(B)** $2,000, multiplied by the amount (if any) by which the number of special needs adoptions that are not older child adoptions in the State during the fiscal year exceeds the base number of special needs adoptions

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

that are not older child adoptions for the State for the fiscal year; and

**(C)** $4,000, multiplied by the amount (if any) by which the number of older child adoptions in the State during the fiscal year exceeds the base number of older child adoptions for the State for the fiscal year.

(2) Pro rata adjustment if insufficient funds available

For any fiscal year, if the total amount of adoption incentive payments otherwise payable under this section for a fiscal year exceeds the amount appropriated pursuant to subsection (h) of this section for the fiscal year, the amount of the adoption incentive payment payable to each State under this section for the fiscal year shall be--

**(A)** the amount of the adoption incentive payment that would otherwise be payable to the State under this section for the fiscal year; multiplied by

**(B)** the percentage represented by the amount so appropriated for the fiscal year, divided by the total amount of adoption incentive payments otherwise payable under this section for the fiscal year.

(e) 2-year availability of incentive payments

Payments to a State under this section in a fiscal year shall remain available for use by the State through the end of the succeeding fiscal year.

(f) Limitations on use of incentive payments

A State shall not expend an amount paid to the State under this section except to provide to children or families any service (including post-adoption services) that may be provided under part B of this subchapter or this part. Amounts expended by a State in accordance with the preceding sentence shall be disregarded in determining State expenditures for purposes of Federal matching payments under sections 624, 629d, and 674 of this title.

(g) Definitions

As used in this section:

(1) Foster child adoption

The term "foster child adoption" means the final adoption of a child who, at the time of adoptive placement, was in foster care under the supervision of the State.

(2) Special needs adoption

The term "special needs adoption" means the final adoption of a child for whom an adoption assistance agreement is in effect under section 673 of this title.

(3) Base number of foster child adoptions

The term "base number of foster child adoptions for a State" means--

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**(A)** with respect to fiscal year 2003, the number of foster child adoptions in the State in fiscal year 2002; and

**(B)** with respect to any subsequent fiscal year, the number of foster child adoptions in the State in the fiscal year for which the number is the greatest in the period that begins with fiscal year 2002 and ends with the fiscal year preceding that subsequent fiscal year.

(4) Base number of special needs adoptions that are not older child adoptions

The term "base number of special needs adoptions for a State" means--

**(A)** with respect to fiscal year 2003, the number of special needs adoptions that are not older child adoptions in the State in fiscal year 2002; and

**(B)** with respect to any subsequent fiscal year, the number of special needs adoptions that are not older child adoptions in the State in the fiscal year for which the number is the greatest in the period that begins with fiscal year 2002 and ends with the fiscal year preceding that subsequent fiscal year.

(5) Base number of older child adoptions

The term "base number of older child adoptions for a State" means--

**(A)** with respect to fiscal year 2003, the number of older child adoptions in the State in fiscal year 2002; and

**(B)** with respect to any subsequent fiscal year, the number of older child adoptions in the State in the fiscal year for which the number is the greatest in the period that begins with fiscal year 2002 and ends with the fiscal year preceding that subsequent fiscal year.

(6) Older child adoptions

The term "older child adoptions" means the final adoption of a child who has attained 9 years of age if--

**(A)** at the time of the adoptive placement, the child was in foster care under the supervision of the State; or

**(B)** an adoption assistance agreement was in effect under section 673 of this title with respect to the child.

(h) Limitations on authorization of appropriations

(1) In general

For grants under subsection (a), there are authorized to be appropriated to the Secretary--

**(A)** $20,000,000 for fiscal year 1999;

**(B)** $43,000,000 for fiscal year 2000;

**(C)** $20,000,000 for each of fiscal years 2001 through 2003; and

**(D)** $43,000,000 for each of fiscal years 2004 through 2008.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(2) Availability

Amounts appropriated under paragraph (1), or under any other law for grants under subsection (a), are authorized to remain available until expended, but not after fiscal year 2008.

(i) Technical assistance

(1) In general

The Secretary may, directly or through grants or contracts, provide technical assistance to assist States and local communities to reach their targets for increased numbers of adoptions and, to the extent that adoption is not possible, alternative permanent placements, for children in foster care.

(2) Description of the character of the technical assistance

The technical assistance provided under paragraph (1) may support the goal of encouraging more adoptions out of the foster care system, when adoptions promote the best interests of children, and may include the following:

**(A)** The development of best practice guidelines for expediting termination of parental rights.

**(B)** Models to encourage the use of concurrent planning.

**(C)** The development of specialized units and expertise in moving children toward adoption as a permanency goal.

**(D)** The development of risk assessment tools to facilitate early identification of the children who will be at risk of harm if returned home.

**(E)** Models to encourage the fast tracking of children who have not attained 1 year of age into pre-adoptive placements.

**(F)** Development of programs that place children into pre-adoptive families without waiting for termination of parental rights.

(3) Targeting of technical assistance to the courts

Not less than 50 percent of any amount appropriated pursuant to paragraph (4) shall be used to provide technical assistance to the courts.

(4) Limitations on authorization of appropriations

To carry out this subsection, there are authorized to be appropriated to the Secretary of Health and Human Services not to exceed $10,000,000 for each of fiscal years 2004 through 2006.

(j) Repealed. Pub.L. 108-45, § 3(a)(7), Dec. 2, 2003, 117 Stat. 1881

**§ 673c. Timely interstate home study incentive payments**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(a) Grant authority

The Secretary shall make a grant to each State that is a home study incentive-eligible State for a fiscal year in an amount equal to the timely interstate home study incentive payment payable to the State under this section for the fiscal year, which shall be payable in the immediately succeeding fiscal year.

(b) Home study incentive-eligible State

A State is a home study incentive-eligible State for a fiscal year if--

**(1)** the State has a plan approved under this part for the fiscal year;

**(2)** the State is in compliance with subsection (c) of this section for the fiscal year; and

**(3)** based on data submitted and verified pursuant to subsection (c) of this section, the State has completed a timely interstate home study during the fiscal year.

(c) Data requirements

(1) In general

A State is in compliance with this subsection for a fiscal year if the State has provided to the Secretary a written report, covering the preceding fiscal year, that specifies--

**(A)** the total number of interstate home studies requested by the State with respect to children in foster care under the responsibility of the State, and with respect to each such study, the identity of the other State involved;

**(B)** the total number of timely interstate home studies completed by the State with respect to children in foster care under the responsibility of other States, and with respect to each such study, the identity of the other State involved; and

**(C)** such other information as the Secretary may require in order to determine whether the State is a home study incentive-eligible State.

(2) Verification of data

In determining the number of timely interstate home studies to be attributed to a State under this section, the Secretary shall check the data provided by the State under paragraph (1) against complementary data so provided by other States.

(d) Timely interstate home study incentive payments

(1) In general

The timely interstate home study incentive payment payable to a State for a fiscal year shall be $1,500, multiplied by the number of timely interstate home studies attributed to the State under this section during the fiscal year, subject to paragraph (2).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(2) Pro rata adjustment if insufficient funds available

If the total amount of timely interstate home study incentive payments otherwise payable under this section for a fiscal year exceeds the total of the amounts made available pursuant to subsection (h) of this section for the fiscal year (reduced (but not below zero) by the total of the amounts (if any) payable under paragraph (3) of this subsection with respect to the preceding fiscal year), the amount of each such otherwise payable incentive payment shall be reduced by a percentage equal to--

**(A)** the total of the amounts so made available (as so reduced); divided by

**(B)** the total of such otherwise payable incentive payments.

(3) Appropriations available for unpaid incentive payments for prior fiscal years

(A) In general

If payments under this section are reduced under paragraph (2) or subparagraph (B) of this paragraph for a fiscal year, then, before making any other payment under this section for the next fiscal year, the Secretary shall pay each State whose payment was so reduced an amount equal to the total amount of the reductions which applied to the State, subject to subparagraph (B) of this paragraph.

(B) Pro rata adjustment if insufficient funds available

If the total amount of payments otherwise payable under subparagraph (A) of this paragraph for a fiscal year exceeds the total of the amounts made available pursuant to subsection (h) of this section for the fiscal year, the amount of each such payment shall be reduced by a percentage equal to--

**(i)** the total of the amounts so made available; divided by

**(ii)** the total of such otherwise payable payments.

(e) Two-year availability of incentive payments

Payments to a State under this section in a fiscal year shall remain available for use by the State through the end of the next fiscal year.

(f) Limitations on use of incentive payments

A State shall not expend an amount paid to the State under this section except to provide to children or families any service (including post-adoption services) that may be provided under part B or E of this subchapter. Amounts expended by a State in accordance with the preceding sentence shall be disregarded in determining State expenditures for purposes of Federal matching payments under sections 623, 629d, and 674 of this title.

(g) Definitions

In this section:

(1) Home study

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

The term "home study" means an evaluation of a home environment conducted in accordance with applicable requirements of the State in which the home is located, to determine whether a proposed placement of a child would meet the individual needs of the child, including the child's safety, permanency, health, well-being, and mental, emotional, and physical development.

(2) Interstate home study

The term "interstate home study" means a home study conducted by a State at the request of another State, to facilitate an adoptive or foster placement in the State of a child in foster care under the responsibility of the State.

(3) Timely interstate home study

The term "timely interstate home study" means an interstate home study completed by a State if the State provides to the State that requested the study, within 30 days after receipt of the request, a report on the results of the study. The preceding sentence shall not be construed to require the State to have completed, within the 30-day period, the parts of the home study involving the education and training of the prospective foster or adoptive parents.

(h) Limitations on authorization of appropriations

(1) In general

For payments under this section, there are authorized to be appropriated to the Secretary--

**(A)** $10,000,000 for fiscal year 2007;

**(B)** $10,000,000 for fiscal year 2008;

**(C)** $10,000,000 for fiscal year 2009; and

**(D)** $10,000,000 for fiscal year 2010.

(2) Availability

Amounts appropriated under paragraph (1) are authorized to remain available until expended.

## § 674. Payments to States

(a) Amounts

For each quarter beginning after September 30, 1980, each State which has a plan approved under this part shall be entitled to a payment equal to the sum of--

**(1)** an amount equal to the Federal medical assistance percentage (as defined in section 1396d(b) of this title) of the total amount expended during such quarter as foster care maintenance payments under section 672 of this title for children in foster family homes or child-care institutions; plus

**(2)** an amount equal to the Federal medical assistance percentage (as defined in section 1396d(b) of this title)

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

of the total amount expended during such quarter as adoption assistance payments under section 673 of this title pursuant to adoption assistance agreements; plus

**(3)** subject to section 672(i) of this title an amount equal to the sum of the following proportions of the total amounts expended during such quarter as found necessary by the Secretary for the provision of child placement services and for the proper and efficient administration of the State plan--

**(A)** 75 per centum of so much of such expenditures as are for the training (including both short- and long-term training at educational institutions through grants to such institutions or by direct financial assistance to students enrolled in such institutions) of personnel employed or preparing for employment by the State agency or by the local agency administering the plan in the political subdivision,

**(B)** 75 percent of so much of such expenditures (including travel and per diem expenses) as are for the short-term training of current or prospective foster or adoptive parents and the members of the staff of State-licensed or State-approved child care institutions providing care to foster and adopted children receiving assistance under this part, in ways that increase the ability of such current or prospective parents, staff members, and institutions to provide support and assistance to foster and adopted children, whether incurred directly by the State or by contract,

**(C)** 50 percent of so much of such expenditures as are for the planning, design, development, or installation of statewide mechanized data collection and information retrieval systems (including 50 percent of the full amount of expenditures for hardware components for such systems) but only to the extent that such systems--

**(i)** meet the requirements imposed by regulations promulgated pursuant to section 679(b)(2) of this title;

**(ii)** to the extent practicable, are capable of interfacing with the State data collection system that collects information relating to child abuse and neglect;

**(iii)** to the extent practicable, have the capability of interfacing with, and retrieving information from, the State data collection system that collects information relating to the eligibility of individuals under part A of this subchapter (for the purposes of facilitating verification of eligibility of foster children); and

**(iv)** are determined by the Secretary to be likely to provide more efficient, economical, and effective administration of the programs carried out under a State plan approved under part B of this subchapter or this part; and

**(D)** 50 percent of so much of such expenditures as are for the operation of the statewide mechanized data collection and information retrieval systems referred to in subparagraph (C); and

**(E)** one-half of the remainder of such expenditures; plus

**(4)** an amount equal to the amount (if any) by which--

**(A)** the lesser of--

**(i)** 80 percent of the amounts expended by the State during the fiscal year in which the quarter occurs to carry out programs in accordance with the State application approved under section 677(b) of this title for

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

the period in which the quarter occurs (including any amendment that meets the requirements of section 677(b)(5) of this title); or

**(ii)** the amount allotted to the State under section 677(c)(1) of this title for the fiscal year in which the quarter occurs, reduced by the total of the amounts payable to the State under this paragraph for all prior quarters in the fiscal year; exceeds

**(B)** the total amount of any penalties assessed against the State under section 677(e) of this title during the fiscal year in which the quarter occurs.

(b) Quarterly estimates of State's entitlement for next quarter; payments; United States' pro rata share of amounts recovered as overpayment; allowance, disallowance, or deferral of claim

**(1)** The Secretary shall, prior to the beginning of each quarter, estimate the amount to which a State will be entitled under subsection (a) of this section for such quarter, such estimates to be based on (A) a report filed by the State containing its estimate of the total sum to be expended in such quarter in accordance with subsection (a) of this section, and stating the amount appropriated or made available by the State and its political subdivisions for such expenditures in such quarter, and if such amount is less than the State's proportionate share of the total sum of such estimated expenditures, the source or sources from which the difference is expected to be derived, (B) records showing the number of children in the State receiving assistance under this part, and (C) such other investigation as the Secretary may find necessary.

**(2)** The Secretary shall then pay to the State, in such installments as he may determine, the amounts so estimated, reduced or increased to the extent of any overpayment or underpayment which the Secretary determines was made under this section to such State for any prior quarter and with respect to which adjustment has not already been made under this subsection.

**(3)** The pro rata share to which the United States is equitably entitled, as determined by the Secretary, of the net amount recovered during any quarter by the State or any political subdivision thereof with respect to foster care and adoption assistance furnished under the State plan shall be considered an overpayment to be adjusted under this subsection.

**(4)(A)** Within 60 days after receipt of a State claim for expenditures pursuant to subsection (a) of this section, the Secretary shall allow, disallow, or defer such claim.

**(B)** Within 15 days after a decision to defer such a State claim, the Secretary shall notify the State of the reasons for the deferral and of the additional information necessary to determine the allowability of the claim.

**(C)** Within 90 days after receiving such necessary information (in readily reviewable form), the Secretary shall--

**(i)** disallow the claim, if able to complete the review and determine that the claim is not allowable, or

**(ii)** in any other case, allow the claim, subject to disallowance (as necessary)--

**(I)** upon completion of the review, if it is determined that the claim is not allowable; or

**(II)** on the basis of findings of an audit or financial management review.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(c) Automated data collection expenditures

The Secretary shall treat as necessary for the proper and efficient administration of the State plan all expenditures of a State necessary in order for the State to plan, design, develop, install, and operate data collection and information retrieval systems described in subsection (a)(3)(C) of this section, without regard to whether the systems may be used with respect to foster or adoptive children other than those on behalf of whom foster care maintenance payments or adoption assistance payments may be made under this part.

(d) Reduction for violation of plan requirement

**(1)** If, during any quarter of a fiscal year, a State's program operated under this part is found, as a result of a review conducted under section 1320a-2a of this title, or otherwise, to have violated paragraph (18) or (23) of section 671(a) of this title with respect to a person or to have failed to implement a corrective action plan within a period of time not to exceed 6 months with respect to such violation, then, notwithstanding subsection (a) of this section and any regulations promulgated under section 1320a-2a(b)(3) of this title, the Secretary shall reduce the amount otherwise payable to the State under this part, for that fiscal year quarter and for any subsequent quarter of such fiscal year, until the State program is found, as a result of a subsequent review under section 1320a-2a of this title, to have implemented a corrective action plan with respect to such violation, by--

**(A)** 2 percent of such otherwise payable amount, in the case of the 1st such finding for the fiscal year with respect to the State;

**(B)** 3 percent of such otherwise payable amount, in the case of the 2nd such finding for the fiscal year with respect to the State; or

**(C)** 5 percent of such otherwise payable amount, in the case of the 3rd or subsequent such finding for the fiscal year with respect to the State.

In imposing the penalties described in this paragraph, the Secretary shall not reduce any fiscal year payment to a State by more than 5 percent.

**(2)** Any other entity which is in a State that receives funds under this part and which violates paragraph (18) or (23) of section 671(a) of this title during a fiscal year quarter with respect to any person shall remit to the Secretary all funds that were paid by the State to the entity during the quarter from such funds.

**(3)(A)** Any individual who is aggrieved by a violation of section 671(a)(18) of this title by a State or other entity may bring an action seeking relief from the State or other entity in any United States district court.

**(B)** An action under this paragraph may not be brought more than 2 years after the date the alleged violation occurred.

**(4)** This subsection shall not be construed to affect the application of the Indian Child Welfare Act of 1978 [25 U.S.C.A. § 1901 et seq.].

(e) Discretionary grants for educational and training vouchers for youths aging out of foster care

From amounts appropriated pursuant to section 677(h)(2) of this title, the Secretary may make a grant to a

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

State with a plan approved under this part, for a calendar quarter, in an amount equal to the lesser of--

**(1)** 80 percent of the amounts expended by the State during the quarter to carry out programs for the purposes described in section 677(a)(6) of this title; or

**(2)** the amount, if any, allotted to the State under section 677(c)(3) of this title for the fiscal year in which the quarter occurs, reduced by the total of the amounts payable to the State under this subsection for such purposes for all prior quarters in the fiscal year.

**(f)(1)** If the Secretary finds that a State has failed to submit to the Secretary data, as required by regulation, for the data collection system implemented under section 679 of this title, the Secretary shall, within 30 days after the date by which the data was due to be so submitted, notify the State of the failure and that payments to the State under this part will be reduced if the State fails to submit the data, as so required, within 6 months after the date the data was originally due to be so submitted.

**(2)** If the Secretary finds that the State has failed to submit the data, as so required, by the end of the 6-month period referred to in paragraph (1) of this subsection, then, notwithstanding subsection (a) of this section and any regulations promulgated under section 1320a-2a(b)(3) of this title, the Secretary shall reduce the amounts otherwise payable to the State under this part, for each quarter ending in the 6-month period (and each quarter ending in each subsequent consecutively occurring 6-month period until the Secretary finds that the State has submitted the data, as so required), by

**(A)**   1/6 of 1 percent of the total amount expended by the State for administration of foster care activities under the State plan approved under this part in the quarter so ending, in the case of the 1st 6-month period during which the failure continues; or

**(B)**   1/4 of 1 percent of the total amount so expended, in the case of the 2nd or any subsequent such 6-month period.

## § 675. Definitions

As used in this part or part B of this subchapter:

**(1)** The term "case plan" means a written document which includes at least the following:

**(A)** A description of the type of home or institution in which a child is to be placed, including a discussion of the safety and appropriateness of the placement and how the agency which is responsible for the child plans to carry out the voluntary placement agreement entered into or judicial determination made with respect to the child in accordance with section 672(a)(1) of this title.

**(B)** A plan for assuring that the child receives safe and proper care and that services are provided to the parents, child, and foster parents in order to improve the conditions in the parents' home, facilitate return of the child to his own safe home or the permanent placement of the child, and address the needs of the child while in foster care, including a discussion of the appropriateness of the services that have been provided to the child under the plan.

**(C)** The health and education records of the child, including the most recent information available regard-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

ing--

    **(i)** the names and addresses of the child's health and educational providers;

    **(ii)** the child's grade level performance;

    **(iii)** the child's school record;

    **(iv)** assurances that the child's placement in foster care takes into account proximity to the school in which the child is enrolled at the time of placement;

    **(v)** a record of the child's immunizations;

    **(vi)** the child's known medical problems;

    **(vii)** the child's medications; and

    **(viii)** any other relevant health and education information concerning the child determined to be appropriate by the State agency.

**(D)** Where appropriate, for a child age 16 or over, a written description of the programs and services which will help such child prepare for the transition from foster care to independent living.

**(E)** In the case of a child with respect to whom the permanency plan is adoption or placement in another permanent home, documentation of the steps the agency is taking to find an adoptive family or other permanent living arrangement for the child, to place the child with an adoptive family, a fit and willing relative, a legal guardian, or in another planned permanent living arrangement, and to finalize the adoption or legal guardianship. At a minimum, such documentation shall include child specific recruitment efforts such as the use of State, regional, and national adoption exchanges including electronic exchange systems to facilitate orderly and timely in-State and interstate placements.

**(2)** The term "parents" means biological or adoptive parents or legal guardians, as determined by applicable State law.

**(3)** The term "adoption assistance agreement" means a written agreement, binding on the parties to the agreement, between the State agency, other relevant agencies, and the prospective adoptive parents of a minor child which at a minimum (A) specifies the nature and amount of any payments, services, and assistance to be provided under such agreement, and (B) stipulates that the agreement shall remain in effect regardless of the State of which the adoptive parents are residents at any given time. The agreement shall contain provisions for the protection (under an interstate compact approved by the Secretary or otherwise) of the interests of the child in cases where the adoptive parents and child move to another State while the agreement is effective.

**(4)(A)** The term "foster care maintenance payments" means payments to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to the child's home for visitation. In the case of institutional care, such term shall include the reasonable costs of administration and operation of such institution as are necessarily required to provide the items described in the preceding sentence.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**(B)** In cases where--

**(i)** a child placed in a foster family home or child-care institution is the parent of a son or daughter who is in the same home or institution, and

**(ii)** payments described in subparagraph (A) are being made under this part with respect to such child,

the foster care maintenance payments made with respect to such child as otherwise determined under subparagraph (A) shall also include such amounts as may be necessary to cover the cost of the items described in that subparagraph with respect to such son or daughter.

**(5)** The term "case review system" means a procedure for assuring that--

**(A)** each child has a case plan designed to achieve placement in a safe setting that is the least restrictive (most family like) and most appropriate setting available and in close proximity to the parents' home, consistent with the best interest and special needs of the child, which--

**(i)** if the child has been placed in a foster family home or child-care institution a substantial distance from the home of the parents of the child, or in a State different from the State in which such home is located, sets forth the reasons why such placement is in the best interests of the child, and

**(ii)** if the child has been placed in foster care outside the State in which the home of the parents of the child is located, requires that, periodically, but not less frequently than every 6 months, a caseworker on the staff of the State agency of the State in which the home of the parents of the child is located, of the State in which the child has been placed, or of a private agency under contract with either such State, visit such child in such home or institution and submit a report on such visit to the State agency of the State in which the home of the parents of the child is located,

**(B)** the status of each child is reviewed periodically but no less frequently than once every six months by either a court or by administrative review (as defined in paragraph (6)) in order to determine the safety of the child the continuing necessity for and appropriateness of the placement, the extent of compliance with the case plan, and the extent of progress which has been made toward alleviating or mitigating the causes necessitating placement in foster care, and to project a likely date by which the child may be returned to and safely maintained in the home or placed for adoption or legal guardianship,

**(C)** with respect to each such child, (i) procedural safeguards will be applied, among other things, to assure each child in foster care under the supervision of the State of a permanency hearing to be held, in a family or juvenile court or another court (including a tribal court) of competent jurisdiction, or by an administrative body appointed or approved by the court, no later than 12 months after the date the child is considered to have entered foster care (as determined under subparagraph (F)) (and not less frequently than every 12 months thereafter during the continuation of foster care), which hearing shall determine the permanency plan for the child that includes whether, and if applicable when, the child will be returned to the parent, placed for adoption and the State will file a petition for termination of parental rights, or referred for legal guardianship, or (in cases where the State agency has documented to the State court a compelling reason for determining that it would not be in the best interests of the child to return home, be referred for termination of parental rights, or be placed for adoption, with a fit and willing relative, or with a legal guardian) placed in another planned permanent living arrangement, in the case of a child who will not be returned to the par-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

ent, the hearing shall consider in-State and out-of-State placement options, and, in the case of a child described in subparagraph (A)(ii), the hearing shall determine whether the out-of-State placement continues to be appropriate and in the best interests of the child, and, in the case of a child who has attained age 16, the services needed to assist the child to make the transition from foster care to independent living; (ii) procedural safeguards shall be applied with respect to parental rights pertaining to the removal of the child from the home of his parents, to a change in the child's placement, and to any determination affecting visitation privileges of parents; and (iii) procedural safeguards shall be applied to assure that in any permanency hearing held with respect to the child, including any hearing regarding the transition of the child from foster care to independent living, the court or administrative body conducting the hearing consults, in an age-appropriate manner, with the child regarding the proposed permanency or transition plan for the child;  [FN1]

**(D)** a child's health and education record (as described in paragraph (1)(A)) is reviewed and updated, and a copy of the record is supplied to the foster parent or foster care provider with whom the child is placed, at the time of each placement of the child in foster care, and is supplied to the child at no cost at the time the child leaves foster care if the child is leaving foster care by reason of having attained the age of majority under State law;  [FN1]

**(E)** in the case of a child who has been in foster care under the responsibility of the State for 15 of the most recent 22 months, or, if a court of competent jurisdiction has determined a child to be an abandoned infant (as defined under State law) or has made a determination that the parent has committed murder of another child of the parent, committed voluntary manslaughter of another child of the parent, aided or abetted, attempted, conspired, or solicited to commit such a murder or such a voluntary manslaughter, or committed a felony assault that has resulted in serious bodily injury to the child or to another child of the parent, the State shall file a petition to terminate the parental rights of the child's parents (or, if such a petition has been filed by another party, seek to be joined as a party to the petition), and, concurrently, to identify, recruit, process, and approve a qualified family for an adoption, unless--

   **(i)** at the option of the State, the child is being cared for by a relative;

   **(ii)** a State agency has documented in the case plan (which shall be available for court review) a compelling reason for determining that filing such a petition would not be in the best interests of the child; or

   **(iii)** the State has not provided to the family of the child, consistent with the time period in the State case plan, such services as the State deems necessary for the safe return of the child to the child's home, if reasonable efforts of the type described in section 671(a)(15)(B)(ii) of this title are required to be made with respect to the child;  [FN1]

**(F)** a child shall be considered to have entered foster care on the earlier of--

   **(i)** the date of the first judicial finding that the child has been subjected to child abuse or neglect; or

   **(ii)** the date that is 60 days after the date on which the child is removed from the home;  [FN1]  and

**(G)** the foster parents (if any) of a child and any preadoptive parent or relative providing care for the child are provided with notice of, and a right to be heard in, any proceeding to be held with respect to the child, except that this subparagraph shall not be construed to require that any foster parent, preadoptive parent, or

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

relative providing care for the child be made a party to such a proceeding solely on the basis of such notice and right to be heard.

**(6)** The term "administrative review" means a review open to the participation of the parents of the child, conducted by a panel of appropriate persons at least one of whom is not responsible for the case management of, or the delivery of services to, either the child or the parents who are the subject of the review.

**(7)** The term "legal guardianship" means a judicially created relationship between child and caretaker which is intended to be permanent and self-sustaining as evidenced by the transfer to the caretaker of the following parental rights with respect to the child: protection, education, care and control of the person, custody of the person, and decisionmaking. The term "legal guardian" means the caretaker in such a relationship.

[FN1] So in original. The semicolon probably should be a comma.

## § 676. Administration

(a) Technical assistance to States

The Secretary may provide technical assistance to the States to assist them to develop the programs authorized under this part and shall periodically (1) evaluate the programs authorized under this part and part B of this subchapter and (2) collect and publish data pertaining to the incidence and characteristics of foster care and adoptions in this country.

(b) Data collection and evaluation

Each State shall submit statistical reports as the Secretary may require with respect to children for whom payments are made under this part containing information with respect to such children including legal status, demographic characteristics, location, and length of any stay in foster care.

## § 677. John H. Chafee Foster Care Independence Program

(a) Purpose

The purpose of this section is to provide States with flexible funding that will enable programs to be designed and conducted--

**(1)** to identify children who are likely to remain in foster care until 18 years of age and to help these children make the transition to self-sufficiency by providing services such as assistance in obtaining a high school diploma, career exploration, vocational training, job placement and retention, training in daily living skills, training in budgeting and financial management skills, substance abuse prevention, and preventive health activities (including smoking avoidance, nutrition education, and pregnancy prevention);

**(2)** to help children who are likely to remain in foster care until 18 years of age receive the education, training, and services necessary to obtain employment;

**(3)** to help children who are likely to remain in foster care until 18 years of age prepare for and enter postsecondary training and education institutions;

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**(4)** to provide personal and emotional support to children aging out of foster care, through mentors and the promotion of interactions with dedicated adults;

**(5)** to provide financial, housing, counseling, employment, education, and other appropriate support and services to former foster care recipients between 18 and 21 years of age to complement their own efforts to achieve self-sufficiency and to assure that program participants recognize and accept their personal responsibility for preparing for and then making the transition from adolescence to adulthood; and

**(6)** to make available vouchers for education and training, including postsecondary training and education, to youths who have aged out of foster care.

(b) Applications

　(1) In general

A State may apply for funds from its allotment under subsection (c) for a period of five consecutive fiscal years by submitting to the Secretary, in writing, a plan that meets the requirements of paragraph (2) and the certifications required by paragraph (3) with respect to the plan.

　(2) State plan

A plan meets the requirements of this paragraph if the plan specifies which State agency or agencies will administer, supervise, or oversee the programs carried out under the plan, and describes how the State intends to do the following:

　**(A)** Design and deliver programs to achieve the purposes of this section.

　**(B)** Ensure that all political subdivisions in the State are served by the program, though not necessarily in a uniform manner.

　**(C)** Ensure that the programs serve children of various ages and at various stages of achieving independence.

　**(D)** Involve the public and private sectors in helping adolescents in foster care achieve independence.

　**(E)** Use objective criteria for determining eligibility for benefits and services under the programs, and for ensuring fair and equitable treatment of benefit recipients.

　**(F)** Cooperate in national evaluations of the effects of the programs in achieving the purposes of this section.

　(3) Certifications

The certifications required by this paragraph with respect to a plan are the following:

　**(A)** A certification by the chief executive officer of the State that the State will provide assistance and services to children who have left foster care because they have attained 18 years of age, and who have not attained 21 years of age.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**(B)** A certification by the chief executive officer of the State that not more than 30 percent of the amounts paid to the State from its allotment under subsection (c) for a fiscal year will be expended for room or board for children who have left foster care because they have attained 18 years of age, and who have not attained 21 years of age.

**(C)** A certification by the chief executive officer of the State that none of the amounts paid to the State from its allotment under subsection (c) will be expended for room or board for any child who has not attained 18 years of age.

**(D)** A certification by the chief executive officer of the State that the State will use training funds provided under the program of Federal payments for foster care and adoption assistance to provide training to help foster parents, adoptive parents, workers in group homes, and case managers understand and address the issues confronting adolescents preparing for independent living, and will, to the extent possible, coordinate such training with the independent living program conducted for adolescents.

**(E)** A certification by the chief executive officer of the State that the State has consulted widely with public and private organizations in developing the plan and that the State has given all interested members of the public at least 30 days to submit comments on the plan.

**(F)** A certification by the chief executive officer of the State that the State will make every effort to coordinate the State programs receiving funds provided from an allotment made to the State under subsection (c) with other Federal and State programs for youth (especially transitional living youth projects funded under part B of Title III of the Juvenile Justice and Delinquency Prevention Act of 1974 [42 U.S.C.A. § 5714-1 et seq.], abstinence education programs, local housing programs, programs for disabled youth (especially sheltered workshops), and school-to-work programs offered by high schools or local workforce agencies.

**(G)** A certification by the chief executive officer of the State that each Indian tribe in the State has been consulted about the programs to be carried out under the plan; that there have been efforts to coordinate the programs with such tribes; and that benefits and services under the programs will be made available to Indian children in the State on the same basis as to other children in the State.

**(H)** A certification by the chief executive officer of the State that the State will ensure that adolescents participating in the program under this section participate directly in designing their own program activities that prepare them for independent living and that the adolescents accept personal responsibility for living up to their part of the program.

**(I)** A certification by the chief executive officer of the State that the State has established and will enforce standards and procedures to prevent fraud and abuse in the programs carried out under the plan.

**(J)** A certification by the chief executive officer of the State that the State educational and training voucher program under this section is in compliance with the conditions specified in subsection (i), including a statement describing methods the State will use--

    **(i)** to ensure that the total amount of educational assistance to a youth under this section and under other Federal and Federally supported programs does not exceed the limitation specified in subsection (i)(5); and

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(ii) to avoid duplication of benefits under this and any other Federal or Federally assisted benefit program.

(4) Approval

The Secretary shall approve an application submitted by a State pursuant to paragraph (1) for a period if--

(A) the application is submitted on or before June 30 of the calendar year in which such period begins; and

(B) the Secretary finds that the application contains the material required by paragraph (1).

(5) Authority to implement certain amendments; notification

A State with an application approved under paragraph (4) may implement any amendment to the plan contained in the application if the application, incorporating the amendment, would be approvable under paragraph (4). Within 30 days after a State implements any such amendment, the State shall notify the Secretary of the amendment.

(6) Availability

The State shall make available to the public any application submitted by the State pursuant to paragraph (1), and a brief summary of the plan contained in the application.

(c) Allotments to States

(1) General program allotment

From the amount specified in subsection (h)(1) that remains after applying subsection (g)(2) for a fiscal year, the Secretary shall allot to each State with an application approved under subsection (b) for the fiscal year the amount which bears the ratio to such remaining amount equal to the State foster care ratio, as adjusted in accordance with paragraph (2).

(2) Hold harmless provision

(A) In general

The Secretary shall allot to each State whose allotment for a fiscal year under paragraph (1) is less than the greater of $500,000 or the amount payable to the State under this section for fiscal year 1998, an additional amount equal to the difference between such allotment and such greater amount.

(B) Ratable reduction of certain allotments

In the case of a State not described in subparagraph (A) of this paragraph for a fiscal year, the Secretary shall reduce the amount allotted to the State for the fiscal year under paragraph (1) by the amount that bears the same ratio to the sum of the differences determined under subparagraph (A) of this paragraph for the fiscal year as the excess of the amount so allotted over the greater of $500,000 or the amount payable to the State under this section for fiscal year 1998 bears to the sum of such excess amounts determined for all such States.

(3) Voucher program allotment

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

From the amount, if any, appropriated pursuant to subsection (h)(2) for a fiscal year, the Secretary may allot to each State with an application approved under subsection (b) for the fiscal year an amount equal to the State foster care ratio multiplied by the amount so specified.

(4) State foster care ratio

In this subsection, the term "State foster care ratio" means the ratio of the number of children in foster care under a program of the State in the most recent fiscal year for which the information is available to the total number of children in foster care in all States for the most recent fiscal year.

(d) Use of funds

(1) In general

A State to which an amount is paid from its allotment under subsection (c) may use the amount in any manner that is reasonably calculated to accomplish the purposes of this section.

(2) No supplantation of other funds available for same general purposes

The amounts paid to a State from its allotment under subsection (c) shall be used to supplement and not supplant any other funds which are available for the same general purposes in the State.

(3) Two-year availability of funds

Payments made to a State under this section for a fiscal year shall be expended by the State in the fiscal year or in the succeeding fiscal year.

(4) Reallocation of unused funds

If a State does not apply for funds under this section for a fiscal year within such time as may be provided by the Secretary, the funds to which the State would be entitled for the fiscal year shall be reallocated to 1 or more other States on the basis of their relative need for additional payments under this section, as determined by the Secretary.

(e) Penalties

(1) Use of grant in violation of this part

If the Secretary is made aware, by an audit conducted under chapter 75 of title 31, United States Code [31 U.S.C.A. § 7501 et seq.], or by any other means, that a program receiving funds from an allotment made to a State under subsection (c) has been operated in a manner that is inconsistent with, or not disclosed in the State application approved under subsection (b), the Secretary shall assess a penalty against the State in an amount equal to not less than 1 percent and not more than 5 percent of the amount of the allotment.

(2) Failure to comply with data reporting requirement

The Secretary shall assess a penalty against a State that fails during a fiscal year to comply with an information collection plan implemented under subsection (f) in an amount equal to not less than 1 percent and not more than 5 percent of the amount allotted to the State for the fiscal year.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(3) Penalties based on degree of noncompliance

The Secretary shall assess penalties under this subsection based on the degree of noncompliance.

(f) Data collection and performance measurement

(1) In general

The Secretary, in consultation with State and local public officials responsible for administering independent living and other child welfare programs, child welfare advocates, Members of Congress, youth service providers, and researchers, shall--

**(A)** develop outcome measures (including measures of educational attainment, high school diploma, employment, avoidance of dependency, homelessness, nonmarital childbirth, incarceration, and high-risk behaviors) that can be used to assess the performance of States in operating independent living programs;

**(B)** identify data elements needed to track--

**(i)** the number and characteristics of children receiving services under this section;

**(ii)** the type and quantity of services being provided; and

**(iii)** State performance on the outcome measures; and

**(C)** develop and implement a plan to collect the needed information beginning with the second fiscal year beginning after December 14, 1999.

(2) Report to the Congress

Within 12 months after the date of the enactment of this section, the Secretary shall submit to the Committee on Ways and Means of the House of Representatives and the Committee on Finance of the Senate a report detailing the plans and timetable for collecting from the States the information described in paragraph (1) and a proposal to impose penalties consistent with paragraph (e)(2) on States that do not report data.

(g) Evaluations

(1) In general

The Secretary shall conduct evaluations of such State programs funded under this section as the Secretary deems to be innovative or of potential national significance. The evaluation of any such program shall include information on the effects of the program on education, employment, and personal development. To the maximum extent practicable, the evaluations shall be based on rigorous scientific standards including random assignment to treatment and control groups. The Secretary is encouraged to work directly with State and local governments to design methods for conducting the evaluations, directly or by grant, contract, or cooperative agreement.

(2) Funding of evaluations

The Secretary shall reserve 1.5 percent of the amount specified in subsection (h) for a fiscal year to carry out,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

during the fiscal year, evaluation, technical assistance, performance measurement, and data collection activities related to this section, directly or through grants, contracts, or cooperative agreements with appropriate entities.

(h) Limitations on authorization of appropriations

To carry out this section and for payments to States under section 674(a)(4) of this title, there are authorized to be appropriated to the Secretary for each fiscal year--

**(1)** $140,000,000, which shall be available for all purposes under this section; and

**(2)** an additional $60,000,000, which are authorized to be available for payments to States for education and training vouchers for youths who age out of foster care, to assist the youths to develop skills necessary to lead independent and productive lives.

(i) Educational and training vouchers

The following conditions shall apply to a State educational and training voucher program under this section:

**(1)** Vouchers under the program may be available to youths otherwise eligible for services under the State program under this section.

**(2)** For purposes of the voucher program, youths adopted from foster care after attaining age 16 may be considered to be youths otherwise eligible for services under the State program under this section.

**(3)** The State may allow youths participating in the voucher program on the date they attain 21 years of age to remain eligible until they attain 23 years of age, as long as they are enrolled in a postsecondary education or training program and are making satisfactory progress toward completion of that program.

**(4)** The voucher or vouchers provided for an individual under this section--

    **(A)** may be available for the cost of attendance at an institution of higher education, as defined in section 1002 of Title 20; and

    **(B)** shall not exceed the lesser of $5,000 per year or the total cost of attendance, as defined in section 1087ll of Title 20.

**(5)** The amount of a voucher under this section may be disregarded for purposes of determining the recipient's eligibility for, or the amount of, any other Federal or Federally supported assistance, except that the total amount of educational assistance to a youth under this section and under other Federal and Federally supported programs shall not exceed the total cost of attendance, as defined in section 1087*ll* of Title 20, and except that the State agency shall take appropriate steps to prevent duplication of benefits under this and other Federal or Federally supported programs.

**(6)** The program is coordinated with other appropriate education and training programs.

## § 678. Rule of Construction

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Nothing in this part shall be construed as precluding State courts from exercising their discretion to protect the health and safety of children in individual cases, including cases other than those described in section 671(a)(15)(D) of this title.

## § 679. Collection of data relating to adoption and foster care

(a) Advisory Committee on Adoption and Foster Care Information

**(1)** Not later than 90 days after October 21, 1986, the Secretary shall establish an Advisory Committee on Adoption and Foster Care Information (in this section referred to as the "Advisory Committee") to study the various methods of establishing, administering, and financing a system for the collection of data with respect to adoption and foster care in the United States.

**(2)** The study required by paragraph (1) shall--

**(A)** identify the types of data necessary to--

    **(i)** assess (on a continuing basis) the incidence, characteristics, and status of adoption and foster care in the United States, and

    **(ii)** develop appropriate national policies with respect to adoption and foster care;

**(B)** evaluate the feasibility and appropriateness of collecting data with respect to privately arranged adoptions and adoptions arranged through private agencies without assistance from public child welfare agencies;

**(C)** assess the validity of various methods of collecting data with respect to adoption and foster care; and

**(D)** evaluate the financial and administrative impact of implementing each such method.

**(3)** Not later than October 1, 1987, the Advisory Committee shall submit to the Secretary and the Congress a report setting forth the results of the study required by paragraph (1) and evaluating and making recommendations with respect to the various methods of establishing, administering, and financing a system for the collection of data with respect to adoption and foster care in the United States.

**(4)(A)** Subject to subparagraph (B), the membership and organization of the Advisory Committee shall be determined by the Secretary.

**(B)** The membership of the Advisory Committee shall include representatives of--

**(i)** private, nonprofit organizations with an interest in child welfare (including organizations that provide foster care and adoption services),

**(ii)** organizations representing State and local governmental agencies with responsibility for foster care and adoption services,

**(iii)** organizations representing State and local governmental agencies with responsibility for the collection of health and social statistics,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**(iv)** organizations representing State and local judicial bodies with jurisdiction over family law,

**(v)** Federal agencies responsible for the collection of health and social statistics, and

**(vi)** organizations and agencies involved with privately arranged or international adoptions.

**(5)** After the date of the submission of the report required by paragraph (3), the Advisory Committee shall cease to exist.

(b) Report to Congress; regulations

**(1)(A)** Not later than July 1, 1988, the Secretary shall submit to the Congress a report that--

**(i)** proposes a method of establishing, administering, and financing a system for the collection of data relating to adoption and foster care in the United States,

**(ii)** evaluates the feasibility and appropriateness of collecting data with respect to privately arranged adoptions and adoptions arranged through private agencies without assistance from public child welfare agencies, and

**(iii)** evaluates the impact of the system proposed under clause (i) on the agencies with responsibility for implementing it.

**(B)** The report required by subparagraph (A) shall--

**(i)** specify any changes in law that will be necessary to implement the system proposed under subparagraph (A)(i), and

**(ii)** describe the type of system that will be implemented under paragraph (2) in the absence of such changes.

**(2)** Not later than December 31, 1988, the Secretary shall promulgate final regulations providing for the implementation of--

**(A)** the system proposed under paragraph (1)(A)(i), or

**(B)** if the changes in law specified pursuant to paragraph (1)(B)(i) have not been enacted, the system described in paragraph (1)(B)(ii).

Such regulations shall provide for the full implementation of the system not later than October 1, 1991.

(c) Data collection system

Any data collection system developed and implemented under this section shall--

**(1)** avoid unnecessary diversion of resources from agencies responsible for adoption and foster care;

**(2)** assure that any data that is collected is reliable and consistent over time and among jurisdictions through the use of uniform definitions and methodologies;

**(3)** provide comprehensive national information with respect to--

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**(A)** the demographic characteristics of adoptive and foster children and their biological and adoptive or foster parents,

**(B)** the status of the foster care population (including the number of children in foster care, length of placement, type of placement, availability for adoption, and goals for ending or continuing foster care),

**(C)** the number and characteristics of--

    **(i)** children placed in or removed from foster care,

    **(ii)** children adopted or with respect to whom adoptions have been terminated, and

    **(iii)** children placed in foster care outside the State which has placement and care responsibility, and

**(D)** the extent and nature of assistance provided by Federal, State, and local adoption and foster care programs and the characteristics of the children with respect to whom such assistance is provided; and

**(4)** utilize appropriate requirements and incentives to ensure that the system functions reliably throughout the United States.


## § 679a. National Adoption Information Clearinghouse

The Secretary of Health and Human Services shall establish, either directly or by grant or contract, a National Adoption Information Clearinghouse. The Clearinghouse shall--

**(1)** collect, compile, and maintain information obtained from available research, studies, and reports by public and private agencies, institutions, or individuals concerning all aspects of infant adoption and adoption of children with special needs;

**(2)** compile, maintain, and periodically revise directories of information concerning--

    **(A)** crisis pregnancy centers,

    **(B)** shelters and residences for pregnant women,

    **(C)** training programs on adoption,

    **(D)** educational programs on adoption,

    **(E)** licensed adoption agencies,

    **(F)** State laws relating to adoption,

    **(G)** intercountry adoption, and

    **(H)** any other information relating to adoption for pregnant women, infertile couples, adoptive parents, unmarried individuals who want to adopt children, individuals who have been adopted, birth parents who have placed a child for adoption, adoption agencies, social workers, counselors, or other individuals who work in the adoption field;

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**(3)** disseminate the information compiled and maintained pursuant to paragraph (1) and the directories compiled and maintained pursuant to paragraph (2); and

**(4)** upon the establishment of an adoption and foster care data collection system pursuant to section 679 of this title, disseminate the data and information made available through that system.

## § 679b. Annual report

The Secretary, in consultation with Governors, State legislatures, State and local public officials responsible for administering child welfare programs, and child welfare advocates, shall--

**(1)** develop a set of outcome measures (including length of stay in foster care, number of foster care placements, and number of adoptions) that can be used to assess the performance of States in operating child protection and child welfare programs pursuant to part B of this subchapter and this part to ensure the safety of children;

**(2)** to the maximum extent possible, the outcome measures should be developed from data available from the Adoption and Foster Care Analysis and Reporting System;

**(3)** develop a system for rating the performance of States with respect to the outcome measures, and provide to the States an explanation of the rating system and how scores are determined under the rating system;

**(4)** prescribe such regulations as may be necessary to ensure that States provide to the Secretary the data necessary to determine State performance with respect to each outcome measure, as a condition of the State receiving funds under this part;

**(5)** on May 1, 1999, and annually thereafter, prepare and submit to the Congress a report on the performance of each State on each outcome measure, which shall examine the reasons for high performance and low performance and, where possible, make recommendations as to how State performance could be improved; and

**(6)** include in the report submitted pursuant to paragraph (5) for fiscal year 2007 or any succeeding fiscal year, State-by-State data on--

**(A)** the percentage of children in foster care under the responsibility of the State who were visited on a monthly basis by the caseworker handling the case of the child; and

**(B)** the percentage of the visits that occurred in the residence of the child.

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.