**§ 233.110  Foster care maintenance and adoption assistance.**

(a) *State plan requirements.* A State plan under title IV-A of the Social Security Act must provide that the State has in effect a plan approved under part E, title IV of the Social Security Act, and operates a foster care maintenance and adoption assistance program in conformity with such a plan.

(b) [Reserved]

[51 FR 9206, Mar. 18, 1986]

**§ 233.145  Expiration of medical assistance programs under titles I, IV-A, X, XIV and XVI of the Social Security Act.**

(a) Under the provisions of section 121(b) of Pub. L. 89–97, enacted July 30, 1965, no payment may be made to any State under title I, IV-A, X, XIV or XVI of the Social Security Act for aid or assistance in the form of medical or any other type of remedial care for any period after December 31, 1969. However, these provisions do not affect the availability of Federal financial participation in the cost of medical or remedial care furnished under title IV-A of the Act (pursuant to sections 403(a)(5) and 406(e)) of the Act, as emergency assistance to needy families with children (see § 233.120 of this part), subject to the provisions of paragraph (c) [1] of this section. Federal financial participation in vendor payments for medical care and services is not otherwise available except under title XIX of the Act.

(b) Under the provisions of section 4(c) of Pub. L. 92–223, enacted December 28, 1971, and the provisions of section 292 of Pub. L. 92–603, enacted October 30, 1972:

(1) In the case of any State which on January 1, 1972, had in effect a State plan approved under title XIX of the Social Security Act, section 1121 of the Act authorizing payments under title I, X, XIV, or XVI of the Act for assistance in the form of institutional services in intermediate care facilities is rescinded; and

(2) In the case of any State which on January 1, 1972, did not have in effect a State plan approved under title XIX of

the Act, Federal financial participation is available in assistance in the form of institutional services in intermediate care facilities pursuant to section 1121 of the Act and under the provisions of § 234.130 of this chapter until the first day of the first month after January 1, 1972, that the State has in effect a State plan approved under title XIX.

(c)(1) Under the provisions of section 249D of Pub. L. 92–603, enacted October 30, 1972, Federal matching is not available for any portion of any payment by any State under titles I, IV-A, X, XIV, or XVI of the Social Security Act for or on account of any medical or any other type of remedial care provided by an institution to any individual as an inpatient thereof, in the case of any State which has a plan approved under title XIX of such Act, if such care is (or could be provided, under a State plan approved under title XIX of such Act, by an institution certified under such title XIX. The effective date of this proposed provision will be the date of publication of the final regulation in the FEDERAL REGISTER.

(2) For purposes of this paragraph,

(i) An institution (see § 233.60(b)(1) of this chapter) is considered to provide medical or remedial care if it provides any care or service beyond room and board because of the physical or mental condition (or both) of its inpatients;

(ii) An inpatient is an individual who is living in an institution which provides medical or remedial care and who is receiving care or service beyond room and board because of his physical or mental condition (or both).

(iii) Federal financial participation is not available for any portion of the payment for care of an inpatient. It is immaterial whether such payment is made as a vendor payment or as a money payment or other cash assistance payment. It is also immaterial whether the payment is divided into components, such as separate amounts or payments for room and board, and for care or services beyond room and board, or whether the payment is considered to meet "basic" needs or "special" needs. If, however, a money payment (or protective payment) is made to an individual who is living in an institution, and such payment does not

---

[1] See notice published Aug. 29, 1973 (38 FR 23337).

within 30 days of a judicial determination that reasonable efforts to reunify the child and family are not required. After the initial permanency hearing, subsequent permanency hearings must be held not less frequently than every 12 months during the continuation of foster care. The permanency hearing must be conducted by a family or juvenile court or another court of competent jurisdiction or by an administrative body appointed or approved by the court which is not a part of or under the supervision or direction of the State agency. Paper reviews, *ex parte* hearings, agreed orders, or other actions or hearings which are not open to the participation of the parents of the child, the child (if of appropriate age), and foster parents or preadoptive parents (if any) are not permanency hearings.

*State* means, for title IV–B, the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, the Virgin Islands, the Commonwealth of the Northern Mariana Islands, and American Samoa. For title IV–E the term "State" means the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, Guam, and American Samoa.

*State agency* means the State agency administering or supervising the administration of the title IV–B and title IV–E State plans and the title XX social services block grant program. An exception to this requirement is permitted by section 103(d) of the Adoption Assistance and Child Welfare Act of 1980 (Pub. L. 96–272). Section 103(d) provides that, if on December 1, 1974, the title IV–B program (in a State or local agency) and the social services program under section 402(a)(3) of the Act (the predecessor program to title XX) were administered by separate agencies, that separate administration of the programs could continue at State option.

*Statewide assessment* means the initial phase of a full review of all federally-assisted child and family services programs in the States, including family preservation and support services, child protective services, foster care, adoption, and independent living services as described in § 1355.33(b) of this part, for the purpose of determining the State's substantial conformity with the State plan requirements of titles IV–B and IV–E as listed in § 1355.34 of this part.

(b) Unless otherwise specified, the definitions contained in section 475 of the Act apply to all programs under titles IV–E and IV–B of the Act.

[48 FR 23114, May 23, 1983, as amended at 57 FR 30429, July 9, 1992; 58 FR 67924, Dec. 22, 1993; 61 FR 58653, Nov. 18, 1996; 65 FR 4076, Jan. 25, 2000; 66 FR 58675, Nov. 23, 2001]

## § 1355.21  State plan requirements for titles IV–E and IV–B.

(a) The State plans for titles IV–E and IV–B must provide for safeguards on the use and disclosure of information which meet the requirements contained in section 471(a)(8) of the Act.

(b) The State plans for titles IV–E and IV–B must provide for compliance with the Department's regulations listed in 45 CFR 1355.30.

(c) The State agency and the Indian Tribe must make available for public review and inspection the Child and Family Services Plan (CFSP) and the Annual Progress and Services Reports. (See 45 CFR 1357.15 and 1357.16.) The State agency also must make available for public review and inspection the title IV–E State Plan.

[48 FR 23114, May 23, 1983, as amended at 61 FR 58654, Nov. 18, 1996]

## § 1355.25  Principles of child and family services.

The following principles, most often identified by practitioners and others as helping to assure effective services for children, youth, and families, should guide the States and Indian Tribes in developing, operating, and improving the continuum of child and family services.

(a) The safety and well-being of children and of all family members is paramount. When safety can be assured, strengthening and preserving families is seen as the best way to promote the healthy development of children. One important way to keep children safe is to stop violence in the family including violence against their mothers.

(b) Services are focused on the family as a whole; service providers work with families as partners in identifying and

**Office of Human Development Services, HHS**                    **§ 1355.34**

not, operating in substantial conformity.

[65 FR 4077, Jan. 25, 2000, as amended at 66 FR 58675, Nov. 23, 2001]

**§ 1355.34  Criteria for determining substantial conformity.**

(a) *Criteria to be satisfied.* ACF will determine a State's substantial conformity with title IV-B and title IV-E State plan requirements based on the following:

(1) Its ability to meet national standards, set by the Secretary, for statewide data indicators associated with specific outcomes for children and families;

(2) Its ability to meet criteria related to outcomes for children and families; and

(3) Its ability to meet criteria related to the State agency's capacity to deliver services leading to improved outcomes.

(b) *Criteria related to outcomes.* (1) A State's substantial conformity will be determined by its ability to substantially achieve the following child and family service outcomes:

(i) *In the area of child safety:*

(A) Children are, first and foremost, protected from abuse and neglect; and,

(B) Children are safely maintained in their own homes whenever possible and appropriate;

(ii) *In the area of permanency for children:*

(A) Children have permanency and stability in their living situations; and

(B) The continuity of family relationships and connections is preserved for children; and

(iii) *In the area of child and family well-being:*

(A) Families have enhanced capacity to provide for their children's needs;

(B) Children receive appropriate services to meet their educational needs; and

(C) Children receive adequate services to meet their physical and mental health needs.

(2) A State's level of achievement with regard to each outcome reflects the extent to which a State has:

(i) Met the national standard(s) for the statewide data indicator(s) associated with that outcome, if applicable; and,

(ii) Implemented the following CFSP requirements or assurances:

(A) The requirements in 45 CFR 1357.15(p) regarding services designed to assure the safety and protection of children and the preservation and support of families;

(B) The requirements in 45 CFR 1357.15(q) regarding the permanency provisions for children and families in sections 422 and 471 of the Act;

(C) The requirements in section 422(b)(9) of the Act regarding recruitment of potential foster and adoptive families;

(D) The assurances by the State as required by section 422(b)(10)(C)(i) and (ii) of the Act regarding policies and procedures for abandoned children;

(E) The requirements in section 422(b)(11) of the Act regarding the State's compliance with the Indian Child Welfare Act;

(F) The requirements in section 422(b)(12) of the Act regarding a State's plan for effective use of cross-jurisdictional resources to facilitate timely adoptive or permanent placements; and,

(G) The requirements in section 471(a)(15) of the Act regarding reasonable efforts to prevent removals of children from their homes, to make it possible for children in foster care to safely return to their homes, or, when the child is not able to return home, to place the child in accordance with the permanency plan and complete the steps necessary to finalize the permanent placement.

(3) A State will be determined to be in substantial conformity if its performance on:

(i) Each statewide data indicator developed pursuant to paragraph (b)(4) of this section meets the national standard described in paragraph (b)(5) of this section; and,

(ii) Each outcome listed in paragraph (b)(1) of this section is rated as "substantially achieved" in 95 percent of the cases examined during the on-site review (90 percent of the cases for a State's initial review). Information from various sources (case records, interviews) will be examined for each outcome and a determination made as to the degree to which each outcome

271

has been achieved for each case reviewed.

(4) The Secretary may, using AFCARS and NCANDS, develop statewide data indicators for each of the specific outcomes described in paragraph (b)(1) of this section for use in determining substantial conformity. The Secretary may add, amend, or suspend any such statewide data indicator(s) when appropriate. To the extent practical and feasible, the statewide data indicators will be consistent with those developed in accordance with section 203 of the Adoption and Safe Families Act of 1997 (Pub. L. 105–89).

(5) The initial national standards for the statewide data indicators described in paragraph (b)(4) of this section will be based on the 75th percentile of all State performance for that indicator, as reported in AFCARS or NCANDS. The Secretary may adjust these national standards if appropriate. The initial national standard will be set using the following data sources:

(i) The 1997 and 1998 submissions to NCANDS (or the most recent and complete 2 years available), for those statewide data indicators associated with the safety outcomes; and,

(ii) The 1998b, 1999c, and 2000a submissions to AFCARS (or the most recent and complete report periods available), for those statewide data indicators associated with the permanency outcomes.

(c) *Criteria related to State agency capacity to deliver services leading to improved outcomes for children and families.* In addition to the criteria related to outcomes contained in paragraph (b) of this section, the State agency must also satisfy criteria related to the delivery of services. Based on information from the statewide assessment and onsite review, the State must meet the following criteria for each systemic factor in paragraphs (c)(2) through (c)(7) of this section to be considered in substantial conformity: All of the State plan requirements associated with the systemic factor must be in place, and no more than one of the state plan requirements fails to function as described in paragraphs (c)(2) through (c)(7) of this section. The systemic factor in paragraph (c)(1) of this

section, is rated on the basis of only one State plan requirement. To be considered in substantial conformity, the State plan requirement associated with statewide information system capacity must be both in place and functioning as described in the requirement. ACF will use a rating scale to make the determinations of substantial conformity. The systemic factors under review are:

(1) *Statewide information system:* The State is operating a statewide information system that, at a minimum, can readily identify the status, demographic characteristics, location, and goals for the placement of every child who is (or within the immediately preceding 12 months, has been) in foster care (section 422(b)(10)(B)(i) of the Act);

(2) *Case review system:* The State has procedures in place that:

(i) Provide, for each child, a written case plan to be developed jointly with the child's parent(s) that includes provisions: for placing the child in the least restrictive, most family-like placement appropriate to his/her needs, and in close proximity to the parent' home where such placement is in the child's best interests; for visits with a child placed out of State at least every 12 months by a caseworker of the agency or of the agency in the State where the child is placed; and for documentation of the steps taken to make and finalize an adoptive or other permanent placement when the child cannot return home (sections 422(b)(10)(B)(ii), 471(a)(16) and 475(5)(A) of the Act);

(ii) Provide for periodic review of the status of each child no less frequently than once every six months by either a court or by administrative review (sections 422(b)(10)(B)(ii), 471(a)(16) and 475(5)(B) of the Act);

(iii) Assure that each child in foster care under the supervision of the State has a permanency hearing in a family or juvenile court or another court of competent jurisdiction (including a Tribal court), or by an administrative body appointed or approved by the court, which is not a part of or under the supervision or direction of the State agency, no later than 12 months from the date the child entered foster care (and not less frequently than every 12 months thereafter during the

continuation of foster care) (sections 422(b)(10)(B)(ii), 471(a)(16) and 475(5)(C) of the Act);

(iv) Provide a process for termination of parental rights proceedings in accordance with sections 422(b)(10)(B)(ii), 475(5)(E) and (F) of the Act; and,

(v) Provide foster parents, preadoptive parents, and relative caregivers of children in foster care with notice of and an opportunity to be heard in permanency hearings and six-month periodic reviews held with respect to the child (sections 422(b)(10)(B)(ii), 475(5)(G) of the Act, and 45 CFR 1356.21(o)).

(3) *Quality assurance system:* The State has developed and implemented standards to ensure that children in foster care placements are provided quality services that protect the safety and health of the children (section 471(a)(22)) and is operating an identifiable quality assurance system (45 CFR 1357.15(u)) as described in the CFSP that:

(i) Is in place in the jurisdictions within the State where services included in the CFSP are provided;

(ii) Is able to evaluate the adequacy and quality of services provided under the CFSP;

(iii) Is able to identify the strengths and needs of the service delivery system it evaluates;

(iv) Provides reports to agency administrators on the quality of services evaluated and needs for improvement; and

(v) Evaluates measures implemented to address identified problems.

(4) *Staff training:* The State is operating a staff development and training program (45 CFR 1357.15(t)) that:

(i) Supports the goals and objectives in the State's CFSP;

(ii) Addresses services provided under both subparts of title IV-B and the training plan under title IV-E of the Act;

(iii) Provides training for all staff who provide family preservation and support services, child protective services, foster care services, adoption services and independent living services soon after they are employed and that includes the basic skills and knowledge required for their positions;

(iv) Provides ongoing training for staff that addresses the skills and knowledge base needed to carry out their duties with regard to the services included in the State's CFSP; and,

(v) Provides training for current or prospective foster parents, adoptive parents, and the staff of State-licensed or State-approved child care institutions providing care to foster and adopted children receiving assistance under title IV-E that addresses the skills and knowledge base needed to carry out their duties with regard to caring for foster and adopted children.

(5) *Service array:* Information from the Statewide assessment and on-site review determines that the State has in place an array of services (45 CFR 1357.15(n) and section 422(b)(10)(B)(iii) and (iv) of the Act) that includes, at a minimum:

(i) Services that assess the strengths and needs of children and families assisted by the agency and are used to determine other service needs;

(ii) Services that address the needs of the family, as well as the individual child, in order to create a safe home environment;

(iii) Services designed to enable children at risk of foster care placement to remain with their families when their safety and well-being can be reasonably assured;

(iv) Services designed to help children achieve permanency by returning to families from which they have been removed, where appropriate, be placed for adoption or with a legal guardian or in some other planned, permanent living arrangement, and through post-legal adoption services;

(v) Services that are accessible to families and children in all political subdivisions covered in the State's CFSP; and,

(vi) Services that can be individualized to meet the unique needs of children and families served by the agency.

(6) *Agency responsiveness to the community:*

(i) The State, in implementing the provisions of the CFSP, engages in ongoing consultation with a broad array of individuals and organizations representing the State and county agencies responsible for implementing the CFSP and other major stakeholders in

273

the services delivery system including, at a minimum, tribal representatives, consumers, service providers, foster care providers, the juvenile court, and other public and private child and family serving agencies (45 CFR 1357.15(1)(4));

(ii) The agency develops, in consultation with these or similar representatives, annual reports of progress and services delivered pursuant to the CFSP (45 CFR 1357.16(a));

(iii) There is evidence that the agency's goals and objectives included in the CFSP reflect consideration of the major concerns of stakeholders consulted in developing the plan and on an ongoing basis (45 CFR 1357.15(m)); and

(iv) There is evidence that the State's services under the plan are coordinated with services or benefits under other Federal or federally-assisted programs serving the same populations to achieve the goals and objectives in the plan (45 CFR 1357.15(m)).

(7) *Foster and adoptive parent licensing, recruitment and retention:*

(i) The State has established and maintains standards for foster family homes and child care institutions which are reasonably in accord with recommended standards of national organizations concerned with standards for such institutions or homes (section 471(a)(10) of the Act);

(ii) The standards so established are applied by the State to every licensed or approved foster family home or child care institution receiving funds under title IV–E or IV–B of the Act (section 471(a)(10) of the Act);

(iii) The State complies with the safety requirements for foster care and adoptive placements in accordance with sections 471(a)(16), 471(a)(20) and 475(1) of the Act and 45 CFR 1356.30;

(iv) The State has in place an identifiable process for assuring the diligent recruitment of potential foster and adoptive families that reflect the ethnic and racial diversity of children in the State for whom foster and adoptive homes are needed (section 422(b)(9) of the Act); and,

(v) The State has developed and implemented plans for the effective use of cross-jurisdictional resources to facilitate timely adoptive or permanent placements for waiting children (section 422(b)(12) of the Act).

(d) *Availability of review instruments.* ACF will make available to the States copies of the review instruments, which will contain the specific standards to be used to determine substantial conformity, on an ongoing basis, whenever significant revisions to the instruments are made.

[65 FR 4078, Jan. 25, 2000, as amended at 66 FR 58675, Nov. 23, 2001]

§ 1355.35   **Program improvement plans.**

(a) *Mandatory program improvement plan.* (1) States found not to be operating in substantial conformity shall develop a program improvement plan. The program improvement plan must:

(i) Be developed jointly by State and Federal staff in consultation with the review team;

(ii) Identify the areas in which the State's program is not in substantial conformity;

(iii) Set forth the goals, the action steps required to correct each identified weakness or deficiency, and dates by which each action step is to be completed in order to improve the specific areas;

(iv) Set forth the amount of progress the statewide data will make toward meeting the national standards;

(v) Establish benchmarks that will be used to measure the State's progress in implementing the program improvement plan and describe the methods that will be used to evaluate progress;

(vi) Identify how the action steps in the plan build on and make progress over prior program improvement plans;

(vii) Identify the technical assistance needs and sources of technical assistance, both Federal and non-Federal, which will be used to make the necessary improvements identified in the program improvement plan.

(2) In the event that ACF and the State cannot reach consensus regarding the content of a program improvement plan or the degree of program or data improvement to be achieved, ACF retains the final authority to assign the contents of the plan and/or the degree of improvement required for successful completion of the plan. Under such circumstances, ACF will render a

the services delivery system including, at a minimum, tribal representatives, consumers, service providers, foster care providers, the juvenile court, and other public and private child and family serving agencies (45 CFR 1357.15(1)(4));

(ii) The agency develops, in consultation with these or similar representatives, annual reports of progress and services delivered pursuant to the CFSP (45 CFR 1357.16(a));

(iii) There is evidence that the agency's goals and objectives included in the CFSP reflect consideration of the major concerns of stakeholders consulted in developing the plan and on an ongoing basis (45 CFR 1357.15(m)); and

(iv) There is evidence that the State's services under the plan are coordinated with services or benefits under other Federal or federally-assisted programs serving the same populations to achieve the goals and objectives in the plan (45 CFR 1357.15(m)).

(7) *Foster and adoptive parent licensing, recruitment and retention:*

(i) The State has established and maintains standards for foster family homes and child care institutions which are reasonably in accord with recommended standards of national organizations concerned with standards for such institutions or homes (section 471(a)(10) of the Act);

(ii) The standards so established are applied by the State to every licensed or approved foster family home or child care institution receiving funds under title IV-E or IV-B of the Act (section 471(a)(10) of the Act);

(iii) The State complies with the safety requirements for foster care and adoptive placements in accordance with sections 471(a)(16), 471(a)(20) and 475(1) of the Act and 45 CFR 1356.30;

(iv) The State has in place an identifiable process for assuring the diligent recruitment of potential foster and adoptive families that reflect the ethnic and racial diversity of children in the State for whom foster and adoptive homes are needed (section 422(b)(9) of the Act); and,

(v) The State has developed and implemented plans for the effective use of cross-jurisdictional resources to facilitate timely adoptive or permanent

placements for waiting children (section 422(b)(12) of the Act).

(d) *Availability of review instruments.* ACF will make available to the States copies of the review instruments, which will contain the specific standards to be used to determine substantial conformity, on an ongoing basis, whenever significant revisions to the instruments are made.

[65 FR 4078, Jan. 25, 2000, as amended at 66 FR 58675, Nov. 23, 2001]

§ 1355.35 **Program improvement plans.**

(a) *Mandatory program improvement plan.* (1) States found not to be operating in substantial conformity shall develop a program improvement plan. The program improvement plan must:

(i) Be developed jointly by State and Federal staff in consultation with the review team;

(ii) Identify the areas in which the State's program is not in substantial conformity;

(iii) Set forth the goals, the action steps required to correct each identified weakness or deficiency, and dates by which each action step is to be completed in order to improve the specific areas;

(iv) Set forth the amount of progress the statewide data will make toward meeting the national standards;

(v) Establish benchmarks that will be used to measure the State's progress in implementing the program improvement plan and describe the methods that will be used to evaluate progress;

(vi) Identify how the action steps in the plan build on and make progress over prior program improvement plans;

(vii) Identify the technical assistance needs and sources of technical assistance, both Federal and non-Federal, which will be used to make the necessary improvements identified in the program improvement plan.

(2) In the event that ACF and the State cannot reach consensus regarding the content of a program improvement plan or the degree of program or data improvement to be achieved, ACF retains the final authority to assign the contents of the plan and/or the degree of improvement required for successful completion of the plan. Under such circumstances, ACF will render a

**Office of Human Development Services, HHS**                    **§ 1355.35**

written rationale for assigning such content or degree of improvement.

(b) *Voluntary program improvement plan.* States found to be operating in substantial conformity may voluntarily develop and implement a program improvement plan in collaboration with the ACF Regional Office, under the following circumstances:

(1) The State and Regional Office agree that there are areas of the State's child and family services programs in need of improvement which can be addressed through the development and implementation of a voluntary program improvement plan;

(2) ACF approval of the voluntary program improvement plan will not be required; and

(3) No penalty will be assessed for the State's failure to achieve the goals described in the voluntary program improvement plan.

(c) *Approval of program improvement plans.* (1) A State determined not to be in substantial conformity must submit a program improvement plan to ACF for approval within 90 calendar days from the date the State receives the written notification from ACF that it is not operating in substantial conformity.

(2) Any program improvement plan will be approved by ACF if it meets the provisions of paragraph (a) of this section.

(3) If the program improvement plan does not meet the provisions of paragraph (a) of this section, the State will have 30 calendar days from the date it receives notice from ACF that the plan has not been approved to revise and resubmit the plan for approval.

(4) If the State does not submit a revised program improvement plan according to the provisions of paragraph (c)(3) of this section or if the plan does not meet the provisions of paragraph (a) of this section, withholding of funds pursuant to the provisions of § 1355.36 of this part will begin.

(d) *Duration of program improvement plans.*

(1) ACF retains the authority to establish time frames for the program improvement plan consistent with the seriousness and complexity of the remedies required for any areas determined not in substantial conformity, not to exceed two years.

(2) Particularly egregious areas of nonconformity impacting child safety must receive priority in both the content and time frames of the program improvement plans and must be addressed in less than two years.

(3) The Secretary may approve extensions of deadlines in a program improvement plan not to exceed one year. The circumstances under which requests for extensions will be approved are expected to be rare. The State must provide compelling documentation of the need for such an extension. Requests for extensions must be received by ACF at least 60 days prior to the affected completion date.

(4) States must provide quarterly status reports (unless ACF and the State agree upon less frequent reports) to ACF. Such reports must inform ACF of progress in implementing the measures of the plan.

(e) *Evaluating program improvement plans.* Program improvement plans will be evaluated jointly by the State agency and ACF, in collaboration with other members of the review team, as described in the State's program improvement plan and in accordance with the following criteria:

(1) The methods and information used to measure progress must be sufficient to determine when and whether the State is operating in substantial conformity or has reached the negotiated standard with respect to statewide data indicators that failed to meet the national standard for that indicator;

(2) The frequency of evaluating progress will be determined jointly by the State and Federal team members, but no less than annually. Evaluation of progress will be performed in conjunction with the annual updates of the State's CFSP, as described in paragraph (f) of this section;

(3) Action steps may be jointly determined by the State and ACF to be achieved prior to projected completion dates, and will not require any further evaluation at a later date; and

(4) The State and ACF may jointly renegotiate the terms and conditions of the program improvement plan as needed, provided that:

275

(i) The renegotiated plan is designed to correct the areas of the State's program determined not to be in substantial conformity and/or achieve a standard for the statewide data indicators that is acceptable to ACF;

(ii) The amount of time needed to implement the provisions of the plan does not extend beyond three years from the date the original program improvement plan was approved;

(iii) The terms of the renegotiated plan are approved by ACF; and

(iv) The Secretary approves any extensions beyond the two-year limit.

(f) *Integration of program improvement plans with CFSP planning.* The elements of the program improvement plan must be incorporated into the goals and objectives of the State's CFSP. Progress in implementing the program improvement plan must be included in the annual reviews and progress reports related to the CFSP required in 45 CFR 1357.16.

[65 FR 4080, Jan. 25, 2000, as amended at 66 FR 58675, Nov. 23, 2001]

**§ 1355.36  Withholding Federal funds due to failure to achieve substantial conformity or failure to successfully complete a program improvement plan.**

(a) *For the purposes of this section:*

(1) The term ''title IV-B funds'' refers to the State's combined allocation of title IV-B subpart 1 and subpart 2 funds; and

(2) The term ''title IV-E funds'' refers to the State's reimbursement for administrative costs for the foster care program under title IV-E.

(b) *Determination of the amount of Federal funds to be withheld.* ACF will determine the amount of the State title IV-B and IV-E funds to be withheld due to a finding that the State is not operating in substantial conformity, as follows:

(1) A State will have the opportunity to develop and complete a program improvement plan prior to any withholding of funds.

(2) Title IV-B and IV-E funds will not be withheld from a State if the determination of nonconformity was caused by the State's correct use of formal written statements of Federal law or policy provided the State by DHHS.

(3) A portion of the State's title IV-B and IV-E funds will be withheld by ACF for the year under review and for each succeeding year until the State either successfully completes a program improvement plan or is found to be operating in substantial conformity.

(4) The amount of title IV-B and title IV-E funds subject to withholding due to a determination that a State is not operating in substantial conformity is based on a pool of funds defined as follows:

(i) The State's allotment of title IV-B funds for each of the years to which the withholding applies; and

(ii) An amount equivalent to 10 percent of the State's Federal claims for title IV-E foster care administrative costs for each of the years to which withholding applies;

(5) The amount of funds to be withheld from the pool in paragraph (b)(4) of this section will be computed as follows:

(i) Except as provided for in paragraphs (b)(7) and (b)(8) of this section, an amount equivalent to one percent of the funds described in paragraph (b)(4) of this section for each of the years to which withholding applies will be withheld for each of the seven outcomes listed in §1355.34(b)(1) of this part that is determined not to be in substantial conformity; and

(ii) Except as provided for in paragraphs (b)(7) and (b)(8) of this section, an amount equivalent to one percent of the funds described in paragraph (b)(4) of this section for each of the years to which withholding applies will be withheld for each of the seven systemic factors listed in §1355.34(c) of this part that is determined not to be in substantial conformity.

(6) Except as provided for in paragraphs (b)(7), (b)(8), and (e)(4) of this section, in the event the State is determined to be in nonconformity on each of the seven outcomes and each of the seven systemic factors subject to review, the maximum amount of title IV-B and title IV-E funds to be withheld due to the State's failure to comply is 14 percent per year of the funds described in paragraph (b)(4) of this section for each year.

276

(i) The renegotiated plan is designed to correct the areas of the State's program determined not to be in substantial conformity and/or achieve a standard for the statewide data indicators that is acceptable to ACF;

(ii) The amount of time needed to implement the provisions of the plan does not extend beyond three years from the date the original program improvement plan was approved;

(iii) The terms of the renegotiated plan are approved by ACF; and

(iv) The Secretary approves any extensions beyond the two-year limit.

(f) *Integration of program improvement plans with CFSP planning.* The elements of the program improvement plan must be incorporated into the goals and objectives of the State's CFSP. Progress in implementing the program improvement plan must be included in the annual reviews and progress reports related to the CFSP required in 45 CFR 1357.16.

[65 FR 4080, Jan. 25, 2000, as amended at 66 FR 58675, Nov. 23, 2001]

**§ 1355.36 Withholding Federal funds due to failure to achieve substantial conformity or failure to successfully complete a program improvement plan.**

(a) *For the purposes of this section:*

(1) The term "title IV-B funds" refers to the State's combined allocation of title IV-B subpart 1 and subpart 2 funds; and

(2) The term "title IV-E funds" refers to the State's reimbursement for administrative costs for the foster care program under title IV-E.

(b) *Determination of the amount of Federal funds to be withheld.* ACF will determine the amount of the State title IV-B and IV-E funds to be withheld due to a finding that the State is not operating in substantial conformity, as follows:

(1) A State will have the opportunity to develop and complete a program improvement plan prior to any withholding of funds.

(2) Title IV-B and IV-E funds will not be withheld from a State if the determination of nonconformity was caused by the State's correct use of formal written statements of Federal law or policy provided the State by DHHS.

(3) A portion of the State's title IV-B and IV-E funds will be withheld by ACF for the year under review and for each succeeding year until the State either successfully completes a program improvement plan or is found to be operating in substantial conformity.

(4) The amount of title IV-B and title IV-E funds subject to withholding due to a determination that a State is not operating in substantial conformity is based on a pool of funds defined as follows:

(i) The State's allotment of title IV-B funds for each of the years to which the withholding applies; and

(ii) An amount equivalent to 10 percent of the State's Federal claims for title IV-E foster care administrative costs for each of the years to which withholding applies;

(5) The amount of funds to be withheld from the pool in paragraph (b)(4) of this section will be computed as follows:

(i) Except as provided for in paragraphs (b)(7) and (b)(8) of this section, an amount equivalent to one percent of the funds described in paragraph (b)(4) of this section for each of the years to which withholding applies will be withheld for each of the seven outcomes listed in §1355.34(b)(1) of this part that is determined not to be in substantial conformity; and

(ii) Except as provided for in paragraphs (b)(7) and (b)(8) of this section, an amount equivalent to one percent of the funds described in paragraph (b)(4) of this section for each of the years to which withholding applies will be withheld for each of the seven systemic factors listed in §1355.34(c) of this part that is determined not to be in substantial conformity.

(6) Except as provided for in paragraphs (b)(7), (b)(8), and (e)(4) of this section, in the event the State is determined to be in nonconformity on each of the seven outcomes and each of the seven systemic factors subject to review, the maximum amount of title IV-B and title IV-E funds to be withheld due to the State's failure to comply is 14 percent per year of the funds described in paragraph (b)(4) of this section for each year.

(7) States determined not to be in substantial conformity that fail to correct the areas of nonconformity through the successful completion of a program improvement plan, and are determined to be in nonconformity on the second full review following the first full review in which a determination of nonconformity was made will be subject to increased withholding as follows:

(i) The amount of funds described in paragraph (b)(5) of this section will increase to two percent for each of the seven outcomes and each of the seven systemic factors that continues in nonconformity since the immediately preceding child and family services review;

(ii) The increased withholding of funds for areas of continuous nonconformity is subject to the provisions of paragraphs (c), (d), and (e) of this section;

(iii) The maximum amount of title IV-B and title IV-E funds to be withheld due to the State's failure to comply on the second full review following the first full review in which the determination of nonconformity was made is 28 percent of the funds described in paragraph (b)(4) of this section for each year to which the withholding of funds applies.

(8) States determined not to be in substantial conformity that fail to correct the areas of nonconformity through the successful completion of a program improvement plan, and are determined to be in nonconformity on the third and any subsequent full reviews following the first full review in which a determination of nonconformity was made will be subject to increased withholding as follows:

(i) The amount of funds described in paragraph (b)(5) of this section will increase to three percent for each of the seven outcomes and each of the seven systemic factors that continues in nonconformity since the immediately preceding child and family services review;

(ii) The increased withholding of funds for areas of continuous nonconformity is subject to the provisions of paragraphs (c), (d), and (e) of this section;

(iii) The maximum amount of title IV-B and title IV-E funds to be withheld due to the State's failure to comply on the third and any subsequent full reviews following the first full review in which the determination of nonconformity was made is 42 percent of the funds described in paragraph (b)(4) of this section for each year to which the withholding of funds applies.

(c) *Suspension of withholding.* (1) For States determined not to be operating in substantial conformity, ACF will suspend the withholding of the State title IV-B and title IV-E funds during the time that a program improvement plan is in effect, provided that:

(i) The program improvement plan conforms to the provisions of §1355.35 of this part; and

(ii) The State is actively implementing the provisions of the program improvement plan.

(2) Suspension of the withholding of funds is limited to three years following each review, or the amount of time approved for implementation of the program improvement plan, whichever is less.

(d) *Terminating the withholding of funds.* For States determined not to be in substantial conformity, ACF will terminate the withholding of the State's title IV-B and title IV-E funds related to the nonconformity upon determination by the State and ACF that the State has achieved substantial conformity or has successfully completed a program improvement plan. ACF will rescind the withholding of the portion of title IV-B and title IV-E funds related to specific goals or action steps as of the date at the end of the quarter in which they were determined to have been achieved.

(e) *Withholding of funds.* (1) States determined not to be in substantial conformity that fail to successfully complete a program improvement plan will be notified by ACF of this final determination of nonconformity in writing within 10 business days after the relevant completion date specified in the plan, and advised of the amount of title IV-B and title IV-E funds which are to be withheld.

(2) Title IV-B and title IV-E funds will be withheld based on the following:

(i) If the State fails to submit status reports in accordance with §1355.35(d)(4), or if such reports indicate that the State is not making satisfactory progress toward achieving goals or actions steps, funds will be withheld at that time for a period beginning October 1 of the fiscal year for which the determination of nonconformity was made and ending on the specified completion date for the affected goal or action step.

(ii) Funds related to goals and action steps that have not been achieved by the specified completion date will be withheld at that time for a period beginning October 1 of the fiscal year for which the determination of nonconformity was made and ending on the completion date of the affected goal or action step; and

(iii) The withholding of funds commensurate with the level of nonconformity at the end of the program improvement plan will begin at the latest completion date specified in the program improvement plan and will continue until a subsequent full review determines the State to be in substantial conformity or the State successfully completes a program improvement plan developed as a result of that subsequent full review.

(3) When the date the State is determined to be in substantial conformity or to have successfully completed a program improvement plan falls within a specific quarter, the amount of funds to be withheld will be computed to the end of that quarter.

(4) A State agency that refuses to participate in the development or implementation of a program improvement plan, as required by ACF, will be subject to the maximum increased withholding of 42 percent of its title IV-B and title IV-E funds, as described in paragraph (b)(8) of this section, for each year or portion thereof to which the withholding of funds applies.

(5) The State agency will be liable for interest on the amount of funds withheld by the Department, in accordance with the provisions of 45 CFR 30.13.

[65 FR 4081, Jan. 25, 2000, as amended at 66 FR 58675, Nov. 23, 2001]

§ 1355.37 Opportunity for Public Inspection of Review Reports and Materials.

The State agency must make available for public review and inspection all statewide assessments (§1355.33(b)), report of findings (§1355.33(e)), and program improvement plans (§1355.35(a)) developed as a result of a full or partial child and family services review.

[65 FR 4082, Jan. 25, 2000]

§ 1355.38 Enforcement of section 471(a)(18) of the Act regarding the removal of barriers to interethnic adoption.

(a) *Determination that a violation has occurred in the absence of a court finding.* (1) If ACF becomes aware of a possible section 471(a)(18) violation, whether in the course of a child and family services review, the filing of a complaint, or through some other mechanism, it will refer such a case to the Department's Office for Civil Rights (OCR) for investigation.

(2) Based on the findings of the OCR investigation, ACF will determine if a violation of section 471(a)(18) has occurred. A section 471(a)(18) violation occurs if a State or an entity in the State:

(i) Has denied to any person the opportunity to become an adoptive or foster parent on the basis of the race, color, or national origin of the person, or of the child, involved;

(ii) Has delayed or denied the placement of a child for adoption or into foster care on the basis of the race, color, or national origin of the adoptive or foster parent, or the child involved; or,

(iii) With respect to a State, maintains any statute, regulation, policy, procedure, or practice that on its face, is a violation as defined in paragraphs (a)(2)(i) and (2)(ii) of this section.

(3) ACF will provide the State or entity with written notification of its determination.

(4) If there has been no violation, there will be no further action. If ACF determines that there has been a violation of section 471(a)(18), it will take enforcement action as described in this section.

(5) Compliance with the Indian Child Welfare Act of 1978 (Pub. L. 95–608) does

**Office of Human Development Services, HHS** § 1356.21

plans and amendments. They also initiate discussion with the State agency on clarification of significant aspects of the plan which come to their attention in the course of this review. State plan material on which the regional staff has questions concerning the application of Federal policy is referred with recommendations as required to the central office for technical assistance. Comments and suggestions, including those of consultants in specified areas, may be prepared by the central office for use by the regional staff in negotiations with the State agency.

(4) *Action.* Each Regional Administrator, ACF, has the authority to approve State plans and amendments thereto which provide for the administration of foster care maintenance payments and adoption assistance programs under section 471 of the Act. The Commissioner, ACYF, retains the authority to determine that proposed plan material is not approvable, or that a previously approved plan no longer meets the requirements for approval. The Regional Office, ACYF, formally notifies the State agency of the actions taken on State plans or revisions.

(5) *Basis for approval.* Determinations as to whether State plans (including plan amendments and administrative practice under the plans) originally meet or continue to meet, the requirements for approval are based on relevant Federal statutes and regulations.

(6) *Prompt approval of State plans.* The determination as to whether a State plan submitted for approval conforms to the requirements for approval under the Act and regulations issued pursuant thereto shall be made promptly and not later than the 45th day following the date on which the plan submittal is received in the regional office, unless the Regional Office, ACYF, has secured from the State agency a written agreement to extend that period.

(7) *Prompt approval of plan amendments.* Any amendment of an approved State plan may, at the option of the State, be considered as a submission of a new State plan. If the State requests that such amendment be so considered the determination as to its conformity with the requirements for approval

shall be made promptly and not later than the 45th day following the date on which such a request is received in the regional office with respect to an amendment that has been received in such office, unless the Regional Office, ACYF, has secured from the State agency a written agreement to extend that period. In absence of request by a State that an amendment of an approved State plan shall be considered as a submission of a new State plan, the procedures under §201.6 (a) and (b) shall be applicable.

(8) *Effective date.* The effective date of a new plan may not be earlier than the first day of the calendar quarter in which an approvable plan is submitted, and with respect to expenditures for assistance under such plan, may not be earlier than the first day on which the plan is in operation on a statewide basis. The same applies with respect to plan amendments.

(e) Once the title IV-E State plan has been submitted and approved, it shall remain in effect until amendments are required. An amendment is required if there is any significant and relevant change in the information or assurances in the plan, or the organization, policies or operations described in the plan.

(This requirement has been approved by the Office of Management and Budget under OMB Control Number 0980–0141. In accordance with the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.)

[48 FR 23115, May 23, 1983, as amended at 58 FR 67938, Dec. 22, 1993; 65 FR 4088, Jan. 25, 2000; 66 FR 58676, Nov. 23, 2001]

§ 1356.21  **Foster care maintenance payments program implementation requirements.**

(a) *Statutory and regulatory requirements of the Federal foster care program.* To implement the foster care maintenance payments program provisions of the title IV-E State plan and to be eligible to receive Federal financial participation (FFP) for foster care maintenance payments under this part, a State must meet the requirements of this section, 45 CFR 1356.22, 45 CFR 1356.30, and sections 472, 475(1), 475(4), 475(5) and 475(6) of the Act.

307

(b) *Reasonable efforts.* The State must make reasonable efforts to maintain the family unit and prevent the unnecessary removal of a child from his/her home, as long as the child's safety is assured; to effect the safe reunification of the child and family (if temporary out-of-home placement is necessary to ensure the immediate safety of the child); and to make and finalize alternate permanency plans in a timely manner when reunification is not appropriate or possible. In order to satisfy the ''reasonable efforts'' requirements of section 471(a)(15) (as implemented through section 472(a)(1) of the Act), the State must meet the requirements of paragraphs (b) and (d) of this section. In determining reasonable efforts to be made with respect to a child and in making such reasonable efforts, the child's health and safety must be the State's paramount concern.

(1) *Judicial determination of reasonable efforts to prevent a child's removal from the home.* (i) When a child is removed from his/her home, the judicial determination as to whether reasonable efforts were made, or were not required to prevent the removal, in accordance with paragraph (b)(3) of this section, must be made no later than 60 days from the date the child is removed from the home pursuant to paragraph (k)(1)(ii) of this section.

(ii) If the determination concerning reasonable efforts to prevent the removal is not made as specified in paragraph (b)(1)(i) of this section, the child is not eligible under the title IV-E foster care maintenance payments program for the duration of that stay in foster care.

(2) *Judicial determination of reasonable efforts to finalize a permanency plan.* (i) The State agency must obtain a judicial determination that it has made reasonable efforts to finalize the permanency plan that is in effect (whether the plan is reunification, adoption, legal guardianship, placement with a fit and willing relative, or placement in another planned permanent living arrangement) within twelve months of the date the child is considered to have entered foster care in accordance with the definition at § 1355.20 of this part, and at least once every twelve months

thereafter while the child is in foster care.

(ii) If such a judicial determination regarding reasonable efforts to finalize a permanency plan is not made in accordance with the schedule prescribed in paragraph (b)(2)(i) of this section, the child becomes ineligible under title IV-E at the end of the month in which the judicial determination was required to have been made, and remains ineligible until such a determination is made.

(3) *Circumstances in which reasonable efforts are not required to prevent a child's removal from home or to reunify the child and family.* Reasonable efforts to prevent a child's removal from home or to reunify the child and family are not required if the State agency obtains a judicial determination that such efforts are not required because:

(i) A court of competent jurisdiction has determined that the parent has subjected the child to aggravated circumstances (as defined in State law, which definition may include but need not be limited to abandonment, torture, chronic abuse, and sexual abuse);

(ii) A court of competent jurisdiction has determined that the parent has been convicted of:

(A) Murder (which would have been an offense under section 1111(a) of title 18, United States Code, if the offense had occurred in the special maritime or territorial jurisdiction of the United States) of another child of the parent;

(B) Voluntary manslaughter (which would have been an offense under section 1112(a) of title 18, United States Code, if the offense had occurred in the special maritime or territorial jurisdiction of the United States) of another child of the parent;

(C) Aiding or abetting, attempting, conspiring, or soliciting to commit such a murder or such a voluntary manslaughter; or

(D) A felony assault that results in serious bodily injury to the child or another child of the parent; or,

(iii) The parental rights of the parent with respect to a sibling have been terminated involuntarily.

(4) *Concurrent planning.* Reasonable efforts to finalize an alternate permanency plan may be made concurrently

**Office of Human Development Services, HHS** § 1356.21

with reasonable efforts to reunify the child and family.

(5) *Use of the Federal Parent Locator Service.* The State agency may seek the services of the Federal Parent Locator Service to search for absent parents at any point in order to facilitate a permanency plan.

(c) *Contrary to the welfare determination.* Under section 472(a)(1) of the Act, a child's removal from the home must have been the result of a judicial determination (unless the child was removed pursuant to a voluntary placement agreement) to the effect that continuation of residence in the home would be contrary to the welfare, or that placement would be in the best interest, of the child. The contrary to the welfare determination must be made in the first court ruling that sanctions (even temporarily) the removal of a child from home. If the determination regarding contrary to the welfare is not made in the first court ruling pertaining to removal from the home, the child is not eligible for title IV-E foster care maintenance payments for the duration of that stay in foster care.

(d) *Documentation of judicial determinations.* The judicial determinations regarding contrary to the welfare, reasonable efforts to prevent removal, and reasonable efforts to finalize the permanency plan in effect, including judicial determinations that reasonable efforts are not required, must be explicitly documented and must be made on a case-by-case basis and so stated in the court order.

(1) If the reasonable efforts and contrary to the welfare judicial determinations are not included as required in the court orders identified in paragraphs (b) and (c) of this section, a transcript of the court proceedings is the only other documentation that will be accepted to verify that these required determinations have been made.

(2) Neither affidavits nor nunc pro tunc orders will be accepted as verification documentation in support of reasonable efforts and contrary to the welfare judicial determinations.

(3) Court orders that reference State law to substantiate judicial determinations are not acceptable, even if State law provides that a removal must be based on a judicial determination that

remaining in the home would be contrary to the child's welfare or that removal can only be ordered after reasonable efforts have been made.

(e) *Trial home visits.* A trial home visit may not exceed six months in duration, unless a court orders a longer trial home visit. If a trial home visit extends beyond six months and has not been authorized by the court, or exceeds the time period the court has deemed appropriate, and the child is subsequently returned to foster care, that placement must then be considered a new placement and title IV-E eligibility must be newly established. Under these circumstances the judicial determinations regarding contrary to the welfare and reasonable efforts to prevent removal are required.

(f) *Case review system.* In order to satisfy the provisions of section 471(a)(16) of the Act regarding a case review system, each State's case review system must meet the requirements of sections 475(5) and 475(6) of the Act.

(g) *Case plan requirements.* In order to satisfy the case plan requirements of sections 471(a)(16), 475(1) and 475(5) (A) and (D) of the Act, the State agency must promulgate policy materials and instructions for use by State and local staff to determine the appropriateness of and necessity for the foster care placement of the child. The case plan for each child must:

(1) Be a written document, which is a discrete part of the case record, in a format determined by the State, which is developed jointly with the parent(s) or guardian of the child in foster care; and

(2) Be developed within a reasonable period, to be established by the State, but in no event later than 60 days from the child's removal from the home pursuant to paragraph (k) of this section;

(3) Include a discussion of how the case plan is designed to achieve a safe placement for the child in the least restrictive (most family-like) setting available and in close proximity to the home of the parent(s) when the case plan goal is reunification and a discussion of how the placement is consistent with the best interests and special needs of the child. (FFP is not available when a court orders a placement with a specific foster care provider);

(4) Include a description of the services offered and provided to prevent removal of the child from the home and to reunify the family; and

(5) Document the steps to finalize a placement when the case plan goal is or becomes adoption or placement in another permanent home in accordance with sections 475(1)(E) and (5)(E) of the Act. When the case plan goal is adoption, at a minimum, such documentation shall include child-specific recruitment efforts such as the use of State, regional, and national adoption exchanges including electronic exchange systems.

(This requirement has been approved by the Office of Management and Budget under OMB Control Number 0980–0140. In accordance with the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.)

(h) *Application of the permanency hearing requirements.* (1) To meet the requirements of the permanency hearing, the State must, among other requirements, comply with section 475(5)(C) of the Act.

(2) In accordance with paragraph (b)(3) of this section, when a court determines that reasonable efforts to return the child home are not required, a permanency hearing must be held within 30 days of that determination, unless the requirements of the permanency hearing are fulfilled at the hearing in which the court determines that reasonable efforts to reunify the child and family are not required.

(3) If the State concludes, after considering reunification, adoption, legal guardianship, or permanent placement with a fit and willing relative, that the most appropriate permanency plan for a child is placement in another planned permanent living arrangement, the State must document to the court the compelling reason for the alternate plan. Examples of a compelling reason for establishing such a permanency plan may include:

(i) The case of an older teen who specifically requests that emancipation be established as his/her permanency plan;

(ii) The case of a parent and child who have a significant bond but the parent is unable to care for the child because of an emotional or physical disability and the child's foster parents have committed to raising him/her to the age of majority and to facilitate visitation with the disabled parent; or,

(iii) the Tribe has identified another planned permanent living arrangement for the child.

(4) When an administrative body, appointed or approved by the court, conducts the permanency hearing, the procedural safeguards set forth in the definition of *permanency hearing* must be so extended by the administrative body.

(i) *Application of the requirements for filing a petition to terminate parental rights at section 475(5)(E) of the Social Security Act.* (1) Subject to the exceptions in paragraph (i)(2) of this section, the State must file a petition (or, if such a petition has been filed by another party, seek to be joined as a party to the petition) to terminate the parental rights of a parent(s):

(i) Whose child has been in foster care under the responsibility of the State for 15 of the most recent 22 months. The petition must be filed by the end of the child's fifteenth month in foster care. In calculating when to file a petition for termination of parental rights, the State:

(A) Must calculate the 15 out of the most recent 22 month period from the date the child is considered to have entered foster care as defined at section 475(5)(F) of the Act and § 1355.20 of this part;

(B) Must use a cumulative method of calculation when a child experiences multiple exits from and entries into foster care during the 22 month period;

(C) Must not include trial home visits or runaway episodes in calculating 15 months in foster care; and,

(D) Need only apply section 475(5)(E) of the Act to a child once if the State does not file a petition because one of the exceptions at paragraph (i)(2) of this section applies;

(ii) Whose child has been determined by a court of competent jurisdiction to be an abandoned infant (as defined under State law). The petition to terminate parental rights must be filed within 60 days of the judicial determination that the child is an abandoned infant; or,

(iii) Who has been convicted of one of the felonies listed at paragraph (b)(3)(ii) of this section. Under such circumstances, the petition to terminate parental rights must be filed within 60 days of a judicial determination that reasonable efforts to reunify the child and parent are not required.

(2) The State may elect not to file or join a petition to terminate the parental rights of a parent per paragraph (i)(1) of this section if:

(i) At the option of the State, the child is being cared for by a relative;

(ii) The State agency has documented in the case plan (which must be available for court review) a compelling reason for determining that filing such a petition would not be in the best interests of the individual child. Compelling reasons for not filing a petition to terminate parental rights include, but are not limited to:

(A) Adoption is not the appropriate permanency goal for the child; or,

(B) No grounds to file a petition to terminate parental rights exist; or,

(C) The child is an unaccompanied refugee minor as defined in 45 CFR 400.111; or

(D) There are international legal obligations or compelling foreign policy reasons that would preclude terminating parental rights; or

(iii) The State agency has not provided to the family, consistent with the time period in the case plan, services that the State deems necessary for the safe return of the child to the home, when reasonable efforts to reunify the family are required.

(3) When the State files or joins a petition to terminate parental rights in accordance with paragraph (i)(1) of this section, it must concurrently begin to identify, recruit, process, and approve a qualified adoptive family for the child.

(j) *Child of a minor parent in foster care.* Foster care maintenance payments made on behalf of a child placed in a foster family home or child care institution, who is the parent of a son or daughter in the same home or institution, must include amounts which are necessary to cover costs incurred on behalf of the child's son or daughter. Said costs must be limited to funds expended on items listed in the defini-

tion of *foster care maintenance payments* in § 1355.20 of this part.

(k) *Removal from the home of a specified relative.* (1) For the purposes of meeting the requirements of section 472(a)(1) of the Act, a removal from the home must occur pursuant to:

(i) A voluntary placement agreement entered into by a parent or guardian which leads to a physical or constructive removal (i.e., a non-physical or paper removal of custody) of the child from the home; or

(ii) A judicial order for a physical or constructive removal of the child from a parent or specified relative.

(2) A removal has not occurred in situations where legal custody is removed from the parent or relative and the child remains with the same relative in that home under supervision by the State agency.

(3) A child is considered constructively removed on the date of the first judicial order removing custody, even temporarily, from the appropriate specified relative or the date that the voluntary placement agreement is signed by all relevant parties.

(l) *Living with a specified relative.* For purposes of meeting the requirements for living with a specified relative prior to removal from the home under section 472(a)(1) of the Act and all of the conditions under section 472(a)(4), one of the two following situations must apply:

(1) The child was living with the parent or specified relative, and was AFDC eligible in that home in the month of the voluntary placement agreement or initiation of court proceedings; or

(2) The child had been living with the parent or specified relative within six months of the month of the voluntary placement agreement or the initiation of court proceedings, and the child would have been AFDC eligible in that month if s/he had still been living in that home.

(m) *Review of payments and licensing standards.* In meeting the requirements of section 471(a)(11) of the Act, the State must review at reasonable, specific, time-limited periods to be established by the State:

(1) The amount of the payments made for foster care maintenance and

adoption assistance to assure their continued appropriateness; and

(2) The licensing or approval standards for child care institutions and foster family homes.

(n) *Foster care goals.* The specific foster care goals required under section 471(a)(14) of the Act must be incorporated into State law by statute or administrative regulation with the force of law.

(o) *Notice and opportunity to be heard.* The State must provide the foster parent(s) of a child and any preadoptive parent or relative providing care for the child with timely notice of and an opportunity to be heard in permanency hearings and six-month periodic reviews held with respect to the child during the time the child is in the care of such foster parent, preadoptive parent, or relative caregiver. Notice of and an opportunity to be heard does not include the right to standing as a party to the case.

[65 FR 4088, Jan. 25, 2000, as amended at 66 FR 58677, Nov. 23, 2001]

### § 1356.22 Implementation requirements for children voluntarily placed in foster care.

(a) As a condition of receipt of Federal financial participation (FFP) in foster care maintenance payments for a dependent child removed from his home under a voluntary placement agreement, the State must meet the requirements of:

(1) Section 472 of the Act, as amended;

(2) Sections 422(b)(10) and 475(5) of the Act;

(3) 45 CFR 1356.21(e), (f), (g), (h), and (i); and

(4) The requirements of this section.

(b) Federal financial participation is available only for voluntary foster care maintenance expenditures made within the first 180 days of the child's placement in foster care unless there has been a judicial determination by a court of competent jurisdiction, within the first 180 days of such placement, to the effect that the continued voluntary placement is in the best interests of the child.

(c) The State agency must establish and maintain a uniform procedure or system, consistent with State law, for

revocation by the parent(s) of a voluntary placement agreement and return of the child.

[65 FR 4090, Jan. 25, 2000, as amended at 66 FR 58677, Nov. 23, 2001]

### § 1356.30 Safety requirements for foster care and adoptive home providers.

(a) Unless an election provided for in paragraph (d) of this section is made, the State must provide documentation that criminal records checks have been conducted with respect to prospective foster and adoptive parents.

(b) The State may not approve or license any prospective foster or adoptive parent, nor may the State claim FFP for any foster care maintenance or adoption assistance payment made on behalf of a child placed in a foster home operated under the auspices of a child placing agency or on behalf of a child placed in an adoptive home through a private adoption agency, if the State finds that, based on a criminal records check conducted in accordance with paragraph (a) of this section, a court of competent jurisdiction has determined that the prospective foster or adoptive parent has been convicted of a felony involving:

(1) Child abuse or neglect;

(2) Spousal abuse;

(3) A crime against a child or children (including child pornography); or,

(4) A crime involving violence, including rape, sexual assault, or homicide, but not including other physical assault or battery.

(c) The State may not approve or license any prospective foster or adoptive parent, nor may the State claim FFP for any foster care maintenance or adoption assistance payment made on behalf of a child placed in a foster home operated under the auspices of a child placing agency or on behalf of a child placed in an adoptive home through a private adoption agency, if the State finds, based on a criminal records check conducted in accordance with paragraph (a) of this section, that a court of competent jurisdiction has determined that the prospective foster or adoptive parent has, within the last five years, been convicted of a felony involving:

(1) Physical assault;