CALIFORNIA CODES
WELFARE AND **INSTITUTIONS CODE**
SECTION 11225-11236
 (updated to include the 2007 Statutes)

11225.  Unless the context requires otherwise, the definitions
contained in this article shall govern the construction of this
chapter.

11226.  "Appeal proceeding" means an administrative hearing
conducted by a hearing officer of the department.

11227.  "Audit" means a review of the claims, accounts, and
documents of an auditee.

11228.  "Date of mailing" means the date postmarked on the envelope
if postage was prepaid and the envelope was properly addressed.

**11229**.  "Department" means the State Department of Social Services.

11230.  "Director" means the Director of Social Services.

11231.  "Duplicate" means a facsimile copy of the original produced
by photocopying or other technique of accurate reproduction.

11232.  "Hearing officer" means an administrative law judge
designated by the director.

11233.  "Informal conference" means a proceeding conducted in person
or by telephone for the purpose of clarifying or resolving issues.

11234.  "Party" means the group home provider, foster family agency,
or the department.

11235.  "Protest" means a written request for a review.  The request
shall contain the basis for the provider's objections to the audit
findings or set rate.

11236.  (a) "Set rate" means the per child per month rate set by the
department for an AFDC-FC group home program or foster family
agency.
   (b) "Set rate" includes the rate set using projected data supplied
by the provider for a proposed program, the rate set using data
reported by the provider for an existing program, or the rate set
using the results of a rate review, rate appeal, or audit done by, or
on behalf of, the department.

CALIFORNIA CODES
WELFARE AND **INSTITUTIONS CODE**
SECTION 11450-11469.1    (updated to include the 2007 Statutes)

**11460**.  (a) Foster care providers shall be paid a per child per month rate in return for the care and supervision of the AFDC-FC child placed with them.  The department is designated the single organizational unit whose duty it shall be to administer a state system for establishing rates in the AFDC-FC program.  State functions shall be performed by the department or by delegation of the department to county welfare departments or Indian tribes that have entered into an agreement pursuant to Section 10553.1.

  (b) "Care and supervision" includes food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to the child's home for visitation.

  (1) For a child placed in a group home, care and supervision shall also include reasonable administration and operational activities necessary to provide the items listed in this subdivision.

  (2) For a child placed in a group home, care and supervision may also include reasonable activities performed by social workers employed by the group home provider which are not otherwise considered daily supervision or administration activities.

  (c) It is the intent of the Legislature to establish the maximum level of state participation in out-of-state foster care group home program rates effective January 1, 1992.

  (1) The department shall develop regulations that establish the method for determining the level of state participation for each out-of-state group home program.  The department shall consider all of the following methods:

  (A) A standardized system based on the level of care and services per child per month as detailed in Section 11462.

  (B) A system which considers the actual allowable and reasonable costs of care and supervision incurred by the program.

  (C) A system which considers the rate established by the host state.

  (D) Any other appropriate methods as determined by the department.

  (2) State reimbursement for the AFDC-FC group home rate to be paid to an out-of-state program on or after January 1, 1992, shall only be paid to programs which have done both of the following:

  (A) Submitted a rate application to the department and received a determination of the level of state participation.

  (i) The level of state participation shall not exceed the current fiscal year's standard rate for rate classification level 14.

  (ii) The level of state participation shall not exceed the rate determined by the ratesetting authority of the state in which the facility is located.

  (iii) The level of state participation shall not decrease for any child placed prior to January 1, 1992, who continues to be placed in the same out-of-state group home program.

  (B) Agreed to comply with information requests, and program and fiscal audits as determined necessary by the department.

  (3) State reimbursement for an AFDC-FC rate paid on or after January 1, 1993, shall only be paid to a group home organized and operated on a nonprofit basis.

(d) A foster care provider that accepts payments, following the effective date of this section, based on a rate established under this section, shall not receive rate increases or retroactive payments as the result of litigation challenging rates established prior to the effective date of this section.  This shall apply regardless of whether a provider is a party to the litigation or a member of a class covered by the litigation.

(e) Nothing shall preclude a county from using a portion of its county funds to increase rates paid to family homes and foster family agencies within that county, and to make payments for specialized care increments, clothing allowances, or infant supplements to homes within that county, solely at that county's expense.

**11461.**  (a) For children placed in a licensed or approved family home with a capacity of six or less, or in an approved home of a relative or nonrelated legal guardian, or the approved home of a nonrelative extended family member as described in Section 362.7, the per child per month rates in the following schedule shall be in effect for the period July 1, 1989, through December 31, 1989:

| Age | Basic rate |
|-----|-----------|
| 0-4................................ | $ 294 |
| 5-8................................ | 319 |
| 9-11.............................. | 340 |
| 12-14............................. | 378 |
| 15-20............................. | 412 |

   (b) (1) Any county that, as of October 1, 1989, has in effect a basic rate that is at the levels set forth in the schedule in subdivision (a), shall continue to receive state participation, as specified in subdivision (c) of Section 15200, at these levels.
   (2) Any county that, as of October 1, 1989, has in effect a basic rate that exceeds a level set forth in the schedule in subdivision (a), shall continue to receive the same level of state participation as it received on October 1, 1989.
   (c) The amounts in the schedule of basic rates in subdivision (a) shall be adjusted as follows:
   (1) Effective January 1, 1990, the amounts in the schedule of basic rates in subdivision (a) shall be increased by 12 percent.
   (2) Effective May 1, 1990, any county that did not increase the basic rate by 12 percent on January 1, 1990, shall do both of the following:
   (A) Increase the basic rate in effect December 31, 1989, for which state participation is received by 12 percent.
   (B) Increase the basic rate, as adjusted pursuant to subparagraph (A) by an additional 5 percent.
   (3) (A) Except as provided in subparagraph (B), effective July 1, 1990, for the 1990-91 fiscal year, the amounts in the schedule of basic rates in subdivision (a) shall be increased by an additional 5 percent.
   (B) The rate increase required by subparagraph (A) shall not be applied to rates increased May 1, 1990, pursuant to paragraph (2).
   (4) Effective July 1, 1998, the amounts in the schedule of basic rates in subdivision (a) shall be increased by 6 percent. Notwithstanding any other provision of law, the 6-percent increase provided for in this paragraph shall, retroactive to July 1, 1998, apply to every county, including any county to which paragraph (2) of subdivision (b) applies, and shall apply to foster care for every age group.
   (5) Notwithstanding any other provision of law, any increase that takes effect after July 1, 1998, shall apply to every county, including any county to which paragraph (2) of subdivision (b) applies, and shall apply to foster care for every age group.
   (6) The increase in the basic foster family home rate shall apply only to children placed in a licensed foster family home receiving the basic rate or in an approved home of a relative or nonrelative extended family member, as described in Section 362.7 or nonrelated legal guardian receiving the basic rate. The increased rate shall not

be used to compute the monthly amount that may be paid to licensed foster family agencies for the placement of children in certified foster homes.

(d) (1) (A) Beginning with the 1991-92 fiscal year, the schedule of basic rates in subdivision (a) shall be adjusted by the percentage changes in the California Necessities Index, computed pursuant to the methodology described in Section 11453, subject to the availability of funds.

(B) In addition to the adjustment in subparagraph (A) effective January 1, 2000, the schedule of basic rates in subdivision (a) shall be increased by 2.36 percent rounded to the nearest dollar.

(C) Effective January 1, 2008, the schedule of basic rates in subdivision (a), as adjusted pursuant to subparagraph (B), shall be increased by 5 percent, rounded to the nearest dollar. The increased rate shall not be used to compute the monthly amount that may be paid to licensed foster family agencies for the placement of children in certified foster family homes, and shall not be used to recompute the foster care maintenance payment that would have been paid based on the age-related, state-approved foster family home care rate and any applicable specialized care increment, for any adoption assistance agreement entered into prior to October 1, 1992, or in any subsequent reassessment for adoption assistance agreements executed before January 1, 2008.

(2) (A) Any county that, as of the 1991-92 fiscal year, receives state participation for a basic rate that exceeds the amount set forth in the schedule of basic rates in subdivision (a) shall receive an increase each year in state participation for that basic rate of one-half of the percentage adjustments specified in paragraph (1) until the difference between the county's adjusted state participation level for its basic rate and the adjusted schedule of basic rates is eliminated.

(B) Notwithstanding subparagraph (A), all counties for the 1999 -2000 fiscal year and the 2007-08 fiscal year shall receive an increase in state participation for the basic rate of the entire percentage adjustment described in paragraph (1).

(3) If a county has, after receiving the adjustments specified in paragraph (2), a state participation level for a basic rate that is below the amount set forth in the adjusted schedule of basic rates for that fiscal year, the state participation level for that rate shall be further increased to the amount specified in the adjusted schedule of basic rates.

(e) (1) As used in this section, "specialized care increment" means an approved amount paid with state participation on behalf of an AFDC-FC child requiring specialized care to a home listed in subdivision (a) in addition to the basic rate. On the effective date of this section, the department shall continue and maintain the current ratesetting system for specialized care.

(2) Any county that, as of the effective date of this section, has in effect specialized care increments that have been approved by the department, shall continue to receive state participation for those payments.

(3) Any county that, as of the effective date of this section, has in effect specialized care increments that exceed the amounts that have been approved by the department, shall continue to receive the same level of state participation as it received on the effective date of this section.

(4) (A) Except for subparagraph (B), beginning January 1, 1990, specialized care increments shall be adjusted in accordance with the methodology for the schedule of basic rates described in subdivision (c) and (d). No county shall receive state participation for any increases in a specialized care increment which exceeds the adjustments made in accordance with this methodology.

(B) Notwithstanding subdivision (e) of Section **11460**, for the 1993 -94 fiscal year, an amount equal to 5 percent of the State Treasury appropriation for family homes shall be added to the total augmentation for the AFDC-FC program in order to provide incentives and assistance to counties in the area of specialized care. This appropriation shall be used, but not limited to, encouraging counties to implement or expand specialized care payment systems, to recruit and train foster parents for the placement of children with specialized care needs, and to develop county systems to encourage the placement of children in family homes. It is the intent of the Legislature that in the use of these funds, federal financial participation shall be claimed whenever possible.

(f) (1) As used in this section, "clothing allowance" means the amount paid with state participation in addition to the basic rate for the provision of additional clothing for an AFDC-FC child, including, but not limited to, an initial supply of clothing and school or other uniforms.

(2) Any county that, as of the effective date of this section, has in effect clothing allowances, shall continue to receive the same level as it received on the effective date of this section.

(3) (A) Commencing in the 2007-08 fiscal year, for children whose foster care payment is the responsibility of Colusa, Plumas, and Tehama Counties, the amount of the clothing allowance may be up to two hundred seventy-four dollars ($274) per child per year.

(B)  Each county listed in subparagraph (A) that elects to receive the clothing allowance shall submit a Clothing Allowance Program Notification to the department within 60 days after the effective date of the act that adds this paragraph.

(C) The Clothing Allowance Program Notification shall identify the specific amounts to be paid and the disbursement schedule for these clothing allowance payments.

(4) Beginning January 1, 1990, except as provided in paragraph (5), clothing allowances shall be adjusted annually in accordance with the methodology for the schedule of basic rates described in subdivision (c) and (d). No county shall be reimbursed for any increases in clothing allowances which exceed the adjustments made in accordance with this methodology.

(5) For the 2000-01 fiscal year and each fiscal year thereafter, without a county share of cost, notwithstanding subdivision (c) of Section 15200, each child shall be entitled to receive a supplemental clothing allowance of one hundred dollars ($100) per year subject to the availability of funds. The clothing allowance shall be used to supplement, and not supplant, the clothing allowance specified in paragraph (1).


**11461.1.**  It is the intent of the Legislature to ensure quality care for children who are placed in foster family homes.  Therefore, the State Department of Social Services is directed to work with

counties, foster parent associations, representatives of the
community colleges, representatives of foster youth organizations,
legislative staff members, and other interested parties concerning
training requirements, experience, and retention of foster parents
and the capacity of foster homes.


**11461.5.** (a) The department may establish a rate to supplement the
basic rate specified in subdivision (a) of Section 11461 for the
provision of additional shelter needs for AFDC-FC children who are
placed in out-of-home care with their siblings.

   (b) The department shall develop regulations for the rate
specified in subdivision (a).

   (c) The department shall amend the state plan to receive
appropriate funding from the federal government, for implementation
of this section, under Title IV-E of the federal Social Security Act,
Part E (commencing with Section 670) of Subchapter 4 of Chapter 7 of
Title 42 of the United States **Code**. The plan amendment shall be
submitted within 90 days of notification that federal funds are
available for the purposes of this section.

   (d) Subdivisions (a) and (b) shall be implemented only if, and
upon the date that, the director executes a declaration, that shall
be retained by the director, stating that the director has determined
that the federal government has approved the state plan amendments
required by subdivision (c), and federal funding in accordance with
those state plan amendments becomes available.

**11462.**  (a) (1) Effective July 1, 1990, foster care providers licensed as group homes, as defined in departmental regulations, including public child care **institutions**, as defined in Section 11402.5, shall have rates established by classifying each group home program and applying the standardized schedule of rates. The department shall collect information from group providers beginning January 1, 1990, in order to classify each group home program.

   (2) Notwithstanding paragraph (1), foster care providers licensed as group homes shall have rates established only if the group home is organized and operated on a nonprofit basis as required under subdivision (h) of Section 11400. The department shall terminate the rate effective January 1, 1993, of any group home not organized and operated on a nonprofit basis as required under subdivision (h) of Section 11400.

   (3) (A) The department shall determine, consistent with the requirements of this chapter and other relevant requirements under law, the rate classification level (RCL) for each group home program on a biennial basis. Submission of the biennial rate application shall be made according to a schedule determined by the department.

   (B) The department shall adopt regulations to implement this paragraph. The adoption, amendment, repeal, or readoption of a regulation authorized by this paragraph is deemed to be necessary for the immediate preservation of the public peace, health and safety, or general welfare, for purposes of Sections 11346.1 and 11349.6 of the Government **Code**, and the department is hereby exempted from the requirement to describe specific facts showing the need for immediate action.

   (b) A group home program shall be initially classified, for purposes of emergency regulations, according to the level of care and services to be provided using a point system developed by the department and described in the report, "The Classification of Group Home Programs under the Standardized Schedule of Rates System," prepared by the State Department of Social Services, August 30, 1989.

   (c) The rate for each RCL has been determined by the department with data from the AFDC-FC Group Home Rate Classification Pilot Study. The rates effective July 1, 1990, were developed using 1985 calendar year costs and reflect adjustments to the costs for each fiscal year, starting with the 1986-87 fiscal year, by the amount of the California Necessities Index computed pursuant to the methodology described in Section 11453. The data obtained by the department using 1985 calendar year costs shall be updated and revised by January 1, 1993.

   (d) As used in this section, "standardized schedule of rates" means a listing of the 14 rate classification levels, and the single rate established for each RCL.

   (e) Except as specified in paragraph (1), the department shall determine the RCL for each group home program on a prospective basis, according to the level of care and services that the group home operator projects will be provided during the period of time for which the rate is being established.

   (1) (A) For new and existing providers requesting the establishment of an RCL, and for existing group home programs requesting an RCL increase, the department shall determine the RCL no later than 13 months after the effective date of the provisional rate. The determination of the RCL shall be based on a program audit

of documentation and other information that verifies the level of care and supervision provided by the group home program during a period of the two full calendar months or 60 consecutive days, whichever is longer, preceding the date of the program audit, unless the group home program requests a lower RCL. The program audit shall not cover the first six months of operation under the provisional rate. Pending the department's issuance of the program audit report that determines the RCL for the group home program, the group home program shall be eligible to receive a provisional rate that shall be based on the level of care and service that the group home program proposes it will provide. The group home program shall be eligible to receive only the RCL determined by the department during the pendency of any appeal of the department's RCL determination.

(B) A group home program may apply for an increase in its RCL no earlier than two years from the date the department has determined the group home program's rate, unless the host county, the primary placing county, or a regional consortium of counties submits to the department in writing that the program is needed in that county, that the provider is capable of effectively and efficiently operating the proposed program, and that the provider is willing and able to accept AFDC-FC children for placement who are determined by the placing agency to need the level of care and services that will be provided by the program.

(C) To ensure efficient administration of the department's audit responsibilities, and to avoid the fraudulent creation of records, group home programs shall make records that are relevant to the RCL determination available to the department in a timely manner. Except as provided in this section, the department may refuse to consider, for purposes of determining the rate, any documents that are relevant to the determination of the RCL that are not made available by the group home provider by the date the group home provider requests a hearing on the department's RCL determination. The department may refuse to consider, for purposes of determining the rate, the following records, unless the group home provider makes the records available to the department during the fieldwork portion of the department's program audit:

(i) Records of each employee's full name, home address, occupation, and social security number.

(ii) Time records showing when the employee begins and ends each work period, meal periods, split shift intervals, and total daily hours worked.

(iii) Total wages paid each payroll period.

(iv) Records required to be maintained by licensed group home providers under Title 22 of the California **Code** of Regulations that are relevant to the RCL determination.

(D) To minimize financial abuse in the startup of group home programs, when the department's RCL determination is more than three levels lower than the RCL level proposed by the group home provider, and the group home provider does not appeal the department's RCL determination, the department shall terminate the rate of a group home program 45 days after issuance of its program audit report. When the group home provider requests a hearing on the department's RCL determination, and the RCL determined by the director under subparagraph (E) is more than three levels lower than the RCL level proposed by the group home provider, the department shall terminate the rate of a group home program within 30 days of issuance of the

director's decision. Notwithstanding the reapplication provisions in subparagraph (B), the department shall deny any request for a new or increased RCL from a group home provider whose RCL is terminated pursuant to this subparagraph, for a period of no greater than two years from the effective date of the RCL termination.

(E) A group home provider may request a hearing of the department's RCL determination under subparagraph (A) no later than 30 days after the date the department issues its RCL determination. The department's RCL determination shall be final if the group home provider does not request a hearing within the prescribed time. Within 60 days of receipt of the request for hearing, the department shall conduct a hearing on the RCL determination. The standard of proof shall be the preponderance of the evidence and the burden of proof shall be on the department. The hearing officer shall issue the proposed decision within 45 days of the close of the evidentiary record. The director shall adopt, reject, or modify the proposed decision, or refer the matter back to the hearing officer for additional evidence or findings within 100 days of issuance of the proposed decision. If the director takes no action on the proposed decision within the prescribed time, the proposed decision shall take effect by operation of law.

(2) Group home programs that fail to maintain at least the level of care and services associated with the RCL upon which their rate was established shall inform the department. The department shall develop regulations specifying procedures to be applied when a group home fails to maintain the level of services projected, including, but not limited to, rate reduction and recovery of overpayments.

(3) The department shall not reduce the rate, establish an overpayment, or take other actions pursuant to paragraph (2) for any period that a group home program maintains the level of care and services associated with the RCL for children actually residing in the facility.  Determinations of levels of care and services shall be made in the same way as modifications of overpayments are made pursuant to paragraph (2) of subdivision (b) of Section 11466.2.

(4) A group home program that substantially changes its staffing pattern from that reported in the group home program statement shall provide notification of this change to all counties that have placed children currently in care. This notification shall be provided whether or not the RCL for the program may change as a result of the change in staffing pattern.

(f) (1) The standardized schedule of rates for the 2002-03, 2003-04, 2004-05, 2005-06, 2006-07, and 2007-08 fiscal years is:

| Rate Classification Level | Point Ranges | FY 2002-03, 2003-04, 2004-05, 2005-06, 2006-07, and 2007-08 Standard Rate |
|---|---|---|
| 1 | Under 60 | $1,454 |
| 2 | 60- 89 | 1,835 |
| 3 | 90-119 | 2,210 |
| 4 | 120-149 | 2,589 |
| 5 | 150-179 | 2,966 |
| 6 | 180-209 | 3,344 |

| 7 | 210-239 | 3,723 |
| 8 | 240-269 | 4,102 |
| 9 | 270-299 | 4,479 |
| 10 | 300-329 | 4,858 |
| 11 | 330-359 | 5,234 |
| 12 | 360-389 | 5,613 |
| 13 | 390-419 | 5,994 |
| 14 | 420 & Up | 6,371 |

(2) (A) For group home programs that receive AFDC-FC payments for services performed during the 2002-03, 2003-04, 2004-05, 2005 -06, 2006-07, and 2007-08 fiscal years, the adjusted RCL point ranges below shall be used for establishing the biennial rates for existing programs, pursuant to paragraph (3) of subdivision (a) and in performing program audits and in determining any resulting rate reduction, overpayment assessment, or other actions pursuant to paragraph (2) of subdivision (e):

| Rate Classification Level | Adjusted Point Ranges for the 2002-03, 2003-04, 2004-05, 2005-06, 2006-07, and 2007-08 Fiscal Years |
| --- | --- |
| 1 | Under 54 |
| 2 | 54- 81 |
| 3 | 82-110 |
| 4 | 111-138 |
| 5 | 139-167 |
| 6 | 168-195 |
| 7 | 196-224 |
| 8 | 225-253 |
| 9 | 254-281 |
| 10 | 282-310 |
| 11 | 311-338 |
| 12 | 339-367 |
| 13 | 368-395 |
| 14 | 396 & Up |

(B) Notwithstanding subparagraph (A), foster care providers operating group homes during the 2002-03, 2003-04, 2004-05, 2005 -06, 2006-07, and 2007-08 fiscal years shall remain responsible for ensuring the health and safety of the children placed in their programs in accordance with existing applicable provisions of the Health and Safety **Code** and community care licensing regulations, as contained in Title 22 of the **Code** of California Regulations.

(C) Subparagraph (A) shall not apply to program audits of group home programs with provisional rates established pursuant to paragraph (1) of subdivision (e). For those program audits, the RCL point ranges in paragraph (1) shall be used.

(g) (1) (A) For the 1999-2000 fiscal year, the standardized rate for each RCL shall be adjusted by an amount equal to the California Necessities Index computed pursuant to the methodology described in Section 11453. The resultant amounts shall constitute the new

standardized schedule of rates, subject to further adjustment
pursuant to subparagraph (B).

(B) In addition to the adjustment in subparagraph (A), commencing
January 1, 2000, the standardized rate for each RCL shall be
increased by 2.36 percent, rounded to the nearest dollar. The
resultant amounts shall constitute the new standardized schedule of
rates.

(2) Beginning with the 2000-01 fiscal year, the standardized
schedule of rates shall be adjusted annually by an amount equal to
the CNI computed pursuant to Section 11453, subject to the
availability of funds.  The resultant amounts shall constitute the
new standardized schedule of rates.

(3) Effective January 1, 2001, the amount included in the standard
rate for each Rate Classification Level (RCL) for the salaries,
wages, and benefits for staff providing child care and supervision or
performing social work activities, or both, shall be increased by 10
percent. This additional funding shall be used by group home
programs solely to supplement staffing, salaries, wages, and benefit
levels of staff specified in this paragraph. The standard rate for
each RCL shall be recomputed using this adjusted amount and the
resultant rates shall constitute the new standardized schedule of
rates. The department may require a group home receiving this
additional funding to certify that the funding was utilized in
accordance with the provisions of this section.

(4) Effective January 1, 2008, the amount included in the standard
rate for each RCL for the wages for staff providing child care and
supervision or performing social work activities, or both, shall be
increased by 5 percent, and the amount included for the payroll taxes
and other employer-paid benefits for these staff shall be increased
from 20.325 percent to 24 percent. The standard rate for each RCL
shall be recomputed using these adjusted amounts, and the resulting
rates shall constitute the new standardized schedule of rates.

(h) The standardized schedule of rates pursuant to subdivisions
(f) and (g) shall be implemented as follows:

(1) Any group home program that received an AFDC-FC rate in the
prior fiscal year at or above the standard rate for the RCL in the
current fiscal year shall continue to receive that rate.

(2) Any group home program that received an AFDC-FC rate in the
prior fiscal year below the standard rate for the RCL in the current
fiscal year shall receive the RCL rate for the current year.

(i) (1) The department shall not establish a rate for a new
program of a new or existing provider, or for an existing program at
a new location of an existing provider, unless the provider submits a
letter of recommendation from the host county, the primary placing
county, or a regional consortium of counties that includes all of the
following:

(A) That the program is needed by that county.

(B) That the provider is capable of effectively and efficiently
operating the program.

(C) That the provider is willing and able to accept AFDC-FC
children for placement who are determined by the placing agency to
need the level of care and services that will be provided by the
program.

(D) That, if the letter of recommendation is not being issued by
the host county, the primary placing county has notified the host
county of its intention to issue the letter and the host county was

given the opportunity 30 days to respond to this notification and to discuss options with the primary placing county.

(2) The department shall encourage the establishment of consortia of county placing agencies on a regional basis for the purpose of making decisions and recommendations about the need for, and use of, group home programs and other foster care providers within the regions.

(3) The department shall annually conduct a county-by-county survey to determine the unmet placement needs of children placed pursuant to Section 300 and Section 601 or 602, and shall publish its findings by November 1 of each year.

(j) The department shall develop regulations specifying ratesetting procedures for program expansions, reductions, or modifications, including increases or decreases in licensed capacity, or increases or decreases in level of care or services.

(k) (1) For the purpose of this subdivision, "program change" means any alteration to an existing group home program planned by a provider that will increase the RCL or AFDC-FC rate. An increase in the licensed capacity or other alteration to an existing group home program that does not increase the RCL or AFDC-FC rate shall not constitute a program change.

(2) For the 1998-99, 1999-2000, and 2000-01 fiscal years, the rate for a group home program shall not increase, as the result of a program change, from the rate established for the program effective July 1, 2000, and as adjusted pursuant to subparagraph (B) of paragraph (1) of subdivision (g), except as provided in paragraph (3).

(3) (A) For the 1998-99, 1999-2000, and 2000-01 fiscal years, the department shall not establish a rate for a new program of a new or existing provider or approve a program change for an existing provider that either increases the program's RCL or AFDC-FC rate, or increases the licensed capacity of the program as a result of decreases in another program with a lower RCL or lower AFDC-FC rate that is operated by that provider, unless both of the following conditions are met:

(i) The licensee obtains a letter of recommendation from the host county, primary placing county, or regional consortium of counties regarding the proposed program change or new program.

(ii) The county determines that there is no increased cost to the General Fund.

(B) Notwithstanding subparagraph (A), the department may grant a request for a new program or program change, not to exceed 25 beds, statewide, if both of the following conditions are met:

(i) The licensee obtains a letter of recommendation from the host county, primary placing county, or regional consortium of counties regarding the proposed program change or new program.

(ii) The department determines that the new program or program change will result in a reduction of referrals to state hospitals during the 1998-99 fiscal year.

(l) General unrestricted or undesignated private charitable donations and contributions made to charitable or nonprofit organizations shall not be deducted from the cost of providing services pursuant to this section. The donations and contributions shall not be considered in any determination of maximum expenditures made by the department.

(m) The department shall, by October 1 of each year, commencing

October 1, 1992, provide the Joint Legislative Budget Committee with a list of any new departmental requirements established during the previous fiscal year concerning the operation of group homes, and of any unusual, industrywide increase in costs associated with the provision of group care that may have significant fiscal impact on providers of group homes care.  The committee may, in fiscal year 1993-94 and beyond, use the list to determine whether an appropriation for rate adjustments is needed in the subsequent fiscal year.

**11462.01**.  (a) Commencing July 1, 1994, a group home program shall be classified at RCL 13 or RCL 14 if the program meets all of the following requirements:

   (1) The group home program is providing, or has proposed to provide, the level of care and services necessary to generate sufficient points in the ratesetting process to be classified at RCL 13 if the rate application is for RCL 13 or to be classified at RCL 14 if the rate application is for RCL 14.

   (2) (A) (i) The group home provider shall agree not to accept for placement into a group home program AFDC-FC funded children, including voluntary placements and seriously emotionally disturbed children placed out-of-home pursuant to an individualized education program developed under Section 7572.5 of the Government **Code**, who have not been approved for placement by an interagency placement committee, as described by Section 4096.  The approval shall be in writing and shall indicate that the interagency placement committee has determined the child is seriously emotionally disturbed, as defined by Section 5600.3 and subject to Section 1502.4 of the Health and Safety **Code**, and that the child needs the level of care provided by the group home.

   (ii) For purposes of clause (i), group home providers who accept seriously emotionally disturbed children who are assessed and placed out-of-home pursuant to an individualized education program developed under Section 7572.5 of the Government **Code** shall be deemed to have met the interagency placement committee approval for placement requirements of clause (i) if the individualized education program assessment indicates that the child has been determined to be seriously emotionally disturbed, as defined in Section 5600.3 and subject to Section 1502.4 of the Health and Safety **Code**, and needs the level of care described in clause (i).

   (B) (i) Nothing in this subdivision shall prevent the emergency placement of a child into a group home program prior to the determination by the interagency placement committee pursuant to subclause (i) of subparagraph (A) if a licensed mental health professional, as defined in the department's AFDC-FC ratesetting regulations, has evaluated, in writing, the child within 72 hours of placement, and determined the child to be seriously emotionally disturbed and in need of the care and services provided by the group home program.

   (ii) The interagency placement committee shall, within 30 days of placement pursuant to clause (i), make the determination required by clause (i) of subparagraph (A).

   (iii) If, pursuant to clause (ii), the placement is determined to be appropriate, the committee shall transmit the approval, in writing, to the county placing agency and the group home provider.

(iv) If, pursuant to clause (ii) the placement is determined not to be appropriate, the child shall be removed from the group home and referred to a more appropriate placement, as specified in subdivision (f).

(C) Commencing December 15, 1992, with respect to AFDC-FC funded children, only those children who are approved for placement by an interagency placement committee may be accepted by a group home under this subdivision.

(3) The group home program is certified by the State Department of Mental Health pursuant to Section 4096.5.

(b) The department shall not establish a rate for a group home requesting a program change to RCL 13 or RCL 14 unless the group home provider submits a recommendation from the host county or the primary placing county that the program is needed and that the provider is willing and capable of operating the program at the level sought.  For purposes of this subdivision, "host county," "primary placing county," and "program change" mean the same as defined in the department's AFDC-FC ratesetting regulations.

(c) The effective date of rates set at RCL 13 or RCL 14 shall be the date that all the requirements are met, but not prior to July 1 of that fiscal year.  Nothing in this section shall affect RCL 13 or RCL 14 ratesetting determinations in prior years.

(d) Any group home program that has been classified at RCL 13 or RCL 14 pursuant to the requirements of subdivision (a) shall be reclassified at the appropriate lower RCL with a commensurate reduction in rate if either of the following occurs:

(1) The group home program fails to maintain the level of care and services necessary to generate the necessary number of points for RCL 13 or RCL 14, as required by paragraph (1) of subdivision (a). The determination of points shall be made consistent with the department's AFDC-FC ratesetting regulations for other rate classification levels.

(2) The group home program fails to maintain a certified mental health treatment program as required by paragraph (3) of subdivision (a).

(3) In the event of a determination under paragraph (1), the group home may appeal the finding or submit a corrective action plan.  The appeal process specified in Section 11466.6 shall be available to RCL 13 and RCL 14 group home providers.  During any appeal, the group home shall maintain the appropriate level of care.

(e) The interagency placement committee shall periodically review, but no less often than that required by current law, the placement of the child.  If the committee determines that the child no longer needs, or is not benefiting from, placement in a RCL 13 or RCL 14 group home, the committee shall require the removal of the child and a new disposition.

(f) (1) (A) If, at any time subsequent to placement in an RCL 13 or RCL 14 group home program, the interagency placement committee determines either that the child is not seriously emotionally disturbed or is not in need of the care and services provided by the group home program, it shall notify, in writing, both the county placing agency and the group home provider within 10 days of the determination.

(B) The county placing agency shall notify the group home provider, in writing, within five days from the date of the notice from the committee, of the county's plan for removal of the child.

(C) The county placing agency shall remove the child from the group home program within 30 days from the date of the notice from the interagency placement committee.

(2) (A) If a county placing agency does not remove a child within 30 days from the date of the notice from the interagency placement committee, the group home provider shall notify the interagency placement committee and the department, in writing, of the county's failure to remove the child from the group home program.

(B) The group home provider shall make the notification required by subparagraph (A) within five days of the expiration of the 30-day removal period.  If notification is made, a group home provider shall not be subject to an overpayment determination due to failure of the county placing agency to remove the child.

(3) Any county placing agency that fails to remove a child from a group home program under this paragraph within 30 days from the date of the notice from the interagency placement committee shall be assessed a penalty in the amount of the state and federal financial participation in the AFDC-FC rate paid on behalf of the child commencing on the 31st day and continuing until the child is removed.

(g) (1) If any RCL 13 or RCL 14 group home provider discovers that it does not have written approval for placement of any AFDC-FC funded child placed on or after December 15, 1992, from the interagency placement committee, it shall notify the county placing agency, in writing, and shall request the county to obtain approval from the interagency placement committee or remove the child from the group home program.  A group home provider shall have 30 days from the child's first day of placement to discover the placement error and to notify the county placing agency.

(2) Any county placing agency that receives notification pursuant to paragraph (2) of subdivision (f) shall obtain approval for placement from the interagency placement committee or remove the child from the group home program within 30 days from the date of the notice from the group home provider.  The program shall not be reclassified to a lower RCL for a violation of the provisions referred to in this paragraph.

(3) (A) If a county placing agency does not have the placement of a child approved by the interagency placement committee or removed from the group home within 30 days from the date of the notice from the group home provider, the group home provider shall notify the county placing agency and the department, in writing, of the county's failure to have the placement of the child approved or remove the child from the group home program.

(B) The group home provider shall make the notification required by subparagraph (A) within five days after the expiration of the 30-day approval or removal period.  If notification is made, a group home provider shall not be subject to an overpayment determination due to failure of the county placing agency to remove the child.

(C) Any group home provider that fails to notify the county placing agency pursuant to subparagraph (A) shall be assessed a penalty in the amount of the AFDC-FC rate paid to the group home provider on behalf of the child commencing on the 31st day of placement and continuing until the county placing agency is notified.

(4) Any county placing agency that fails to have the placement of a child approved or to have the child removed from the group home

program within 30 days shall be assessed a penalty in the amount of the state and federal financial participation in the AFDC-FC rate paid on behalf of the child commencing on the 31st day of placement and continuing until the child is removed.

(h) The department shall develop regulations to obtain payment of assessed penalties as provided in this section. For audit purposes and the application of penalties for RCL 13 and RCL 14 programs, the department shall apply statutory provisions that were in effect during the period for which the audit was conducted.

(i) (1) Nothing in this subparagraph shall prohibit a group home classified at RCL 13 or RCL 14 for purposes of the AFDC-FC program, from accepting private placements of children.

(2) In cases where a referral is not from a public agency and no public funding is involved, there shall be no requirement for public agency review or determination of need.

(3) Children subject to paragraphs (1) and (2) shall have been assessed as seriously emotionally disturbed, as defined in Section 5600.3 and subject to Section 1502.4 of the Health and Safety **Code**, by a licensed mental health professional, as defined in Sections 629 to 633, inclusive, of Title 9 of the California **Code** of Regulations.

(j) A child shall not be placed in a group home program classified at an RCL 13 or RCL 14 if the placement is paid for with county-only funds unless the child is assessed as seriously emotionally disturbed, as defined in Section 5600.3, subject to Section 1502.4 of the Health and Safety **Code**, by a licensed mental health professional, as defined in Sections 629 to 633, inclusive, of Title 9 of the California **Code** of Regulations.


**11462.02**. Notwithstanding paragraph (2) of subdivision (a) of Section 11462, a foster care provider licensed as a group home may also have a rate established if the group home is operated by the County of San Mateo, as provided by subdivision (h) of Section 11400.


**11462.03.** (a) Notwithstanding subdivision (c) of Section 11462, the data obtained by the department pursuant to that subdivision using 1985 calendar year costs shall be updated and revised by January 1, 1994. The department may use unaudited cost data submitted by group home providers and shall submit its best estimate of what the costs would have been had fiscal audits been completed.

(b) When the department updates the 1985 calendar year costs using unaudited cost information submitted by group home providers, the department shall adjust costs by applying offsets and reasonableness adjustments to the unaudited cost data. The department shall report both adjusted and unadjusted cost data pursuant to this section and subdivision (c) of Section 11462.


11462.05. By October 1, 1995, the department shall review and recommend to the appropriate policy and fiscal committees of the

Legislature, a new or revised ratesetting system for facilities receiving reimbursement under Sections 11462 and 11462.01.  The department shall conduct this review and develop recommendations with the advice and assistance of county placement agencies, group home provider associations, and other individuals and organizations as designated by the director.  The recommendations shall be based on the department's review and evaluation of the current program classification system, group home actual cost data, and information from the group home program statements and level of care assessments specified in Section 11467.


11462.06.  (a) For purposes of the administration of this article, including the setting of group home rates, the department shall deem the reasonable costs of leases for shelter care for foster children to be allowable costs.  Reimbursement of shelter costs shall not exceed 12 percent of the fair market value of owned, leased, or rented buildings, including any structures, improvements, edifices, land, grounds, and other similar property that is owned, leased, or rented by the group home and that is used for group home programs and activities, exclusive of idle capacity and capacity used for nongroup home programs and activities.  Shelter costs shall be considered reasonable in relation to the fair market value limit as described in subdivision (b).

   (b) For purposes of this section, fair market value of leased property shall be determined by either of the following methods, as chosen by the provider:

   (1) The market value shown on the last tax bill for the cost reporting period.

   (2) The market value determined by an independent appraisal.  The appraisal shall be performed by a qualified, professional appraiser who, at a minimum, meets standards for appraisers as specified in Chapter 6.5 (commencing with Section 3500) of Title 10 of the California **Code** of Regulations.  The appraisal shall not be deemed independent if performed under a less-than-arms-length agreement, or if performed by a person or persons employed by, or under contract with, the group home for purposes other than performing appraisals, or by a person having a material interest in any group home which receives foster care payments.  If the department believes an appraisal does not meet these standards, the department shall give its reasons in writing to the provider and provide an opportunity for appeal.

   (c) (1) The department may adopt emergency regulations in order to implement this section, in accordance with Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government **Code**.

   (2) The adoption of emergency regulations pursuant to this section shall be deemed to be an emergency and considered by the Office of Administrative Law as necessary for the immediate preservation of the public peace, health and safety, or general welfare.

   (3) Emergency regulations adopted pursuant to this section shall be exempt from the review and approval of the Office of Administrative Law.

   (4) The emergency regulations authorized by this section shall be submitted to the Office of Administrative Law for filing with the

Secretary of State and publication in the California **Code** of Regulations.

   (d) (1) Commencing July 1, 2003, any group home provider with a self-dealing lease transaction for shelter costs, as defined in Section 5233 of the Corporations **Code**, shall not be eligible for an AFDC-FC rate.

   (2) Notwithstanding paragraph (1), providers that received an approval letter for a self-dealing lease transaction for shelter costs during the 2002-03 fiscal year from the Charitable Trust Section of the Department of Justice shall be eligible to continue to receive an AFDC-FC rate until the date that the lease expires, or is modified, extended, or terminated, whichever occurs first.  These providers shall be ineligible to receive an AFDC-FC rate after that date if they have entered into any self-dealing lease transactions for group home shelter costs.


**11462.07**.  Notwithstanding subdivision (h) of Section 11462, for the 1999-2000 fiscal year, a group home program that received an AFDC-FC rate for the 1998-99 fiscal year at or above the standard rate for its RCL for that fiscal year shall have its rate increased by the same percentages and on the same effective dates as provided for in subparagraphs (A) and (B) of paragraph (1) of subdivision (g) of Section 11462.


**11462.1.**  (a) No later than February 1, 1997, the department shall establish a proposal for a basic rate for the care and supervision of children subject to Section 300 or Section 602 who are placed in out-of-home care facilities, regardless of the type of placement.  In addition, the proposal shall include a rate structure with incremental rates for various service components provided to children subject to Section 300 or Section 602 who are placed in out-of-home care to facilitate the provision of those services according to the individual needs of each child.

   (b) The rate structure proposed pursuant to subdivision (a) shall, in the aggregate, cost no more than the aggregate cost of the rate structure in effect on January 1, 1997.

   (c) The department, in developing the rate structure proposal required by this section, shall seek and consider the advice and participation of county welfare and probation departments, group home providers, foster family agencies, group home associations, the Foster Parent Association, representatives of the Legislature, and other interested parties.

   (d) The department shall provide the proposal to the chairs of the appropriate policy committees and fiscal committees in the Senate and the Assembly by February 1, 1997.  Any change to the current rate system proposed by the department pursuant to this section shall require statutory authorization.


**11462.2.**  (a) Notwithstanding Section 11462, when the director determines that a rate established pursuant to that section for a multistate group home facility which operates in more than two states

and which provides high impact adventure programs and which first offered these programs in the State of Arizona, is less than the established national rate for the multistate group home facility, and when the director determines that the multistate group home facility is otherwise licensed but would not be available due to the operation of Section 11462, the director may at his or her discretion establish a rate comparable to the rate paid in other states.

(b) When the director establishes a rate pursuant to this section, the facility shall be subject to audits by the department, or other public or private audit agency with which the department contracts, no less often than every three years.


**11462.4.**  Notwithstanding Section 11342.610 of the Government **Code**, group homes and foster family agencies shall be deemed small businesses and the department shall project the impact on group homes and foster family agencies of any new regulations which will affect those community care facilities.


**11462.61**.  (a) For audits performed prior to June 30, 1988, on group homes which received funds on behalf of children receiving assistance under the AFDC-FC program, the department shall not offset or adjust current payments made pursuant to Section 11462 unless the department determines both the following facts exist:

(1) The proposed adjusted allowable costs, as defined in paragraph (1) of subdivision (b) of Section 11462, per child per month, for the current year are less than the current paid rate.

(2) The same facts or conditions exist in the current year which resulted in the audit adjustment, for each of the audit adjustments, during the year which was the subject of the prior audit.

(b) The department is not required to perform a field audit to make the determination specified in paragraphs (1) and (2) of subdivision (a).

(c) Nothing in this section restricts or limits the department's authority to  recover a final audit overpayment for any year which was the subject of an audit.


**11462.7.**  (a) To the extent federal financial participation is available, the department shall set a foster care rate for crisis nurseries, as defined in Section 1516 of the Health and Safety **Code** and subdivision (t) of Section 11400.

(b) The rate structure required to implement this section shall be adopted as emergency regulations in accordance with Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government **Code**. The adoption of these regulations shall be deemed an emergency and necessary for the immediate preservation of the public peace, health and safety, or general welfare. Notwithstanding Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government **Code**, emergency regulations adopted to implement this section shall not be subject to the review and approval of the Office of Administrative Law. These regulations shall become effective immediately upon filing with the

Secretary of State.

(c) Until the department adopts emergency regulations for establishing a rate for crisis nurseries, the rates shall be established using the foster care ratesetting system for group homes and subject to all of the requirements of Article 6 (commencing with Section 11450) of Chapter 2 of Part 3 of Division 9.

(d) Volunteers shall not be included in staff-to-child ratios used in the rate level determination.

(e) This section shall remain in effect only until July 1, 2011, and as of that date is repealed, unless a later enacted statute, that is enacted before July 1, 2011, deletes or extends that date.