IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA STATE FOSTER PARENT ASSOCIATION, CALIFORNIA STATE CARE PROVIDERS ASSOCIATION, and LEGAL ADVOCATES FOR PERMANENT PARENTING,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN A. WAGNER, Director of the California Department of Social Services, in his official capacity; MARY AULT, Deputy Director of the Children and Family Services Division of the California Department of Social Services, in her official capacity,<br><br>Defendants. | No. C 07-05086 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR FURTHER RELIEF** |

**INTRODUCTION**

After a declaratory judgment in their favor and an affirmance on appeal, plaintiffs move for further relief. Specifically, they request an order compelling defendants to immediately increase California's monthly maintenance payments to foster parents to the following amounts: $771 for children up to four; $879 for children ages five to thirteen; and $962 for children ages fourteen to eighteen. Plaintiffs also request that the order require annual increases "to prevent the reimbursement rates from again falling behind the real mandatory costs." For reasons stated below, their motion is **GRANTED IN PART AND DENIED IN PART** and their specific request for relief is **DENIED IN FAVOR OF OTHER RELIEF**.

**STATEMENT**

Plaintiffs brought this action on behalf of foster parents in California, to challenge the monthly rates at which those parents are reimbursed by the State for their care of foster children. They alleged and were successful on their claim for declaratory relief that California was violating the federal Child Welfare Act. Judgment was entered on December 5, 2008. The scope of relief granted by the order granting in part and denying in part plaintiffs' motion for summary judgment and denying defendants' motion for summary judgment will not be reviewed here because it is discussed below. The court of appeals affirmed the judgment. Its decision addressed the threshold question of whether there is a private right of action under the federal Child Welfare Act, and "[did] not address the nature of the remedy" granted by this Court (Dkt. No. 156 at 7).

It has been over two years since judgment was entered. Apparently nothing has changed in the past two years. Rates are the same as they were, and California does not consider cost factors in setting rates, as before. Plaintiffs now move for further relief. Plaintiffs argue that further relief is needed to effectuate the declaratory judgment that was entered. In plaintiffs' view, that further relief is for this Court to *set* the rates of maintenance payments to foster parents. Hence, they present evidence based on a study — called the MARC Report — that payments should be as follows: $771 for children up to four; $879 for children ages five to thirteen; and $962 for children ages fourteen to eighteen.

Defendants respond that it is not true that nothing has changed in the two years since judgment was entered. Though it seems uncontested that no efforts at change began until May 2010, plaintiffs do not object to defendants' exhaustion of their appeal (Br. 13). Since then, the State has commissioned a study concerning the method by which it should begin setting rates that take into account the cost factors under the CWA. According to the representations of defendants, this study commenced in May 2010 and is being conducted by researchers at the University of California at Davis. Defendants also represent that a preliminary presentation by the researchers was made to defendants' staff on October 29, 2010, and that a preliminary written report is to be produced by the end of this year, "with the final report set for release by

June 30, 2011." The only information that plaintiffs have been privy to thus far about the study is a "Scope of Work" statement produced by the State, pursuant to a request for records initiated by plaintiffs, on October 26, 2010.

The Scope of Work statement is a four-page document that describes the plan for defendants' study to "develop a recommended methodology (or alternative methodologies) for setting foster care rates in California." It also states that the study will consider "of particular importance" the preexisting MARC Report, which was published in 2007 out of the University of Maryland, and which documents actual costs incurred by California foster parents. But the new study is also considering other information. Defendants emphasize that they are pursuing a new method for determining foster care payments and are thus not avoiding the declaratory judgment against them.

Plaintiffs counter that this is insufficient. They argue that, without further relief from this Court, defendants would be free to, and may well proceed to, study this problem forever. In the meantime, plaintiffs continue, defendants are violating the law, because they continue to disperse maintenance payments to foster parents without taking into account cost factors under the CWA, as they must. They request aid of the Court to make their declaratory judgment mean something real for the foster parents of our State.

**ANALYSIS**

After a declaratory judgment, "[i]f further relief becomes necessary at a later point . . . both the inherent power of the court to give effect to its own judgment, and the Declaratory Judgment Act, 28 U.S.C. s 2202 (1948), would empower the district court to grant supplemental relief, including injunctive relief." *Rincon Band of Mission Indians v. Harris*, 618 F.2d 569, 575 (9th Cir. 1980) (citations omitted).

The obvious starting place is the order that set out the terms of declaratory relief on which the judgment in this action was based. The order on the parties' cross-motions for summary judgment stated:

> [P]laintiffs' motion is granted insofar as plaintiffs argue that *defendants are in violation of the Act by setting rates without consideration of the Act's mandatory cost factors*. Plaintiffs['] motion, however, is denied insofar as plaintiffs assert that defendants must be in exact compliance with its particular measure of child

3

> welfare maintenance payments. This order need not further broach the vexing question of what precisely "substantial compliance" entails in this context and whether, if California had a rate-setting process in place that adequately considered the Act's mandatory cost factors, the shortfalls that plaintiffs posit of 29 to 40 percent or more might nevertheless violate the Act.

(Dkt. No. 98 at 11 (emphasis added).) Further relevant to the primary question of what declaratory relief was granted is the order denying defendants' request for reconsideration of the order on summary judgment. That order discussed again the scope of relief granted:

> *The Act certainly did not vest with the courts the role of collecting data regarding foster care costs and setting appropriate foster care rates in the first instance.* Because the record indicates that the state does not consider the Act's mandatory foster care service costs and set rates with relation to those costs, the state has failed meet its obligation to pay rates that "cover the cost of (and the cost of providing)" the listed services.
>
> *This order does not conclude that the state must adopt any particular method for analyzing the statutory costs or for setting rates.* A wide range of procedures likely exist by which the state could discharge is obligations under the Act. Although the statute affords the states substantial discretion, however, that discretion does not render the statute unenforceable by courts.
>
> As explained in the October 21 order, plaintiffs' motion was and remains granted insofar as plaintiffs argue that defendants are in violation of the Act by setting rates without consideration of the Act's mandatory cost factors, but the motion is denied insofar as plaintiffs assert that defendants must be in exact compliance with their particular measure of child welfare maintenance payments.

(Dkt. No. 104 at 7–8 (emphasis added) (citations omitted).) Hence, both orders clearly granted declaratory relief that defendants must consider cost factors in setting rates for payments to foster parents, and clearly denied relief with regard to plaintiffs' urging that this Court determine what those payments should be.

Consequently, that plaintiffs would be entitled to further relief to effectuate their declaratory judgment that defendants must incorporate cost factors in their rate-setting is perfectly consistent with 28 U.S.C. 2202 and the relief granted two years ago. On the other hand, that plaintiffs are entitled to an order setting the specific rates is not, at least not yet. Plaintiffs spend much of their briefs bolstering the latter proposition. They discuss why the MARC Report includes the rates that should properly be paid by the State, and how this order should mandate that those rates be paid because the current rates are inconsistently low. These arguments are irrelevant, however, because the judgment plaintiffs got was not new rates. It was a declaratory judgment that defendants must consider cost factors when *they* set rates.

4

Relief in the form of an order setting specific rates would be inconsistent with the relief granted two years ago and thus shall not be awarded now. Accordingly, to this extent, plaintiffs' motion is denied.

It must be noted, also, that despite plaintiffs' invocation of yet another court of appeals' decision that post-dated judgment in this action, that decision does not affect the result here. In *California Alliance of Child and Family Services v. Allenby*, the court of appeals held — in the context of group and institutional foster homes as opposed to individual foster parents — that where California was properly calculating the costs to be reimbursed under the CWA, it was nevertheless violating the CWA where it was only paying out 80 percent of those costs. 589 F.3d 1017, 1023 (9th Cir. 2009). Plaintiffs seem to assume that, because of this intervening decision, they are entitled to a court order setting a certain measure of costs in this action. They state that the rates in *Alliance* "were held illegal for similar reasons [to those here]" (Br. 2), and that defendants' "continu[ing] violation[ of] foster parents' rights [] is impermissible under . . . *Alliance*" (Reply 8). Not so. There, "[t]he Alliance accept[ed] the State's system for calculating costs to be covered, but t[ook] issue with the State's underfunding of foster care maintenance payments as a result of having failed to adjust the standardized schedule of rates by an amount equal to the [California Necessities Index] since 2001." *Id.* at 1019. Here, plaintiffs attacked the system for calculating costs. *Alliance* addressed a different issue than what we have here; it does not control or affect the outcome of this motion.

This does not mean, however, that further relief is not warranted. Again, it has been two years and defendants have done nothing but recently initiate and pursue a study. Plaintiffs are not out of line to complain. The declaratory judgment that they won is not being implemented, though that is not the same as saying defendants did or do not still intend to implement it. Defendants' study, though under way, will not be completed — according to the current written timeline — until June 2011. Furthermore, defendants do not indicate any intended timeline for *implementation* of the study's recommendations after June.

At oral argument, defense counsel represented that not only will a preliminary written report be completed by the end of this year — as previously known by both sides — but also the

5

California Department of Social Services expects that it will be able to produce a final report before the written forecasted completion deadline of June 2011. Defense counsel also represented that after the completion of the study, the steps to implementation are not overly onerous: the Department of Social Services must recommend and receive approval from the California Department of Finance, but it need not seek approval from the state legislature, to implement the study's recommended mechanism for compliance.

This order will help defendants on their path. Though the study is currently set to be completed in June 2011, this order requires the study to be fully completed by **MARCH 11, 2011**. Advancing the completion date in this way is feasible based on the representations of defense counsel. Defendants shall serve a copy of the final written report from the completed study on plaintiffs on that date. Defendants will then need time to evaluate the report and seek and receive approval of implementation of its recommendations. Accordingly, defendants shall have until **APRIL 8, 2011, AT NOON**, to complete their implementation and submit a statement to the Court describing the new method for determining the rates of payments to foster parents that includes consideration of the cost factors required by the CWA. In the meantime, this order recommends that defendants share the preliminary draft report of the study with plaintiffs when it is completed before the end of this year, as a measure to expedite ultimate resolution of this dispute.

### CONCLUSION

The motion is granted to the limited extent stated above without prejudice to more comprehensive relief after the State has had a full and fair opportunity to come into compliance.

**IT IS SO ORDERED.**

Dated: December 16, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE