IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA STATE FOSTER PARENT ASSOCIATION, CALIFORNIA STATE CARE PROVIDERS ASSOCIATION, and LEGAL ADVOCATES FOR PERMANENT PARENTING,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM LIGHTBOURNE, Director of the California Department of Social Services, in his official capacity; GREGORY ROSE, Deputy Director of the Children and Family Services Division of the California Department of Social Services, in his official capacity,<br><br>Defendants. | No. C 07-05086 WHA<br><br>**ORDER GRANTING PLAINTIFFS' SECOND MOTION FOR FURTHER RELIEF** |

**INTRODUCTION**

After a declaratory judgment in plaintiffs' favor, an affirmance on appeal, and an order requiring defendants "to complete their implementation" of their "new method for determining the rates of payments to foster parents that includes consideration of the cost factors required by the CWA" by April 8, 2011, defendants have still not come into compliance with federal law. Plaintiffs move again for further relief — specifically, an order compelling defendants to implement their new method. In other words, now defendants have the rates; they just have not put them into effect. This is a violation of federal law, and as such plaintiffs' motion for further relief is **GRANTED**.

**STATEMENT**

The factual background is much the same as that set forth by the order on plaintiffs' first motion for further relief (Dkt. No. 163). Plaintiffs brought this action on behalf of foster parents in California, to challenge the monthly rates at which those parents are reimbursed by the State for their care of foster children. They alleged and were successful on their claim for declaratory relief that California was violating the federal Child Welfare Act. Judgment was entered on December 5, 2008. The court of appeals affirmed the judgment. Its decision addressed the threshold question of whether there is a private right of action under the federal Child Welfare Act, and "[did] not address the nature of the remedy" granted by this Court (Dkt. No. 156 at 7).

It has been almost two and a half years since judgment was entered. No efforts at change began until a year ago, at which time the State of California commissioned a study concerning the method by which it should begin setting rates that take into account the cost factors under the CWA. The study was conducted by researchers at the University of California at Davis. At the time of plaintiffs' first motion for further relief, the researchers had made a preliminary presentation to defendants' staff, a preliminary written report was close to complete, and the final report was "set for release by June 30, 2011." The order granting in part and denying in part plaintiffs' first motion for further relief declined their invitation to set specific rates without letting defendants complete their study, but it advanced the timetable for completion of the study and implementation of its conclusions. It required the study to be fully completed by March 11, 2011, and because defendants "will then need time to evaluate the report and seek and receive approval of implementation of its recommendations," it allowed defendants until April 8, 2011, at noon, "to complete their implementation and submit a statement to the Court describing the new method for determining the rates of payments to foster parents that includes consideration of the cost factors required by the CWA."

Defendants finished their study and decided upon their new method for determining rates. Defendants' submission to the Court dated April 8, 2011, includes a new rate

2

methodology and specific rate increases (Dkt. No. 166). The rate schedule stated in defendants' April 8 filing is as follows:

| Age range | 0–4 | 5–8 | 9–11 | 12–14 | 15–19 |
|---|---|---|---|---|---|
| Current Rate Structure | $446 | $485 | $519 | $573 | $627 |
| New Rate Structure | $609 | $660 | $695 | $727 | $761 |

Defendants' filing also outlined adjustments to these rates annually or no later the first day of the State's fiscal year, to reflect the change in the CNI for the current fiscal year.

Despite the progress inherent in defendants' decision on new rates, *they did not implement their new method*. This is uncontested. Nothing has changed for the foster parents. Although defendants have settled on a new method that *will* comply with federal law, they have not *begun* complying with federal law because — they argue — they need state legislative approval and have not gotten it yet.[1] As outlined below, however, the requirements under state law for implementation of these rates are irrelevant to the question of whether defendants have complied with their federal obligations, which they admit they have not done. As such, pursuant to 28 U.S.C. 2202, this order requires defendants to implement their new rate structure immediately.

**ANALYSIS**

After a declaratory judgment, "[i]f further relief becomes necessary at a later point . . . both the inherent power of the court to give effect to its own judgment, and the Declaratory Judgment Act, 28 U.S.C.[§] 2202 (1948), would empower the district court to grant supplemental relief, including injunctive relief." *Rincon Band of Mission Indians v. Harris*, 618 F.2d 569, 575 (9th Cir. 1980) (citations omitted). The orders preceding judgment in this case that set out the terms of declaratory relief declined to set a "particular measure of child welfare maintenance payments," and left it to the State to decide on its own a "particular method for

---

[1] Defendants do not argue that implementing the new rates would be a financial difficulty for the State, probably because implementation of the new rates "could actually *save* the state money by inducing more foster parents to enter the program [] thus reducing the need for (more expensive) institutional care options" (Order Re Cross-Motions for Summary Judgment, Dkt. No. 98 at 5).

3

analyzing the statutory costs or for setting rates" (Dkt. Nos. 98 and 104). Instead, these orders declared that "defendants are in violation of the Act by setting rates without consideration of the Act's mandatory cost factors," and left it to the State to determine a method for coming into compliance. *They have now made that determination.* Accordingly, they must implement it.

Defendants present only one argument in opposition. They argue that they need to get legislative approval to implement the rates in a manner contemplated by state law, and they have not done so. At the hearing on this motion, defense counsel updated the Court and the parties that funding for this project is moving through the legislature.

State law is mostly irrelevant to our current inquiry. By prior judgment and affirmance by our court of appeals, defendants are violating the federal Child Welfare Act. They have been granted wide latitude to determine the method they want to adopt to cease violating federal law. They have done so. From the perspective of federal law, there is nothing standing in the way of defendants' implementation of that method to accomplish compliance. Federal law under Section 2202 does not bend to accommodate state law legislative hurdles.[2]

The United States Supreme Court has decreed: "State-law prohibition against compliance with the District Court's decree cannot survive the command of the Supremacy Clause of the United States Constitution. . . . It is therefore absurd to argue . . . both that the state agencies may not be ordered to implement the decree and also that the District Court may not itself issue detailed remedial orders as a substitute for state supervision. The federal court unquestionably has the power to enter the various orders that state official and private parties have chosen to ignore, and even to displace local enforcement of those orders if necessary to remedy the violations of federal law found by the court." *Wash. v. Wash. State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 695–96 (1979) (citations omitted). There is no question that "a court, in enforcing federal law, may order state officials to take actions despite contravening state laws." *Spain v. Mountanos*, 690 F.2d 742, 746 (9th Cir. 1982).

---

[2] Regardless of plaintiffs' argument that the legislative hurdles are not as high as defendants say, federal law compels implementation without the necessity of a determination of what state law does or does not require.

4

Defendants appear to agree (Opp. 8), but simply need the push of a federal court order to make them take the action that they feel they cannot take under state law. This order will accommodate them. Defendants are ordered to implement their new method for determining the rates of payments to foster parents that includes consideration of the cost factors required by the CWA, and, as set forth below, must implement rate increases effective immediately.

## CONCLUSION

Defendants have now had a full and fair opportunity to come into compliance with federal law. They have not done so. Therefore, plaintiffs' second motion for further relief is **GRANTED**. The State of California shall send checks to foster parents at the new rates beginning with the next round of checks.

Defendants shall implement the rate methodology and specific rates described in the defendants' submission dated April 8, 2011 (Dkt. No. 166), effective immediately. The rate schedule stated in defendants' April 8 filing is as follows:

| Age range | 0–4 | 5–8 | 9–11 | 12–14 | 15–19 |
| --- | --- | --- | --- | --- | --- |
| New Rate Structure | $609 | $660 | $695 | $727 | $761 |

Defendants shall adjust the rates stated above annually, no later the first day of the State's fiscal year, to reflect the change in the CNI for the current fiscal year as outlined in defendants' April 8 filing. Such adjustments shall be made, and are not subject to the availability of funds. By **MAY 31, 2011**, defendants shall issue an official release setting forth the above-stated rate increases, effective that date.

If defendants William Lightbourne and Gregory Rose refuse to or fail to comply with this order, then they must appear personally (not just through counsel) and show cause why they should not be held in contempt on July 28, 2011, at 2:00 p.m.

**IT IS SO ORDERED.**

Dated: May 27, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

5